**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION**

WILLIAM THORPE, *et al*.,

               *Plaintiffs*,

      v.

VIRGINIA DEPARTMENT OF
CORRECTIONS, *et al*.,

               *Defendants*.

CASE NO. 3:19-cv-332-REP

**CLASS PLAINTIFFS'
MEMORANDUM IN OPPOSITION
TO DEFENDANT VDOC'S MOTION TO DISMISS**

**WHITE & CASE** LLP

Alyson Cox (VSB No. 90646)
Daniel Levin (*pro hac*)
Kristen J. McAhren (*pro hac*)
Maxwell J. Kalmann (*pro hac*)
Timothy L. Wilson, Jr. (*pro hac*)
701 Thirteenth Street, N.W.
Washington, DC 20005
(202) 626-3600

Owen C. Pell (*pro hac*)
1221 Avenue of the Americas
New York, New York 10020
(212) 819-8200

AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF VIRGINIA

Vishal Agraharkar (VSB No. 93265)
Eden Heilman (VSB No. 93554)
701 E. Franklin St., Suite 1412
Richmond, Virginia 23219
(804) 644-8022
vagraharkar@acluva.org
eheilman@acluva.org

*Counsel for Class Plaintiffs*

June 14, 2019

TABLE OF CONTENTS

INTRODUCTION ..............................................................................................1

ARGUMENT ....................................................................................................2

I.      Binding Fourth Circuit Precedent Precludes VDOC From Relying On Extrinsic
        Evidence Or Affirmative Defenses To Defeat Plaintiffs' Well-Pleaded Complaint. ....2

II.     The Complaint Pleads Facts Showing That The Settlement Agreement Is A "Private
        Settlement Agreement" That May Be Enforced Under The PLRA..............................3

        A.      VDOC Misplaces Reliance On The Second Circuit's Decision In *Benjamin v.
                Jacobson* Because The Settlement Agreement Is Separate From A Decree. ....6

        B.      VDOC Does Not Establish Its Affirmative Defense That The Agreement Is
                Conditioned On The Existence Of A Consent Decree.......................................8

                1.      The Agreement's Text Is Unambiguously Not Conditioned On A
                        Decree. ................................................................................9

                2.      VDOC Cannot Rely On Extrinsic Sources To Construe The
                        Agreement's Plain Text.  In Any Event, These Sources Show The
                        Agreement Was Separate From Any Decree. .....................................10

        C.      This Court Possesses Jurisdiction Over Plaintiffs' Settlement-Agreement Claim
                And VDOC's Eleventh Amendment Defense Is Premature. ...........................13

                1.      The PLRA Does Not Require The Settlement Agreement To Be
                        Enforced In State Court. ...................................................................14

                2.      The Court Cannot Reach VDOC's Eleventh Amendment Defense.
                        In Any Event, VDOC Waived Whatever Immunity It Had................14

                3.      *Kokkonen* Is Inapposite Because VDOC Concedes That This Court
                        Has Supplemental Jurisdiction...........................................................17

        D.      VDOC Fails To Establish An Affirmative Statute-of-Limitations Defense To
                Plaintiffs' Settlement-Agreement Claim.......................................................17

III.    VDOC's Arguments For Dismissal Of The ADA And RA Claims Are Meritless .....19

    A.    The Allegations In The Complaint Adequately State A Claim That The Step-Down Program Violates The ADA And RA. ...................................................19

    B.    VDOC's 12(b)(6) Arguments For Dismissal Of The ADA And RA Claims Fail. ....................................................................................................................22

        1.    VDOC Misconstrues Plaintiffs' Disparate Treatment Claim. .............23

        2.    VDOC Misconstrues Plaintiffs' Failure To Accommodate Claim. .....25

    C.    VDOC's Statute Of Limitations Affirmative Defense To The ADA And RA Claims Fails. ...................................................................................................26

CONCLUSION........................................................................................................................28

## INTRODUCTION

VDOC's motion to dismiss (the "**Motion**") attempts to defeat the factual detail of Plaintiffs' Class Action Complaint (the "**CAC**" or "**Complaint**") largely by arguing affirmative defenses, often accompanied by facts not pleaded in the Complaint.  VDOC does this while acknowledging well-established Fourth Circuit law that "a Rule 12(b)(6) motion to dismiss cannot reach the merits of an affirmative defense" unless "all facts necessary to the affirmative defense clearly appear on the face of the complaint."  Mot. 9 (internal quotation marks, alterations, and citations omitted).  Nonetheless, VDOC raises the affirmative defenses of Eleventh Amendment immunity (as to Counts I, II, III, and V),[1] statute of limitations (as to Counts I, VI and VII), and failure of condition precedent (as to Count I)—even introducing extrinsic and parol evidence to attack Count I.  With regard to the Americans with Disabilities Act ("**ADA**") and Rehabilitation Act ("**RA**") claims (Counts VI and VII), VDOC attacks the sufficiency of the pleading only by ignoring what is actually pleaded in the Complaint.

The Complaint pleads in detail six causes of action arising from VDOC's long-term solitary-confinement Step-Down Program.  Count I pleads that VDOC breached a 1985 Settlement Agreement when it instituted the Step-Down Program, which is just like a discredited long-term solitary confinement program that VDOC represented it had permanently abolished—a promise that VDOC represented bound its successors and assigns.  CAC ¶¶ 222-30.  Counts II, III, and V plead how the Step-Down Program violates the due process, equal protection, and Eighth Amendment rights of prisoners in long-term solitary confinement at Red Onion and Wallens Ridge.  CAC ¶¶ 231-49.  Counts VI and VII establish how the Step-Down Program also violates the ADA and the RA.  CAC ¶¶ 250-64.

That VDOC must rely on affirmative defenses predicated on facts and assumptions

---

[1]  Plaintiffs agree with VDOC that Defendant Harold Clarke, and not VDOC, is a proper defendant for the constitutional claims pursuant to 42 U.S.C. § 1983 (Counts II, III, and V).  Plaintiffs are willing to stipulate with VDOC on this point.

outside the Complaint demonstrates that this is not one of those "rare" instances where an affirmative defense can be adjudicated on a motion to dismiss.  *See Goodman v. PraxAir Inc.*, 494 F.3d 458, 464 (4th Cir. 2007).  The Court's task on a Rule 12(b)(6) motion "is to test the legal feasibility of the complaint *without* weighing the evidence that might be offered to support or contradict it."  *Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 557 (4th Cir. 2013) (emphasis added).  As shown below, VDOC's Motion goes well beyond that and raises points that must await discovery and summary judgment briefing.  On its face, the Complaint more than pleads the claims alleged.

## ARGUMENT

### I.     Binding Fourth Circuit Precedent Precludes VDOC From Relying On Extrinsic Evidence Or Affirmative Defenses To Defeat Plaintiffs' Well-Pleaded Complaint.

VDOC's Motion improperly offers evidence and affirmative defenses that do not appear on the face of the Complaint.  Black letter law in the Fourth Circuit forecloses reliance on such arguments and materials in a motion to dismiss.

VDOC implies that Fourth Circuit precedent broadly permits taking judicial notice of official documents "omitted by the plaintiff."  Mot. 3. n.6.  VDOC is mistaken.  A court may rely on extrinsic materials only "[u]nder narrow circumstances" (*Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015)), including materials of which it may take judicial notice (*id.* at 508-509 (quoting *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009)).  For a document to be "integral" to a complaint and therefore appropriate for judicial notice, it is not enough that the document is quoted or referenced in a complaint— it must give rise to the legal rights asserted.  *See Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016) (explaining that the district court should not have considered the contents of a police report referenced in the complaint because plaintiff did not rely on the facts of the report to plead the claim); *Fung Lin Wah Enters. v. E. Bay Imp. Co.*, 465 F. Supp.

2d 536, 542-43 (D.S.C. 2006) (denying motion to dismiss where defendants merely offered extrinsic evidence of subsequent termination of contract alleged to be breached).  In sum, "judicial notice must not 'be used as an expedient for courts to consider 'matters beyond the pleadings and thereby upset the procedural rights of litigants to present evidence on *disputed* matters.'"  *Goldfarb*, 791 F.3d at 511 (emphasis added) (quoting *Waugh Chapel S., LLC v. United Food & Commercial Workers Union Local*, 728 F.3d 354, 360 (4th Cir. 2013)).  Moreover, under Rule 201(e) of the Federal Rules of Evidence, VDOC bears the burden of establishing the requirements for judicial notice, including that the particular fact sought to be noticed is indisputable.  Finally, any appropriately noticed facts must still be construed in the light most favorable to the plaintiff.  *Id.* at 508-509 (quoting *Clatterbuck*, 708 F.3d at 557).

Likewise, VDOC's affirmative defenses to Plaintiffs' allegations and VDOC's interpretation of the facts do not arise from the face of the Complaint.  The purpose of a motion to dismiss is not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses" (*Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992)), nor is it to resolve issues of fact (*see Hall v. Greystar Mgmt. Servs., L.P.*, 637 F. App'x 93, 99 (4th Cir. 2016)).  Accepting VDOC's interpretation of the facts would run counter to Fourth Circuit precedent requiring "all reasonable factual inferences from those facts [to be drawn] in the plaintiff's favor" (*Chao v. Rivendell Woods, Inc.*, 415 F.3d 342, 346 (4th Cir. 2005) (quoting *De'Lonta v. Angelone*, 330 F.3d 630, 633 (4th Cir. 2003))), and would improperly raise issues of fact on a motion to dismiss (*see Hall*, 637 F. App'x at 99).  The Court should reject VDOC's end-run around the Plaintiffs' detailed, well-pleaded Complaint.

## II.   The Complaint Pleads Facts Showing That The Settlement Agreement Is A "Private Settlement Agreement" That May Be Enforced Under The PLRA.

Plaintiffs plead that VDOC breached the Settlement Agreement, which bound VDOC—on a department-wide basis—to permanently discontinue certain long-term solitary

confinement practices and to not reinstitute a program "similar to" the Mecklenburg Phase Program.  CAC ¶¶ 74-76, 223, 228.  The Complaint pleads detailed facts showing that although VDOC stated that it did "not intend to reinstate any similar program in the future"—a promise that has no sunset provision, and that VDOC made binding on its successors and assigns— VDOC nevertheless reinstated a program "similar" to the Phase Program (named the Step-Down Program) at Red Onion and Wallens Ridge.  CAC ¶¶ 74, 76, 79, 83, 130-33.  The Complaint demonstrates in exhaustive detail the evident similarities between the Phase Program at Mecklenburg and the Step-Down Program.  CAC ¶¶ 75, 131, 242-26.[2]

VDOC does not argue that Plaintiffs have failed to sufficiently plead the elements of a breach of contract claim.  Nor does VDOC dispute that Plaintiffs (prisoners in long-term solitary confinement at Red Onion and Wallens Ridge) have standing to enforce the Agreement or that VDOC has ongoing obligations to the Plaintiffs under the Agreement.  Rather, VDOC argues that the Agreement is no longer enforceable, that VDOC is immune from its enforcement under the Eleventh Amendment, and that Plaintiffs' Settlement Agreement claim is barred by the applicable statute of limitations.

With respect to enforceability of the Agreement, relying on *Benjamin v. Jacobson*, 172 F.3d 144 (2d Cir. 1999) (en banc), VDOC asks the Court to dismiss Count I because the parties "intended" and "expected" the Agreement to be subject to a consent decree, and when the Court terminated that decree, the Agreement became unenforceable.  Mot. 10-16.  But VDOC ignores that, according to *Benjamin*—and as unanimously decided by other Circuits—the PLRA's

_____

[2]  VDOC argues, contrary to Plaintiffs' interpretation of the Agreement, that the "mere establishment" of the Step-Down Program could not have been a breach.  If VDOC intends to argue for a particular contract interpretation contrary to the allegations in the Complaint, it may do so on a motion to dismiss.  *Balt. City. Lodge No. 3 v. Balt. Police Dep't*, No. 1:16-cv-3309-ELH, 2017 U.S. Dist. LEXIS 118717, at *27 (D. Md. July 28, 2017) (quoting *Subaru Distribs. Corp. v. Subaru of Am., Inc.*, 425 F.3d 119, 122 (2d Cir. 2005)) ("A court is not 'obliged to accept the allegations of the complaint as to how to construe' a contract, but on a motion to dismiss it 'should resolve any contractual ambiguities in favor of the plaintiff.'").

termination provision "affects only 'prospective relief'" pursuant to a consent decree, and not the enforceability of a private settlement agreement or anything else. *Benjamin*, 172 F.3d at 156; *see also Gilmore v. California*, 220 F.3d 987, 1001 (9th Cir. 2000) ("The PLRA . . . defines a 'consent decree' exclusively in terms of the relief it provides . . . ."); *Inmates of Suffolk Cnty. Jail v. Rouse*, 129 F.3d 649, 654-55 (1st Cir. 1997) ("The PLRA's equation of 'consent decree' and 'relief' contradicts conventional understandings . . . . [W]e conclude that Congress meant precisely what it said—however deviant from ordinary usage that may be—when it wrote the PLRA and specially defined its operative terms.").

VDOC's argument also relies on two false premises. First, VDOC asserts that, according to *Benjamin*, any settlement agreement "leading to" a consent decree *is* a "consent decree" under the PLRA and is rendered null when a court subsequently terminates its decree. Mot. 11-13 (quoting *Benjamin*, 172 F.3d at 157). And, second, that the parties "intended" or "expected" that the Agreement be conditioned on the existence of a consent decree. *Id*. at 13-16. VDOC's arguments (which also impermissibly rely on extrinsic evidence) are belied by the plain language of the Settlement Agreement, by the consent decree, and by the extrinsic sources that VDOC offers. The Settlement Agreement falls within the PLRA's definition of "private settlement agreement." Therefore, the Settlement Agreement is still enforceable.

VDOC's other arguments for being excused from its obligations under the Agreement fail for similar reasons. By making promises to a federal court to settle a federal class action, VDOC expressly waived, and is not entitled to, any Eleventh Amendment immunity from Plaintiffs' Settlement Agreement claim. Nothing in the PLRA "directs" that "private settlement agreements" must be heard exclusively in state court. Finally, VDOC's statute-of-limitations defense—which asserts that all of the Plaintiffs and class members' claims accrued in 2012—cannot be resolved on a motion to dismiss because the Complaint does not allege that all of the Plaintiffs and class members were subject to the Step-Down Program in 2012.

A.    **VDOC Misplaces Reliance On The Second Circuit's Decision In *Benjamin v. Jacobson* Because The Settlement Agreement Is Separate From A Decree.**

VDOC argues the Second Circuit's decision in *Benjamin* controls this case. It does not. The *Benjamin* plaintiffs did not attempt to enforce a separate settlement agreement. In *Benjamin*, the parties entered into stipulations, expressly "subject to approval by the Court," to enter into consent decrees settling the plaintiffs' claims. 172 F.3d at 157. These stipulations—in which the parties set out the proposed terms of decrees that would settle the plaintiffs' claims subject to the court's approval—were then executed by the court as consent decrees. *Id*. at 149-50, 157. The district court subsequently terminated its consent decrees pursuant to the PLRA. *Id*. at 151-52. The *Benjamin* plaintiffs attempted to enforce the parties' stipulations proposing the terms of the decrees, as if they were separate agreements, on the theory that "the parties, at the same time that they concluded the consent decrees, also achieved a meeting of minds such that a state might deem a state law contract to have been established." *Id*. at 185 (Calabresi, J., concurring in result). In other words, because the parties had conditionally stipulated to the entry of consent decrees, their conditional stipulations setting out the terms of such decrees themselves constituted separate agreements enforceable at state contract law. In this way, the *Benjamin* plaintiffs asserted they could enforce the terminated consent decrees in state court.

The Second Circuit rejected the *Benjamin* plaintiffs' argument regarding the enforceability of the terminated consent decrees because the terms of the alleged "agreements"—the stipulations proposing the decrees—were "conditional" upon, and without legal effect apart from, the decrees adopting them. *Benjamin*, 172 F.3d at 157 (en banc opinion) (citing *Benjamin v. Malcolm*, 75 Civ. 3073 (S.D.N.Y. Nov. 29, 1978)) ("An agreement leading to a consent decree is normally conditional, setting out actions and forbearances to which the defendant agrees and stating that the settlement is conditioned on being so-ordered by the

-6-

court."). Therefore, termination of the consent decrees necessarily rendered any arguably "underlying" agreement inferred from the stipulations unenforceable for failure of a condition precedent. *Id.* at 156-157 ("Where the parties have made an agreement to settle conditional on approval by the federal court, there is no enforceable agreement if the condition fails.").

Contrary to VDOC's assertions, *Benjamin* did not consider a situation where—as here—the parties reached a separate written settlement agreement and then also separately sought a consent decree to enforce their agreement. Indeed, although the Second Circuit did not have examples on hand, it expressly left open the possibility that a case such as this could arise in the future. The Second Circuit noted that plaintiffs may "agree to a consent decree and also agree—either in the same document or in a separate document—to give up their claims unconditionally in exchange for undertakings by the defendants that would not be enforceable except through the commencement of a new lawsuit for breach of contract." *Id.* at 157. The Second Circuit observed that such separate agreements will not fail upon termination of a consent decree because the PLRA excluded private settlement agreements from its definitions of relief "and hence preserved them from termination." *Id.* at 156; *see also* 18 U.S.C. § 3626(c)(2)(A) (2019) (specifying that the PLRA does not "preclude parties from entering into a private settlement agreement that does not comply with the [statute's] limitations on relief . . ., if the terms of that agreement are not subject to court enforcement other than the reinstatement of the civil proceeding that the agreement settled").

The Agreement here constitutes such an agreement and this suit is a "new lawsuit for breach of contract" to enforce the Agreement. *See Benjamin*, 172 F.3d at 157. By the reasoning and conclusions of VDOC's own authority, therefore, the Agreement here was not rendered unenforceable when this Court separately terminated the consent decree. *See Benjamin*, 172 F.3d at 156 (concluding that § 3626(b) "affects only 'prospective relief'"). When the Court terminated prospective relief pursuant to the decree, the Agreement was "not subject to judicial

enforcement" and fell within the definition of a "private settlement agreement," which is phrased in the present tense:  an agreement that "*is* not subject to court enforcement." § 3626(g)(6) (emphasis added); *Carr v. United States*, 560 U.S. 438, 448 (2010) (noting that the Supreme Court has "frequently looked to Congress' choice of verb tense to ascertain a statute's temporal reach"); *Rouse*, 129 F.3d at 655 ("Congress meant precisely what it said—however deviant from ordinary usage that may be—when it wrote the PLRA and specifically defined it operative terms.").  VDOC concedes that the PLRA allows enforcement against the breaching party of a private settlement agreement.  Mot. 12.

### B.   VDOC Does Not Establish Its Affirmative Defense That The Agreement Is Conditioned On The Existence Of A Consent Decree.

Recognizing that this case is not like *Benjamin* because the Settlement Agreement exists separately from the decree that once enforced it, VDOC asks this Court—on a motion to dismiss—to adopt its present-day litigation position as the binding construction of a longstanding Agreement and the intent of the parties that executed it three decades ago.  To wit, VDOC argues that the parties "intended" or "expected" that the Settlement Agreement would "conditionally settle[]" the claims in *Brown*, such that the Agreement failed when this Court terminated its decree.  Mot. 1; *see* Mot. 15 ("[O]nce those decrees were vacated, the agreements that had been incorporated into those decrees were no longer enforceable.").

VDOC's argument amounts to an affirmative defense that its obligations under the Agreement are unenforceable for failure of a condition precedent.  *See Constructure Mgmt. v. Berkley Assur. Co.*, 2017 WL 818717, at *6 (D. Md. Mar. 2, 2017) ("In a contract dispute, plaintiffs are not required to expressly plead satisfaction of a condition precedent to allege a breach-of-contract claim.  Rather, 'failure to satisfy a condition precedent is ordinarily considered an affirmative defense.'" (quoting *United States v. Clark Constr. Grp., LLC*, 235 F. Supp. 3d 745, 753 (D. Md. 2016))); *see, e.g.*, *Lettieri v. Equant, Inc.*, 478 F.3d 640, 651 (4th

-8-

Cir. 2007); *Erie Ins. Exch. v. Meeks*, 288 S.E.2d 454, 456 (Va. 1982) (noting that "a defendant bears the ultimate burden of persuasion" on a condition precedent affirmative defense).  As stated in Part I *supra*, VDOC recognizes, as it must, that the Court may only consider its affirmative defense "if 'all facts necessary to the affirmative defense clearly appear[] on the face of the complaint.'"  Mot. 9 (quoting *Goodman v. PraxAir, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007)).

VDOC's defense fails because (1) the plain text of the Agreement contains no condition and (2) the Court cannot consider VDOC's extrinsic evidence, which, in any event, proves that the Agreement survived termination of the Court's consent decree.

### 1. The Agreement's Text Is Unambiguously Not Conditioned On A Decree.

Departing from what is "normally" the practice when seeking a consent decree, the parties did *not* condition VDOC's obligations to end its Phase Program and abolish the Special Management Unit ("**SMU**") upon the Court approving or issuing a decree, or upon the Court's continuing jurisdiction. Mot. 11-12 (quoting *Benjamin*, 172 F.3d at 157 (2d Cir. 1999)); CAC Ex. 3, ¶¶ 1, 3.  That obligation is unconditional and expressly bound VDOC's successors and assigns.  CAC Ex. 3, at 1.  This unconditional language required no continuing action by the Court.  The Agreement states:

> The parties shall *submit* this agreement to the Court in full settlement of all remaining issues in this case, except costs and attorneys' fees, and the parties shall *request* that the Court retain jurisdiction *as the Court deems necessary* to enforce compliance with this agreement and any decrees which *may issue* herein.

CAC Ex. 3, ¶ 37 (emphasis added).

According to the Settlement Agreement's plain text, the parties committed to "submit" the Agreement to the Court, and to "request" that the Court retain jurisdiction in its discretion to enforce compliance with the Agreement any decrees that the Court might have also issued

-9-

in its discretion.  In other words, the parties agreed to the terms of the settlement—including

the total and unconditional end of the Phase Program and SMU—and to "request" enforcement

that "the Court deemed necessary."  VDOC does not argue that this provision of the Agreement

is ambiguous.  If the Court had found that VDOC's pattern of conduct did *not* merit ongoing

court monitoring and enforcement, VDOC would still have had obligations under the

Agreement.  VDOC does not argue to the contrary, and that is fatal to its argument.

That the parties contemplated the possibility the Court might have decided not to issue

a decree—evident in their choice of the words "request," "as the Court deems necessary," and

"may issue"—further demonstrates they, in fact, "intended" the Agreement to exist separately

and unconditionally from any decree.  In sum, the Agreement might have contemplated the

possibility of court enforcement, but that does not render the Agreement "subject to court

enforcement" or undermine its separate existence.  18 U.S.C. § 3626(g)(6).

> **2.**    **VDOC Cannot Rely On Extrinsic Sources To Construe The Agreement's Plain Text.  In Any Event, These Sources Show The Agreement Was Separate From Any Decree.**

Knowing that the Agreement is unambiguously unconditional on its face, VDOC

encourages the Court to err.  To support its affirmative defense, VDOC asks this Court to reach

beyond the Complaint and take "judicial notice" of VDOC's post-hoc interpretation of

cobbled-together extrinsic parol evidence, which VDOC contends shows that the parties

"intended" or "expected" that their "ongoing arrangement" would be subsumed by a consent

decree.  Mot. 14-15.  None of VDOC's "intent" arguments derive from documents that are

"integral" to the Complaint.  *Goines*, 822 F.3d at 165; *Goldfarb*, 791 F.3d at 508-509.  As such,

VDOC's arguments violate Virginia contract law, are procedurally improper on a motion to

dismiss, and should be summarily rejected by the Court.  *See Bentley Funding Group, L.L.C.

v. SK&R Group*, L.L.C., 609 S.E.2d 49, 56 (Va. 2005) ("When contract terms are clear and

unambiguous, we must construe those terms according to their plain meaning.'  A court may

not 'add to the terms of the contracts of parties by construction, in order to meet the circumstances of a particular case.'" (alterations, citation, and internal quotation marks omitted)); *Fung Lin Wah Enters. v. E. Bay Imp. Co.*, 465 F. Supp. 2d 536, 542-43 (D.S.C. 2006) (denying motion to dismiss where Defendants merely offered extrinsic evidence of subsequent termination of contract alleged to be breached).

VDOC clearly wishes to argue the merits of this case and will have that opportunity after discovery. But the Court cannot dismiss Plaintiffs' Settlement Agreement claim based on affirmative defenses and merits arguments that do not arise from the face of the Complaint. *See Clatterbuck*, 708 F.3d at 558 ("On a motion pursuant to Rule 12(b)(6), the court's task is to test the legal feasibility of the complaint without weighing the evidence that might be offered to support or contradict it.").

In any event, setting aside VDOC's invitation to abuse the judicial notice doctrine and its improper reliance upon extrinsic evidence on a motion to dismiss, VDOC's "maze of cross-references to exhibits and interpretations of specific provisions within them" only further demonstrates that Plaintiffs' Settlement Agreement claim is sufficient. *Goldfarb*, 791 F.3d at 511.

**a. VDOC's Argument that the 1985 Order "Approved" the Decree.** Drawing a faint analogy to *Benjamin*, VDOC invokes the Court's use of the phrase "approved and provisionally adopted" in the April 5, 1985 Order, which also provisionally entered the modified consent decree. Mot. 13-15 (citing *Benjamin*, 172 F.3d at 157). VDOC suggests that these magic words somehow fused the Agreement with the decree. But nothing in the Court's Order "approving" the Agreement, which must be interpreted in a light most favorable to Plaintiffs (*Clatterbuck*, 708 F.3d at 557), demonstrates that the Agreement is "conditional" upon, or enjoys no existence separate from, a decree. Mot. 11 (quoting *Benjamin*, 172 F.3d at 157).

-11-

VDOC fails to appreciate that all proposed class-action settlements must be submitted to a court for purposes of certifying a provisional settlement class and notifying class members of their right to opt out. *See* Fed. R. Civ. Proc. 23(e). Consistent with that rule, the Order demonstrates that the Court "approved" the Agreement after finding it was "fair and appropriate," "provisionally adopted" the Agreement so it could provisionally certify a settlement class, and ordered the parties to "give notice of the Order and settlement" pursuant to Rule 23(e). *See* Mot. Ex. 8 & ¶ 4. The only condition the Court mentioned in its order— that its decree would not issue until class notification procedures were complete—belies VDOC's argument. Mot. Ex. 8 ¶ 5. Again, demonstrating that the Agreement and decree are (and always are) separate, the Court did not "approve" its decree until "July 2, 1985," nearly five months after it approved the Agreement. *Compare* Mot. Ex. 1, *with* Mot. Ex. 8.

**b. VDOC's Argument that the Court Used the Word "Vacate" in Its April 7, 1997 Order.** For similar reasons, VDOC's argument (Mot. 15) respecting this Court's use of the word "vacate" instead of "terminate" in its April 7, 1997 Order "pursuant to § 3626(b)(2)" of the PLRA also proves too much. VDOC's own authorities hold that § 3626(b)(2) of the PLRA does not provide for vacatur. *Rouse*, 129 F.3d at 662 ("Nothing in the PLRA or its legislative history speaks of vacating consent decrees. Congress chose to use the verb "terminate" and to eschew the verb 'vacate.' . . . [N]othing in the PLRA even hints that consent decrees must be vacated when prospective relief is terminated."), *selectively quoted in* Mot. 15. The Eighth Circuit considered the same argument VDOC makes here and easily rejected it. *Cody v. Hillard*, 304 F.3d 767, 773-74 (8th Cir. 2002).

In any event, the Court's April 7, 1997 Order addressed the "Decree of the Court . . . finally approved on July 2, 1985"—i.e., not the Agreement it approved on April 5, 1985. Mot. Ex. 1. If the Court had wanted to "withdr[a]w its approval" of the Agreement (Mot. 15), it would have re-opened the case and made factual findings under specific federal

class-action procedures. *See, e.g.*, Mot. Op. & Order at 20, *McClendon v. City of Albuquerque*, No. 6:94-cv-024 (D.N.M. Mar. 31, 2009), ECF No. 699 (making necessary factual findings to withdraw approval of Rule 23(e) settlement agreement) (attached as Exhibit A).

     **c. VDOC's Argument that the Parties' Referenced the Consent Decree.** Lastly, VDOC's reliance on the Memorandum in Support of Modified Consent Decree filed in *Brown* is unavailing. VDOC claims this motion is proof-positive that the parties "intended" their settlement agreements to be subsumed by the Court's consent decrees, "particularly considering that the parties themselves referenced those agreements as 'consent decrees.'" Mot. 15. It is hard to understand why VDOC finds the motion helpful, particularly considering that the motion merely explains that the parties had reached a proposed modified settlement and asks the Court to make its decree reflect the new modified agreement after satisfying the necessary Rule 23 procedures. Mot. Ex. 9, at 2.

     **C.    This Court Possesses Jurisdiction Over Plaintiffs' Settlement-Agreement Claim And VDOC's Eleventh Amendment Defense Is Premature.**

     VDOC argues in the alternative that, if the Agreement is enforceable, a claim for breach must be pursued in state rather than federal court. To that end, VDOC argues: (1) the PLRA "directs" that claims from private settlement agreements be heard in state court; (2) that VDOC is immune from this claim pursuant to the Eleventh Amendment; and (3) that this court lacks jurisdiction over the Settlement Agreement under the Supreme Court's opinion in *Kokkonen*. None of VDOC's arguments has any merit. Having chosen to enter into a class-action settlement agreement to resolve constitutional claims, submitted the agreement to federal jurisdiction and expressly waived its immunity over processes to enforce the agreement, promised a federal court that it would abide by the agreement, and then sought federal-court approval of its promise, VDOC cannot now seriously argue that it can avoid federal jurisdiction when it ignores those same promises.

**1.    The PLRA Does Not Require The Settlement Agreement To Be Enforced In State Court.**

Nothing in the PLRA would deprive this Court of jurisdiction over Plaintiffs' Settlement Agreement claim.  VDOC argues that § 3626(c)(2)(B) of the PLRA "provide[s] that 'private settlement agreements' . . . should be enforced 'in State court.'"  Mot. 16 n.11; *id.* at 18 (claiming that the PLRA contains an "express directive that private settlement agreements are to be enforced in state—rather than federal—court").  The PLRA says no such thing.  *See* § 3626(c)(2)(B) ("Nothing in this section *shall preclude* any party claiming that a private settlement agreement has been breached from seeking in State court any remedy available under State law." (emphasis added)).

**2.    The Court Cannot Reach VDOC's Eleventh Amendment Defense. In Any Event, VDOC Waived Whatever Immunity It Had.**

This Court cannot (and need not) reach VDOC's Eleventh Amendment defense at this stage because VDOC asserts this argument only in the alternative, "if the underlying settlement agreement[] somehow survived the termination of the Mecklenburg consent decrees in 1997." Mot. 16.  As argued above, VDOC's argument that the Settlement Agreement was conditional on the existence of a decree is essentially an affirmative defense that the Agreement is unenforceable for failure of a condition precedent.  *See supra* Part II.B.  Because VDOC's immunity argument is conditioned on an affirmative defense that it fails to establish from the four corners of the Complaint, the Court cannot reach VDOC's argument at this stage.  *See supra* Part I; *Goodman*, 494 F.3d at 464 (court should reach affirmative defenses only in "rare" circumstances and only as give rise from facts in the complaint).  (VDOC is, of course, free to pursue its defense on a Rule 56 motion, but it cannot secure dismissal of the Complaint on this basis.)  Nor does the Court need to reach VDOC's argument now; as stated by VDOC's own authorities:  "Eleventh Amendment immunity does not limit a federal court's subject-matter jurisdiction."  *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 481

-14-

(4th Cir. 2005), *cited in* Mot. 22.

Nonetheless, in an abundance of caution, Class Plaintiffs will briefly address VDOC's Eleventh Amendment argument, which lacks any merit. VDOC expressly waived any immunity it might have had when it entered into an agreement that settled claims that it violated constitutional rights of prisoners and asked a federal court—this Court—to retain jurisdiction to enforce compliance with the Agreement and any decree which may issue. CAC Ex. 3 at 16, ¶ 37.

A state may waive its Eleventh Amendment immunity by entering into a settlement agreement in which it unequivocally agrees to subject itself to federal court jurisdiction. *See Watson v. Texas*, 261 F.3d 436, 440-43 (5th Cir. 2001). And states unequivocally waive sovereign immunity when they agree or consent to jurisdiction for the purposes of implementing or enforcing a settlement agreement. *See, e.g.*, *Marisol A. v. Giuliani*, 157 F. Supp. 2d 303, 314 (S.D.N.Y. 2001) (reasoning that ordinary usage suggests that enforcing a settlement agreement might entail one party suing another which would be impossible unless the consent to jurisdiction was a waiver of Eleventh Amendment immunity); *Watson*, 261 F.3d at 442-43. In *Watson*, the Fifth Circuit held that Texas "consented to the vesting of jurisdiction 'for the purposes of implementing and enforcing' the Agreement" because "[o]rdinary usage suggests that 'enforcing' the Agreement might entail one party suing the other, which would be impossible unless Texas's consent to jurisdiction embodied a waiver of its Eleventh Amendment immunity." *Watson*, 261 F.3d at 442.

Here, VDOC agreed to "submit" the Agreement "to the Court"—i.e., *this* Court, as visible in the caption on the first page. CAC Ex. 3, ¶ 37. And VDOC consented to the Court's jurisdiction "to enforce compliance with this agreement and any decrees which may issue herein" when the Court deems it necessary. CAC Ex. 2, ¶ 37. Thus, VDOC expressly waived whatever immunity it had. The Court's termination of its *consent decree* did not reverse

VDOC's waiver in a separate settlement agreement between the parties, and VDOC does not (nor can it) offer any authority to the contrary.

VDOC, moreover, offers no authority for the premise that states enjoy Eleventh Amendment immunity from actions to enforce their own agreements settling violations of federal constitutional rights.   None of VDOC's authorities supports a state's Eleventh Amendment immunity from claims to enforce a settlement agreement entered in the course of federal litigation.  Mot. 19 (citing *Fleming v. Va. State Univ.*, 713 F. App'x 229, 230 (4th Cir. 2019) (per curiam) (affirming the district court's dismissal of plaintiff's breach of contract action relating to the university's failure to change a college grade); *Abbas v. Woleben*, N. 3:13-CV-147, 2013 U.S. Dist. LEXIS 134446, at *3-4, *14-15 (E.D. Va. Sept. 19, 2013) (dismissing a breach of contract claim relating to a medical student's dismissal from school); *Nofsinger v. Va. Commonwealth Univ.*, No. 3:12-CV-236, 2012 U.S. Dist. LEXIS 97857, at *37 (July 13, 2012) (dismissing breach of contract claims against VCU for terminating a student's continued enrollment in graduate school on Eleventh Amendment grounds); *Amaram v. Va. State Univ.*, 476 F. Supp. 2d 535, 537 (E.D. Va. 2007) (finding Eleventh Amendment immunity from breach of contract claim "aris[ing] from the provost's decision to refrain from re-appointing the Plaintiff to a position as the chairman of a department in the University's business school")).

To the contrary, courts that have considered the question have held that a state waives its immunity through conduct when it enters into a settlement agreement giving rise to a federal consent decree.   *See Williams v. Lane*, 818 F. Supp. 1212, 1213-14 (N.D. Ill. 1993) ("Department's voluntary entry into the Agreement itself waived such immunity.") (citing, *inter alia*, *New York State Ass'n for Retarded Children, Inc. v. Carey*, 596 F.2d 27, 39 (2d Cir. 1979)).  For good reason:  Our system of federalism would not tolerate states subordinating federal civil rights laws to their narrow state-immunity waivers.  *Cf. Frew v. Hawkins*, 540 U.S. 431, 439 (2004) (rejecting Texas officials' claim of Eleventh Amendment immunity from

-16-

enforcement of consent decree because "enforcing the decree vindicates an agreement that the state officials reached to comply with federal law"). To hold otherwise would encourage states to lure parties into settlement of their federal civil rights claims filed in federal court, breach the agreement, and then claim immunity from efforts to enforce the agreement.

### 3.   *Kokkonen* Is Inapposite Because VDOC Concedes That This Court Has Supplemental Jurisdiction.

The Supreme Court's decision in *Kokkonen* is inapposite here. *Kokkonen*, of which VDOC quotes only part, holds that if a court does not provide that "a breach of the agreement would be a violation of [an] order," then "enforcement of the settlement agreement is for state courts, *unless there is some independent basis for federal jurisdiction*." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 381-82 (1994) (emphasis added), *selectively quoted in* Mot. 16. VDOC's Motion, however, concedes that this Court possesses supplemental jurisdiction to enforce the Settlement Agreement. Mot. 16 ("[A]lthough this Court may possess supplemental jurisdiction over certain state-law claims, it cannot exercise supplemental jurisdiction over state-law claims asserted against a sovereign entity.").

### D.   VDOC Fails To Establish An Affirmative Statute-of-Limitations Defense To Plaintiffs' Settlement-Agreement Claim

Finally, VDOC argues that the Court should dismiss the Settlement Agreement based on its affirmative defense that the Virginia five-year statute of limitations has run because VDOC instituted the Step-Down Program in 2012. Mot. 20; *see also* Fed. R. Civ. P. 8(c)(1) (listing "statute of limitations" as an affirmative defense). Once again, VDOC's affirmative defense relies upon a fundamental mischaracterization of the law and is untethered from the allegations in the Complaint. *See Goodman*, 494 F.3d at 464.

VDOC concedes, by its conspicuous silence, that all Plaintiffs who have been transferred to Red Onion and Wallens Ridge and subject to the Step-Down Program have standing to enforce the Agreement. *See* CAC ¶¶ 223-30. Yet, VDOC argues that Virginia's

five-year statute of limitations on contract claims began to run when it instituted the Step-Down Program in 2012.  Mot. 20.  As there can be no "breach" of a duty unless there is a duty to the plaintiff in the first place, the date that VDOC instituted the Step-Down Program lacks legal significance unless, at minimum, a particular prisoner was also subject to the Step-Down Program at Wallens Ridge or Red Onion in 2012.  *See Carstensen v. Chrisland Corp.*, 442 S.E.2d 660, 666 (Va. 1994) ("In the absence of a contractual duty . . . no cause of action can lie for breach of that alleged duty."); 12A M.J. Limitation on Actions § 23 ("The time of a defendant's wrongful or negligent act, or of a plaintiff's exposure to an outstanding wrong committed by the defendant, is not relevant in and of itself.  It becomes relevant to the running of the limitations period . . . only if the wrongful act or exposure to it causes some injury to the plaintiff.").

But VDOC does not dispute that at least some of the Named Plaintiffs accrued rights in the Agreement five or fewer years before this action was filed.[3]  *See, e.g.*, CAC ¶¶ 22-35.  And VDOC re-breaches its Agreement each time it issues a new version of the Step-Down Program.  *See Am. Physical Therapy Ass'n v. Fed'n of State Bds. of Physical Therapy*, 628 S.E.2d 928, 929 (Va. 2006) (holding that a breach of contract claim was not a continuous breach where the defendant's reoccurred intermittently over a seven-year period).  In the end, VDOC fails to point to one fact from the face of the Complaint concerning the dates on which the claims of any particular plaintiff accrued.  Yet VDOC ignores the Complaint's detailed allegations showing that the statute of limitations has not expired for any Plaintiff.  Therefore, its statute-of-limitations defense must fail.

---

[3]  At most, VDOC's argument would not require dismissal, only the creation of a Settlement Agreement subclass with a time period of 2014 to the present.

**III.    VDOC's Arguments For Dismissal Of The ADA And RA Claims Are Meritless**

Plaintiffs allege that VDOC's Step-Down Program discriminates against, has a disparate impact on, and fails to accommodate, prisoners at Red Onion and Wallens Ridge who are part of the Disability Subclass, in violation of the ADA and RA. CAC ¶¶ 250-64. This is the only claim that VDOC even attempts to argue Plaintiffs fail to sufficiently allege. Inexplicably, VDOC ignores the role of its own Step-Down Program in the Complaint and instead invents a straw man argument that Plaintiffs' claims center on their mere placement in solitary confinement. VDOC's attempt to dismiss the ADA and RA claims is meritless.

**A.    The Allegations In The Complaint Adequately State A Claim That The Step-Down Program Violates The ADA And RA.**

As VDOC concedes, "[t]he complaint alleges, certainly, that prisoners with mental disabilities have remained in segregated housing in ROSP." Mot. 24-25. The Class Action Complaint alleges far more. Class Plaintiffs and their representatives allege that they, and a subclass of prisoners at both Red Onion and Wallens Ridge, suffer from mental disabilities known to substantially limit a variety of major life activities, including sleeping, concentrating, breathing, eating, and thinking—i.e., they have disabilities. *See e.g.*, CAC ¶¶ 28, 30, 34, 216. The Named Plaintiffs have also specifically alleged the disabilities from which they currently suffer. Mr. Khavkin alleges that he suffers from depression, anxiety, post-traumatic stress disorder, schizoaffective disorder and psychosis. CAC ¶ 26. Mr. Wall alleges that he suffers from post-traumatic stress disorder. CAC ¶ 28. Mr. Cavitt alleges that he suffers from depression and oppositional defiant disorder. CAC ¶ 30. Mr. Riddick alleges that he suffers from schizophrenia and major depressive disorder. CAC ¶ 34.[4] The Complaint further alleges

---

[4] *See Atkins v. Cnty. of Orange*, 251 F. Supp. 2d 1225, 1231 (S.D.N.Y. 2003) (schizophrenia; post-traumatic stress disorder); *Bard v. Rose*, 192 F.3d 462, 467 n.3 (4th Cir. 1999) (depression); *Halpern v. Wake Forest Univ. Health Scis.*, 669 F.3d 454, 462 (4th Cir. 2012) (ADHD and anxiety disorder); *Thomson v. Wakefern Food Corp.*, No. RDB-15-1240, 2015

that the Disabilities Subclass includes hundreds of other prisoners who are similarly situated to the Named Plaintiffs.  CAC ¶ 208.  VDOC does not dispute that Plaintiffs sufficiently allege disabilities that are cognizable under the ADA or RA, or that VDOC is a proper party.

Plaintiffs claim that the Step-Down Program's Categories dictating prisoners' eligibility for privileges and advancement through the Step-Down Program discriminate against, and fail to accommodate, prisoners with mental disabilities.  CAC ¶¶ 253-58.  VDOC created the Step-Down Program in response to substantial criticism that it was warehousing inmates at Red Onion and Wallens Ridge in indefinite and lengthy solitary confinement.  CAC ¶¶ 127-30.  The Step-Down Program is addressed to inmates held in a particular type of solitary confinement known as "administrative segregation," which isolates inmates whom VDOC has determined present an ongoing threat to themselves or others.  CAC ¶¶ 142, 167, 188 n.99.  VDOC claims that the Step-Down Program serves a dual purpose:  (1) to implement a (constitutionally mandated) periodic review system to gauge whether an inmate remains a threat, or can be released to the general population (*see* CAC Ex. 8, at 12 (discussing purpose and scope of DTT reviews)); and (2) to change the behavior of inmates by providing them with "privileges" as an incentive (CAC Ex. 9, at 1, 4 (asserting that the Program trains prisoners by "motivating [them] in making appropriate pro-social choices" with additional privileges).[5]  *See Incumaa v. Stirling*, 791 F.3d 517, 534 (4th Cir. 2015) (noting that the "Supreme Court has made clear that . . . administrative segregation may not be used as a pretext for indefinite confinement of an inmate," and that prison officials must provide "periodic review of the confinement of such inmates") (internal quotation marks omitted)).

U.S. Dist. LEXIS 171002, at *17-18 (D. Md. Dec. 23, 2015) (schizophrenia, psychotic disorders).

[5]  These privileges include recreation, behavioral programs, jobs, increased telephone calls, and increased library books.  CAC ¶¶ 131, 138, 156; CAC Ex. 8 at 54 (describing IM privilege levels), CAC Ex. 8 at 62 (describing SM privilege levels).

In reviews, VDOC ostensibly uses the Step-Down Categories to determine if the prisoner is making sufficient progress through the Program and whether the risk posed by an inmate is diminishing. CAC ¶ 156. If VDOC staff determine that the prisoner has satisfied the Step-Down Categories for a sufficient period of time, they may allow him to advance to the next step, which entitles him to additional privileges, and eventually to the general population. CAC ¶¶ 155-56, 167. Satisfying the Step-Down Categories, therefore, is key to whether the prisoner obtains additional privileges or leaves solitary confinement. CAC ¶ 167

Plaintiffs allege that this aspect of the policy—the Step-Down Categories—has a disparate impact upon, and fails to accommodate, inmates with mental disabilities because the one-size-fits-all Categories prevent such prisoners from proving they should enjoy additional privileges or no longer require administrative segregation. CAC ¶¶ 160-65, 201-04, 240-41. The Complaint also alleges that Individual Defendants Malone and Herrick are responsible both for identifying and addressing prisoners with mental disabilities. CAC ¶¶ 45-46. The Complaint demonstrates that VDOC knows that prisoners with mental disabilities are disproportionately represented in its long-term solitary confinement population. CAC ¶ 216. Plaintiffs also allege that VDOC charges Individual Defendants Malone and Herrick with evaluating prisoners' individual progression through the Step-Down Program and therefore VDOC has notice that its Program discriminates against, and fails to accommodate, prisoners with mental disabilities. CAC ¶¶ 45-46, 215.

If Plaintiffs may challenge any aspect of the "various minute features of prison life," then surely they may challenge the program that governs nearly every aspect of their lives in long-term solitary confinement. *See Jarboe v. Md. Dep't of Pub Safety & Corr. Servs. (DPSCS)*, No. ELH-12-572, 2013 U.S. Dist. LEXIS 34808, at *60-62 (D. Md. Mar. 13, 2013); *see also* 29 U.S.C. § 794(a) (providing that "no otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from participation in,

or be denied the benefits of, or be subjected to discrimination under any *program*" (emphasis added)); 42 U.S.C. § 12132 (providing that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the . . .*programs* . . . of a public entity, or be subjected to discrimination by any such entity" (emphasis added)).

Therefore, the Complaint sufficiently alleges disparate treatment and failure to accommodate claims under the ADA and RA.  *See Tennessee v. Lane*, 541 U.S. 509, 531 (2004) ("[F]ailure to accommodate persons with disabilities will often have the same practical effect as outright exclusion."); *Goodman*, 494 F.3d at 466 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)).

### B.    VDOC's 12(b)(6) Arguments For Dismissal Of The ADA And RA Claims Fail.

In seeking Rule 12(b)(6) dismissal of Plaintiffs' ADA and RA claims, VDOC contends that (1) Plaintiffs fail to sufficiently allege they were subject to "disparate treatment" (Mot. 23); (2) whether Plaintiffs "have remained in solitary confinement does not, in and of itself, state a plausible claim that they were denied a 'benefit' or 'service' for which they were 'otherwise qualified'" (Mot. 24); and (3) Plaintiffs do not plausibly allege that they were "placed into restricted housing *because* of their 'disability'" or were held under different conditions of confinement (Mot. 25).  VDOC also argues that any claim under a failure-to-accommodate theory fails for the same reason.  Mot. 27 ("Simply alleging that Plaintiffs are held in segregated confinement does not plausibly allege that VDOC is not 'accommodating' their unspecified mental disabilities in the context of a program or service").

VDOC's arguments, however, miss the point.  Contrary to VDOC's assertion, Plaintiffs do not claim that VDOC violated the ADA or RA by "merely" placing or holding them in solitary confinement.  Mot. 23, 27.  Instead, as explained above, Plaintiffs claim that the *Step-*

*Down Program* discriminates against and fails to accommodate prisoners with mental illness. CAC ¶¶ 160-65, 201-04, 240-41.  VDOC seems to suggest, in Orwellian fashion, that the Step-Down Program is not a "program"—or ignores its existence entirely.  VDOC only appears to acknowledge what Plaintiffs actually claim in one sentence in its Motion, in which it makes the conclusory argument that the Complaint's challenge to the Step-Down Program impugns only "the adequacy of the services being provided."  Mot. 23.  But that is the point—the one-size-fits-all Step-Down Program does not adequately accommodate or protect prisoners with mental disabilities from discrimination.   In fact, the Step-Down Program institutes discrimination against prisoners with mental disabilities.  CAC ¶¶ 160-65, 201-04, 240-41.

While the ADA and RA may not require that prisoners be housed in any particular level of confinement, by providing a program though which some prisoners may advance to the general population and improve their quality of life, VDOC has brought its long-term solitary confinement regime at Red Onion and Wallens Ridge within the ambit of those statutes' protections of individuals with mental disabilities.

**1.      VDOC Misconstrues Plaintiffs' Disparate Treatment Claim.**

VDOC's effort to dismiss Plaintiffs' disparate treatment or discrimination claim is based on the false premise that Plaintiffs challenge their mere placement in solitary confinement—rather than the Step-Down Program—or that Plaintiffs have been denied the benefit of being held in general population conditions. Mot. 24.  In this regard, VDOC hides behind its so-called "broad discretion" to classify and hold prisoners in solitary confinement for seemingly as long as it wishes, while simultaneously ignoring the existence of the Step-Down Program.  Mot. 24 (citing *Gaston v. Taylor*, 946 F.2d 340, 343 (4th Cir. 1991)).  VDOC argues that Plaintiffs have not shown that they are being discriminated against "on the basis of their alleged 'disability'" because Plaintiffs have not shown they were treated differently than any other prisoner assigned to solitary confinement. Mot. 24-25.  Essentially, VDOC disavows

the basic assertion of its Step-Down Program, which is that all prisoners can earn additional privileges and merit advancement into less restrictive conditions, including the general population, by satisfying the Step-Down Categories. *See, e.g.*, *id*. at 2; CAC ¶¶ 131, 156.  For the purposes of its Motion, VDOC instead adopts a nihilistic view of its own Program:  Whether prisoners—with and without mental disabilities—satisfy or fail to satisfy the Step-Down Categories ultimately makes no difference; their fate is entirely within the avowed "discretion" of VDOC staff.  VDOC cannot have it both ways.  If the Program attempts to serve its purported purposes and provides due process and a penological justification for solitary confinement, then the Step-Down Categories must have some role in dictating which prisoners gain privileges and progress through the Program.   These Categories, as explained above, discriminate against prisoners with mental disabilities.  If the Step-Down Categories have no role in dictating prisoners' privileges and progression to less restrictive housing, then VDOC's argument only substantiates the merits of Plaintiffs' Complaint.  Plaintiffs are unaware of any authority immunizing a prison program or policy from the application of the ADA merely because it also includes other administrative or penological features.  Certainly, VDOC has cited none.

In any event, VDOC's argument fails to appreciate that Plaintiffs allege that the Step-Down Program, not their mere placement in solitary confinement, discriminates against prisoners with mental disabilities.  None of VDOC's authorities, which mostly address pro se claims arising from the mere fact of placement in solitary confinement, is on point.  The District of Connecticut's decision in *Torrez v. Semple*, upon which VDOC relies (Mot. 23), considered a pro se claim in which the plaintiff did not allege he was discriminated against or excluded from access to any service, program, or activity.  No. 3:17-cv-1232, 2018 U.S. Dist. LEXIS 84404, at *21-22 (D. Conn. May 21, 2018).  Instead, he claimed that he should not have been placed in segregation due to his mental disability.  *Id*.  The district court rejected this claim

because the plaintiff conceded his segregation was not due to his disability and he failed to allege that he was excluded from any program, service, or activity. *Id.* at \*21-23. The rest of VDOC's authorities are inapposite for the same reason. *See Palakovic v. Wetzel*, No. 3:14-145, 2015 U.S. Dist. LEXIS 83286, at \*26-27 (W.D. Pa. June 26, 2015) (plaintiffs alleged discrimination by being kept in isolation without reference to any service, program, or activity);; *Scherer v. Pa Dep't of Corr.*, No. 3:20004-191, 2007 U.S. Dist. LEXIS 84935, at \*33-34 (W.D. Pa. Nov. 16, 2007) (same); *Atkins v. Cnty. of Orange*, 251 F. Supp. 2d 1225, 1232 (S.D.N.Y. 2003) (same); *Smith v. N.C. Dep't of Safety*, No. 1:18-cv-914, 2019 U.S. Dist. LEXIS 59000, at \*6-7 (M.D.N.C. Apr. 5, 2019) (provision of footwear as accommodation); *Mercado v. Dep't of Corr.*, No. 3:16-cv-1622, 2018 U.S. Dist. LEXIS 87681, at \*35 (D. Conn. May 25, 2018) (failure to provide treatment for bipolar disorder which resulted in conduct that led to segregation).

VDOC's authorities, instead, support Plaintiffs. To the extent a correctional facility makes programs, services, or activities available to prisoners generally, the ADA (and RA) requires that those programs be available, and applied without discrimination, to those with disabilities—even in lockdown or solitary conditions. *See Torrez,* 2018 U.S. Dist. LEXIS 84404, at \*21-22; *see also Jarboe*, 2013 U.S. Dist. LEXIS 34808, at \*61-62 (explaining that the ADA and RA apply equally in the prison as in other settings).

### 2.   VDOC Misconstrues Plaintiffs' Failure To Accommodate Claim.

VDOC contends that Plaintiffs fail to state a failure-to-accommodate claim because Plaintiffs do not allege a specific accommodation "for which they were 'otherwise qualified'" that was requested or refused. Mot. 27.[6] At the outset, VDOC's argument fails because it

---

[6] Plaintiffs do not purport to enforce any implementing regulations separate from the ADA or RA. *See* Mot. 27-29 (citing *Brown v. Dep't of Pub. Safety & Corr. Servs.*, No. RBD-16-0945, 2019 U.S. Dist. LEXIS 80218, at \*65 (D. Md. May 13, 2019) ("To the extent that Plaintiffs

imposes an impossible burden on prisoners with mental disabilities. VDOC argues that members of the Disability Subclass cannot prove that they are qualified for additional privileges or progression through the Step-Down Program, but the Step-Down Categories fail to accommodate prisoners with mental disabilities. This fallacy is fatal to VDOC's argument.

Moreover, neither the ADA nor the RA includes a requirement that the Plaintiffs allege a request for accommodation that results in denial. Plaintiffs need only allege facts sufficient to establish that VDOC was on notice of a need for accommodation. *Paulone v. City of Frederick*, 787 F. Supp. 2d 360, 403-404 (D.Md. 2011) (collecting cases). In support of its argument, VDOC offers a hodgepodge of cases none of which is from the prison context and all of which are summary judgment or post-trial decision discussing the sufficiency of the evidence and not the sufficiency of a pleading. *See Nat'l Fed. of the Blind*, 813 F.3d 494, 508 (4th Cir. 2016) (bench trial); *Reyazuddin v. Montgomery Cnty.*, 789 F.3d 407, 414 (4th Cir. 2015) (summary judgment); *Halpern v. Wake Forest Univ. Health Scis.*, 669 F.3d 454, 465 (4th Cir. 2012) (summary judgment).

As explained *supra* III.A., Plaintiffs have alleged facts sufficient to show that VDOC was on notice of the need to accommodate the Disability Subclass members' mental disabilities. After discovery, VDOC will be free to argue that the need to accommodate the Disability Subclass members' mental disabilities was not obvious, but this defense cannot be resolved on a motion to dismiss because it does not arise on the face of the Complaint.

### C.   VDOC's Statute Of Limitations Affirmative Defense To The ADA And RA Claims Fails.

VDOC argues that any claim under the ADA or RA is barred by the applicable statute of limitations, which necessarily "would have accrued when [Plaintiffs] were first incarcerated

---

seek to assert a stand-alone claim based purely on the Defendants' undisputed failure to abide by these regulations, the claim must fail.").

at the institution." Mot. 29. In the first place, this argument would not bar the entire claim on a class-wide basis, but only that portion outside the statute of limitations period, which in this case VDOC asserts is one year. Mot. 29. In the second place, as discussed *supra* Section I, an affirmative defense in a Rule 12(b)(6) motion is proper only when the facts proving the defense arise from the face of the complaint.

Plaintiffs expressly allege that VDOC has continually violated the ADA and RA since the Step-Down Program's inception in 2012 through the present day. CAC ¶¶ 243-45, 250-64. Plaintiffs, therefore, have alleged facts sufficient to toll the statute of limitations. *See id.* (continuing violation doctrine applies where the "act was a fixed and continuing practice" and was "repeated within the statute of limitations period"); *Moseke v. Miller & Smith, Inc.*, 202 F. Supp. 2d 492, 503-07 (E.D. Va. 2002) (continuing violation doctrine applies to ADA claims); *see also Scherer v. Pa. Dep't of Corr.*, 2007 U.S. Dist. 84935, at *6-7 (denying second motion for reconsideration by corrections department to dismiss claims where complaint showed application of the continuing violation doctrine).

Moreover, as VDOC recognizes, a claim pursuant to the ADA and RA accrues when the injury occurs and the limitations period on the injury begins to run when the plaintiff knows or should have known of the alleged injury. Mot. 29 (citing *A Soc'y Without a Name v. Virginia*, 655 F.3d 342, 348 (4th Cir. 2011)). VDOC does not identify any allegation in the Complaint, any legal authority, or even any explanation, for why an act of discrimination under the ADA or RA accrued the very moment a disabled prisoner was transferred to solitary confinement. Nor does VDOC offer any support for why a prisoner would know or have reason to know of such discrimination at that moment. VDOC's argument, yet again, misconstrues Plaintiffs' ADA and RA claims as arising merely from their placement in solitary confinement rather than the Step-Down Program. In sum, all of VDOC's statute of limitations arguments fail because they do not arise from the face of the Complaint.

-27-

## CONCLUSION

For the foregoing reasons, the Court should deny VDOC's Motion to Dismiss.

Dated: June 14, 2019                     Respectfully submitted:

                                         /s/ *Alyson Cox*
                                         Alyson Cox (VSB No. 90646)
                                         Daniel Levin (*pro hac*)
                                         Kristen J. McAhren (*pro hac*)
                                         Maxwell J. Kalmann (*pro hac*)
                                         Timothy L. Wilson, Jr. (*pro hac*)
                                         **WHITE & CASE** LLP
                                         701 Thirteenth Street, NW
                                         Washington, DC  20005
                                         T: (202) 626-3600
                                         F: (202) 639-9355
                                         alyson.cox@whitecase.com

                                         Owen C. Pell (*pro hac*)
                                         **WHITE & CASE** LLP
                                         1221 Avenue of the Americas
                                         New York, New York 10020
                                         (212) 819-8200

                                         Vishal Agraharkar (VSB No. 93265)
                                         Eden Heilman (VSB No. 93554)
                                         AMERICAN CIVIL LIBERTIES UNION FOUNDATION
                                         OF VIRGINIA
                                         701 E. Franklin St., Suite 1412
                                         Richmond, Virginia 23219
                                         (804) 644-8022
                                         vagraharkar@acluva.org
                                         eheilman@acluva.org

                                         *Counsel for Class Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on the 14th day of June, 2019, I electronically filed the foregoing

Class Plaintiffs' Memorandum in Opposition to Defendant VDOC's Motion to Dismiss with

the Clerk of the Court using the CM/ECF system, which will send a notification of such filing

(NEF) to the following:

> Margaret Hoehl O'Shea, AAG, VSB #66611
> Attorney for named Defendants
> Criminal Justice & Public Safety Division
> Office of the Attorney General
> 202 North 9th Street
> Richmond, Virginia 23219
> (804) 225-2206
> moshea@oag.state.va.us

*/s/ Alyson Cox*_____
Alyson Cox (VSB No. 90646)
**WHITE & CASE**LLP
701 Thirteenth Street, NW
Washington, DC  20005
T: (202) 626-3600
F: (202) 639-9355
alyson.cox@whitecase.com
