**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA**

**Richmond Division**

WILLIAM THORPE, *et al.*,

      Plaintiffs,

v.                                 CASE NO.  3:19cv00332

VIRGINIA DEPARTMENT OF
CORRECTIONS, *et al.*,

      Defendants.

## ANSWER AND AFFIRMATIVE DEFENSES

COMES NOW Defendants Clarke, Mathena, Richeson, Robinson, Ponton, Elam, Malone, Herrick, Raiford, Kiser, and Manis, and, in accordance with this Court's order of June 4, 2019 (ECF No. 20), answer the complaint as follows:

1.      Defendants admit that the named plaintiffs have been incarcerated within the Virginia Department of Corrections (VDOC).  Defendants deny that the Plaintiffs have been "isolated in solitary confinement," and deny any remaining allegations of paragraph 1 and demand strict proof thereof.

2.      Defendants deny the allegations of paragraph 2 and demand strict proof thereof.

3.      Defendants deny the allegations of paragraph 3 and demand strict proof thereof.

4.      Defendants deny the allegations of paragraph 4 and demand strict proof thereof.

5.      Defendants deny the allegations of paragraph 5 and demand strict proof thereof.

6.      Defendants deny the allegations of paragraph 6 and demand strict proof thereof.

7.      Defendants admit that a group of VDOC officials was sued in 1981 by a class of prisoners housed at Mecklenburg Correctional Center.  Defendants deny that VDOC, as an agency,

was a party to that litigation.  The allegations of that lawsuit speak for themselves.  Defendants deny the remaining allegations in paragraph 7 and demand strict proof thereof.

8.      Defendants admit that the Virginia Board of Corrections issued a report in 1984.  The statements in that report speak for themselves.  Defendants deny the remaining allegations of paragraph 8 and demand strict proof thereof.

9.      Defendants admit that the defendants named in the *Brown v. Landon* case entered into a settlement agreement in that matter.  Defendants deny that the 1983 settlement was reached "in the wake of" the 1984 Board of Corrections report, which had not yet issued.  Defendants deny the remaining allegations of paragraph 9 and demand strict proof thereof.

10.      Defendants deny that the 1983 settlement agreement contains the referenced statement.  Defendants admit that the referenced statement is contained in paragraph 1 of a subsequent settlement agreement that was reached in 1985.

11.       Defendants admit that paragraph 3 of the 1985 settlement agreement stated that the Special Management Unit had been abolished.  Any remaining allegations in paragraph 11 are denied and the Defendants demand strict proof thereof.

12.      Defendants admit that Mecklenburg Correctional Center contained general population units.  Defendants deny the remaining allegations of paragraph 12 and demand strict proof thereof.

13.      Because Mecklenburg Correctional Center was not demolished until 2013, Defendants deny the allegations of paragraph 13.

14.      Defendants deny the allegations of paragraph 14 and demand strict proof thereof.

15.     Defendants admit that VDOC introduced the Step-Down Program with the intent to reduce the number of inmates being held in restrictive housing.  Defendants deny the remaining allegations of paragraph 15 and demand strict proof thereof.

16.     Defendants deny the allegations of paragraph 16 and demand strict proof thereof.

17.     Defendants deny the allegations of paragraph 17 and demand strict proof thereof.

18.     Defendants deny the allegations of paragraph 18 and demand strict proof thereof.

19.     The allegations of paragraph 19 contain statements of intent that do not appear to require a response.  To the extent those allegations require a response, Defendants deny the allegations of paragraph 19 and demand strict proof thereof.

20.     The jurisdictional allegations in paragraph 20 do not require a response.  To the extent a response is required, Defendants admit that this Court possesses general subject matter jurisdiction over claims that arise under the Constitution or a federal statute, but deny that the Court possesses subject matter over any claim in which a defendant is entitled to assert sovereign or Eleventh Amendment immunity.

21.     Defendants deny that venue is proper in the Federal District Court for the Eastern District of Virginia.

22.     Defendants admit that the named plaintiffs have been incarcerated at Red Onion State Prison (ROSP) and/or Wallens Ridge State Prison (WRSP).  Defendants deny the remaining allegations of paragraph 22 and demand strict proof thereof.

23.     Defendants admit that none of the plaintiffs are incarcerated under a sentence of death.  Defendants deny the remaining allegations of paragraph 23 and demand strict proof thereof.

24.     Defendants admit that William Thorpe became a state-responsible offender on August 11, 1980, and that his anticipated release date is May 11, 2057.  Defendants admit that he

3

has previously been incarcerated at Mecklenburg Correctional Center, where he was involved in the 1984 hostage situation and stabbing.  William Thorpe was most recently transferred to Red Onion State Prison on January 23, 2019, and he was assigned to security level "S."  However, on May 29, 2019, William Thorpe was transferred to the State of Texas, and he is presently incarcerated in that jurisdiction.  At the time of his transfer, his assigned mental health code was MH-0.  Defendants deny the remaining allegations of paragraph 24 and demand strict proof thereof.

25.     Defendants admit that Frederick Hammer became a state-responsible offender on May 22, 2009, and that he has no anticipated release date because he is serving multiple life-without-parole sentences.  Defendants admit that he was transferred to ROSP on February 22, 2012, and has been incarcerated at ROSP since that date.  Defendants admit that Frederick Hammer's current assigned security level is security level 6, and that he is housed in the IM Closed Phase 2 housing unit.   His current assigned mental health code is MH-0.  Defendants deny the remaining allegations of paragraph 25 and demand strict proof thereof.

26.     Defendants admit that Dmitry Khavkin became a state-responsible offender on February 17, 2010, and that his anticipated release date is August 11, 2049.  Defendants admit that Dmitry Khavkin was transferred to ROSP on December 20, 2013, and he has been incarcerated at ROSP since that date.  Defendants admit that Dmitry Khavkin is presently assigned to security level 5 and is housed in a general population housing unit, where he has been located since April 25, 2019.  His current assigned mental health code is MH-0.  Defendants deny the remaining allegations of paragraph 26 and demand strict proof thereof.

27.     Defendants admit that Gerald McNabb became a state-responsible offender on May 16, 1979, and that he does not have an anticipated release date because he is serving a life sentence. Defendants admit that Gerald McNabb was transferred to ROSP on March 18, 2015, and he has

been incarcerated at ROSP since that date.  Defendants admit that Gerald McNabb is currently assigned to the Step-Down Program at privilege level IM-1.  His current assigned mental health code is MH-0.  Defendants deny the remaining allegations of paragraph 27 and demand strict proof thereof.

28.     Defendants admit that Gary Wall became a state-responsible offender on September 6, 1995, and that his anticipated release date is April 19, 2032.  Defendants admit that Gary Wall was transferred to ROSP on November 20, 2015, and that he has been incarcerated at ROSP since that date.  Defendants deny that Gary Wall is assigned to the IM pathway.  Gary Wall is currently assigned to security level 6, and he is housed in Step-Down Phase 1 as a SM-2 offender.  His assigned mental health code is MH-2.  Defendants deny the remaining allegations of paragraph 28 and demand strict proof thereof.

29.     Defendants admit that Vernon Brooks became a state-responsible offender on April 22, 2004, and that his anticipated release date is August 5, 2037.  Defendants admit that Vernon Brooks was transferred to ROSP on July 14, 2016, and that he has been incarcerated at ROSP since that date.  Defendants admit that Vernon Brooks is currently assigned to the Step-Down Program at privilege level IM-2.  His assigned mental health code is MH-0.  Defendants deny the remaining allegations of paragraph 29 and demand strict proof thereof.

30.     Defendants admit that Brian Cavitt became a state-responsible offender on November 7, 2016, and that he was transferred into Virginia custody from Massachusetts under the Interstate Compact.  Defendants admit that he was transferred to ROSP on November 7, 2016, and that he has been incarcerated at ROSP since that date.  Defendants admit that Brian Cavitt is currently assigned to security level 6, and he is housed in the IM Closed Pod at Phase 1.  His

assigned mental health code is MH-0.  Defendants deny the remaining allegations of paragraph 30 and demand strict proof thereof.

31.     Defendants admit that Derek Cornelison became a state-responsible offender on January 31, 2007, and that his anticipated release date is December 26, 2045.  Defendants admit that he was transferred to ROSP on June 7, 2016, and that he has been incarcerated at ROSP since that date.  Defendants admit that Derek Cornelison is currently assigned to security level 6, and he is housed in the Step-Down Phase 1.  His current assigned mental health code is MH-0.  Defendants deny the remaining allegations of paragraph 31 and demand strict proof thereof.

32.     Defendants admit that Christopher Cottrell became a state-responsible offender on January 8, 2003, and that his anticipated release date is July 14, 2021.  Defendants admit that he was transferred to ROSP on May 3, 2013, and that he has been incarcerated at ROSP since that date.  Defendants admit that he is currently assigned to the Step-Down Program at privilege level SM-1.  His current assigned mental health code is MH-0.  Defendants deny the remaining allegations of paragraph 32 and demand strict proof thereof.

33.     Defendants admit that Peter Mukuria became a state-responsible offender on June 4, 2007, and that his anticipated released date is September 20, 20149.  Defendants admit that he was transferred to ROSP on May 28, 2014, and that he has been incarcerated at ROSP since that date.  Defendants admit that Peter Mukuria is currently assigned to security level 6, and he is housed in the Step-Down Phase 1.  His current assigned mental health code is MH-0.  Defendants deny the remaining allegations of paragraph 32 and demand strict proof thereof.

34.     Defendants admit that Steven Riddick became a state-responsible offender on May 24, 2007, and that his anticipated release date is December 6, 2058.  Defendants admit that he was transferred to ROSP on August 2, 2011, and that he has been incarcerated at ROSP since that date.

Defendants admit that Steven Riddick is currently assigned to the Step-Down Program at privilege level SM-0. His current assigned mental health code is MH-2. Defendants deny the remaining allegations of paragraph 33 and demand strict proof thereof.

35.      Defendants admit that Kevin Snodgrass became a state-responsible offender on March 27, 2008, and that his anticipated released date is October 16, 2053. Defendants admit that he was transferred to ROSP on March 21, 2012, where he was housed until his transfer to WRSP on May 11, 2018. His current assigned security level is security level 5, and he is housed in the general population. His current assigned mental health code is MH-0. Defendants deny the remaining allegations of paragraph 35 and demand strict proof thereof.

36.      Defendants deny the allegations of paragraph 36 and demand strict proof thereof.

37.      Defendants admit that VDOC is an executive-branch state agency that is responsible for operating and maintaining correctional facilities within Virginia, that VDOC officials enact operating procedures that apply to the administration of those facilities, and that VDOC headquarters are located in Richmond, Virginia. Defendants deny the remaining allegations of paragraph 37 and demand strict proof thereof.

38.      Defendant admit that Harold Clarke is the Director of VDOC, that he is responsible for supervising VDOC and VDOC's correctional facilities, and that his place of business is located in Richmond, Virginia. Defendants deny the remaining allegations of paragraph 38 and demand strict proof thereof.

39.      Defendants admit that Harold Clarke has knowledge of the Step-Down Program and was involved in formulating this policy. Defendants deny the remaining allegations of paragraph 39 and demand strict proof thereof.

40.     Defendants admit the allegations of paragraph 40, with the exception of the statement that Defendant Mathena "knows or has reason to know that the Step-Down Program permits long-term solitary confinement without a legitimate penological purpose, and knows or has reason to know that long-term solitary confinement causes severe mental and physical harms," which is expressly denied.

41.     Defendants admit the allegations of paragraph 41, with the exception of the statement that Defendant Richeson "knows or has reason to know that the Step-Down Program permits long-term solitary confinement without a legitimate penological purpose, and knows or has reason to know that long-term solitary confinement causes severe mental and physical harms," which is expressly denied.

42.     Defendants admit the allegations of paragraph 42, with the exception of the statement that Defendant Robinson "knows or has reason to know that the Step-Down Program permits long-term solitary confinement without a legitimate penological purpose, and knows or has reason to know that long-term solitary confinement causes severe mental and physical harms," which is expressly denied.

43.     Defendants admit the allegations of paragraph 43, with the exception of the statement that Defendant Ponton "has been involved in developing, reviewing, and approving updates to the Step-Down Program," and the statement that Defendant Ponton "knows or has reason to know that the Step-Down Program permits long-term solitary confinement without a legitimate penological purpose, and knows or has reason to know that long-term solitary confinement causes severe mental and physical harms," both of which are expressly denied.

44.     Defendants admit the allegations of paragraph 44, with the exception of the statement that Defendant Elam "has been responsible for reviewing and approving  updates to the

Step-Down Program," and the statement that Defendant Elam "knows or has reason to know that the Step-Down Program permits long-term solitary confinement without a legitimate penological purpose, and knows or has reason to know that long-term solitary confinement causes severe mental and physical harms," both of which are expressly denied.

45.     Defendants admit that Denise Malone is the Chief of Mental Health Services for VDOC, and that she is generally responsible for the mental health services provided in VDOC's correctional institutions.  Defendants admit that Defendant Malone supervises those services, generally, but denies that she functions as the direct supervisor of the clinicians at the institutions. Defendants admit that Defendant Malone is responsible for reviewing grievance appeals regarding the provision of mental health services at VDOC facilities, and that her regular place of business is in Richmond, Virginia.  Defendants deny the remaining allegations of paragraph 45 and demand strict proof thereof.

46.     Defendants admit the allegations of paragraph 46, with the exception of the statement that Defendant Herrick "knows or has reason to know that the Step-Down Program permits long-term solitary confinement without a legitimate penological purpose, and knows or has reason to know that long-term solitary confinement causes severe mental and physical harms," which is denied.  To the extent paragraph 46 implies that Defendant Herrick directly oversees or clinically supervises medical or mental health providers at VDOC facilities, that implication is also denied.

47.     Defendants admit the allegations of paragraph 47, with the exception of the statement that Defendant Raiford "knows or has reason to know that the Step-Down Program permits long-term solitary confinement without a legitimate penological purpose, and knows or has

reason to know that long-term solitary confinement causes severe mental and physical harms," which is expressly denied.

48.     Defendants deny that Jeffrey Kiser "was involved in developing and updating the Step-Down Program," and that he "knows or has reason to know that the Step-Down Program permits long-term solitary confinement without a legitimate penological purpose, and knows or has reason to know that long-term solitary confinement causes severe mental and physical harms."  To the extent that the allegations of paragraph 48 imply that Defendant Kiser clinically supervises medical or mental health providers, that implication is also denied.  Defendants admit the remaining allegations of paragraph 48.

49.     Defendants deny that Carl Manis "was involved in developing and updating the Step-Down Program," and that he "knows or has reason to know that the Step-Down Program permits long-term solitary confinement without a legitimate penological purpose, and knows or has reason to know that long-term solitary confinement causes severe mental and physical harms."  To the extent that the allegations of paragraph 49 imply that Defendant Manis clinically supervises medical or mental health providers, that implication is also denied.  Defendants admit the remaining allegations of paragraph 49.

50.     Defendants admit that Mecklenburg Correctional Center (MCC) opened in 1977, and that it was designed as a maximum security prison.  Defendants deny the remaining allegations of paragraph 50.

51.     Defendants admit that inmates housed in certain locations within MCC lived in single cells and had limited showers, out of cell recreation, and freedom of movement.  Defendants deny the remaining allegations of paragraph 51.

52.     To the extent that the statements in paragraph 52 directly quote the cited sources, Defendants admit that the cited sources contain the referenced statements.   Defendants deny the remaining allegations of paragraph 52.

53.     Defendants deny the allegations of paragraph 53 and demand strict proof thereof.

54.     To the extent that the statements in paragraph 54 directly quote the cited sources, Defendants admit that the cited sources contain the referenced statements.   Defendants deny the remaining allegations of paragraph 54.

55.     Defendants admit that some inmates at MCC were housed in the Special Management Unit (SMU) or in the Phase Program.  Defendants deny any remaining allegations of paragraph 55.

56.     Defendants admit that disruptive inmates were assigned to the SMU.  Defendants deny the remaining allegations of paragraph 56.

57.     Defendants admit that some other inmates at MCC were housed in the Phase Program.  Defendants deny the remaining allegations of paragraph 57.

58.     Defendants lack sufficient information to admit or deny whether VDOC consulted with psychologists in the formulation of the Phase Program, and, therefore, that allegation is denied. The remaining allegations of paragraph 58 are also denied.

59.     To the extent that the statements in paragraph 59 directly quote the cited sources, Defendants admit that the cited sources contain the referenced statements.   Defendants deny the remaining allegations of paragraph 59.

60.     Admitted.

61.     Admitted.

62.     Defendants admit that the Phase Program imposed restrictions.  Because the complaint does not specify what is meant by "considerable," the remaining allegations of paragraph 62 are denied.

63.     Defendants admit that the Mecklenburg Study Committee made certain findings, and submit that the report from that committee speaks for itself.  Any remaining allegations in paragraph 63 are denied.

64.     Defendants lack sufficient information to admit or deny the allegations of paragraph 64, and, therefore, they are denied.

65.     Denied.

66.     Denied.

67.     To the extent that the statements in paragraph 67 directly quote the cited sources, Defendants admit that the cited sources contain the referenced statements.   Defendants deny the remaining allegations of paragraph 67.

68.     To the extent that the statements in paragraph 68 directly quote the cited sources, Defendants admit that the cited sources contain the referenced statements.   Defendants deny the remaining allegations of paragraph 68.

69.     Denied.

70.     To the extent that the statements in paragraph 70 directly quote the cited sources, Defendants admit that the cited sources contain the referenced statements.   Defendants deny the remaining allegations of paragraph 70.

71.     To the extent that the statements in paragraph 71 directly quote the cited sources, Defendants admit that the cited sources contain the referenced statements.   Defendants deny the remaining allegations of paragraph 71.

72.     Defendants admit that inmates at MCC filed a lawsuit against VDOC officials, and that the lawsuit contains the referenced allegations.  To the extent paragraph 72 implies the truth of those allegations, that implication is denied.

73.     Defendants admit that inmates at MCC filed a lawsuit against VDOC officials, and that the lawsuit contains the referenced allegations.  To the extent paragraph 73 implies the truth of those allegations, that implication is denied.

74.     Defendants admit that a settlement agreement was reached in the 1981 Mecklenburg litigation.  Defendants deny that the settlement agreement—which initially occurred in 1983—was reached "in the wake of" 1984 report.  Defendants submit that the terms of the settlement agreement speak for themselves.  Any remaining allegations in paragraph 74 are denied.

75.     Defendants deny the allegations of paragraph 75 and demand strict proof thereof.

76.     Defendants deny the allegations of paragraph 76 and demand strict proof thereof.

77.     Defendants admit that a settlement agreement was signed on April 5, 1985, and contemporaneously submitted to this Court, on the same date, to be incorporated into a consent decree.

78.     Defendants lack sufficient information to admit or deny the allegations of paragraph 78, and, therefore, they are denied.

79.     To the extent that the statements in paragraph 79 directly quote the cited sources, Defendants admit that the cited sources contain the referenced statements.   Defendants deny any remaining allegations of paragraph 79.

80.     To the extent that the statements in paragraph 80 directly quote the cited sources, Defendants admit that the cited sources contain the referenced statements.   Defendants deny any remaining allegations of paragraph 80.

81.     To the extent that the statements in paragraph 81 directly quote the cited sources, Defendants admit that the cited sources contain the referenced statements.   Defendants deny the remaining allegations of paragraph 81.

82.     Denied.

83.     Defendants deny the allegations of paragraph 83 and demand strict proof thereof.

84.     Defendants deny the allegations of paragraph 84 and demand strict proof thereof. Defendants note that the consent decrees were terminated in 1997, prior to the opening of ROSP and WRSP.

85.     Defendants admit that this Court vacated the consent decrees through final order issued on April 7, 1997.  The remaining allegations of paragraph 85 are denied.

86.     Denied.

87.     Defendants admit that WRSP and ROSP were opened in 1998 and 1999, and that ROSP was built on the site of an abandoned strip-mine.  Defendants admit that Governor Gilmore made the referenced statements.  Any remaining allegations in paragraph 87 are denied.

88.     Defendants admit that ROSP and WRSP were built with approximately 1200 beds apiece.  The remaining allegations of paragraph 88 are denied.

89.     To the extent that the statements in paragraph 89 directly quote the cited sources, Defendants admit that the cited sources contain the referenced statements.   Defendants deny the remaining allegations of paragraph 89.

90.     Defendants deny the allegations of paragraph 90 and demand strict proof thereof.

91.     Defendants deny the allegations of paragraph 91 and demand strict proof thereof.

92.     Defendants deny the allegations of paragraph 92 and demand strict proof thereof.

93.     Defendants admit that inmates from other jurisdictions are housed at ROSP and WRSP.  The remaining allegations of paragraph 93 are denied.

94.     Defendants admit that the referenced court cases contain the quoted statement.  Any remaining allegations in paragraph 94 are denied.

95.     Defendants deny the allegations of paragraph 95 and demand strict proof thereof.

96.     Defendants deny the allegations of paragraph 96 and demand strict proof thereof.

97.     Defendants admit that the cells at ROSP and WRSP are solid but contain an inset-window, and that they have a built-in tray slot.  Defendants admit that the cells contain a desk, a toilet, and a sink, but deny that these are the "only" contents of the cell (particularly considering that the cells contain a bed and various personal items, at the very least).  Defendants admit that the cells contain exterior windows, but deny that the windows do not permit a view of the outside.  Any remaining allegations of paragraph 97 are denied.

98.     Defendants admit that inmates who are housed at security level "S" receive their meals in their cell, and that inmates in the general population typically eat in a communal dining space.  Any remaining allegations of paragraph 98 are denied.

99.     Defendants deny the allegations of paragraph 99 and demand strict proof thereof.

100.     Defendants deny the allegations of paragraph 100 and demand strict proof thereof.

101.     Defendants deny the allegations of paragraph 101 and demand strict proof thereof.

102.     Defendants admit that inmates at ROSP and WRSP communicate through the ventilation system.  Defendants deny the remaining allegations of paragraph 102 and demand strict proof thereof.

103.     Defendants admit that inmates housed at security level "S" interact with prison staff who are conducting rounds through the institution, and that these include checks by qualified mental

health professionals (QMHPs).  Defendants deny the remaining allegations of paragraph 103 and demand strict proof thereof.

104.     Defendants admit that, under VDOC policy, inmates who express suicidal ideations may be placed on certain precautions.  Defendants deny the remaining allegations of paragraph 104 and demand strict proof thereof.

105.     Defendants admit that inmates housed at security level "S" are permitted one hour of non-contact visitation per week, and that this visitation occurs in a specific booth where the visitor and the inmate are separated by plexiglass.  Defendants deny any remaining allegations of paragraph 105.

106.     Defendants admit that there is an established schedule for legal visits at ROSP and WRSP.  Defendants deny the remaining allegations of paragraph 106 and demand strict proof thereof.

107.     Defendants deny the allegations of paragraph 107 and demand strict proof thereof.

108.     Defendants admit that inmates who are housed at security level "S" typically undergo strip searches before they are brought out of their cells.  Defendants deny any remaining allegations of paragraph 108.

109.     Defendants note that the "Class Period" does not appear to be defined.  Defendants deny the allegations of paragraph 109 and demand strict proof thereof.

110.     Defendants admit that inmates housed at security level "S" are allowed outdoor recreation in enclosures, and that they are restrained prior to being escorted to those enclosures. Defendants deny the remaining allegations of paragraph 110 and demand strict proof thereof.

111.     Defendants deny the allegations of paragraph 111 and demand strict proof thereof.

112.     Defendants deny the allegations of paragraph 112 and demand strict proof thereof.

113.     Defendants admit that inmates in the general population typically have different recreation schedules and facilities.  Any remaining allegations in paragraph 113 are denied.

114.     Defendants deny the allegations of paragraph 114 and demand strict proof thereof.

115.     Defendants admit that inmates in the general population are provided with access to certain work programs and activities.  Any remaining allegations in paragraph 115 are denied.

116.     Defendants deny the allegations of paragraph 116 and demand strict proof thereof.

117.     Defendants deny the allegations of paragraph 117 and demand strict proof thereof. Defendants note that VDOC is not responsible deciding whether to release inmates who are parole eligible; that discretion is statutorily-vested in the Virginia Parole Board.

118.     Because parole-eligible inmates in the general population are not treated any differently by VDOC that parole-eligible inmates housed at security level "S," Defendants deny the allegations of paragraph 118.

119.     Defendants deny the allegations of paragraph 119 and demand strict proof thereof.

120.     Defendants deny the allegations of paragraph 120 and demand strict proof thereof.

121.     Defendants deny the allegations of paragraph 121 and demand strict proof thereof.

122.     To the extent that the statements in paragraph 122 directly quote the cited sources, Defendants admit that the cited sources contain the referenced statements.   Defendants deny the remaining allegations of paragraph 122.

123.     Defendants admit that DOJ initiated an investigation into ROSP and WRSP shortly after those facilities opened.  Defendants deny the remaining allegations of paragraph 123.

124.     Defendants lack sufficient information to admit or deny the allegations of paragraph 124, and, therefore, those allegations are denied.

125.     Defendants admit that a Progressive Housing Phase Program was implemented at ROSP.  Any remaining allegations in paragraph 125 are denied.

126.     Defendants deny the allegations of paragraph 126 and demand strict proof thereof.

127.     Defendants admit that the named legislators visited ROSP in 2011, and that they made the referenced statements.  Defendants deny the remaining allegations of paragraph 127 and demand strict proof thereof.

128.     To the extent that the statements in paragraph 128 directly quote the cited sources, Defendants admit that the cited sources contain the referenced statements.   Defendants deny the remaining allegations of paragraph 128.

129.     Defendants admit that DOJ appeared to consider whether to investigate conditions of confinement at ROSP.  Any remaining allegations in paragraph 129 are denied.

130.     Defendants admit that VDOC enacted the Segregation Reduction Step-Down Program, but deny that it started in 2012.  Defendants deny the remaining allegations in paragraph 130.

131.     Defendants deny the allegations of paragraph 131 and demand strict proof thereof.

132.     Defendants deny the allegations of paragraph 132 and demand strict proof thereof.

133.     Defendants admit that the Step-Down Program is still being used at ROSP and WRSP.  Defendants deny the remaining allegations of paragraph 133 and demand strict proof thereof.

134.     Defendants deny that inmates at ROSP and WRSP are housed in "solitary confinement."  Defendants deny that a level "S" inmate can only return to the general population if he completes the Step-Down Program.  Defendants admit the remaining allegations of paragraph 134.

18

135.   Admitted.

136.   Defendants deny that the DTT "routinely sits as a committee of one decision maker."  The remaining allegations of paragraph 136 are admitted.

137.   Defendants admit that inmates who are transferred to ROSP as security level "S" inmates should receive orientation on the Step-Down Program.  Defendants deny the remaining allegations of paragraph 137 and demand strict proof thereof.

138.   Defendants admit that the depicted chart appears in VDOC's materials regarding the Step-Down Program.  To the extent that paragraph 138 implies that it accurately captures all the nuances of the Program, that implication is denied.  Any remaining implications in paragraph 138 are also denied.

139.   Defendants deny the allegations of paragraph 139 and demand strict proof thereof.

140.   Defendants admit that offenders assigned to security level "S" are considered for placement in the SM pathway if they meet the referenced criteria.

141.   Defendants admit that offenders assigned to security level "S" are considered for placement in the IM pathway if they meet the referenced criteria.

142.   Defendants admit that the DTT must exercise professional judgment when determining whether an inmate should be classified in the IM pathway, the SM pathway, or whether he should be switched to a different pathway.  Defendants deny the remaining allegations of paragraph 142 and demand strict proof thereof.

143.   Defendants deny the allegations of paragraph 143 and demand strict proof thereof.

144.   Defendants deny the allegations of paragraph 144 and demand strict proof thereof.

145.   Defendants deny the allegations of paragraph 145 and demand strict proof thereof.

146.   Defendants deny the allegations of paragraph 146 and demand strict proof thereof.

147. Defendants deny the allegations of paragraph 147 and demand strict proof thereof.

148. Defendants deny the allegations of paragraph 148 and demand strict proof thereof.

149. Defendants deny the allegations of paragraph 149 and demand strict proof thereof.

150. Defendants admit that the SIP is an option for inmates on the SM pathway. However, because an IM inmate can be reclassified as an SM inmate, Defendants deny that this housing unit is not "available" to inmate who are on the IM pathway.  Any remaining allegations in paragraph 150 are denied.

151. Defendants deny that an inmate classified on the IM pathway cannot progress to the Step-Down Phases.  Defendants admit the remaining allegations of paragraph 151.

152. Admitted.

153. Defendants deny the allegations of paragraph 153 and demand strict proof thereof.

154. Defendants deny the allegations of paragraph 154 and demand strict proof thereof.

155. Defendants deny the allegations of paragraph 155 and demand strict proof thereof.

156. Defendants admit that inmates participating in the Step-Down Program are provided with The Challenge Series and directed to remain infract-free and otherwise exhibit appropriate behavior.  The remaining allegations of paragraph 156 are denied.

157. Defendants admit that inmates participating in the Step-Down Program are rated on a weekly basis.  The remaining allegations of paragraph 157 are denied.

158. Defendants admit that inmates are not provided with copies of their status rating charts, which are informal documents not subject to any document retention policies.  The remaining allegations of paragraph 158  are denied.

159. Defendants deny the allegations of paragraph 159 and demand strict proof thereof.

160. Defendants deny the allegations of paragraph 160 and demand strict proof thereof.

161.    Defendants deny the allegations of paragraph 161 and demand strict proof thereof.

162.    Defendants deny the allegations of paragraph 162 and demand strict proof thereof.

163.    Defendants deny the allegations of paragraph 163 and demand strict proof thereof.

164.    Defendants deny the allegations of paragraph 164 and demand strict proof thereof.

165.    Defendants deny the allegations of paragraph 165 and demand strict proof thereof.

166.    Defendants deny the allegations of paragraph 166 and demand strict proof thereof.

167.    Defendants deny the allegations of paragraph 167 and demand strict proof thereof.

168.    Defendants deny the allegations of paragraph 168 and demand strict proof thereof.

169.    Defendants deny the allegations of paragraph 169 and demand strict proof thereof.

170.    Defendants deny the allegations of paragraph 170 and demand strict proof thereof.

171.    Defendants deny the allegations of paragraph 171 and demand strict proof thereof.

172.    Defendants deny that Unit Managers neglect to document reasons for alterations to an inmate's pathway or internal status.  Defendants deny that inmates are never advanced unless they have spent a minimum period of time at a given level.  Defendants admit the remaining allegations of paragraph 172.

173.    Defendants admit that inmates typically are not provided with written results from their internal status reviews.  The remaining allegations of paragraph 173 are denied.

174.    Defendants admit that there is not available appeal mechanism for internal status decisions.  The remaining allegations of paragraph 174 are denied.

175.    Defendants admit that some 90-day ICA hearings are conducted at the door to an inmate's cell, and that typically inmates are not allowed to present evidence or witnesses.  Any remaining allegations in paragraph 175 are denied.

176.     Defendants admit that ICA hearings include a determination of whether the inmate is appropriately assigned to security level "S", security level "6," security level "5," and so on. Defendants admit that a formal hearing, requiring advance notice, is required when an inmate's security level is being considered for an increase to a higher security level.  A formal due process hearing is not necessarily held when an inmate is being considered for a reduction in security level. Any remaining allegations in paragraph 176 are denied.

177.     Defendants deny the allegations of paragraph 177 and demand strict proof thereof.

178.     Defendants deny the allegations of paragraph 178 and demand strict proof thereof.

179.     Defendants deny the allegations of paragraph 179 and demand strict proof thereof.

180.     Defendants deny the allegations of paragraph 180 and demand strict proof thereof.

181.     Defendants deny the allegations of paragraph 181 and demand strict proof thereof.

182.     Defendants admit that the ERT can—and has—reassign(ed) inmates from the IM to the SM pathway so that they can complete the transition into general population.  Any remaining allegations in paragraph 182 are denied.

183.     Defendants deny the allegations of paragraph 183 and demand strict proof thereof.

184.     Defendants admit that the listed individuals are designated as members of the ERT. Any remaining allegations in paragraph 184 are denied.

185.     Defendants deny the allegations of paragraph 185 and demand strict proof thereof.

186.     Defendants deny the allegations of paragraph 186 and demand strict proof thereof.

187.     Admitted.

188.     Admitted.

189.     Defendants deny the allegations of paragraph 189 and demand strict proof thereof.

190.     Admitted.

191.     Admitted.

192.     To the extent that the statements in paragraph 192 directly quote the cited sources, Defendants admit that the cited sources contain the referenced statements.   Defendants deny the remaining allegations of paragraph 192.

193.     Defendants admit that that the COMPAS Risk Assessment is used by VDOC institutional personnel.  Defendants deny the remaining allegations of paragraph 193.

194.     Defendants deny the allegations of paragraph 194 and demand strict proof thereof.

195.     Defendants deny the allegations of paragraph 195 and demand strict proof thereof.

196.     Defendants deny the allegations of paragraph 196 and demand strict proof thereof.

197.     Defendants deny the allegations of paragraph 197 and demand strict proof thereof.

198.     Defendants deny the allegations of paragraph 198 and demand strict proof thereof.

199.     Defendants deny the allegations of paragraph 199 and demand strict proof thereof.

200.     Defendants deny the allegations of paragraph 200 and demand strict proof thereof.

201.     Defendants deny the allegations of paragraph 201 and demand strict proof thereof.

202.     Defendants deny the allegations of paragraph 202 and demand strict proof thereof.

203.     Defendants deny the allegations of paragraph 203 and demand strict proof thereof.

204.     Defendants deny the allegations of paragraph 204 and demand strict proof thereof.

205.     Defendants admit that each named plaintiff has been incarcerated at Red Onion State Prison.  The remaining allegations of paragraph 205 are denied.

206.     Defendants deny the allegations of paragraph 206 and demand strict proof thereof.

207.     The allegations of paragraph 207 are legal assertions, to which no response is required.

208.     Defendants deny the allegations of paragraph 208 and demand strict proof thereof.

209.     The allegations of paragraph 209 state legal conclusions to which no response is required.  To the extent a response is required, those allegations are denied.

210.     The allegations of paragraph 210 state legal conclusions to which no response is required.  To the extent a response is required, those allegations are denied.

211.     The allegations of paragraph 211 state legal conclusions to which no response is required.  To the extent a response is required, those allegations are denied.

212.     Defendants deny the allegations of paragraph 212 and demand strict proof thereof.

213.     The allegations of paragraph 213 state legal conclusions to which no response is required.  To the extent a response is required, those allegations are denied.

214.     The allegations of paragraph 214 state legal conclusions to which no response is required.  To the extent a response is required, those allegations are denied.

215.     Defendants deny the allegations of paragraph 215 and demand strict proof thereof.

216.      The allegations of paragraph 216 state legal conclusions to which no response is required.  To the extent a response is required, those allegations are denied.

217.     The allegations of paragraph 217 state legal conclusions to which no response is required.  To the extent a response is required, those allegations are denied.

218.     The allegations of paragraph 218 state legal conclusions to which no response is required.  To the extent a response is required, those allegations are denied.

219.     The allegations of paragraph 219 state legal conclusions to which no response is required.  To the extent a response is required, those allegations are denied.

220.     Defendants deny the allegations of paragraph 220 and demand strict proof thereof.

221.     The allegations of paragraph 221 state legal conclusions to which no response is required.  To the extent a response is required, those allegations are denied.

222.     Defendants adopt and incorporate their responses to the preceding paragraphs as if fully set forth herein.

223.     Defendants deny the allegations of paragraph 223 and demand strict proof thereof.

224.     Defendants deny the allegations of paragraph 224 and demand strict proof thereof.

225.     Defendants deny the allegations of paragraph 225 and demand strict proof thereof.

226.     Defendants deny the allegations of paragraph 226 and demand strict proof thereof.

227.     Defendants deny the allegations of paragraph 227 and demand strict proof thereof.

228.     Defendants deny the allegations of paragraph 228 and demand strict proof thereof.

229.     Defendants deny the allegations of paragraph 229 and demand strict proof thereof.

230.     The allegations of paragraph 230 state legal conclusions to which no response is required.  To the extent a response is required, those allegations are denied.

231.     Defendants adopt and incorporate their responses to the preceding paragraphs as if fully set forth herein.

232.     The allegations of paragraph 232 state legal conclusions to which no response is required.  To the extent a response is required, those allegations are denied.

233.     Defendants deny the allegations of paragraph 233 and demand strict proof thereof.

234.     The allegations of paragraph 234 state legal conclusions to which no response is required.  To the extent a response is required, those allegations are denied.

235.     The allegations of paragraph 235 state legal conclusions to which no response is required.  To the extent a response is required, those allegations are denied.

236.     Defendants adopt and incorporate their responses to the preceding paragraphs as if fully set forth herein.

237.     Defendants deny the allegations of paragraph 237 and demand strict proof thereof.

238.     Defendants deny the allegations of paragraph 238 and demand strict proof thereof.

239.    Defendants deny the allegations of paragraph 239 and demand strict proof thereof.

240.    Defendants deny the allegations of paragraph 240 and demand strict proof thereof.

241.    Defendants deny the allegations of paragraph 241 and demand strict proof thereof.

242.    Defendants deny the allegations of paragraph 242 and demand strict proof thereof.

243.    Defendants deny the allegations of paragraph 243 and demand strict proof thereof.

244.    Defendants deny the allegations of paragraph 244 and demand strict proof thereof.

245.    Defendants deny the allegations of paragraph 245 and demand strict proof thereof.

246.    Defendants adopt and incorporate their responses to the preceding paragraphs as if fully set forth herein.

247.    The allegations of paragraph 247 state legal conclusions to which no response is required.  To the extent a response is required, those allegations are denied.

248.    Defendants deny the allegations of paragraph 248 and demand strict proof thereof.

249.    Defendants deny the allegations of paragraph 249 and demand strict proof thereof.

250.    Defendants adopt and incorporate their responses to the preceding paragraphs as if fully set forth herein.

251.    Defendants deny the allegations of paragraph 251 and demand strict proof thereof.

252.    Defendants admit that VDOC is a "public entity" within the meaning of the ADA.

253.    Defendants deny the allegations of paragraph 253 and demand strict proof thereof.

254.    Defendants deny the allegations of paragraph 254 and demand strict proof thereof.

255.    Defendants deny the allegations of paragraph 255 and demand strict proof thereof.

256.    Defendants deny the allegations of paragraph 256 and demand strict proof thereof.

257.    Defendants deny the allegations of paragraph 257 and demand strict proof thereof.

258.    Defendants deny the allegations of paragraph 258 and demand strict proof thereof.

259.    Defendants adopt and incorporate their responses to the preceding paragraphs as if fully set forth herein.

260.    Defendants deny the allegations of paragraph 260 and demand strict proof thereof.

261.    Defendants admit that VDOC receives federal funding, within the meaning of the Rehabilitation Act.

262.    Defendants deny the allegations of paragraph 262 and demand strict proof thereof.

263.    Defendants deny the allegations of paragraph 263 and demand strict proof thereof.

264.    Defendants deny the allegations of paragraph 264 and demand strict proof thereof.

## PRAYER FOR RELIEF

In response to the Prayer for Relief, Defendants state as follows:

265.    Defendants deny that they "breached" the vacated settlement agreement or that Plaintiffs are entitled to the declaratory relief sought;

266.    Defendants deny that they have violated Plaintiffs' procedural due process rights or that Plaintiffs are entitled to the declaratory relief sought;

267.    Defendants deny that they have violated Plaintiffs' equal protection rights or that Plaintiffs are entitled to the declaratory relief sought;

268.    Defendants deny that they have violated Plaintiffs' Eighth Amendment rights or that Plaintiffs are entitled to the declaratory relief sought;

269.    Defendants deny that they have violated the ADA or the RA or that Plaintiffs are entitled to the declaratory relief sought;

270.    Defendants deny that the Plaintiffs are entitled to specific performance;

271.    Defendants deny that Plaintiffs are entitled to the equitable relief requested;

272.    Defendants deny that Plaintiffs are entitled to the injunctive relief sought;

273.    Defendants deny that appointment of a special master would be warranted;

274.     Defendants deny that Plaintiffs are entitled to compensatory damages;

275.     Defendants deny that Plaintiffs are entitled to nominal damages;

276.     Defendants deny that Plaintiffs are entitled to costs and fees;

277.     Defendants deny that Plaintiffs are entitled to any relief whatsoever.

## AFFIRMATIVE DEFENSES

Defendants state the following affirmative defenses to the Complaint.  Defendants will rely on any and all other properly available defenses to the Complaint which may arise from Plaintiffs' prosecution of this action and reserve their right to amend these defenses if at any time they should be so advised.

### FIRST DEFENSE

The Complaint fails to state a claim upon which relief can be granted.

### SECOND DEFENSE

Defendants deny that venue is proper in the Federal District Court for the Eastern District of Virginia.

### THIRD DEFENSE

Defendants deny that the claims in the Complaint are cognizable under the Eighth Amendment, Fourteenth Amendment, the Americans with Disabilities Act, the Rehabilitation Act, or any section or clause of the United States Constitution or any other federal law or regulation.

### FOURTH DEFENSE

Defendants deny that jurisdiction on the Complaint is conferred upon the Court by 42 U.S.C. § 1983, the previously cited amendments to the United States Constitution, or any other federal law or regulation.  Further, Defendants specifically deny that the Court has jurisdiction over any claim which might be construed to state a claim under state law.

## FIFTH DEFENSE

Defendants deny that Plaintiffs have suffered any injury or damage as a result of action or omission upon the part of any of these Defendants.

## SIXTH DEFENSE

Defendants allege and aver that, to the extent that the Plaintiffs have suffered any injuries or damages, such injuries or damages were caused by others not under the control of these Defendants, and for whose conduct they are in no way responsible.

## SEVENTH DEFENSE

Defendants deny that the Plaintiffs have suffered the injuries and damages alleged and call for strict proof thereof.

## EIGHTH DEFENSE

Defendants are immune based upon the Eleventh Amendment and upon the discharge of their official duties.

## NINTH DEFENSE

Defendants deny that they are indebted to or liable to Plaintiffs in any sum whatsoever.

## TENTH DEFENSE

Defendants are entitled to good faith, Eleventh Amendment, sovereign, and/or qualified immunity.

## ELEVENTH DEFENSE

To the extent that Plaintiffs have failed to allege any direct involvement on the part of any of the Defendants in any of the acts or omissions complained of, such claims must fail because *respondeat superior* is not available in an action under 42 U.S.C. § 1983.

### TWELFTH DEFENSE

To the extent that this claim alleges negligence on the part of the Defendants, the claim is barred in this Court by the Eleventh Amendment.

### THIRTEENTH DEFENSE

To the extent Plaintiffs have not exhausted their administrative remedies, this action is barred, in whole or in part, under 42 U.S.C. § 1997e(a).

### FOURTEENTH DEFENSE

To the extent that Plaintiffs can make no showing of any physical injury accompanying or preceding any alleged emotional or mental injuries, their recovery of monetary damages for any emotional injuries is barred under 42 U.S.C. § 1997e(e).

### FIFTEENTH DEFENSE

This matter is barred, in whole or in part, by the two-year personal injury statute of limitations borrowed from Virginia Code § 8.01-243(A), which applies to claims under 42 U.S.C. § 1983.

### SIXTEENTH DEFENSE

This matter is barred, in whole or in part, by the one-year statute of limitations borrowed from Virginia Code § 51.5-46(B), which applies to the Plaintiffs' claims under the Americans with Disabilities Act and the Rehabilitation Act.

### SEVENTEETH DEFENSE

Defendants are entitled to sovereign and Eleventh Amendment immunity with respect to the Plaintiffs' claims under Title II of the Americans with Disabilities Act.

### EIGHTEENTH DEFENSE

Defendants are immune, in their official capacities, from any request for punitive or compensatory damages.

### NINETEENTH DEFENSE

Defendants are immune, in their official capacities, from any request for retrospective injunctive or declaratory relief.

### TWENTIETH DEFENSE

The Court's authority to award injunctive relief is constrained by the express terms of the Prisoner Litigation Reform Act ("PLRA"), 18 U.S.C. § 3626(a)(1)(A).

### TWENTY-FIRST DEFENSE

The Plaintiffs' claims are barred, in whole or in part, under the doctrine of res judicata.

### TWENTY-SECOND DEFENSE

To the extent Plaintiffs seek to bring a breach of contract action against the Defendants in federal court, Defendants are entitled to Eleventh Amendment immunity.

### TWENTY-THIRD DEFENSE

To the extent Plaintiffs seek to enforce a private settlement agreement in federal court, the action is precluded under 18 U.S.C. § 3636(c)(2)(B).

### TWENTY-FOURTH DEFENSE

To the extent Plaintiffs seek to enforce the ADA implementing federal regulations, they lack standing to file suit.

### TWENTY-FIFTH DEFENSE

Defendants specifically deny that this action meets the numerosity, commonality, typicality, or adequacy requirements for certifying a class action pursuant to Rule 23 of the *Federal Rules of Civil Procedure*.

TWENTY-SIXTH DEFENSE

Plaintiffs' request for equitable relief is barred under the doctrine of laches.

TWENTY-SEVENTH DEFENSE

Plaintiffs' request for specific enforcement is barred under the reserved powers doctrine, the

unmistakability doctrine, and/or the sovereign acts doctrine.


Respectfully submitted,

HAROLD CLARKE, RANDALL C. MATHENA, H.
SCOTT RICHESON, A. DAVID ROBINSON,
HENRY J. PONTON, MARCUS ELAM, DENISE
MALONE, STEVE HERRICK, TORI RAIFORD,
JEFFREY KISER, and CARL MANIS, Defendants.

By:     _____/s/_____
Margaret Hoehl O'Shea, AAG, VSB #66611
Attorney for named Defendants
Office of the Attorney General
Criminal Justice & Public Safety Division
202 North 9th Street
Richmond, Virginia 23219
(804) 225-2206
(804) 786-4239 (Fax)
Email:  moshea@oag.state.va.us

## CERTIFICATE OF SERVICE

I hereby certify that on the 14th day of June, 2019, I electronically filed the foregoing

Answer with the Clerk of the Court using the CM/ECF system, which will send a notification of such

filing (NEF) to the following:

Alyson Michelle Cox (VSB #90646)
Daniel Bernard Levin (pro hac vice)
Kristen Jentsch McAhren (pro hac vice)
Maxwell Kalmann (pro hac vice)
Owen Pell (pro hac vice)
Timothy Lawrence Wilson , Jr. (pro hac vice)
White & Case LLP
701 13th Street NW
Washington, DC  20005-3807
alyson.cox@whitecase.com

Vishal Agraharkar (VSB #93265)
Eden B. Heilman (VSB #93554)
American Civil Liberties Union of Va.
701 E. Franklin Street, Ste. 1412
Richmond, VA  23219
(804) 532-2151
vagraharkar@acluva.org
eheilman@acluva.org

*Counsel for Plaintiffs*

And I hereby certify that I have mailed the document by United States Postal Service to the following

non-filing user:  N/A

_____ /s/ _____
Margaret Hoehl O'Shea, AAG, VSB #66611
Attorney for named Defendants
Criminal Justice & Public Safety Division
Office of the Attorney General
202 North 9th Street
Richmond, Virginia 23219
(804) 225-2206
(804) 786-4239 (Fax)
Email:  moshea@oag.state.va.us