IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| WILLIAM THORPE, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> VIRGINIA DEPARTMENT OF CORRECTIONS, *et al.*, <br><br> *Defendants*. | CASE NO. 3:19-cv-332-REP |

**JOINT RULE 26(f) REPORT**

Pursuant to Rule 26(f) of the Federal Rules of Civil Procedure, a meeting was held telephonically on September 27, 2019, at 9:30 AM Eastern Standard Time and was attended by:

- **Kristen J. McAhren**, for Class Plaintiffs
- **Maxwell J. Kalmann**, for Class Plaintiffs
- **Timothy L. Wilson, Jr.**, for Class Plaintiffs
- **Eden Heilman**, for Class Plaintiffs
- **Vishal Agraharkar**, for Class Plaintiffs
- **Margaret O'Shea**, for Defendants

The parties hereby jointly submit this Rule 26(f) report and their proposals regarding discovery and scheduling.

**I.   NATURE OF CLAIMS AND DEFENSES**

The parties certify that, in accordance with Fed. R. Civ. P. 26(f)(2), they considered the nature and basis of their respective claims and defenses when discussing the various topics encompassed by Rule 26(f).

    **A.   Summary of Claims and Defenses**

        1.   Plaintiffs' Brief Statement of the Case

Plaintiffs' Complaint presents detailed claims against twelve VDOC Defendants,

supported by facts that date back to the late-1970s planning of the Phase Program at Mecklenburg Correctional Facility. The Complaint also lays bare Defendants' breach of their promise to refrain from using indefinite solitary confinement; Defendants' failure to provide meaningful review of whether a prisoner still requires solitary confinement; Defendants' use of solitary confinement and substandard care at ROSP and WRSP, causing prisoners serious physical and mental harms; and Defendants' use of solitary confinement for economic gain or without a legitimate penological purpose.

In all, the Complaint alleges that Defendants' conduct amounts to the following violations:

- Breach of the court-ordered Settlement Agreement relating to *Brown v. Landon* by instituting the Step-Down Program, which is a reincarnation of the Phase Program and SMU, despite VDOC's commitment not to reestablish these programs.

- Violating the Due Process Clause of the Fourteenth Amendment by failing to provide meaningful reviews of Class Plaintiffs' administrative segregation, by both maintaining facially inadequate review procedures and by failing to ensure that existing review procedures are actually followed.

- Violating the Equal Protection Clause by:

    (1) intentionally segregating prisoners whose behavior in prison does not warrant segregation, as if they are among the class of prisoners whose institutional history warrants segregation;

    (2) intentionally and arbitrarily placing prisoners on the IM Pathway based on behavioral criteria that is not meaningfully distinguishable from criteria for placement on the SM Pathway, leading to imposition of permanent solitary confinement on discriminatory grounds; and

    (3) intentionally failing to meaningfully consider prisoners' mental illness or disability, severely disadvantaging and effectively denying those prisoners any opportunity to progress out of long-term solitary confinement.

    Furthermore, Defendants know that these features of the Step-Down Program are not related to the valid penological objectives of administrative segregation and merely further Defendants' economic scheme to fill prison beds at ROSP and WRSP.

- Violating the Eighth Amendment by:

    (1) deliberately and wantonly subjecting prisoners to indefinite and long-term solitary confinement without legitimate penological purpose, resulting in serious mental and physical harms or substantial risk of such harms, and continuously increasing prisoners' time in solitary confinement due to behavior that is symptomatic of the harms caused by long-term solitary confinement; and

    (2) subjecting prisoners to conditions of solitary confinement that exact serious deprivations of basic human needs, resulting in serious harms or a substantial risk of future harm, and demonstrating deliberate indifference by implementing or tacitly approving the use of such conditions despite knowing that they pose these harms, and by failing to adequately assess or care for such prisoners.

- Violating the Americans With Disabilities Act of 1990 and Section 504 of the Rehabilitation Act of 1973 by discriminating against people with mental health disabilities solely on the basis of their disabilities and by failing to grant access to, permit to participate in, and reap the benefits of programs, services, and activities.

   2. Defendants' Brief Statement of the Case

Defendants do not believe that it is necessary to set forth a statement of the case in the context of a Rule 26(f) report, and simply incorporate by reference the statements and arguments contained in the pleadings they have filed with the Court to date.

## II.   PROPOSED DISCOVERY SCHEDULE

The below section provides the parties' detailed positions on the scope and timing of discovery. For the convenience of the Court, the suggested deadlines are summarized in a table in Section V below.

   A.   **Trial Date**

      1. Plaintiffs' Position

At this time, Plaintiffs anticipate that this action should be ready for trial, at the latest, by September 2021 and will take approximately twenty-one (21) days.

      2. Defendants' Position

Defendants believe that it is premature to determine when this matter will be ready for

trial, or the length of any resulting trial, considering that it is not clear what claims or issues might remain in the case following resolution of the initial dispositive motions. Defendants also submit that the question of whether this case is amenable for class certification, and the extent to which class discovery is required, may bear on the length of discovery needed. Defendants agree that the case will be ready for trial by September 2021, but submit that it could be ready for trial significantly before that date.

### B.     Mandatory Disclosures (Fed. R. Civ. P. 26(a)(1))

The parties agree to exchange the information required by Fed. R. Civ. P. 26(a)(1) within fourteen (14) days of the Court ruling on Defendants' pending motions to dismiss.

### C.     Completion of Discovery

#### 1.     Plaintiffs' Position

Non-expert fact discovery will close six months (or 180 days) before the scheduled trial date. With a proposed trial date of September 2021, non-expert fact discovery will close around February or March 2021. Plaintiffs note, however, that the proposed deadlines may need to be revisited and amended because Defendants have expressed intent to oppose any depositions, requests for interrogatories, and requests for admissions requiring responses from individuals until the Court rules on the pending motions to dismiss.

Expert discovery, including any depositions of expert witnesses, will proceed on a parallel track separate from non-expert fact discovery and will be permitted until sixty (60) days after non-expert fact discovery closes.

#### 2.     Defendants' Position

Defendants anticipate that the discovery period should close approximately nine months from the date that this Court rules on their initial dispositive motions. At this procedural juncture, Defendants believe that discovery targeted to the individual Defendants is premature,

4

considering the immunity defenses that have been raised, but have agreed to respond to requests for the production of documents pending that ruling, as long as those requests remain proportionate to the needs of this litigation and are not otherwise objectionable.

### D. Dates of Disclosure of Experts and Experts' Written Reports and Supplementations

1. Plaintiffs' Position

Plaintiffs suggest that reports from retained experts under Rule 26(a)(2) be due from Plaintiffs within thirty (30) days after the close of non-expert fact discovery and from Defendants forty-five (45) days after the close of non-expert fact discovery.

2. Defendants' Position

Defendants believe that expert reports should be due prior to the close of all discovery, considering the potential need to depose retained expert witnesses. Defendants propose that Plaintiffs' expert reports be due 90 days prior to the close of discovery, that Defendants' expert reports be due 60 days prior to the close of discovery, and that Plaintiffs' rebuttal expert reports (if any) be due 45 days prior to the close of discovery.

### E. Deadline for Dispositive Motions

The parties agree that all potentially dispositive motions should be filed thirty (30) days after the close of all discovery. Responses should be filed thirty (30) days following service of the dispositive motion. Reply briefs (if any) should be filed fifteen (15) days following service of the response in opposition.

### F. Motions in Limine/Other Pretrial Motions

The parties agree that motions in limine and other pretrial motions should be filed thirty (30) days before the scheduled trial date and responses should be filed twenty (20) days before the scheduled trial date.

    G.    **Pretrial Conference**

The parties agree that a pretrial conference should be held fourteen (14) days before the scheduled trial date.

    H.    **Pretrial Disclosures**

The parties propose that final lists of witnesses and exhibits under Fed. R. Civ. P. 26(a)(3) be due sixty (60) days before the scheduled trial date. Objections should be submitted forty-five (45) days before the scheduled trial date.

    I.    **Settlement**

The parties agree that a meaningful settlement cannot be evaluated prior to decisions on outstanding motions to dismiss.

**III.**    **DISCOVERY**

    A.    **Subjects of Discovery**

        1.    <u>Plaintiffs' Position</u>

Plaintiffs contend that discovery will be needed on the following subjects:

    i.    Planning, design, and implementation of the Mecklenburg Phase Program;

    ii.    Defendants' intent, knowledge of, and conduct surrounding the Settlement Agreement and termination of the *Brown* consent decree;

    iii.    Planning, funding, and operation of ROSP and WRSP, including, but not limited to, designs, budgets, payroll, consulting agreements, operational costs, and transfers of prisoners previously segregated at Mecklenburg Correctional Center to ROSP and WRSP;

    iv.    Purpose, nature, and economic aspects of Defendants' interstate compacts or similar agreements regarding the transfer of prisoners to and from Virginia and other states, including, but not limited to, decisions to transfer Named Plaintiff William Thorpe out of state;

    v.    Defendants' justifications, purposes, and motivations for the use of indefinite and long-term solitary confinement, including, but not limited to, economic and penological motivations for various aspects of the Step-Down Program;

    vi.      Creation and administration of the Step-Down Program and its predecessor programs at ROSP and WRSP, including, but not limited to, how the Step-Down Program and policies have been applied to each class member, decisions to place and retain prisoners in solitary confinement; decisions to alter the Pathway of prisoners in segregation, including the Named Plaintiffs and class members; reports; preparatory documents; meeting minutes; forms; documents relied upon, reviewed by, produced by, or relating to the Institutional Classification Authority, Building Management Committee, Dual Treatment Team, External Review Team, and similar entities; pod log books; status rating charts; grievances and decisions on external classification status or internal status within the Step-Down Program; disciplinary charges and related underlying evidence and decisions; post orders; Step-Down Program workbooks and journals; relevant policies; internal memoranda; and diagnostic tools;

    vii.      Extent of Defendants' use of solitary confinement at ROSP and WRSP, including, but not limited to, the identities, number, and locations of prisoners incarcerated in ROSP and WRSP during the relevant period and the duration of their confinement and segregation;

    viii.      Harms and risks of harm caused to Plaintiffs and class members by Defendants' use of solitary confinement, and Defendants' knowledge of or indifference to those risks and harms, including, but not limited to, the circumstances of prisoner transfers from ROSP and/or WRSP to Marion Correctional Center; grievances; and Defendants' presentations to correctional associations regarding the use of segregation;

    ix.      Defendants' practices regarding detection, assessment, and treatment of medical and mental illnesses; supervision and assignment of staff involved in detection and treatment of medical and mental illnesses; and Defendants' awareness of scientific evidence linking solitary confinement to mental and physiological harms; and

    x.      Communications and information relating to i through ix above, including, but not limited to, discussions with and work product produced by consultants and other external parties, and documentation exchanged by prison and medical staff, such as medical complaints, medical treatment, or medical evaluations.

    2.      <u>Defendants' Position</u>

Subject to Defendants' position in II.C.2 above, Defendants do not believe that the parties can meaningfully discuss the topics upon which discovery is needed until the parties know what topics (if any) will survive their initial dispositive motions.

### B.     Phased Document Production

1.     <u>Plaintiffs' Position</u>

In order to facilitate the document production process, Plaintiffs will attempt to serve document requests in phases. The document production will conclude before the expert discovery period closes. The phases will include the following topics:

    i.      Complete institutional files, including medical documents for Named Plaintiffs, and statistical documentation on all prisoners at ROSP and WRSP, including, but not limited to, identities, number of prisoners, changes in housing assignments, privilege or internal status level changes, transfers from and to ROSP and WRSP, current location of prisoners previously detained at ROSP and WRSP;

    ii.     Documentation created, relied upon, referenced, or in any way related to the creation, implementation, or administration of the Step-Down Program at ROSP and WRSP, including, but not limited to, communications, policies, hearing reports, meeting minutes, deliberations, pod logs, training materials, financial documents, and documents regarding remuneration received for speeches, trainings, or other advice received from consultants;

    iii.    Documentation regarding the planning, design, financing and funds appropriation, and construction of ROSP, WRSP, and Mecklenburg Correctional Center;

    iv.    Medical records and related materials for all class members;

    v.     Documents related to intrastate transfers of prisoners from and to ROSP and WRSP, including, but not limited to, quarterly progress reports, invoices, transfers, communications, and documents related to finances;

    vi.    Documentation related to the creation, implementation, administration, or any other documents regarding the SMU, Phase Program, or Mecklenburg Correctional Center.

Plaintiffs have agreed that the first phase of document requests will not be specifically directed to any of the individual Defendants.

Interrogatories shall be served in accordance with Section III.C and may be served separately from the above phases.

2. Defendants' Position

Defendants do not anticipate the need to phase their discovery requests to the Plaintiffs, but do not intend to serve any discovery until after this Court rules on their initial Rule 12 motions.

C. **Discovery Limits**

1. Plaintiffs' Position

Plaintiffs propose that the parties adhere to the limitations of Fed. R. Civ. P. 33 regarding the permissible number of interrogatories that may be served on an individual party. Plaintiffs anticipate taking approximately fifty (50) depositions of fact witnesses, the Defendants, and the Defendants' current employees, in addition to third-party witnesses and any expert witnesses for the Defendants. In any event, the number of depositions will remain reasonable and proportionate to the needs of this litigation. Defendants have indicated that they will depose each of the Plaintiffs' class representatives and at least some of their experts. Any deposition will be limited to a maximum of eight (8) hours unless extended by agreement of the parties.

Plaintiffs anticipate that requests for admission by each party to any other party will remain reasonable and proportionate to the needs of this litigation. Plaintiffs suggest that responses should be due thirty (30) days after service.

Given the breadth of discovery required in this case, Plaintiffs anticipate that the parties will serve many requests for production of documents, but these requests will be proportionate to the needs of this litigation.

2. Defendants' Position

Interrogatories. Defendants agree that the parties should adhere to the limitations of Fed. R. Civ. P. 33 regarding the permissible number of interrogatories that may be served on an

individual party.

Depositions. Defendants agree that all named parties and named class representatives may be deposed, along with any expert witnesses. Defendants propose that the number of depositions for non-party, fact witnesses be assessed as discovery unfolds, rather than limiting that number at the outset.

Requests for Admissions. Defendants propose that the Plaintiffs, collectively, be limited to service of 100 requests for admissions upon Defendants, collectively, and that Defendants, collectively, be limited to service of 100 requests for admissions upon Plaintiffs, collectively.

Requests for the Production of Documents. Defendants agree that requests for documents should not be limited to a particular number, as to either side, but rather, that the parties attempt to ensure that their requests remain reasonable and proportionate to the needs of this litigation.

### D. Expert Reports

1. Plaintiffs' Position

The Plaintiffs believe that written reports will be necessary.

Experts shall be granted site examinations, including access to prisoner cells, living areas, conference rooms, visitation rooms, and all other areas necessary to the experts' evaluation, as well as unabridged access to the class representatives, including, but not limited to, prisoner MRI scans and mental evaluations conducted in cell areas. The parties, however, may agree to amend this position depending on the needs of the case and after the Court rules on Defendants' pending motions to dismiss. Plaintiffs agree that expert examinations may be subject to some of the confidentiality measures referenced in IV.A.1 below.

2. Defendants' Position

Defendants agree to confer with Plaintiffs, in good faith, on the permissible scope of any

requested examinations by expert witnesses, but propose that those examinations be conducted pursuant to a confidentiality agreement.

### E. Preserving Discoverable Information

#### 1. Plaintiffs' Position

Plaintiffs' counsel emphasizes the necessity and obligation to retain all documents that may be potentially relevant for this litigation. *See E.I. du Pont de Nemours v. Kolon Indus.*, 803 F. Supp. 3d 469, 496-97, 500 (E.D. Va. 2011).

#### 2. Defendants' Position

Counsel for the Defendants certifies that she has issued a hold letter to her clients, instructing them to retain all materials that may be relevant to the claims and defenses in this matter.

## IV. OTHER MATTERS

### A. Protective Order and Confidentiality

#### 1. Plaintiffs' Position

Plaintiffs are willing to work with Defendants on a protective order concerning the production of documents or communications containing sensitive correctional information and other matters impacting security of prisons or prison staff. Based on past litigation involving ROSP between counsel, the protective order would specify that Defendants must produce the sensitive documents and communications to Plaintiffs' counsel in unredacted form and propose any redactions. Plaintiffs' counsel would not share the unredacted documents with the Named Plaintiffs and class members. The parties would attempt in good faith to resolve any disagreements over proposed redactions. The redacted copy would be publicly available and the unredacted copy would be filed under seal for Your Honor's consideration. As a general matter, there is nothing confidential about documents relating to prison administration.

Any party refusing to produce documents on the basis of privilege or any other reason must provide a privilege log that describes the precise reason and legal standard under which the document can be validly withheld.

2. <u>Defendants' Position</u>

Defendants agree to confer in good faith with the Plaintiffs to structure an appropriate confidentiality agreement. To the extent Plaintiffs might request, in any form, confidential information regarding non-parties to this litigation, Defendants propose that Plaintiffs obtain appropriate waivers that comply with federal and state law prior to requesting that information. Defendants agree to submit a privilege log, but submit that attorney-client communications post-dating the inception of this litigation, and which discuss this litigation, do not need to be specifically identified on a privilege log. The parties agree that any inadvertent production of privileged or work product information will be addressed in accordance with the procedure set forth in Fed. R. Civ. P. 26(b)(5)(B).

B. **Electronically Stored Information**

Regarding electronically stored information, the parties have agreed to produce all such materials in their native format or hard copy. The parties will otherwise meet and confer regarding ESI production issues and raise any issues with the Court as necessary.

V. **ANNEX**

| Topic | Plaintiffs' Position | Defendants' Position |
|---|---|---|
| Approximate Trial Date | September 2021 | Defendants believe that a trial date cannot be forecast until after the Rule 12 motions have been resolved, but agree the case will be ready for trial by or before September 2021. |

| Approximate Length of Trial | 21 days | Defendants believe that a trial length cannot be forecast until after the Rule 12 motions have been resolved. |
|---|---|---|
| Mandatory Disclosures | 14 days of Court ruling on pending motions to dismiss ||
| Discovery Deadlines | Non-expert fact discovery shall close 180 days before trial.<br><br>The period for expert discovery, including any expert depositions, shall close 60 days after the close of non-expert fact discovery. | 9 months following this Court's ruling on the Rule 12 motions |
| Plaintiffs' Expert Reports Due | 30 days following the close of non-expert fact discovery | 90 days prior to the close of all discovery |
| Defendants' Expert Reports Due | 45 days following the close of non-expert fact discovery | 60 days prior to the close of all discovery |
| Plaintiffs' Rebuttal Expert Reports Due | 60 days after the close of non-expert fact discovery | 45 days prior to the close of all discovery |
| Dispositive Motions Due | 30 days after the close of all discovery ||
| Response to Dispositive Motions Due | 30 days after service of the dispositive motion ||
| Reply to Response to Dispositive Motions Due | 15 days following service of the response in opposition ||
| Rule 26(a)(3) Pre-Trial Disclosures | 60 days before trial ||
| Objections to Rule 26(a)(3) Trial Disclosures | 45 days before trial ||
| Motions in Limine/Other Pretrial Motions | 30 days before trial ||

| Response to Motions in Limine/Other Pretrial Motions | 20 days before trial |
|---|---|
| Pretrial Conference | 14 days before trial |

Dated:  October 11, 2019

Respectfully submitted,

By:   /s/ *Alyson Cox*
Alyson Cox (VSB No. 90646)
Daniel Levin (*pro hac*)
Kristen J. McAhren (*pro hac*)
Maxwell J. Kalmann (*pro hac*)
Timothy L. Wilson, Jr. (*pro hac*)
**WHITE & CASE**
701 Thirteenth Street, NW
Washington, DC 20005
T: (202) 626-3600
F: (202) 639-9355
alyson.cox@whitecase.com

*Counsel for Class Plaintiffs*


   /s/
Margaret Hoehl O'Shea, VSB #66611
Assistant Attorney General
Office of the Attorney General
Criminal Justice & Public Safety Division
202 North 9th Street
*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on October 11, 2019, a copy of the foregoing document was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's CM/ECF system.

Dated:  October 11, 2019                    Respectfully submitted,

By:   /s/ *Alyson Cox*
Alyson Cox (VSB No. 90646)
**WHITE & CASE**
701 Thirteenth Street, NW
Washington, DC 20005
T: (202) 626-3600
F: (202) 639-9355
alyson.cox@whitecase.com

*Counsel for Class Plaintiffs*