**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
BIG STONE GAP DIVISION**

WILLIAM THORPE, *et al.*,

               *Plaintiffs*,

      v.

VIRGINIA DEPARTMENT OF
CORRECTIONS, *et al.*,

               *Defendants*.

CASE NO. 2:20-cv-00007-JPJ-PMS

**CLASS PLAINTIFFS' MOTION FOR LEAVE
TO FILE NOTICE OF SUPPLEMENTAL AUTHORITY**

Pursuant to Local Civil Rule 11(c)(1), and as supplemental authority in support of Class Plaintiffs' July 9, 2019, Memorandum in Opposition to Defendants' Motion to Dismiss (E.D.V.A. ECF No. 26) ("Opp."), Class Plaintiffs respectfully move for leave to file notice of the Fourth Circuit's decision in *Smith v. Collins*, No. 18-7313, 2020 U.S. App. LEXIS 21460 (4th Cir. July 10, 2020) ("Slip Op."). *Smith* vacated the district court's summary judgment award to the defendants on a procedural due process claim brought by a prisoner previously held in solitary confinement at Wallens Ridge State Prison ("Wallens Ridge"). In *Smith*, the Fourth Circuit concluded that the evidence presented by the plaintiff regarding his conditions of long-term solitary confinement at Red Onion State Prison ("Red Onion") and Wallens Ridge was sufficient to establish a genuine dispute of material fact over whether those conditions imposed "atypical and significant hardship . . . in relation to the ordinary incidents of prison life," thus implicating a protected liberty interest. *See* Slip Op. 13 (quoting *Wilkinson v. Austin*, 545 U.S. 209, 222-23 (2005)). For the Court's convenience, the *Smith* decision is attached hereto as Exhibit 1.

As in *Smith*, Class Plaintiffs argue that they have adequately pleaded a protected liberty interest sufficient to satisfy this element of their procedural due process claim. The *Smith* Court held as a matter of law, on nearly identical facts, that there was a genuine dispute of material fact as to whether Smith's confinement posed atypical and significant hardship in relation to the ordinary incidents of prison life. *See* Slip Op. 4; *accord Incumaa v. Stirling*, 791 F.3d 517, 520 (4th Cir. 2015). Specifically, the decision supports Class Plaintiffs' argument that their detailed factual allegations regarding the conditions of confinement at Red Onion and Wallens Ridge (which must be accepted as true) establish on the face of the Class Action Complaint ("CAC") all three prongs of the atypical-and-significant-hardship analysis: "(1) The magnitude of confinement restrictions; (2) whether the administrative segregation is for an indefinite period; and (3) whether assignment to administrative segregation had any collateral consequences on the inmate's sentence." Slip Op. 17 (quoting *Incumaa*, 791 F.3d at 530).

1. Class Plaintiffs have experienced nearly identical conditions of confinement to Smith's. *Compare* Slip Op. 11-12 (listing "highly restrictive conditions" in which Smith was confined), *with* CAC ¶¶ 95-103, 105, 107-13, *and* Opp. 6. The *Smith* Court found that many of these conditions are materially indistinguishable from those described in *Wilkinson*. *See* Slip Op. 19; 545 U.S. at 223-24. Indeed, Smith's confinement "may have been worse in some respects" given the highly invasive strip searches (Slip Op. 19), to which Class Plaintiffs are also subjected (*see* CAC ¶ 108). If Smith's conditions of confinement are severe enough to satisfy this prong of the *Incumaa* test, Class Plaintiffs' similar detailed factual allegations are likewise sufficient to state a claim.

The *Smith* Court also rejected the same contention offered by Defendants here that Class Plaintiffs enjoyed some of the same conditions as do prisoners in general population (*see* Defs.'

Mem. Supp. Mot. Dismiss 18, ECF No. 22 ("Mot.")) (claiming that Class Plaintiffs receive some of the same privileges as do general-population prisoners), as bearing at all on the otherwise severely restrictive conditions of long-term solitary confinement. *See* Slip Op. 21 (citing *Incumaa*, 791 F.3d at 530 (noting that this "point-by-point comparison" of conditions "is not required under *Wilkinson*")). Rather, the *Smith* Court confirmed that segregation conditions must simply be "'significantly worse' than the general-population conditions." *Id.* (quoting *Incumaa*, 791 F.3d at 531); *see* Opp. 7. Significantly, the Court also recognized that the Step-Down Program in no way obviates these conditions, especially with respect to the severe isolation experienced by Class Plaintiffs (CAC ¶ 199):

> The district court's third and final rationale, which is premised on the review procedures enshrined in VDOC's Step-Down Program policy, is also wide of the mark. The fact that VDOC policy contemplates communication between staff and Step-Down Program participants hardly mitigates the seriousness of the deprivation of social stimuli that prisoners like Smith experience in administrative segregation. We have never heard of a prison that manages itself. Correctional staff do not obviate the need for social interaction by performing their most basic duty— checking in on the welfare and ensuring the safety of prisoners.

Slip Op. 21. Instead, as detailed in the CAC, the Step-Down Program's review procedures prolong this isolation by subjecting prisoners to the whims of guards empowered by the Program to determine prisoners' fates. CAC ¶¶ 156, 166.

2. The *Smith* Court found a genuine issue of fact as to whether Smith's segregation in these harsh conditions was "for an indefinite period" because it was not "temporary" and subject to a certain end-date. Slip Op. 17, 21. Thus, both Class Plaintiffs' and Smith's "interest in receiving meaningful procedural review was magnified because they were confined to a supermax facility for an indefinite period." *Id.* at 21 (citing *Wilkinson*, 545 U.S. at 224). Yet, like here, the *Smith* defendants argued that the indefinite solitary confinement "was not truly indefinite" because the Step-Down Program is allegedly "designed to provide Level S prisoners with a pathway out of

3

segregation" (Slip Op. 22) and gave Smith "control of his own fate" (*id.*; *see also* Opp. 8 (citing Mot. 18)). The Fourth Circuit rejected this argument. Even if the Step-Down Program could in theory ameliorate the indefiniteness of Smith's solitary confinement conditions without providing a firm end-date, the "conclusory nature" of the rationales cited to deny Smith progress in the Step-Down Program—that he should "remain [in segregation]" and that he "needed a longer period of stable adjustment"—showed that any possibility of advancement in the Program was illusory at best and that the Program had instead "stalled" Smith's progress "for over four years." Slip Op. 22. Thus, "a reasonable jury could infer that, in practice, those [review] procedures were not followed and that the reviews were a sham." *Id.* at 23 n.7.

Class Plaintiffs similarly have offered detailed factual allegations that (1) Defendants used precisely such conclusory rationales to prevent them from progressing through the Program (*see* CAC ¶ 178); (2) their solitary confinement is similarly indefinite—*i.e.*, it is not subject to a specific end-date and continues until staff concludes that a prisoner has completed the Program (*see id.* ¶ 177)[1]; (3) they are unable to "control [their] own fate" (Slip Op. 22) due to mandatory minimum periods and the discretionary standards that VDOC officials use in reviews (CAC ¶¶ 146, 156, 165); and (4) some of Class Plaintiffs are unable to complete the required *Challenge Series* workbooks due to their educational background, disability, language barrier, or other circumstance, which "makes the 'choice' of complying with the . . . policy a non-choice" and thereby blocks any progression through the Program (Slip Op. 23; CAC ¶¶ 152, 161-67, 200-01).

---

[1] Also, the *Smith* Court noted that VDOC officials would at times review their own decisions as to Smith's progression in the Step-Down Program "in violation of VDOC policy." Slip Op. 11. Plaintiffs allege the same. CAC ¶¶ 177-78. Smith's experience exemplifies Class Plaintiffs' detailed factual allegations that the VDOC procedures as followed in practice provide only an illusory degree of review. *Id.* ¶¶ 154-78.

The *Smith* Court's finding that the Program "did not offer Smith any real opportunity for release from segregation" must inform this Court's analysis of the motion to dismiss.  Slip Op. 22.

*Smith* also confirms that the duration of a prisoner's solitary confinement magnifies the impact of these conditions.   The *Smith* Court concluded that the four-year duration of Smith's confinement was "significant enough to tip the indefiniteness factor in Smith's favor" (*id.* at 24), particularly "[g]iven the 'wide range of psychological scars' that solitary confinement 'imprints on those that it clutches'" (*id.* (quoting *Apodaca v. Raemisch*, 139 S. Ct. 5, 9, n.8 (2018) (statement of Sotomayor, J., respecting the denial of certiorari)).   Notably, Smith's four years and three months of solitary confinement was of shorter duration than most of the Named Plaintiffs'. *Compare id.* at 23, *with* CAC ¶¶ 24-35 (listing Named Plaintiffs, each of whom have been in solitary confinement at Red Onion or Wallens Ridge for anywhere between two to twenty-four years).   The Court in fact echoes Class Plaintiffs' point that courts have found a liberty interest even for periods of confinement lasting less than four years.  *See* Slip Op. 23-24; Opp. 8-9.

3.  Both Smith and Class Plaintiffs were deprived of good-time credits due to their failure to progress through the Step-Down Program.  *See* Slip Op. 12; CAC ¶¶ 116-17.  The *Smith* Court confirmed that such deprivation constituted a collateral consequence on a prisoner's sentence sufficient to satisfy the third *Wilkinson* factor even if that prisoner never reaches the class level that allowed inmates to accrue good-time credits.  *See* Slip Op. 26-27; Opp. 10.  Rather, the Court recognized that such "stagnated process in the Step-Down Program may have caused [] stagnation in class level for good-time credit purposes."  Slip Op. 26.

\*      \*      \*

With respect to Defendants' arguments here regarding qualified immunity for violations of a prisoner's procedural due process rights, the *Smith* Court expressed its "skepticism" that the same district court decisions relied upon by Defendants here somehow demonstrate that a prisoner in

solitary confinement does not possess a "clearly established protected liberty interest." *Id.* at 31 n.11 (citing *Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 545 (4th Cir. 2017) ("Given that published district court opinions . . . have no precedential value, it follows that we should not consider them.")); Mot. 19 & n.10 (citing district court cases to assert that "the restrictions and limitations that accompany segregated confinement within VDOC are not so onerous as to trigger the protections of the Due Process Clause"). The Fourth Circuit instead reaffirmed that *Incumaa* "gave clear notice to jail officials" that the solitary confinement in which Smith and Class Plaintiffs have languished requires "some level of procedural protections." Slip Op. 31 n.11 (quoting *Williamson v. Stirling*, 912 F.3d 154, 189 (4th Cir. 2018)).

Defendants do not dispute that Class Plaintiffs have a state-recognized liberty interest, thus satisfying the first prong of their due process claim under *Prieto*. *See* Mot. 16-17; *Prieto v. Clarke*, 780 F.3d 245, 248 (4th Cir. 2015). This Court should therefore follow the reasoning in the Fourth Circuit's *Smith* decision by holding that Class Plaintiffs have sufficiently pleaded their procedural due process claim to overcome the pending motion to dismiss, and by moving forward to discovery and adjudication on the live disputes of fact that animate this litigation. *See* Slip Op. 29.

Dated: July 23, 2020                    Respectfully submitted,

                                        By: /s/ Alyson Cox Yates
                                            Alyson Cox Yates (VSB No. 90646)
                                            Daniel Levin (*pro hac*)
                                            Kristen J. McAhren (*pro hac*)
                                            Maxwell J. Kalmann (*pro hac*)
                                            Timothy L. Wilson, Jr. (*pro hac*)
                                            **WHITE & CASE**
                                            701 Thirteenth Street, NW
                                            Washington, DC 20005
                                            T: (202) 626-3600
                                            F: (202) 639-9355
                                            alyson.cox@whitecase.com

Owen C. Pell (*pro hac*)
WHITE & CASE
1221 Avenue of the Americas
New York, New York 10020
(212) 819-8200

Vishal Agraharkar (VSB No. 93265)
Eden Heilman (VSB No. 93554)
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF VIRGINIA
701 E. Franklin St. Suite 1412
Richmond, Virginia 23219
(804) 644-8022
vagraharkar@acluva.org
eheilman@acluva.org

*Counsel for Class Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on July 23, 2020, a copy of the foregoing document was filed electronically.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's CM/ECF system.

Dated: July 23, 2020                      Respectfully submitted,

                                          By: /s/ Alyson Cox Yates
                                          Alyson Cox Yates (VSB No. 90646)
                                          **WHITE & CASE**
                                          701 Thirteenth Street, NW
                                          Washington, DC 20005
                                          T: (202) 626-3600
                                          F: (202) 639-9355
                                          alyson.cox@whitecase.com

                                          *Counsel for Class Plaintiffs*