# Exhibit 1

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Big Stone Gap Division

| | |
|---|---|
| WILLIAM THORPE, *et al.*, | ) |
| Plaintiffs, | ) |
| v. | ) Case No. 2:20-cv-00007-JPJ-PMS |
| VIRGINIA DEPARTMENT OF CORRECTIONS, *et al.*, | ) |
| Defendants. | ) |

**DEFENDANTS' REPLY BRIEF IN SUPPORT OF RULE 72(B) OBJECTIONS TO MAGISTRATE JUDGE'S REPORT & RECOMMENDATION**

Plaintiffs' response ("Opposition"; Dkt. 75) to Defendants' objections ("Defs.' Objections"; Dkt. 73) to the Report and Recommendation ("R&R"; Dkt. 70) offers no convincing grounds for permitting their case to proceed. For the reasons discussed below, and for those previously stated, the Court should sustain Defendants' objections and grant their motions to dismiss.

**I.  Plaintiffs fail to rebut Defendants' objections that the Magistrate Judge erred in finding the 1985 Settlement Agreement potentially enforceable and refusing to find VDOC immune from suit.**

Although the Magistrate Judge correctly recommended dismissal of Plaintiff's breach-of-contract claim as barred by the statute of limitations, Defendants objected to her conclusions that 1) vacatur of the 1983 and 1985 consent decrees did not vacate the settlement agreements they incorporated and 2) VDOC is not entitled to Eleventh Amendment immunity from the breach-of-contract claim. Plaintiffs' Opposition provides no persuasive rebuttal.

1

First, Plaintiffs fail to address, let alone refute, the significance of the language of the 1985 Settlement Agreement and the implementing court order, which provided for ongoing judicial enforcement. *See* 4/5/85 Agreement (agreeing that "the parties shall request that the Court retain jurisdiction for such time as the Court deems necessary to enforce compliance with this agreement and any decrees which may issue herein"), Dkt. 19-8; 4/5/85 Order (referencing the parties' application "to modify the consent decree previously entered" and noting that "the Court will retain jurisdiction for such time as may be necessary to enforce or modify this Order and settlement"), Dkt. 19-8. Because it was a "consent decree," rather than a "private settlement agreement," within the meaning of the PLRA, its vacatur rendered it unenforceable. *See Benjamin v. Jacobson*, 172 F.3d 144, 157 (2d Cir. 1999) (en banc) ("[I]f the federal court, though having once approved, withdraws its approval and terminates prospective relief, the condition upon which the parties agreed to bind themselves will have failed.").

Plaintiffs also are wrong to insist that the Court turn a blind eye to any public records surrounding the 1985 Settlement Agreement—such as the 1997 court order expressly vacating it. *See* 4/7/97 Order, Dkt. 19-1. Quoting themselves, Plaintiffs argue that the Court must "test the legal feasibility of the complaint *without* weighing the evidence that might be offered to support of contradict it." Objection at 4 (quoting Pls.' Mem. in Opp'n to Defs.' Mot. to Dismiss at 2, Dkt. 26) (emphasis in original). But the Court is not as constrained as Plaintiffs suggest. As the Supreme Court has made clear, "courts must consider the complaint in its entirety, ***as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice***." *Tellabs, Inc. v. Makor Issues & Rights Ltd.*, 551 U.S. 308, 322 (2007) (emphasis added). Far from "cherry-picked circumstantial parol evidence" as Plaintiffs claim, Opp'n at 4, the

documents Plaintiffs wish to hide are court records directly related to the 1985 Settlement Agreement that are subject to judicial notice and consideration by the Court. *See, e.g.*, *De Bearn v. Safe Deposit & Trust Co.*, 233 U.S. 24, 32 (1914); *Bienville Water Supply Co. v. Mobile*, 186 U.S. 212, 217 (1902). To determine the ongoing enforceability of the 1985 Settlement Agreement, the Court is permitted to take judicial notice of the facts surrounding it.

Second, Plaintiffs' various contentions that Virginia waived its sovereign immunity in the 1985 Settlement Agreement also are unpersuasive. To begin with, the fact that lawyers with the Attorney General's office signed the agreement says nothing about the identity of their clients. Indeed, in the underlying litigation, the Attorney General's office represented the defendant prison officials (who cannot validly waive VDOC's immunity); VDOC was not a party. *See* Dkt. 19-3. Nor, in any event, does the involvement of those attorneys supplant the required express declaration that VDOC was waiving its immunity with respect to a future breach-of-contract action. Rather, "[i]n deciding whether a State has waived its constitutional protection under the Eleventh Amendment, [a court] will find waiver ***only where stated 'by the most express language or by such overwhelming implications from the text as [will] leave no room for any other reasonable construction***.'" *Edelman v. Jordan*, 415 U.S. 651, 673 (1974) (emphasis added). Plaintiffs' attempts to evade the requirement of explicit waiver are unavailing.

**II.     The Magistrate Judge erroneously concluded that Plaintiffs stated a due-process claim.**

Plaintiffs' response to Defendants' objections regarding their due-process claim falls flat for two reasons.

First, Plaintiffs' response consists mostly of a misguided plea—that the Court ignore the VDOC operating procedures that establish the multiple layers of review afforded to inmates assigned to security level "S." According to Plaintiffs, considering those operating procedures

would be an "impermissible end-run around the Complaint." Opp'n at 9. They are wrong. While Plaintiffs accurately recite the familiar standard that a Rule 12(b)(6) motion "tests the sufficiency of a *complaint*," they over-read the last word to suggest that a court may ***never*** look beyond what a plaintiff alleges. Opp'n at 8 (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243–44 (4th Cir. 1999)). The Fourth Circuit itself has recognized that *Edwards* imposes no such limitation:

> [W]e are required to accept all well-pleaded allegations of Massey's complaint as true and draw all reasonable factual inferences in his favor. *See Edwards v. City of Goldsboro,* 178 F.3d 231, 244 (4th Cir.1999). Nevertheless, we are not obliged to accept allegations that "represent unwarranted inferences, unreasonable conclusions, or arguments," or that "contradict matters properly subject to judicial notice or by exhibit."

*Massey v. Ojaniit*, 759 F.3d 343, 353 (4th Cir. 2014) (quoting *Blankenship v. Manchin,* 471 F.3d 523, 529 (4th Cir. 2006)). *See also Tellabs, Inc.*, 551 U.S. at 322. And it cannot be seriously disputed that VDOC's operating procedures are subject to judicial notice. *See, e.g.*, *Fauconier v. Clarke*, 652 F. App'x 217, 219 n.4 (4th Cir. 2016) ("Although [the plaintiff] did not file the VODC's operating procedures with his pro se complaint, we are entitled to consider them here."); *Bowler v. Ray*, No. CIV.A. 7:07CV00565, 2007 WL 4268915, at *1 (W.D. Va. Nov. 30, 2007) ("The court takes judicial notice of the Virginia Department of Corrections (VDOC) Division Operating Procedure (DOP) 866 . . . .").[1]

Second, Plaintiffs claim unwarranted support from *Smith v. Collins*, 964 F.3d 266 (4th Cir. 2020), wrongly concluding that the Fourth Circuit's treatment of Smith's as-applied challenge to

---

[1] Plaintiffs are also wrong to suggest that VDOC operating procedures must be "integral to [or] explicitly relied on in the complaint" for the Court to consider them. Opp'n at 10 n.4 (quoting *Am. Chiropractic v. Trigon Healthcare*, 367 F.2d 212, 234 (4th Cir. 2004)). Citing *American Chiropractic* and acknowledging that is "ordinarily" the standard, the Fourth Circuit has also expressly "recognized . . . courts are permitted to consider facts and documents subject to judicial notice." *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 607 (4th Cir. 2015) (citing Fed. R. Evid. 201).

the Step-Down Program lends support to their own facial challenge to the Program.[2] But, in a facial challenge, Plaintiffs "can only succeed . . . by 'establish[ing] that no set of circumstances exists under which the [Program] would be valid,' *i.e.,* that the [Program] is unconstitutional in **all** of its applications." *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 (2008) (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987)) (emphasis added). Thus, "a facial challenge must fail where the statute has a '"plainly legitimate sweep,"' *id.* (quoting *Washington v. Glucksberg,* 521 U.S. 702, 739–40 & n. 7 (Stevens, J., concurring in judgments)), which makes Plaintiffs' facial challenge "the most difficult challenge to mount successfully," *Salerno*, 481 U.S. at 745. "VDOC's Step-Down Program is designed to provide Level S prisoners with a pathway out of segregation," *Smith*, 964 F.3d at 278, and the periodic reviews minimize the risk of an ongoing and erroneous deprivation of a protected interest. Indeed, Plaintiffs implicitly acknowledge that the Step-Down Program has provided a viable pathway for at least some offenders to transition out of Security Level S. Rather than claiming that "all" prisoners have been subjected to the claimed due-process violation, they assert, instead, that the "Step-Down Program

---

[2] Although Plaintiffs now attempt to argue that they "challenge the Step-Down Program as unconstitutional both on its face *and* as applied to Class Plaintiffs," Opp'n at 11 (citing Class Plfs.' Statement of Position in Supp. of Venue & Opposing Discretionary Transfer at 8–9, Dkt. 31) (emphasis in original), they previously made their position clear. In the same document they now cite, they plainly stated that "this class action does **not** concern individualized incidents of misconduct or application of VDOC policies," **nor** does it "consider the capacity or characteristics of an individual inmate in a single facility, *or the application of a policy to an individual*." Dkt. 31 at 3 (emphasis added). Having explicitly taken this position in an attempt to prevent transfer of this action to this Court, Plaintiffs should be estopped from walking back their earlier, express representations, particularly considering that they are consistent with the allegations in the Complaint. *See, e.g.*, Compl. ¶ 154 ("VDOC has instituted a **system** that ensures that no matter how well an inmate in solitary confinement behaves, he must spend an excessive and unwarranted minimum amount in each of the many Phases of solitary confinement." (emphasis added)); Compl. ¶ 161 ("The Step-Down Program's categorical rating **system** amounts to a vague, subjective, and discretionary decision-making process that has no penological purpose." (emphasis added)); Compl. ¶¶ 169–78 (claiming insufficiencies in the overall review process, rather than as applied to any individual offender).

does not provide *many* prisoners with 'any real opportunity for release from segregation.'" Opp'n at 11–12 (quoting *Smith*, 964 F.3d at 278) (emphasis added). *See also Smith*, 964 F.3d at 278 ("Smith asserts that the Program did not provide *him* with a viable path to release."). By recognizing that the Step-Down Program has provided a viable pathway for at least some offenders to transition out of Security Level "S", Plaintiffs concede that the Program is constitutional in at least some applications—thereby defeating their facial claim.

There is a fundamental difference, then, between the as-applied challenge in *Smith*, and the facial claim presented here. *Smith* does not rescue Plaintiffs' facial due-process claim.

### III. The Magistrate Judge erroneously concluded that Plaintiffs stated an equal protection claim.

As Defendants showed, the Magistrate Judge erroneously concluded that Plaintiffs alleged facts sufficient to show they were treated differently from similarly situated inmates, and that such discrimination was intentional. Defs.' Objections at 15–19. Plaintiffs' responses fail to demonstrate otherwise.

The Magistrate Judge erred in concluding that Plaintiffs alleged discriminatory treatment. First, Plaintiffs rely on their allegations that vague and overbroad criteria for placement into either the IM or SM Pathways have resulted in offenders with similar criminal and prison disciplinary histories being treated differently. Opp'n at 13. But, as Defendants noted, that assertion is insufficient to show that Plaintiffs were treated differently from similarly situated inmates. Defs.' Objections at 16. It also is insufficient that Plaintiffs allege that Plaintiff Hammer had not committed any disciplinary infraction, yet was placed in segregation. Opp'n at 13. That allegation shows only how Plaintiff Hammer was treated—not whether he was treated differently than similarly situated individuals—and thus it falls far short of what is required by Fourth Circuit precedent. *See id.* (discussing *Fauconier v. Clarke*, 966 F.3d 265, 277 (4th Cir. 2020)). Second,

6

Plaintiffs argue that it is sufficient that they allege the Step-Down Program lacks any criteria for taking into account mental disabilities. Opp'n at 14. But that argument fails for the same reason: Plaintiffs fail to identify similarly situated inmates who were treated differently.

Plaintiffs' arguments in defense of the Magistrate Judge's conclusion that they alleged facts sufficient to show intentional discrimination also fail. Citing the Magistrate Judge's characterization of the case law, Plaintiffs argue that they need only allege that the disparate treatment is not reasonably related to any legitimate penological interest. Opp'n at 14. But that is not what the case law requires. To defeat a motion to dismiss, an inmate "must allege ***facts sufficient to overcome the presumption*** of reasonableness applied to prison policies." *Veney v. Wyche*, 293 F.3d 726, 732 (4th Cir. 2002) (emphasis added); *see also Fauconier*, 966 F.3d at 278–79 (assessing, at the motion-to-dismiss stage, whether the plaintiff pleaded facts sufficient to overcome the presumption of reasonableness). So it is not enough for Plaintiffs to merely assert that the Step-Down Program is not reasonably related to a legitimate penological interest. Rather, to overcome a motion to dismiss, they must make factual allegations sufficient not merely to show that the policy is reasonably related to a legitimate interest, but to overcome the presumption that the policy is reasonable. *See Veney*, 293 F.3d at 732. In other words, Plaintiffs must allege facts sufficient to defeat the "deference" courts accord "to the appropriate prison authorities." *Fauconier*, 966 F.3d at 277 (quoting *Turner v. Safley*, 482 U.S. 78, 85 (1987)). For the reasons stated in Defendants' Objections, Plaintiffs fail to allege facts sufficient to overcome that presumption. Defs.' Objections at 17–18.

## IV. The Magistrate Judge erroneously concluded that Plaintiffs stated an Eighth Amendment claim.

Defendants have demonstrated that the Magistrate Judge improperly concluded that Plaintiffs stated an Eighth Amendment claim. Defs.' Objections at 19–21. Plaintiffs' arguments in response miss the mark.

First, Plaintiffs claim that Defendants incorrectly characterize them as challenging "solitary confinement" in the abstract. Opp'n at 17. Defendants never made that contention. Instead, Defendants argue that the Magistrate Judge erred in treating *Porter v. Clarke*, 923 F.3d 348 (4th Cir. 2019), as though it establishes that segregated housing violates the Eighth Amendment in all circumstances, when, in fact, the Fourth Circuit expressly disavowed that conclusion. Defs.' Objections at 19–20. In *Porter*, the Fourth Circuit explained that "prison officials tasked with the difficult task of operating a detention center may reasonably determine that prolonged solitary detention of the inmate is necessary to protect the well-being of prison employees, inmates, and the public or to serve some other legitimate penological objective." 923 F.3d at 363. It was thus error for the Magistrate Judge to treat *Porter* as dispositive of the Eighth Amendment inquiry here. And, as Defendants argued, a key distinction between this case and *Porter*, which the Magistrate Judge should have considered, is that the defendants in *Porter* did not assert, on appeal, any penological justification for the prolonged confinement. Defs.' Objections at 20 (citing *Porter*, 923 F.3d at 363). Plaintiffs respond that this Court cannot consider any legitimate penological interest at the motion-to-dismiss stage. Opp'n at 18. But that argument is belied by Fourth Circuit cases in which that court has considered penological interests at the motion-to-dismiss stage. *See, e.g.*, *Fauconier*, 966 F.3d 265.

Second, Plaintiffs contend that the Magistrate Judge made the requisite finding of deliberate indifference. That is incorrect. The Magistrate Judge never determined that Plaintiffs

8

alleged sufficient facts showing that Defendants subjectively drew the inference that "a substantial risk of harm exists," *Farmer v. Brennan*, 511 U.S. 825, 837 (1994), or that the risk of harm was obvious—*and* that, through enactment of the Step-Down Program or otherwise, VDOC officials were subjectively indifferent because they failed to "respond[] reasonably" to that risk, R&R at 76–78. *See Farmer*, 511 U.S. at 844. Unable to defend the Magistrate Judge's failure to make this required finding, Plaintiffs argue that the Complaint alleges facts sufficient to show that the risk of harm was obvious, given that medical and scientific literature had documented that "solitary confinement" poses a substantial risk of harm. Opp'n at 19–20. That argument is fatally flawed because Plaintiffs' allegations do not demonstrate that the circumstances of segregated housing ***at issue here*** posed a substantial risk of harm. Rather, the literature cited in the Complaint refers to "solitary confinement" ***in general***. Compl. ¶¶ 196–204. And, as Plaintiffs maintain, they do not challenge segregation in the abstract, but instead ***as implemented*** under the Step-Down Program. Opp'n at 17.

Plaintiffs also argue, citing *Porter* and *Incumaa v. Stirling*, 791 F.3d 517 (4th Cir. 2015), that "the Magistrate Judge also noted that the Fourth Circuit has at least twice held that solitary confinement conditions lead to the very harms alleged in the Complaint." Opp'n at 20. As an initial matter, the Magistrate Judge never determined that those decisions made the risk of harm "obvious" here. R&R at 78. And even if it had, such determination would have been in error because *Porter* did not hold that ***all*** "solitary confinement" is unlawful—only that the segregation at issue there was unlawful because it lacked penological justification. 923 F.3d at 363. Indeed, the court expressly recognized that segregated conditions could be permissible under the Eighth Amendment if justified by a legitimate penological interest. *Id.* Plaintiffs' argument—which would effectively collapse the objective and subjective prongs of the Eighth Amendment analysis into a

9

single inquiry—conflicts with the Supreme Court's express holding to the contrary in *Farmer*: "[W]e reject[] a reading of the Eighth Amendment that would allow liability to be imposed on prison officials solely because of the presence of objectively inhumane prison conditions." 511 U.S. at 838. Plaintiffs have not adequately pleaded facts from which it could be established that Defendants were subjectively indifferent to the conditions of confinement at ROSP—even if those conditions were "objectively inhumane"—and the Magistrate Judge did not find otherwise.

## V. Defendants are entitled to qualified immunity from Plaintiffs' § 1983 claims.

Plaintiffs' opposition fails to refute either of Defendants' principal arguments why the Magistrate Judge erred in recommending that the Court deny qualified immunity to Defendants.

First, Plaintiffs double-down on the Magistrate Judge's impermissible framing of the relevant rights at a "high level of generality." *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015). Specifically, they embrace the R&R's characterization that "Class Plaintiffs had a clearly established right to be free from inhumane conditions of confinement and 'to avoid deprivations that were not motivated by any legitimate penological justification.'" Opp'n at 24 (quoting R&R at 80). They also refer to their alleged equal protection right as an inmate's "right not to be 'treated differently from others with whom he is similarly situated.'" *Id.* at 25 (citation omitted). But as Defendants have pointed out, Supreme Court precedent instructs that the clearly established "inquiry must be undertaken ***in light of the specific context of the case, not as a broad general proposition***," *Mullenix*, 136 S. Ct. at 308 (quotations and citations omitted) (emphasis added), and has therefore rejected broad articulations very similar to the Magistrate Judge's. "The general proposition, for example, that an unreasonable search or seizure violates the Fourth Amendment is of little help in determining whether the violative nature of particular conduct is clearly established." *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011). *See also City of Escondido, Cal. v. Emmons*, 139 S. Ct. 500, 503 (2019) (overturning a denial of qualified immunity where a

court of appeals had "sa[id] only that the 'right to be free of excessive force' was clearly established").[3] The Magistrate Judge's formulations fail for the same reason.

Second, Plaintiffs persist in their erroneous conclusion that their rights, when properly defined, were clearly established at the time Defendants allegedly violated them. For instance, they assert that their Eighth Amendment right was clearly established as of "early 2014," Opp'n at 24, a proposition they say is supported by the *Latson* litigation. But there the Fourth Circuit said precisely the opposite in affirming the defendants' qualified immunity:

> Earlier this year, in *Porter v. Clarke*, we held that conditions similar to, and in some ways less draconian than, those imposed on Latson violated the Eighth Amendment. . . . We concluded that keeping prisoners in a cell at least 23 hours a day, alone, with "no access to congregate religious, educational, or social programming" posed "a substantial risk of serious psychological and emotional harm." Because of this substantial risk, . . . we affirmed the district court's grant of summary judgment to the prisoners on their Eighth Amendment claim.
>
> ***But this was not the state of the law at the time of Latson's incarceration.*** Although no longer good law, at the time of Latson's incarceration (2014–2015) we had held that long-term solitary confinement did not violate the Eighth Amendment. *In re Long Term Admin. Segregation of Inmates Designated as Five Percenters*, 174 F.3d 464, 471–72 (4th Cir. 1999); *Sweet v. S.C. Dep't of Corr.*, 529 F.2d 854, 861 (4th Cir. 1975) (en banc); *Breeden v. Jackson*, 457 F.2d 578, 581 (4th Cir. 1972). . . .
>
> Accordingly, notwithstanding the . . . conditions imposed on Latson, we can only conclude that [prison] staff are entitled to qualified immunity.

---

[3] Other examples abound. *See, e.g.*, *Kisela v. Hughes*, 138 S. Ct. 1148, 1153 (2018) ("[I]t does not suffice for a court simply to state that an officer may not use unreasonable and excessive force, deny qualified immunity, and then remit the case for a trial on the question of reasonableness."); *Day v. Wooten*, 947 F.3d 453, 461 (7th Cir. 2020) ("To defeat qualified immunity, however, the right must be defined more specifically than simply the general right to be free from unreasonable seizure.").

11

*Latson v. Clarke*, 794 F. App'x 266, 269–70 (4th Cir. 2019) (internal citations omitted) (emphasis added). Plaintiffs also misconstrue *Porter*'s significance when they conclude that "the Eighth Amendment law was clearly established before 2019 because Porter's suit was filed in November 2014." Opp'n at 24 (citing *Porter*, 923 F.3d at 371). Not so. If Plaintiffs were right, then *Latson*—decided after *Porter* and concerning conduct in 2015—would not have come out the way it did.

Plaintiffs make a similar mistake with respect to their alleged due-process right. They say that the relevant right was "extant" in 1983, the year the Supreme Court issued *Hewitt v. Helms*, a conclusion they also assign to the Magistrate Judge. *See* Opp'n at 25. But another case they cite, *Williamson v. Stirling*, 912 F.3d 154 (4th Cir. 2018), held that the defendants there could be entitled to qualified immunity with respect to conduct occurring before July 2015 (*i.e.*, long after 1983), *id.* at 189, when the Fourth Circuit issued *Incumaa*. And in the recent *Smith* case, an as-applied challenge to the Step-Down Program, the Fourth Circuit left open whether *Incumaa* inhered in this context. It simply said, "to the extent Defendants imply that the question of whether Smith had a clearly established protected liberty interest is straightforward on the present record, we note our skepticism."[4] 964 F.3d at 282 n.11.

As to Plaintiffs' equal protection right, the Magistrate Judge did not define it in this context. *See* R&R at 81. Nor, contrary to Plaintiffs' assertion, did the Magistrate Judge conclude that any such right was "clearly established at all relevant times." Opp'n at 25. And while Plaintiffs are quick to reject the relevant decisions cited by Defendants—which, though unpublished, were

---

[4] Plaintiffs unfairly charge that Defendants "misrepresented" this language in their objection. Opp'n at 25 (citing Defs.' Objections at 26). But it is undeniable that the Fourth Circuit "note[d its] skepticism" that the "question . . . is straightforward"—regardless of which party there raised the "question." 964 F.3d at 282 n.11.

affirmed by the Fourth Circuit[5]—they fail to cite a single decision providing clear notice of an equal protection right in this context. Opp'n at 25–26.

**VI.  The Magistrate Judge erroneously concluded that Plaintiffs stated ADA and Rehabilitation Act claims that are not time-barred.**

Plaintiffs make three responses to Defendants' objections regarding their ADA and Rehabilitation Act claims. None is persuasive.

First, as Defendants have shown, Plaintiffs' official-capacity ADA and Rehabilitation Act claims should be dismissed as duplicative of the claims against VDOC. Defs.' Objections at 28. Citing *Chase v. City of Portsmouth*, 428 F. Supp. 2d 487, 489–90 (E.D. Va. 2006), Plaintiffs respond that official-capacity claims ***may be*** maintained even if the entity is also a party, Opp'n at 26–27, but they offer no basis for retaining those claims here. In *Chase*, the court's decision turned on the fact that official-capacity claims against elected city council members, in addition to those against the entity, "provide[] a certain level of public accountability." *Chase*, 428 F. Supp. 2d at 490. Plaintiffs do not provide any such reason for maintaining the duplicative claims here.

Second, Defendants showed that Plaintiffs' ADA and Rehabilitation Act claims are time-barred because they have not identified any discrete act of discrimination that occurred within the limitations period. Defs.' Objections at 28–30. Plaintiffs argue, to the contrary, that they satisfied the continuing-violation standard by alleging that the Building Management Committee conducts monthly status reviews and that Defendants discriminate against disabled offenders at each status review. Opp'n at 27–28. But they do not cite any factual allegation in the Complaint to support their assertion that discrimination occurs at each review. Opp'n at 28. Plaintiffs also defend the

---

[5] *See, e.g.*, *Mukuria v. Clarke*, No. 7:15-cv-00172, 2016 WL 5396712, at *10–11, *aff'd*, 706 F. App'x 139 (4th Cir. 2017); *DePaola v. Va. Dep't of Corrs.*, 2016 U.S. Dist. LEXIS 132980, at *32–34 (W.D. Va. Sept. 27, 2016), *aff'd*, 703 F. App'x 205 (4th Cir. 2017).

Magistrate Judge's conclusion that their claims fall within the limitations period because Plaintiffs' alleged mental-health issues could have affected their ability to recognize their injuries. Opp'n at 28. But the existence of mental-health issues does not, in itself, establish that those issues interfered with Plaintiffs' ability to recognize their injuries, and Plaintiffs allege no facts showing any such interference.

Finally, this Court should reject the Magistrate Judge's conclusion that Plaintiffs stated ADA and Rehabilitation Act claims. In their opposition, Plaintiffs attempt to show that their claims survive dismissal by clarifying that they are challenging "the benefit through which [offenders] *progress* out of segregation, not the segregation itself." Opp'n at 29 (emphasis in original). But Plaintiffs clearly seek to invalidate the Step-Down Program as a means out of segregation. Plaintiffs also argue that they met their obligation to allege either that they made an accommodation request or that the need for accommodation was obvious because of Plaintiffs' mental illness. Opp'n at 29. But Plaintiffs' requirements to show a disability and to show that they requested accommodation are separate. *See Bane v. Va. Dep't of Corr.*, No. CIV.A. 705CV00024, 2005 WL 1388924, at *4 (W.D. Va. June 9, 2005) ("[T]he inmate must provide evidence of his disability and the severity of the mental or physical limitations from it ***and*** he must request accommodation." (emphasis added)). Plaintiffs' argument would collapse the two factors and make the requirement to show a request for accommodation (or, in the alternative, to show the need for accommodation was obvious) superfluous.[6]

---

[6] Plaintiffs argue that courts have interpreted *Constantine*'s "motivating role" standard as requiring only discrimination "on the basis of disability." Opp'n at 30 n.9 (discussing *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 498 n.17 (4th Cir. 2005)). But neither of the cases Plaintiffs cite supports that proposition. First, *Baird v. Rose*, 192 F.3d 462 (4th Cir. 1999), was decided before *Constantine*. Second, *Reyes v. Clarke*, No. 3:18CV611, 2019 WL 4044316 (E.D. Va. Aug. 27, 2019), does not apply the meaning of "motiving role" at all, but merely states

14

## CONCLUSION

The Court should sustain Defendants' objections and grant their motions to dismiss in full.

October 9, 2020                                                    Respectfully submitted,

/s/ *Maya M. Eckstein*
Maya M. Eckstein (VSB #41413)
Mark R. Herring                                                    Trevor S. Cox (VSB #78396)
*Attorney General of Virginia*                                     HUNTON ANDREWS KURTH LLP
                                                                   951 E. Byrd St.
Margaret Hoehl O'Shea (VSB #66611)                                 Richmond, VA 23219
Assistant Attorney General,                                        Ph: (804) 788-8200
Criminal Justice & Public Safety Division                          Fax: (804) 788-8218
                                                                   meckstein@HuntonAK.com
OFFICE OF THE ATTORNEY GENERAL                                     tcox@HuntonAK.com
202 North Ninth Street
Richmond, VA 23219
Ph: (804) 786-2206 – Telephone
Fax: (804) 786-4239 – Facsimile
moshea@oag.state.va.us                                             *Counsel for Defendants*

---

in conclusory fashion that Reyes alleged facts sufficient to show discrimination on the basis of disability.

## CERTIFICATE OF SERVICE

I hereby certify that on the 9th day of October, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing to all CM/ECF participants.

By: */s/ Maya M. Eckstein*
Maya M. Eckstein (VSB # 41413)
Hunton Andrews Kurth LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, Virginia 23219-4074
Telephone: (804) 788-8200
Facsimile: (804) 788-8218
meckstein@HuntonAK.com

*Counsel for Defendants*