# Exhibit 1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## BIG STONE GAP DIVISION

|  |  |
|---|---|
| WILLIAM THORPE, *et al.*,<br><br>           *Plaintiffs*,<br><br>           v.<br><br>VIRGINIA DEPARTMENT OF<br>CORRECTIONS, *et al.*,<br><br>           *Defendants*. | CASE NO. 2:20-cv-00007-JPJ-PMS |

### CLASS PLAINTIFFS' SURREPLY BRIEF IN RESPONSE TO
### DEFENDANTS' OBJECTIONS TO REPORT AND RECOMMENDATION

Defendants' Reply includes novel arguments that they failed to bring either in their briefing

before the Magistrate Judge or in their Objections.  *See* Defs.' Reply Br. Supp. Obj. R&R (W.D.

Va. Oct. 9, 2020), ECF No. 78 (hereinafter "Reply").  While the contentions are new, the theme is

not.  Since Class Plaintiffs brought this case, Defendants have sought to ignore the detailed factual

allegations of the Complaint in favor of their own preferred statement of the facts.  The Magistrate

Judge refused this invitation to err.  This Court should, too.

**I.     DEFENDANTS' NEW OBJECTIONS ON REPLY MISREPRESENT THE
        MAGISTRATE JUDGE'S QUALIFIED IMMUNITY ANALYSIS**

As the Magistrate Judge noted, qualified immunity does not protect state officials who are

aware of a grave threat to a prisoner's health but choose to do nothing, and thus "knowingly violate

the law."  R&R 79; *see Odom v. S.C. Dep't of Corr.*, 349 F.3d 765, 772-74 (4th Cir. 2014) (holding

that prison staff were not entitled to qualified immunity from an Eighth Amendment claim where

plaintiff alleged staff had specific knowledge of a threat to safety and failed to intervene).  The

Complaint alleges that, by 2012, Defendants knew that solitary confinement conditions at Red

Onion and Wallens Ridge cause grave mental and physical harms, but decided to retain prisoners in these conditions for years.  Compl. ¶¶ 196-204, 246-49.  The Magistrate Judge concluded that the Complaint's allegations are sufficient to overcome the defense of qualified immunity at this early stage.  R&R 80-81.  Defendants' new arguments on reply do not undermine that conclusion.

  1. **The Magistrate Judge's articulation of Class Plaintiffs' constitutional rights followed Fourth Circuit precedent.**  As they have unsuccessfully argued in several other cases,[1] Defendants' Objections contended that the Magistrate Judge erred in "defining" Class Plaintiffs' constitutional rights without regard to the "specific circumstances" of this case.  Defs.' Obj. R&R 23.  As Class Plaintiffs demonstrated in their Response, the Magistrate Judge merely reiterated the constitutional rights that this Court, the Fourth Circuit, and the Supreme Court defined for prisoners in similar circumstances.  *See* Pls.' Resp. 23 & n.8 (W.D. Va. Oct. 2, 2020), ECF No. 75; *see also*, *e.g.*, *Latson v. Clarke* (*Latson I*), 249 F. Supp. 3d 838, 860 (W.D. Va. 2017) ("The Eighth Amendment 'protects inmates from inhumane treatment and conditions while imprisoned.'").

  Defendants now argue for the first time that the Magistrate Judge erred simply because the rights she repeated were too "general" in the *abstract*, without regard to the Fourth Circuit precedent that articulated these rights, or the similarities between those cases and this one.  *See* Reply 10 (arguing that courts have "rejected broad articulations very similar to the Magistrate Judge's").  Defendants offer no authority that required the Magistrate Judge to phrase Class Plaintiffs' rights more specifically than courts already have in similar cases.  In *al-Kidd* and *Emmons*, for example, the Ninth Circuit attempted to divine specific *Fourth Amendment* rights

---

[1] *See, e.g.*, *Wall v. Wade*, 741 F.3d 492, 502-503 (4th Cir. 2014); *Lovelace v. Clarke*, No. 2:19-cv-75, 2019 U.S. Dist. LEXIS 133012, at *14-21 (E.D. Va. Aug. 7, 2019); *Riggleman v. Clarke*, No. 5:15-cv-0063, 2018 U.S. Dist. LEXIS 23980, at *13-14 (W.D. Va. Feb. 13, 2018).

(which require heightened scrutiny) from entirely different factual contexts.  *See City of Escondito v. Emmons*, 139 S. Ct. 500, 503 (2019) (explaining that "[s]pecificity is especially important in the Fourth Amendment context" (quoting *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018)).  In *al-Kidd*, the Ninth Circuit relied on (1) one district court decision; (2) cases that the Supreme Court "rejected as irrelevant in [its] discussion of whether there was any constitutional violation at all"; and (3) the "history and purposes of the Fourth Amendment."  *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011).  Likewise, in *Emmons*, the Ninth Circuit "made no effort to explain how [prior] case law prohibited [the officer's] actions," and merely noted that the Fourth Amendment bars excessive use of force.  139 S. Ct. at 503.  By contrast, the Magistrate Judge's articulation of Class Plaintiffs' rights hewed closely to prior decisions in this context.  Pls.' Resp. 22-23 & n.8.

**2.  The Magistrate Judge faithfully applied this Court's direction in *Latson I* on how to evaluate assertions of qualified immunity at the pleading stage.**  Previously, Defendants argued that the Magistrate Judge erred in relying on this Court's decision in *Latson I* that Defendants were not entitled to qualified immunity *at the pleading stage*.  249 F. Supp. 3d at 867; Defs.' Obj. R&R 22 (arguing that the R&R correctly states that qualified immunity is "often tested at summary judgment," not the pleading phase).  Now, Defendants argue for the first time that they are entitled to qualified immunity under this Court's subsequent decision in *Latson II* to grant Defendants immunity after discovery.  *Latson v. Clarke* (*Latson II*), 346 F. Supp. 3d 831 (W.D. Va. 2018), *aff'd*, 794 F. App'x 266 (4th Cir. 2019).  The Magistrate Judge's application of *Latson I* to the Complaint was correct.

As Defendants acknowledge, this Court explained in *Latson I* that "most often . . . qualified immunity is tested at the summary judgment stage after the facts have been developed through discovery."  249 F. Supp. 3d at 867 (quoting *Alford v. Cumberland Cty.*, No. 06-1569, 2007 U.S.

3

App. LEXIS 24138, at *9 (4th Cir. Oct. 15, 2007)).  "[A]t the motion to dismiss stage, [the] court can only consider the facts alleged by the plaintiff and must view them in the light most favorable to the plaintiff."  *Id.*  It has been clearly established that "[a] prisoner has an Eighth Amendment right to humane conditions of confinement" and the "right to receive the minimal civilized measure of life's necessities."  *Id.* (internal quotation marks omitted); *see Brown v. Mitchell*, 327 F. Supp. 2d 615, 650 (E.D. Va. 2004) ("Officials may not house prisoners under conditions that deprive them of one or more basic human needs.").  The qualified-immunity analysis here hinges on whether a reasonable official armed with Defendants' knowledge would conclude that the conditions alleged by Class Plaintiffs deprived them of basic human needs.  *See Brown*, 327 F. Supp. 2d at 650 (denying qualified immunity where prison official "knew that the overcrowded conditions at the Jail presented an unacceptably high risk of the spread of contagious disease").

Because the Complaint alleges that Defendants knew that Class Plaintiffs' conditions of confinement deprived them of basic human needs, and thus "knowingly violate[d] the law," their qualified-immunity defense fails at this pre-discovery stage.  *See* R&R 8, 79 (quoting *Malley*, 475 U.S. at 341); *Latson I*, 249 F. Supp. at 853 (crediting allegations of Defendant Clarke's knowledge at the pleading stage); *Mitchell v. Rice*, 954 F.2d 187, 192 (4th Cir. 1992) (denying prison officials' qualified-immunity defense to claims alleging denial of out-of-cell time where "[w]ithout additional evidence, these conditions could be said to violate our evolving constitutional standards of decency for prison confinement"); Pls.' Opp'n Defs.' Mot. Dismiss 22 (E.D. Va. July 9, 2019), ECF No. 26 (citing Compl. ¶¶ 196-204, 246-49).  The parties are currently engaged in discovery on the subject of Defendants' knowledge.  *See Turner v. Kinder*, No. 7:07-cv-0419, 2008 U.S. Dist. LEXIS 18143 (W.D. Va. Mar. 10, 2008) (denying qualified immunity in prison case where

"the discovery requested by Turner could contribute to the determination of whether defendants acted maliciously and sadistically for the very purpose of causing harm").

The Magistrate Judge's application of *Latson I* to the Complaint is consistent with *Latson II*, which concluded that Defendants were entitled to qualified immunity on a developed factual record. *Latson II*, 794 F. App'x at 270. The Fourth Circuit's observation that no court "at the time of Latson's incarceration" had found solitary confinement to violate the Eighth Amendment, citing *Porter* and *Mickle*, did not relate to whether prisoners' rights under those conditions were clearly established. *Id.* As the *Porter* court explained, the difference between *Porter* and *Mickle* was factual: "[T]he *Mickle* plaintiffs failed to establish an evidentiary record that would have allowed this Court to find that prolonged solitary confinement poses a serious risk of psychological harm," but the *Porter* plaintiffs offered this evidence, as will Class Plaintiffs. *Porter v. Clarke*, 923 F.3d 348, 359 (4th Cir. 2019) (explaining that *Porter* did not "overrule *Mickle*"); *see Latson II*, 794 F. App'x at 270 (noting that Latson failed to offer evidence of when Defendant Clarke knew of Latson's unconstitutional conditions). Because Defendants' qualified-immunity defense does not "turn[] on a question of law," but of fact, it fails at this stage. R&R 80.

In any event, Defendants' new arguments under *Latson II* would not require dismissal of Class Plaintiffs' Eighth Amendment damages claims because (1) the Complaint's relevant time period runs from 2012 to the present, and Defendants only argue that the relevant law was not clearly established in 2015; and (2) Defendants do not claim qualified immunity from Class Plaintiffs' separate Eighth Amendment claim for wanton infliction of pain without a penological purpose. *See generally* Pls.' Opp'n Defs.' Mot. Dismiss 17-21. The Magistrate Judge concluded that both of these rights were clearly established prior to *Latson*. R&R 80.

5

**3. Defendants misrepresent the Fourth Circuit's denial of qualified immunity for procedural due process violations in *Williamson v. Stirling*.** For the first time in their Reply, Defendants argue that *Williamson* undermined the clarity of *Hewitt* and *Wilkinson* when it held "that the defendants there could be entitled to qualified immunity with respect to conduct occurring before July 2015." Reply 12. This argument is meritless. The Fourth Circuit granted qualified immunity in *Williamson* because *Hewitt* and *Wilkinson*, which concerned procedures applicable to prisoners in administrative segregation (as here), had not been applied to pretrial detainees. *Williamson v. Sterling*, 912 F.3d 154, 188 (4th Cir. 2018). In fact, even in the jail context, the Court concluded that the defendants were not entitled to qualified immunity for their conduct after 2015, when the Fourth Circuit decided *Incumaa*. *Id.* at 188-89.

**II.       DEFENDANTS' BELATED REFRAMING OF THE COMPLAINT'S DUE PROCESS FACTUAL ALLEGATIONS DOES NOT UNDERMINE THE MAGISTRATE JUDGE'S ANALYSIS**

Defendants attempt to distinguish this case from *Smith* on the basis that the Complaint mounts a facial, and not an as-applied, challenge. Reply 5-6. Defendants did not make this argument to the Magistrate Judge, or respond to her invitation to file a brief in response to Class Plaintiffs' notice of supplemental authority regarding *Smith* (ECF No. 69). The language Defendants cherry-pick from briefs explaining that Class Plaintiffs' claims are not "individualized" relate to the class-action nature of this case and do not supplant the Complaint's challenge to the manner in which VDOC staff interpret and apply vague policy provisions. Reply 5 n.2.[2]

---

[2] *See, e.g.*, Compl. ¶¶ 156-65 (alleging that VDOC uses the programming, disciplinary infraction, and responsible behavior Step-Down Categories to continue solitary confinement of prisoners who no longer present legitimate security risks, especially prisoners with disabilities and language barriers); *id.* ¶ 186 (alleging that the ERT has not reviewed many prisoners despite policy requiring semi-annual ERT reviews).

In their Reply, Defendants also argue for the first time that Class Plaintiffs' factual allegations are insufficient to state a facial due process challenge under *Smith*, submitting that "Plaintiffs implicitly acknowledge that the Step-Down Program has provided a viable pathway for at least some offenders to transition out of Security Level S." Reply 5. This misrepresentation of the Complaint comports with VDOC's use of "malleable jargon . . . to conceal what is nothing more than an indefinite or permanent solitary confinement regime." R&R 2 (quoting Compl. ¶ 16). As the Magistrate Judge acknowledged, the Complaint alleges that although the Step-Down Program creates the illusion of a pathway to the general population for *SM* prisoners, *IM* prisoners "are ineligible for the Step-Down Program or return to the general population," and Defendants do not provide meaningful and adequate periodic review for prisoners in either category. R&R 26; *see id.* at 22-28.

**III.     DEFENDANTS' NEW ARGUMENTS DO NOT SAVE THEM FROM LIABILITY UNDER THE 1985 SETTLEMENT AGREEMENT**

**1. At this stage of the proceedings, the ongoing enforceability of the 1985 Settlement Agreement may not be determined with reference to documents extrinsic to the Agreement or Complaint.** Though they did not raise this point in their Objections, Defendants belatedly argue that this Court can use "judicial notice" to cast aside the Magistrate Judge's recommendation—based on Class Plaintiffs' well-pleaded allegations—that the ongoing enforceability of the Agreement cannot be determined on a motion to dismiss. *See* Reply 3. *But see* R&R 67-68 (applying binding Virginia law to recommend that the issue is "for the trier of fact to decide upon the evidence of the parties' intentions"). But Defendants are not asking this Court simply to take judicial notice of their materials, they ask the Court to credit their *factual assertion*, based on these materials, that the parties intended the Agreement to be conditioned on "ongoing judicial enforcement." Reply 2. For two reasons, Fourth Circuit law forbids this.

First, Class Plaintiffs did not attach these materials to the Complaint, and their claim does not arise from them—it arises from the Agreement which, on its face, is not conditioned on ongoing judicial enforcement. *See* Pls.' Mem. Opp'n VDOC Mot. Dismiss 2-3, 8-10 (E.D. Va. June 14, 2019), ECF No. 23. As the Magistrate Judge recognized, the Complaint alleges that Defendants' creation and implementation of the Step-Down Program, and placement of Class Plaintiffs in the IM and SM Pathways, breaches Defendants' ongoing obligations under the Agreement to "never reestablish anything like the [Mecklenburg] SMU or Phase Program." Compl. ¶ 227; R&R 70; *see also* Compl. ¶¶ 119, 130-33, 179, 224-30. At this stage, the Court must credit all disputed facts and reasonable inferences in Class Plaintiffs' favor. *See* Pls.' Mem. Opp'n VDOC Mot. Dismiss 3.

Second, Defendants may not seek judicial notice of extrinsic facts to contradict Class Plaintiffs' well-pleaded allegations. *See id.* Yet Defendants ask this Court to do just that in order "[t]o determine the ongoing enforceability of the 1985 Settlement Agreement." Reply 3. While this Court may take judicial notice of the "existence of the documents," it cannot take notice of Defendants' "own interpretation of the contents of those documents," especially because "[t]he parties clearly and reasonably disagree about the meaning to be ascribed to" them. *Ohio Valley Envtl. Coal. v. Aracoma Coal Co.*, 556 F.3d 177, 217 (4th Cir. 2009). Recognizing this binding precedent, the Magistrate Judge declined to consider these documents. *See* R&R 65. So too should this Court.

**2. The Office of the Attorney General of Virginia waived the Commonwealth's, and thus VDOC's, Eleventh Amendment immunity with respect to enforcement of the Agreement.** Defendants' new contention that the signatures of two Assistant Attorneys General to the Agreement—which binds VDOC and its "agents, employees, and successors in office"

8

(Compl. ¶¶ 74-75; R&R 15)—waived neither the sovereign immunity of Virginia nor that of VDOC is incorrect.  *See* Reply 3.  As a matter of law, these signatures amount to a *voluntary* waiver of immunity by the Commonwealth itself regarding enforcement of the Agreement in federal court.  *See* Pls.' Mem. Opp'n Defs.' Mot. Dismiss 27.[3]

Neither may Defendants disclaim Virginia's voluntary waiver on the assertion that VDOC "was not a party" to the Agreement.  Reply 3.  The Agreement defines VDOC as "includ[ing] all of the defendants, their agents, employees and successors in office."  Compl. Ex. 3, at 1 (E.D. Va. May 6, 2019), ECF No. 1-6.  More importantly, by signing the Agreement, which states that "the parties shall request that the Court retain jurisdiction for such time as the Court deems necessary to enforce compliance with this agreement and any decrees which may issue herein" (Compl. Ex. 3 ¶ 37), the Office of the Attorney General waived Virginia's sovereign immunity specifically to enforce these obligations against VDOC (*see Pettigrew v. Okla. ex rel. Okla. Dep't of Pub. Safety*, 722 F.3d 1209, 1214-16 (10th Cir. 2013) (settlement agreement venue clause allowing suits "brought in the appropriate Oklahoma court having jurisdiction, either state or federal" waived Eleventh Amendment immunity (citation omitted))).  As the Magistrate Judge found, this language is "sufficient to waive the state's immunity."   R&R 69.   This Court should adopt this recommendation.

---

[3]  If Defendants' argument is construed as a denial of the authority of the Office of the Attorney General to waive Eleventh Amendment immunity in settlement agreements entered by Virginia and its agencies in federal litigation, then Class Plaintiffs are entitled to jurisdictional discovery of memoranda, procedures, opinions, and similar documents authored or maintained by the Office of the Attorney General concerning the authority to waive Eleventh Amendment immunity.  *See Oracle Am., Inc. v. Or. Health Ins. Exch. Corp.*, 145 F. Supp. 3d 1018, 1036-37 (D. Ore. 2015) (holding such documents relevant to whether an assistant attorney general possessed Eleventh Amendment waiver authority).

## CONCLUSION

For the foregoing reasons, as well as those stated in prior briefs, Class Plaintiffs respectfully ask this Court to deny Defendants' motions to dismiss in their entirety.

Dated:  October 19, 2020                    Respectfully submitted,

By:  /s/ Alyson Cox Yates
Alyson Cox Yates (VSB No. 90646)
Daniel Levin (*pro hac*)
Kristen J. McAhren (*pro hac*)
Maxwell J. Kalmann (*pro hac*)
Timothy L. Wilson, Jr. (*pro hac*)
**WHITE & CASE**
701 Thirteenth Street, NW
Washington, DC 20005
T: (202) 626-3600
F: (202) 639-9355
alyson.cox@whitecase.com


Owen C. Pell (*pro hac*)
**WHITE & CASE**
1221 Avenue of the Americas
New York, New York 10020
(212) 819-8200

Vishal Agraharkar (VSB No. 93265)
Eden Heilman (VSB No. 93554)
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF VIRGINIA
701 E. Franklin St. Suite 1412
Richmond, Virginia 23219
(804) 644-8022
vagraharkar@acluva.org
eheilman@acluva.org

*Counsel for Class Plaintiffs*

10

**CERTIFICATE OF SERVICE**

I hereby certify that on October 19, 2020, a copy of the foregoing document was filed

electronically.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's

electronic filing system.  Parties may access this filing through the Court's CM/ECF system.

Dated:  October 19, 2020                              Respectfully submitted,

                                                    By: /s/ Alyson Cox Yates
                                                        Alyson Cox Yates (VSB No. 90646)
                                                        **WHITE & CASE**
                                                        701 Thirteenth Street, NW
                                                        Washington, DC 20005
                                                        T: (202) 626-3600
                                                        F: (202) 639-9355
                                                        alyson.cox@whitecase.com

                                                        *Counsel for Class Plaintiffs*