# Exhibit 1

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
BIG STONE GAP DIVISION**

| | |
|---|---|
| WILLIAM THORPE, *et al.*,<br><br>     *Plaintiffs*,<br><br>    v.<br><br>VIRGINIA DEPARTMENT OF<br>CORRECTIONS, *et al.*,<br><br>     *Defendants*. | CASE NO. 2:20-cv-00007-JPJ-PMS |

**CLASS PLAINTIFFS' REPLY BRIEF IN SUPPORT
OF OBJECTION TO MAGISTRATE JUDGE'S REPORT & RECOMMENDATION**

Defendants' Brief in Opposition to Plaintiffs' Objection to the Magistrate Judge's Report and Recommendation ("Defs.' Opp'n," ECF No. 74) largely side steps the arguments in Class Plaintiffs' specific Objection and underscores why the Magistrate Judge's recommendation to dismiss the breach-of-contract claim was erroneous.  First, Defendants do not dispute that several of the Named Plaintiffs—and potentially hundreds of class members—suffered no legal injury under the Agreement until Defendants assigned them to the Step-Down Program in 2015 or later. Second, Defendants ignore that the Complaint pleads a series of intermittent breaches that, as a matter of law, place Class Plaintiffs' breach-of-contract claim within the statute of limitations.

I.  **POTENTIALLY HUNDREDS OF PRISONERS HAD NO CLAIM UNTIL THEY WERE PLACED IN THE STEP-DOWN PROGRAM IN 2015 OR LATER**

The Magistrate Judge recommends running the five-year limitations period for the entire class from 2012, when Defendants breached the Agreement as to a small subset of prisoners whom VDOC placed in the first version of the Step-Down Program at that time.  R&R 70.  This error of law is then embraced by Defendants, who never in their Opposition dispute three points of law:

*First*, accrual of a breach-of-contract claim cannot precede the creation of a contractual obligation to the plaintiff. Pls.' Obj. R&R 6, ECF No. 71. *Second*, Defendants had no contractual obligation in 2012 to class members placed in the Step-Down Program or IM Pathway in *2015 or later*. *Id.* at 5, 6. *Third*, the fact that the broader class includes some prisoners whose contract claims have expired does not require dismissing the contract claims of prisoners who brought suit within the limitations period (i.e., this is an issue for class certification). *Id.* at 8-9. Rather than address these legal issues, Defendants erroneously construe Class Plaintiffs' argument about when Defendants breached the Agreement as one about when certain class members suffered compensatory damages. *See* Defs.' Opp'n 6 (citing R&R 70 (quoting *Fluor Fed. Sols., LLC v. PAE Applied Techs., LLC*, 728 F. App'x 200, 203 (4th Cir. 2018))). That is not a basis for upholding the Magistrate Judge's R&R on this point.

As made clear by the Fourth Circuit, this Court may not credit Defendants' statute-of-limitations defense unless "all facts necessary to [it] 'clearly appear[] on the face of the complaint.'" *Goodman v. PraxAir, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (quoting *Richmond, Fredericksburg & Potomac R.R. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993)). Nowhere in the Complaint do Class Plaintiffs allege that Defendants breached the Agreement *as to all* class members in 2012. Rather, the Complaint makes clear that Defendants breached the Agreement as to individual class members when they were "place[d]" in the Program (Compl. ¶ 179), and that several of the named Plaintiffs did not enter the Step-Down Program until 2015 or later (*id.* ¶¶ 28, 30-31, 34-35). Ignoring these allegations, Defendants misapply the principle that a limitations period does not *toll* when "the actual or substantial damages do not occur until a later date." Defs.' Opp'n 7 (quoting *Kerns v. Wells Fargo Bank, N.A.*, 818 S.E.2d 779, 785 (Va. 2018)); *see also Fluor Fed. Sols., LLC*, 728 F. App'x at 203 (quoting *Caudill v. Wise Rambler, Inc.*, 168 S.E.2d

257, 260 (Va. 1969)).  That principle does not answer the question at bar:  When did each of the Named Plaintiffs (and class members) accrue a cause of action?  As the Supreme Court of Virginia explained in *Vam Dam v. Gay*, the statute of limitations runs from the moment that the plaintiff suffers "legal injury" due to breach of a contractual obligation, *even if* "all the damages resulting from the injury do not occur at the time of the injury."  699 S.E.2d 480, 482-83 (Va. 2010).  Like in *Kerns*, although Class Plaintiffs' compensatory damages stemming from mental and physical harms may not have manifested until later, Class Plaintiffs suffered both breach and legal injury (i.e., at least nominal damages) the moment they were placed in the Step-Down Program or IM Pathway in violation of the Settlement Agreement—but not a day earlier.  *See* 818 S.E.2d at 785 (explaining that the limitations period for a contract claim runs from when the plaintiff may sue for nominal damages).  Defendants, like the Magistrate Judge, misread *Fluor*, *Van Dam*, and *Kerns*.

For similar reasons, Defendants cannot rely on *Hunter*, *Westminster*, and *Harvey*.  Defs.' Opp'n 5-6.  Unlike here, the plaintiffs in those cases failed to bring suit within five years of suffering *a legal injury* but argued that their consequential damages occurred five or fewer years before filing suit.  *See Hunter v. Custom Bus. Graphics*, 635 F. Supp. 2d 420, 433 (E.D. Va. 2009) ("Defendants regularly and systemically applied the same rates and terms . . . as the result of the breaches which occurred in 1990 and 1997, respectively."); *Westminster Investing Corp. v. Lamps Unlimited, Inc.*, 379 S.E.2d 316, 318 (Va. 1989) (explaining that the plaintiff sued for damages occurring nine years after the breach); *Harvey v. Merrill Lynch Life Ins. Co.*, No. 3:11-cv-00073, 2012 U.S. Dist. LEXIS 48725, at *22 (W.D. Va. Apr. 5, 2012) ("[O]nly one breach occurred in this case.").  These cases are the opposite of the Complaint in this case.

Finally, Defendants' argument that running the statute of limitations from 2012 "is consistent with the collective nature of [Class Plaintiffs'] suit" again ignores how courts routinely analyze a statute-of-limitations defense that addresses only a portion of a class. Defs.' Opp'n 8. "In most cases, statutes of limitations can be applied to the class as a whole or to large groups of class members; this makes the issue a common, not individualized, one and supports a finding that common issues predominate." 4 *Newberg on Class Actions* § 4.56-57 (5th ed. 2012). But if the Court concludes that the statute of limitations only has run on the claims of *some* class members, then it should allow Class Plaintiffs to define a Settlement Agreement subclass that excludes the expired claims, not dismiss claims that are firmly within the statute of limitations. *See id*. § 4.57 ("class counsel will often define the class as those with live claims"); *see also, e.g.*, *Hoxworth v. Blinder, Robinson & Co.*, 980 F.2d 912, 925 (3d Cir. 1992) (affirming class certification where, "although some of the class claims may have been beyond the limitations period for purposes of the securities law violation, they were timely with respect to the RICO claims"). In attempting to support the Magistrate Judge's recommendation on this point, Defendants have ignored well-established authority that would move this issue to the class certification phase where it belongs.

## II.   THE COMPLAINT ALLEGES THAT DEFENDANTS' BREACH OF THE SETTLEMENT AGREEMENT WAS INTERMITTENT, NOT CONTINUOUS

Defendants also ignore that the Complaint, as noted further below, alleges that Defendants' breach was of an *intermittent* nature because Defendants issued the Step-Down Program in several versions, articulating different justifications, standards, and confinement restrictions. Like the Magistrate Judge, Defendants mischaracterize the Complaint as relying on a continuous breach theory, and thereby ignore settled law establishing that the statute of limitations has not run on any class member's breach-of-contract claim. Defs.' Opp'n 5. Defendants' reliance on this argument cannot support the R&R.

4

Under Virginia contract law, continuous breaches do not restart the applicable statute of limitations, but intermittent breaches do. *See Merch. Realty, Inc. v. Hampton Rds. Mgmt. Assocs.*, 95 Va. Cir. 507, 508 (Va. Cir. Ct. 2017) ("With respect to the statute of limitations, there exists an important distinction between discrete and continuous harms.").  As the Fourth Circuit has explained, when a contract includes an ongoing duty, the defendant's sustained failure to perform that duty will produce a single continuous violation over time, even if the consequential damages mount "for years." *Fluor*, 728 F. App'x at 202.  But if the defendant repeatedly breaches a continuous obligation through *different conduct*, those wrongful acts are considered "intermittent" breaches and "give[] rise to a new and separate cause of action." *Id.* (citation omitted).  Further, if the provision at issue imposes a periodic duty, each breach constitutes a "new injury," even if the defendant repeatedly breaches the same provision of the contract through the same conduct. *See id.* at 203 (explaining that, in *American Physical Therapy Association v. Federation of State Boards of Physical Therapy*, 628 S.E.2d 928, 929-30 (Va. 2006), the defendant repeatedly violated a contractual provision by intermittently increasing license-examination fees).  In this case, Defendants engaged in both varieties of intermittent breach.

**1. Defendants repeatedly breached their periodic duty not to reinstitute the Phase Program and, if they contemplated a similar program, to provide detailed written notice of the program's features.**  Defendants agreed that "[i]f" they were to consider a future program similar to the Phase Program, they would provide written notice to Class Plaintiffs' counsel (and therefore the class) with a "detailed description" of the program.  Compl. Ex. 3 ¶ 1 (E.D. Va. May 6, 2019), ECF No. 1-6.  That notice would have empowered Class Plaintiffs to consider a possible breach-of-contract claim at the earliest opportunity.  But that is not what Defendants did.  Rather, as alleged in the Complaint, Defendants moved to terminate the consent decree on the basis that

VDOC had implemented policies "address[ing] the operational elements of the Decree" (Compl. ¶¶ 84-86), while surreptitiously planning to institute similar programs at Red Onion and Wallens Ridge within the next three years (*id.* ¶ 125). Because Defendants have consistently disregarded the Agreement's notice provision each time they have reissued a new version of the Step-Down Program, even as late as 2017, Class Plaintiffs' claims are timely because each new version is an intermittent breach.

**2. Defendants repeatedly violated their promise to discontinue permanent solitary confinement by issuing several versions of the Step-Down Program after 2012 that articulated different justifications, standards, and confinement restrictions for IM prisoners.** The Complaint refers to and attaches several versions of the Step-Down Program that created distinct policies and discrete harms, and identifies specific examples where those policies enacted significant changes after 2012. *See* Compl. ¶¶ 131, 133, 138, 140-41, 142, 149, 179, 182, 190-92 (citing various iterations of the Step-Down Program). Each new version was an intermittent breach because each created different justifications, standards, and restrictions on the class members.

For example, the Complaint refers to the 2017 iteration of the Step-Down Program, which purported to employ the External Review Team ("ERT") "to determine that continuing [a prisoner in the IM Pathway] is the best management approach." *Id.* Ex. 8, at 29-30 (E.D. Va. May 6, 2019), ECF No. 1-11; *see also id.* ¶ 182 ("In 2017, after facing several legal challenges to the IM Pathway, VDOC amended its policies to emphasize that the ERT reviews the status of each IM inmate" and "decides whether to assign particular IM prisoners to the SM Pathway and allow them the opportunity to rejoin the general population."); *see also id.* ¶ 185 (noting that the outcome of ERT review is "often predetermined"); *id.* ¶ 186 (alleging that "the ERT has not provided many IM prisoners with a review, despite years of solitary confinement"); *id.* ¶ 187 (highlighting that "[t]he

6

ERT does not provide prisoners with written explanations of its decisions" and its decisions are "not subject to appeal or complaint through VDOC's prisoner grievance procedures"). This change affected whether a prisoner remained on the IM Pathway and therefore had *any* possibility to return to general population—directly mirroring, and violating, Defendants' obligation to abolish its practice of permanent solitary confinement. *See id.* ¶¶ 224, 227. The 2015 Step-Down Program established the Building Management Committee ("BMC"), which was specifically tasked with "[a]ssigning offenders to [the IM Pathway]" (*compare id.* Ex. 10 at 13 (E.D. Va. May 6, 2019) ECF No. 1-13, *with id.* Ex. 11 at 12 (E.D. Va. May 6, 2019), ECF No. 1-14) and "review[ing] whether a prisoner's progress in the three Step-Down Categories merits progression to the next phase." *Id.* ¶ 169. Thus, the 2015 iteration of the Step-Down Program introduced a mechanism to assign prisoners to Defendants' permanent solitary confinement units—a mechanism *entirely absent* in 2014. Defendants may have subjected hundreds of class members to the Step-Down Program based on these changes, thereby violating their obligations to these prisoners under the Agreement in 2015 or later.

Defendants' argument that "the Complaint itself does not allege that the Step-Down Program was reissued" and "fail[s] to allege facts showing that [the alleged] policy amendments themselves breached the settlement agreements" misunderstands Rule 12. Defs.' Opp'n 3. The Court must read the Complaint's factual allegations together with the Step-Down policies attached to it "in the light most favorable to the plaintiff" and dismiss only where "the plaintiff can prove no set of facts which would support its claim and would entitle it to relief." *Neil v. Wells Fargo Bank, N.A.*, 596 F. App'x 194, 196 (4th Cir. 2014) (quoting *Mylan Labs, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993) (reversing dismissal of breach-of-contract claim). Thus, Defendants'

arguments for sustaining the R&R on this point cannot stand, and the Magistrate Judge's recommendation on the breach-of-contract action should be modified.

## **CONCLUSION**

For the foregoing reasons, as well as those stated in prior briefs, Class Plaintiffs respectfully ask this Court to reject the Magistrate Judge's recommendation to dismiss Class Plaintiffs' breach-of-contract claim.

Dated:  October 27, 2020                    Respectfully submitted,

By:  /s/ Alyson Cox Yates
      Alyson Cox Yates (VSB No. 90646)
      Daniel Levin (*pro hac*)
      Kristen J. McAhren (*pro hac*)
      Maxwell J. Kalmann (*pro hac*)
      Timothy L. Wilson, Jr. (*pro hac*)
      **WHITE & CASE**
      701 Thirteenth Street, NW
      Washington, DC 20005
      T: (202) 626-3600
      F: (202) 639-9355
      alyson.cox@whitecase.com

      Owen C. Pell (*pro hac*)
      **WHITE & CASE**
      1221 Avenue of the Americas
      New York, New York 10020
      (212) 819-8200

      Vishal Agraharkar (VSB No. 93265)
      Eden Heilman (VSB No. 93554)
      AMERICAN CIVIL LIBERTIES UNION
      FOUNDATION OF VIRGINIA
      701 E. Franklin St. Suite 1412
      Richmond, Virginia 23219
      (804) 644-8022
      vagraharkar@acluva.org
      eheilman@acluva.org

      *Counsel for Class Plaintiffs*

8

## CERTIFICATE OF SERVICE

I hereby certify that on October 27, 2020, a copy of the foregoing document was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's CM/ECF system.

Dated: October 27, 2020                    Respectfully submitted,

By: /s/ Alyson Cox Yates
Alyson Cox Yates (VSB No. 90646)
**WHITE & CASE**
701 Thirteenth Street, NW
Washington, DC 20005
T: (202) 626-3600
F: (202) 639-9355
alyson.cox@whitecase.com

*Counsel for Class Plaintiffs*