## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## BIG STONE GAP DIVISION

| | | |
|---|---|---|
| **WILLIAM THORPE, ET AL.,** | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 2:20CV00007 |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| **VIRGINIA  DEPARMENT  OF** | ) | By:  James P. Jones |
| **CORRECTIONS, ET AL.,** | ) | United States District Judge |
| | | |
| Defendants. | | |

*Alyson Cox Yates, Daniel Levin, Kristen J. McAhren, Maxwell J. Kalmann, and Timothy L. Wilson, Jr.,* WHITE & CASE LLP, *Washington, D.C., and Vishal Agraharkar and Eden Heilman,* AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF VIRGINIA, *Richmond, Virginia, for Plaintiffs; Mark R. Herring, Attorney General of Virginia, Margaret Hoehl O'Shea, Assistant Attorney General,* OFFICE OF THE ATTORNEY GENERAL, *Richmond, Virginia, and Maya M. Eckstein and Trevor S. Cox,* HUNTON ANDREWS KURTH LLP, *Richmond, Virginia, for Defendants.*

The 12 plaintiffs in this putative class action are prisoners at two Virginia maximum security prisons who have been held in solitary confinement.  The prisons operate a phased program — called the Step-Down Program — which purports to provide incentives to inmates in solitary confinement designed to lead to their eventual return to the general inmate population.  The plaintiffs contend that the actual operation of the Step-Down Program violates their rights under federal law and is in breach of a prior litigation settlement.  The defendants to this action, the Virginia Department of Corrections (VDOC) and VDOC officials, sued both in their individual and official capacities, filed motions to dismiss under Federal Rules of

Civil Procedure 12(b)(1) and 12(b)(6). I referred these motions to the magistrate judge, who issued a Report and Recommendation (R. & R.) to which all parties have timely filed objections. After conducting a de novo review of the objections, I accept the R. & R. in part and reject it in part.

## I.

If a party objects to a magistrate judge's recommendation, I must "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). I "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." *Id.*

The defendants have asserted Eleventh Amendment immunity, which limits the subject-matter jurisdiction of federal courts and is thus properly raised as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1). *Cunningham v. Gen. Dynamics Info. Tech., Inc.*, 888 F.3d 640, 649 (4th Cir. 2018). Dismissal under Rule 12(b)(1) is appropriate "if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999).[1]

---

[1] Internal quotation marks, citations, and alterations have been omitted here and elsewhere in this opinion, unless specifically noted.

Rule 12(b)(6) permits a defendant to move for dismissal of a complaint for failure to state a claim upon which relief can be granted. When deciding a motion to dismiss under this rule, the court must accept as true all well-pleaded allegations and draw all reasonable factual inferences in the plaintiff's favor. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The defendants have also asserted qualified immunity, which is considered as an affirmative defense at the motion to dismiss stage. *Brockington v. Boykins*, 637 F.3d 503, 506 (4th Cir. 2011). Dismissal is appropriate if all necessary facts for meritorious claim of qualified immunity are clear from the face of the complaint. *Id*.

In her 89-page R. & R., the magistrate judge thoroughly examined the plaintiffs' claims made in their 98-page Complaint. The plaintiffs assert that the Step-Down Program is a failure and that in reality, prisoners in solitary confinement languish indefinitely without a meaningful opportunity to progress to general population. Their specific factual allegations focus on (1) the harsh conditions of

solitary confinement and the psychological and physical harm caused to inmates by its long-term or indefinite nature; (2) the vague, arbitrary, and subjective criteria used to classify and progress inmates under the Step-Down Program; and (3) the inadequate periodic review of each inmate's status.

The causes of action asserted in the Complaint against VDOC and the individual defendants are (1) breach of contract arising out of a settlement agreement entered into by VDOC in 1985 to resolve the case of *Brown v. Landon*, a class action in the United States District Court for the Eastern District of Virginia  (Count I); violation of the inmates' liberty interest in avoiding long-term solitary confinement without meaningful periodic review, as guaranteed by procedural due process, (Count II);  violation of the inmates' right to equal protection under the law by the use of vague, arbitrary, and subjective criteria (Count III); violation of the Eight and Fourteenth Amendments by deliberately inflecting unnecessary and wanton pain on the inmates subjected to long-term solitary confinement (Count V);[2] violation of the Americans with Disabilities Act of 1990 ("ADA") by holding inmates in solitary confinement who have mental disabilities without proper services (Count VI); and violation of Section 504 of the Rehabilitation Act of 1973 ("RA") by failing to reasonably accommodate those plaintiffs and class members with mental health disabilities (Count VII).

---

[2]   There is no Count IV.

II.

A. Count I: Breach of Court-Ordered Settlement Agreement.

The Complaint alleges the breach of a 1985 settlement agreement (Agreement) in *Brown v. Landon,* Case No. 81-0853-R (E.D. Va.), where the plaintiff Thorpe was a member of a class of inmates at another Virginia prison who sued VDOC over a nearly identical program of solitary confinement, the Phase Program. In the Agreement, VDOC promised to discontinue the Phase Program and keep that unit of its prison system abolished. The Complaint alleges that VDOC breached the Agreement when in August 2012 it implemented a substantially similar program at the Red Onion and Wallens Ridge prisons under a new name — the Step-Down Program.

The magistrate judge concluded that the Agreement, signed by a VDOC official and two Commonwealth's attorneys, waived sovereign immunity in that it "request[ed] that the Court retain jurisdiction . . . to enforce compliance with this agreement." Compl. Ex. 2, Settlement Agreement 16, ECF No. 1-5. However, the magistrate judge found that the plaintiffs' breach of contract claim was barred by Virginia's five-year statute of limitations for contract claims, because the right of

action accrued in August 2012 at the time of the alleged breach and expired five years later in August 2017 — roughly two years before this lawsuit was filed.[3]

The plaintiffs object to this finding, arguing that under Virginia's intermittent breach doctrine, new rights of action arose when VDOC re-breached the Agreement in August 2015, September 2017, and February 2018 by issuing revised versions of the Step-Down Program. The plaintiffs contend the claim is timely because it was filed within five years of those successive breaches.

The defendants also argue that the magistrate judge erred in concluding that Virginia waived its sovereign immunity and in finding the 1985 Agreement enforceable after the consent decree resolving that litigation was vacated in 1997. Because the Eleventh Amendment bars this consideration of this claim against VDOC and the individual defendants, I will sustain the defendants' objection and overrule the plaintiffs' objection.

The Eleventh Amendment, as construed, provides that the judicial power of federal courts does not extend to lawsuits against a state by citizens of that state. *Hans v. Louisiana*, 134 U.S. 1 (1890). This limit on federal courts' subject-matter jurisdiction precludes such lawsuits in federal court against state officials and against state instrumentalities whose money judgments would be paid out of the state

---

[3] This case was initially filed in the Eastern District of Virginia on May 6, 2019, and transferred to this Court on April 21, 2020.

treasury.  *Bland v. Roberts*, 730 F.3d 368, 389–90 (4th Cir. 2013).[4]  However, a state cannot assert sovereign immunity in areas where Congress has validly abrogated that immunity or where the state has waived it.  *Passaro v. Virginia*, 935 F.3d 243, 247 (4th Cir. 2019).

A state must make a "clear declaration" that it is waiving its sovereign immunity.  *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 676 (1999).  Whether an agent of the state may execute a valid waiver of sovereign immunity depends on "their power under state law to do so."  *Ford Motor Co. v. Dep't of Treasury of Ind.*, 323 U.S. 459, 467 (1945).  Virginia's legislature has given the "Commonwealth's general consent to be subjected to suit *in its own courts*" upon "valid contracts entered into by duly authorized agents of the government."  *Wiecking v. Allied Med. Supply Corp.*, 391 S.E.2d 258, 260–61 (1990); Va. Code Ann. § 8.01-192.  But any "waiver of the Government's sovereign immunity will be strictly construed, in terms of its scope, in favor of the sovereign."  *Lane v. Pena*, 518 U.S. 187, 192 (1996).

But "consent to suit in state courts does not constitute consent to be sued in a federal court." *Scott v. Bd. of Supervisors of La. State Univ. & Agric. & Mech.*

---

[4]  The plaintiffs have not challenged the conclusion reached by many courts that VDOC is an arm of the state, and that the entity and its employees sued in their official capacities are entitled to Eleventh Amendment immunity.  *See, e.g.*, *McCoy v. Chesapeake Corr. Ctr.*, 788 F. Supp. 890, 893 (E.D. Va. 1992).

*Coll.*, 336 F.2d 557, 558 (5th Cir. 1964); *Elim Romanian Pentecostal Church v. Pritzker*, 962 F.3d 341, 345 (7th Cir. 2020) ("Consent to be sued in state court does not imply consent to be sued in federal court, however; that takes a "clear declaration.").

Because Virginia has made no clear declaration that it consents to contract suits in federal court, nor that it authorized the signatories to execute such a waiver, I find that the Agreement did not waive Virginia's sovereign immunity to suit in federal court. Therefore, the Eleventh Amendment deprives this court of jurisdiction over the claims against VDOC and the individual defendants in their official capacities.

Nor can this claim proceed against the individual defendants on other grounds. Although the Eleventh Amendment does not preclude suits against state officials in their official capacities for prospective injunctive relief for ongoing violations of federal law, *Ex Parte Young*, 209 U.S. 123 (1908), this claim does not allege as much. It alleges a breach of contract under Virginia law, not federal law. Even construing the consent decree as federal law, it was vacated in 1997 and could not have been violated in 2012 as the plaintiffs' claim alleges.[5]

---

[5] Although the plaintiffs purport to also bring this claim against the VDOC officials in their individual capacities, "[t]he mere incantation" of that term is not enough to make it so. *Adams v. Ferguson*, 884 F.3d 219, 225 (4th Cir. 2018). Here, none of the VDOC officials personally signed the Agreement or were named as parties in that lawsuit. They are allegedly bound only as "agents, employees and successors in office" to the original

Without subject-matter jurisdiction, I am unable to consider plaintiffs' objection or review the magistrate judge's findings with respect to it. Count I of the Complaint will be dismissed without prejudice.

### B. Count II: Violation of the Due Process Clause.

The Complaint alleges that VDOC deprived plaintiffs of their liberty interest in avoiding indefinite solitary confinement by using vague and subjective criteria to assign inmates to the Intensive Management ("IM") or Special Management ("SM") pathway, using arbitrary and unscientifically supported criteria to evaluate inmates' progression to general population, and denying them meaningful and periodic administrative review of their progression. It further claims that these policies have no valid penological purpose.

The magistrate judge found that the plaintiffs plausibly alleged a due process claim. The defendants objected, arguing that VDOC's administrative review procedures are constitutionally sufficient. For the reasons stated below, I will overrule the defendants' objection and adopt this aspect of the R. & R.

To state a due process claim in this context, a plaintiff must first identify a "protectable liberty interest in avoiding security detention" that "arises from state

---

parties. Mem. Opp'n Mot. Dismiss 29, ECF No. 26. "In an official-capacity action in federal court, death or replacement of the named official will result in automatic substitution of the official's successor in office." *Kentucky. v. Graham*, 473 U.S. 159, 166 n.11 (1985). This claim is, in substance, one against the VDOC officials in their official capacities — one which the Eleventh Amendment bars.

policies or regulations." *Incumaa v. Stirling*, 791 F.3d 526, 527 (4th Cir. 2015). Next, he must plausibly allege his conditions of confinement impose an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." *Smith v. Collins*, 964 F.3d 266, 275 (4th Cir. 2020).  Lastly, the plaintiff must aver that the state has failed to provide "minimally adequate process to protect that liberty interest" in avoiding security-detention.  *Id*. at 274.

The Complaint has plausibly alleged that the Step-Down program creates a liberty interest in avoiding long-term solitary confinement, because the Program's stated goal is for inmates to step-down from Level S to lower security levels in the general population, and the program requires a review of inmates' progression on the path to general population every 30 days.

The conditions of confinement alleged in the Complaint are plausibly harsh and atypical under the Supreme Court's three-factor test.  *Wilkinson v. Austin*, 545 U.S. 209 (2005).  The magnitude of the restrictions on the plaintiffs are "severe in comparison" to the conditions of general population as the plaintiffs are deprived of meaningful human contact for 22 hours a day, endure daily cavity searches, and lack most enriching and educational programming.  *Smith*, 964 F.3d at 269.  The plaintiffs suffer adverse "collateral consequences" on their sentences because they do not earn good-time credit as their counterparts in general population do.  *Id*.  Lastly, plaintiffs' "duration" in solitary confinement — as many as eight years on the IM

pathway — "is significant enough" to reasonably infer that the plaintiffs are at risk of indefinite detention. *Id*. at 269; *see Incumaa*, 791 F.3d at 531.

The defendants argue that while similar allegations may have been sufficient to establish harsh and atypical conditions for the as-applied challenge in *Smith*, they are not sufficiently broad to mount a facial challenge to the Step-Down Program here because the plaintiffs have not shown that all inmates share these experiences. This argument is unavailing for several reasons. First, the plaintiffs have not claimed to be mounting a facial challenge. Second, the Supreme Court's *Wilkinson* factors which the Fourth Circuit applied in *Smith* do not require a heightened pleading standard to levy a facial challenge to the harshness and atypicality of prison conditions. In any event, the plaintiffs' allegations would be appropriate for a facial challenge because they allow for the reasonable inference that every inmate in the Step-Down Program endures severe restrictions, adverse collateral consequences, and prolonged durations of confinement because of the mandatory time periods for each phase.

The plaintiffs have plausibly alleged that VDOC's administrative review procedures are constitutionally inadequate to protect their interest in avoiding long-term solitary confinement. The Complaint contains sufficient factual matter to suggest that the criteria for an inmate's advancement are not supported by science and unrelated to a penological purpose. The Complaint adequately alleges that the

reviews are likewise flawed insofar as they rely on these unreliable criteria, and the hearings do not provide adequate notice, substantive rationales, or an opportunity to contest the evaluations.  These allegations, taken as true, lead to the reasonable inference that the Step-Down Program procedures do not afford the minimum standard of due process because they fail to give inmates meaningful review of their placement, and deprive them of their liberty interest to progress out of solitary confinement.  *Incumaa*, 791 F.3d at 533-34 (holding that prison's single-layered system of review for solitary confinement inmates that provided non-substantive rationales for decisions and no appeals process could reasonably violate due process.).  Defendants' assertion that VDOC's procedures afford constitutionally minimum due process is of no avail at this procedural stage where I must only consider the factual allegations in the Complaint in a light most favorable to the plaintiffs.

### C. Count III:  Violation of the Equal Protection Clause.

The Complaint alleges that VDOC violates the plaintiffs' rights to equal protection by arbitrarily assigning prisoners with similar criminal and disciplinary records to different pathways by using malleable jargon and arbitrary criteria such as being "routinely" versus "repeatedly" disruptive, and whether they have demonstrated the intent to kill.  The plaintiffs have also alleged an equal protection violation on behalf of a mentally disabled sub-class.  The Complaint alleges that

defendants discriminate against mentally disabled inmates by using behavioral and educational programming criteria for advancement that those inmates' illnesses prevent them from satisfying, and in turn substantially burdens their progression back to general population.

The magistrate judge concluded that the allegations in the Complaint plausibly alleged the elements of an equal protection violation with respect to the main class and the mentally disabled sub-class.   The defendants objected, specifically arguing that the Complaint failed to allege that the plaintiffs are similarly situated, among other essential elements of an equal protection claim.   For the reasons stated below, I will sustain the defendants' objection and reject this section of the R. & R.

The Equal Protection Clause of the Fourteenth Amendment provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws."   U.S. Const. amend. XIV, § 1.   This provsvsion prohibits the government from treating "differently persons who are in all relevant respects alike." *Nordlinger v. Hahn,* 505 U.S. 1, 10 (1992).   Thus, an essential element of an equal protection claim is that "a plaintiff must first demonstrate that he has been treated differently from others with whom he is similarly situated." *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001).

The Complaint does not plausibly allege that inmates assigned to the IM and SM pathways are similarly situated.  According to the Complaint and attached policies, IM and SM prisoners are in fact different.  The Step-Down Operating Procedure states plainly that IM prisoners are "differentiated from other offender groups by behavior that would include the intent to commit extreme/deadly violence, while other offender groups might have been in fights but lack the desire or intent to seriously injure or kill."  Compl. Ex. 8, Restrictive Hous. Reduction Step-Down Operations Strategy 27.  It follows that IM prisoners have a more restrictive pathway because "this group is seen as posing the greatest threat to corrections staff and other offenders in that they have proven the capability and willingness to commit deadly violence."  *Id*.  Since IM and SM prisoners are not the same there can be no equal protection action for the defendants' alleged different treatment of these groups.

The same pleading failure is fatal to the plaintiffs' equal protection claim for the mentally disabled sub-class.  The Complaint alleges that the defendants intentionally discriminated against mentally disabled inmates by selecting and applying criteria that substantially burdened their progression to general population.  In essence, the Complaint alleges that the sub-class was *different* because of their mental disabilities and was given the *same* treatment: being subjected to the same criteria as other inmates.  Those allegations track a failure to accommodate theory but do not state an equal protection claim.  *See Bd. of Trs. of Univ. of Ala. v. Garrett*,

531 U.S. 356, 368 (2001) (affirming that an equal protection claim for failure to accommodate disabled plaintiffs could not proceed as a matter of law because "States are not required by the Fourteenth Amendment to make special accommodations for the disabled . . . If special accommodations for the disabled are to be required, they have to come from positive law and not through the Equal Protection Clause").  Because the Complaint has failed to allege these essential elements of an equal protection claim, Count III of the Complaint will be dismissed.

D. Count V:  Violation of the Eighth and Fourteenth Amendments.

The Complaint alleges that the Step-Down Program violates the cruel and unusual punishment clause of the Eighth Amendment in two ways.  First, the Program deprives prisoners of basic human needs such as meaningful social contact, environmental stimuli, adequate sleep and exercise, mental health, and physical health.  These long-term deprivations, according to the plaintiffs, cause serious psychological and physical harms or a substantial risk of the same.  The Complaint further alleges that defendants implemented this policy despite either knowing about these risks through scientific literature, or in spite of the obviousness of the risks due to the duration of the confinement, threatened investigations, and Fourth Circuit decisions regarding similar conditions.  Along with their deprivation theory, the plaintiffs alternatively allege an infliction theory.  Specifically, the Complaint avers

that the Step-Down Program inflicts upon plaintiffs unnecessary and wonton pain that shocks the conscience without a penological justification.

The magistrate judge concluded that the Complaint stated an Eighth Amendment claim.  She found that the Complaint adequately alleged the objective prong of an Eighth Amendment claim by asserting that the defendants deprived plaintiffs of a basic human need in long-term solitary confinement.  Moreover, the plaintiffs plausibly alleged the subjective prong by claiming that the risk of prolonged detention in these conditions was obvious from the medical and scientific literature and the Fourth Circuit's decision in *Porter v. Clarke*, 923 F.3d 348, 361 (4th Cir. 2019).

The defendants objected, arguing that the magistrate judge erred in concluding that plaintiffs stated an Eighth Amendment claim, and specifically committed error in finding adequate factual allegations to plausibly allege the subjective element. For the reasons below, I will overrule the defendants' objection and adopt this section of the Report and Recommendation.

The Eighth Amendment prohibits prisons from imposing conditions of confinement that constitute "cruel and unusual punishments."  U.S. Const. amend. VIII.  "[A]n Eighth Amendment conditions of confinement claim has (1) objective and (2) subjective components."  *Porter*, 923 F.3d at 355.  "To satisfy the objective prong, a plaintiff inmate must demonstrate that the deprivation alleged [was],

objectively, sufficiently serious." *Id*.  In other words, a plaintiff must show this deprivation "pose[d] a serious or significant physical or emotional injury" or a "substantial risk" of the same. *Id*.  "To satisfy the subjective prong in an Eighth Amendment case, a plaintiff challenging his conditions of confinement must demonstrate that prison officials acted with deliberate indifference." *Id*. at 361.  "To prove deliberate indifference, plaintiffs must show that the official kn[ew] of and disregard[ed] an excessive risk to inmate health or safety." *Id*.  This standard is "more than mere negligence, but less than acts or omissions [done] for the very purpose of causing harm or with knowledge that harm will result." *Id*.  A plaintiff may plausibly allege deliberate indifference by pointing to "circumstantial evidence that a risk was so obvious that it had to have been known." *Id*.  "Put differently, [a]n obvious risk of harm justifies an inference that a prison official subjectively disregarded a substantial risk of serious harm to the inmate." *Id*.

Alternatively, "[p]rison conditions are unconstitutional if they constitute an unnecessary and wanton infliction of pain and are totally without penological justification." *Id*. at 362.

The plaintiffs have plausibly alleged that their conditions of confinement pose a substantial risk of causing them serious physical and psychological injuries, or in fact have already caused the same.  The Complaint cites scientific research which it claims demonstrates the myriad physical and psychological harms from long-term

solitary confinement.  The Fourth Circuit has held that similar harms suffered in long-term solitary confinement "pose[] an objective risk of serious psychological and emotional harm to inmates, and therefore can violate the Eighth Amendment." *Porter*, 923 F.3d at 357.

The defendants have argued that *Porter* is inapposite.  They do not contest that the conditions of prolonged solitary confinement and harms which the *Porter* plaintiffs suffered are like what the plaintiffs allege here. Rather, the defendants point out that the death row plaintiffs in *Porter* had no way of being removed from segregation; that program relied entirely on their out-of-prison conduct; and that prison officials in *Porter* did not raise an argument which VDOC asserts here, namely that a penological interest justifies any harms which segregated detention may cause.

The defendants' attempted distinctions make no meaningful difference at the motion to dismiss stage where I must only consider the plaintiffs' well-pled allegations and construe them in a light most favorable to them.  Like the death row inmates in *Porter*, here the plaintiffs have alleged that they have no meaningful avenue to return to general population.  Furthermore, I cannot consider VDOC's asserted interest at this procedural stage.  Rather, I am required to take as true plaintiffs' well-pled allegations that VDOC keeps inmates confined in Red Onion and Wallens Ridge for a pecuniary rather than penological purpose.

- 18 -

The plaintiffs have also plausibly alleged that VDOC was deliberately indifferent to the harms that they would endure from prolonged confinement in the Step-Down Program by pointing to numerous scientific studies that made the risk of harm "so obvious that it had to have been known" by VDOC.  *Porter*, 923 F.3d at 361 (holding "circumstantial evidence" in the form of "extensive scholarly literature describing and quantifying the adverse mental health effects of prolonged solitary confinement that has emerged in recent years," allowed for the "inference that a prison official subjectively disregarded a substantial risk of serious harm to the inmate.")

There is little merit to the defendants' argument that the scientific studies cited in the Complaint regarding the harms of long-term solitary confinement are inapplicable because they did not examine the precise conditions of the Step-Down Program.  These studies examined prisoners who were kept under substantially similar conditions as what plaintiffs allege here: years of detention in steel, sound-proof cells for 23 hours a day, with virtually no human contact except for brief interactions with prison guards; they were similarly offered recreation in cages during inclement weather, and denied jobs and programming.[6]  The studies outlined

---

[6] Craig Haney & Mona Lynch, *Regulating Prisons of the Future: A Psychological Analysis of Supermax and Solitary Confinement*, 23 N.Y.U. Rev. L. & Soc. Change 477, 478, 495, 555 n.408 (1997).

- 19 -

shocking harms caused from conditions similar to those in the Step-Down Program. In one anecdotal report, an inmate stated, "As soon as I got in, I started cutting my wrists.  I figured it was the only way to get out of here."[7]  Although the conditions and harms detailed in these studies were not identical with what the plaintiffs allege here, they are sufficiently similar and numerous to have plausibly made the alleged dangers of the Step-Down Program obvious.

Alternatively, the Complaint alleges that the defendants inflict wanton and unnecessary pain because they impose well-documented traumas in long-term solitary confinement, and then keep inmates who exhibit symptoms of that harm stagnant on their pathway.  The plaintiffs allege that prisoners fail to meet the Step-Down Program's requirements such as maintaining proper grooming, an orderly cell, impulse control, and completing programing due in part to the psychological injuries that they endure from their living conditions.  The defendants then punish prisoners who cannot meet these goals by demoting them to the most restrictive privilege levels.  In essence, defendants punish plaintiffs for harm that the defendants inflicted in the first instance.  These allegations plausibly allege an Eighth Amendment claim.

---

[7]  Stuart Grassian, *Psychopathological Effects of Solitary Confinement*, 140 Am J. Psychiatry 1450, 1451 (1983), cited at Compl. ¶ 196, n.111, ECF No. 1.

E.  Defense of Qualified Immunity.

The magistrate judge concluded that the individual defendants are not entitled to qualified immunity from money damages for the § 1983 claims against them in their individual capacities.  With regard to the due process claim, the magistrate judge found that the plaintiffs alleged a violation of the right to "periodic review" of their detention status which was clearly established in 1983, *Hewitt v. Helms*, 459 U.S. 460, 477 n.9 (1983), and later recognized in the solitary confinement context, *Incumaa*, 791 F.3d at 540.  On the Eighth Amendment claim, the magistrate judge noted that a violation of "a prisoner's rights to humane conditions of confinement and to avoid deprivations that were not motivated by any legitimate penological justifications were clearly established."  R. & R. 80, ECF No. 70.

The defendants argue that the magistrate judge's definitions of the asserted rights were too broad and not sufficiently tailored to apply to this context.  For the reasons below, I will overrule this objection and adopt this portion of the R. & R.

"Qualified immunity is an affirmative defense that shields government officials performing discretionary functions from personal-capacity liability for civil damages under § 1983, insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Smith*, 964 F.3d at 281.  "To determine whether a complaint should survive a qualified-immunity based motion to dismiss, [courts] exercise sound discretion' in

following the two-prong inquiry set forth by the Supreme Court." *Ray v. Roane*, 948 F.3d 222, 226 (4th Cir. 2020).  Under the first prong, the court considers whether the facts alleged by the plaintiff establish that the defendants violated a constitutional right.  *Meyers v. Balt. Cnty.*, 713 F.3d 723, 731 (4th Cir. 2013).  Under the second prong, the court determines "whether the right at issue was clearly established at the time of the [defendants'] conduct." *Id*.

The plaintiffs have met both elements to defeat any assertion of qualified immunity on the Eighth Amendment claim at the motion to dismiss stage.  The Complaint has plausibly alleged an Eighth Amendment violation. Moreover, when this suit was filed in May 2019, caselaw had clearly established that the Eighth Amendment prohibited prison officials from depriving inmates of "the basic human need for meaningful social interaction and positive environmental stimulation," without a legitimate penological interest and despite the well-documented attendant psychological and emotional harms. *Porter*, 923 F.3d at 368.  Taking the plaintiffs' allegations as true, a reasonable person could also find that this right was sufficiently tailored to prohibit defendants' conduct here.

The defendants claim that they did not violate this right because they imposed the conditions of confinement under a legitimate penological purpose, namely for security reasons.  But at the motion to dismiss stage, I am required to accept as true plaintiffs' well-pled allegation that VDOC had no legitimate penological purpose.  I

may properly consider the defendants' asserted penological justification and any evidence in support at the summary judgment stage.  At this juncture, plaintiffs have plausibly alleged the violation of a clearly established Eighth Amendment right.

The plaintiffs have similarly made the requisite showing to deny defendants assertion of qualified immunity on the due process claim.  They have  plausibly alleged that the defendants violated their rights to procedural due process. Moreover, in May 2019, a reasonable person would have known that the Due Process Clause provided an inmate the right to a "meaningful review of whether he was fit for release to the general population" which must entail a "meaningful opportunity to understand and contest its reasons for holding him in solitary confinement." *Incumaa*, 791 F.3d at 524, 532.

Thus, plaintiffs have plausibly alleged the violation of two clearly established rights.  That is enough at the motion to dismiss stage to deny the individual defendants' claim of qualified immunity as to the remaining constitutional claims.

### F.  Counts VI and VII:  Violations of ADA and RA.

Lastly, the Complaint alleges that the defendants violated the ADA and the RA because they have intentionally selected criteria for return to general population that disproportionately prevent mentally ill inmates from satisfying them because of the nature and symptoms of their disabilities (*e.g.*, schizophrenia, psychosis, hallucinations).  It also claims that the defendants have violated the ADA and RA

- 23 -

by failing to grant reasonable accommodations to prisoners in the mentally disabled sub-class which would allow them to complete the criteria necessary for progression, and this denies them the benefit of the Step-Down Program, namely returning to general population.

The magistrate judge recommended dismissal of the ADA and RA claims against the individual defendants because those statutes only permit suit against entities, and agencies of the government like VDOC.  42 U.S.C. § 12112(a); 29 U.S.C. § 794(a-b).  Although VDOC argued that the claim should wholly be dismissed because it was time-barred under Virginia's applicable one-year statute of limitations, the magistrate judge disagreed, reasoning that the continuing violation doctrine restarted the clock each time VDOC discriminately applied the Step-Down criteria, and this claim was filed within a year of those more recent violations. VDOC argued this claim should alternatively be dismissed because the Complaint did not allege that the mentally disabled plaintiffs requested a reasonable accommodation.  The magistrate judge rejected this argument because the need for accommodation would have been obvious.  I agree with the magistrate judge and I will overrule the defendants' objections and adopt this portion of the R. & R.

Since the ADA and RA do not proscribe a time period to bring suit, this court applies the one-year statute of limitations under an analogous state law, Virginia's Disabilities Act, to claims under the federal statutes.  *A Soc'y Without a Name v.*

- 24 -

*Virginia*, 655 F.3d 342, 347 (4th Cir. 2011).  The limitations period begins to run when the plaintiff knows or should have known of the alleged discriminatory decision.  *Id.* at 347-48.  "Ordinarily, a claim based upon allegedly discriminatory actions occurring outside of the applicable limitations period is time-barred. However, such actions may form the basis for a timely claim if they are part of a continuing violation," where the "alleged incidents of discrimination . . . constitute a series of separate but related actions."  *Demuren v. Old Dominion Univ.,* 33 F. Supp. 2d 469, 476 (E.D. Va. 1999).  Thus,  "[a] continuing violation is occasioned by continual unlawful *acts*, not continual ill *effects* from an original violation."  *Nat'l Advert. Co. v. City of Raleigh*, 947 F2d 1158, 1166 (4th Cir. 1991) (emphasis added). Furthermore, "[t]he challenged action must be repeated within the statute of limitations period."  *Id.* at 1167.

Here, the Complaint plausibly alleges a continuing violation of the ADA and RA.  The prison committee meets monthly to conduct internal reviews in which it applies criteria for pathway advancement that allegedly discriminates against mentally disabled inmates.  Thus, an act of discrimination would have occurred in April 2019, within one year from when this claim was filed in May 2019.  These allegedly discriminatory status reviews are acts of discrimination rather than effects. Therefore, the continuing violation doctrine applies to make these claims timely.

"To establish a violation of either [the ADA or RA], plaintiffs must prove (1) they have a disability; (2) they are otherwise qualified to receive the benefits of a public service, program, or activity; and (3) they were denied the benefits of such service, program, or activity, or otherwise discriminated against, on the basis of their disability." *Wicomico Nursing Home v. Padilla*, 910 F.3d 739, 750 (4th Cir. 2018).[8] Claims under the ADA and RA may be pursued under three distinct grounds: "(1) intentional discrimination or disparate treatment; (2) disparate impact; and (3) failure to make reasonable accommodations." *A Helping Hand, LLC v. Balt. Cnty.*, 515 F.3d 356, 362 (4th Cir. 2008).

The defendants have argued that the ADA and RA claims must be dismissed because plaintiffs failed to allege that they requested an accommodation. Although some circuits have stated that to succeed on a reasonable accommodation claim the "plaintiff must show that the entity knew of the disability and its consequential limitations, either because the plaintiff requested an accommodation or because the nature of the limitation was open and obvious," *Cadena v. El Paso Cnty.*, 946 F.3d 717, 724 (5th Cir. 2020). The Fourth Circuit has not so required. In any event, plaintiffs have plausibly alleged the claim under intentional discrimination and

---

[8] The ADA's Title II and the RA "differ only with respect to the third element, causation," such that "[t]o succeed on a claim under the Rehabilitation Act, the plaintiff must establish he was excluded solely by reason of his disability" whereas "the ADA requires only that the disability was a motivating cause of the exclusion." *Wicomico Nursing Home v. Padilla*, 910 F.3d 739, 750 (4th Cir. 2018).

disparate impact theories.  The absence of this allegation is not fatal to plaintiffs'

claims under the ADA or RA.  The defendants' objection will be overruled.

III.

In summary, the plaintiffs' breach of settlement claim (Count I) and equal

protection claim (Count III) will be dismissed.  The due process claim (Count II) and

Eighth and Fourteenth Amendment claim against the individual defendants in their

individual capacities (Count V), and the ADA claim (Count VI) and RA claim

(Count VII) against VDOC and the individual defendants in their official capacities

will survive.

For the foregoing reasons, it is **ORDERED** as follows:

1. Plaintiffs' Objection to the Report and Recommendation, ECF No. 71, is
   DENIED;

2. Defendants' Objections to the Report and Recommendation, ECF No. 72,
   are SUSTAINED IN PART AND DENIED IN PART;

3. The Report and Recommendation, ECF No. 70, is ACCEPTED IN PART
   AND REJECTED IN PART; and

4. Defendants' Motions to Dismiss, ECF Nos. 18, 21, are GRANTED IN
   PART AND DENIED IN PART.  Count I of the Complaint is DISMISSED
   without prejudice.  Count III is DISMISSED.

ENTER:  June 15, 2021

/s/  JAMES P. JONES
United States District Judge