IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF VIRGINIA
Big Stone Gap Division

| | |
|---|---|
| WILLIAM THORPE, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 2:20-cv-00007-JPJ-PMS |
| ) | |
| VIRGINIA DEPARTMENT OF ) | |
| CORRECTIONS, *et al.*, ) | |
| ) | |
| Defendants. ) | |

**REPLY IN SUPPORT OF**
**DEFENDANTS' MOTION TO STAY**

The only foundation for Plaintiffs' opposition to Defendants' Motion to Stay is their flawed assertion that certain claims remain in this case. On that faulty foundation, Plaintiffs build an argument propped up by misstatements about Defendants' positions and misrepresentations about what has occurred in discovery. Neither their argument, nor the foundation underlying it, can withstand the weight of the facts. For that reason and the reasons in Defendants' opening brief, the Court should enter an order staying the case pending disposition of Individual Defendants' appeal.

**ARGUMENT**

Plaintiffs rest their entire opposition on a flawed premise: Plaintiffs' constitutional claims for injunctive relief "against the Individual Defendants in their official capacities," (Docket Item No. 110, ("Opp'n") at 1)), will proceed regardless of Individual Defendants' appeal. But those claims will not—and cannot—proceed because ***the Court dismissed them*** when it accepted in part the Report and Recommendation (Docket Item No. 70 ("R&R")). (Docket Item No. 101 ("June 15 Order") at 27)). Indeed, Plaintiffs themselves not only declined to challenge the R&R's recommended dismissal of their official-capacity claims, they affirmatively requested that the

R&R be adopted in all relevant respects. (*See* Docket Item No. 71 ("Pls.' Obj. to R&R") at 11). They cannot resuscitate those claims now. Absent those claims, Plaintiffs' opposition fails.

And it cannot be saved by arguments built on the dismissed claims that are fatally undermined by Plaintiffs' mischaracterizations. Plaintiffs repeatedly misstate Defendants' arguments for the sole purpose of refuting the new, Plaintiffs-created arguments. And Plaintiffs misrepresent the discovery record to accuse Defendants of imposing a "discovery embargo" in this case. Defendants stand by their actual arguments as stated in their opening brief. And the parties' actions (and inaction) give the lie to Plaintiffs' distorted depiction of discovery. Contrary to Plaintiffs' breathless response, there is nothing remarkable about the conclusion that staying this case—as opposed to the case portrayed by Plaintiffs—pending disposition of Individual Defendants' appeal, serves the best interests of the parties and the Court.

**A.      Plaintiffs' Opposition hinges entirely on claims dismissed by this Court.**

> ***"The court should grant the Motions [to Dismiss] and dismiss the plaintiffs' . . . § 1983 claims against the VDOC and the individual defendants in their official capacities . . . ."***

(R&R at 88 (emphasis added)).

> ***"Plaintiffs respectfully request that this Court adopt the R&R in all respects except for its recommendation" to dismiss the breach of contract claim."***

(Pls.' Obj. to R&R at 11 (emphasis added)).

> ***"In summary, the plaintiffs' . . . due process claim (Count II) and Eight and Fourteenth Amendment claim against the individual defendants in their individual capacities (Count V), and the ADA claim and RA claim (Count VII) against VDOC and the individual defendants in their official capacities will survive."***

(June 15 Order at 27 (emphasis added)).

This Court's orders refute Plaintiffs' assertion that their constitutional claims against Individual Defendants in their official capacities "remain live." (Opp'n at 1). Plaintiffs' complaint specifies the defendants sued, the capacities in which they were sued, the claims against each, and the basis for those claims. Plaintiffs sued each Individual Defendant in his or her individual and official capacity. (Docket Item No. 1, Compl. at 17-24). Plaintiffs identified 42 U.S.C. § 1983 (along with Procedural Due Process for Count II) as the basis for each of the constitutional claims—Counts II, III, and V (the "§ 1983 claims"). Nowhere in the complaint did Plaintiffs identify *Ex Parte Young* as a separate basis for injunctive relief.

Individual Defendants timely moved to dismiss all of the claims against them in their individual and official capacities. (Docket Item No. 21 at 1; *see also* Docket Item No. 27 at 12 (requesting that Individual Defendants be dismissed as parties to litigation)). Nowhere in their opposition to Individual Defendants' motion to dismiss did Plaintiffs argue that, even if the Court dismissed the § 1983 claims against Individual Defendants in their official capacities—*i.e.*, the only constitutional claims asserted against Individual Defendants in their official capacities—Plaintiffs would nonetheless retain some separate claim for injunctive relief against Individual Defendants in their official capacities under *Ex Parte Young*. (*See* Docket Item No. 26).

The magistrate judge directly addressed Individual Defendants' motion in the R&R. In addition to providing, by Plaintiffs' own reckoning, a "thoughtful and thorough accounting of . . . Plaintiffs' allegations, the parties' submissions, and the prevailing case law," (Pls.' Obj. to R&R at 10), the R&R contains (among others) the following recommended disposition: "The court should grant the Motions [to Dismiss] . . . the § 1983 claims against . . . the individual defendants in their official capacities." (R&R at 88). In their objection to the R&R, Plaintiffs challenged only the magistrate judge's "recommendation to dismiss Class Plaintiffs' breach-of-contract claim on

3

statute-of-limitations grounds." (Pls.' Obj. to R&R at 11). As to the recommended disposition of all other claims—including their § 1983 claims—Plaintiffs requested "that this Court adopt the R&R in all respects." (*Id.*) Again, nowhere did Plaintiffs attempt to carve out some separate claim for injunctive relief against Individual Defendants in their official capacities under *Ex Parte Young*. (*See generally id.*).

The Court largely accepted the R&R. In doing so, the Court summarized the status of Plaintiffs' claims in their entirety as follows:

> In summary, the plaintiffs' breach of settlement claim (Count I) and equal protection claim (Count III) will be dismissed. The due process claim (Count II) and Eighth and Fourteenth Amendment claim against the individual defendants in their individual capacities (Count V), and the ADA claim (Count VI) and RA claim (Count VII) against VDOC and the individual defendants in their official capacities will survive.

(June 15 Order at 27). Nowhere did the Court note that the due process claim (Count II) and Eighth and Fourteenth Amendment claim (Count V) for injunctive relief would survive against the individual defendants in their official capacities under *Ex Parte Young*. (*See id.*)

Plaintiffs did not move for reconsideration of the Court's Order. Instead, they raise the specter of zombie *Ex Parte Young* claims to the Court for the first time in their opposition to Defendants' Motion to Stay. But Plaintiffs cannot use that procedural vehicle to assert new claims or revive claims that were dismissed. No matter what they assert in their opposition, no constitutional claims for injunctive relief against Individual Defendants in their official capacities remain. And without live claims to undergird Plaintiffs' arguments, those arguments collapse.

Plaintiffs are wrong that the Fourth Circuit cases cited by Defendants are inapplicable. As Plaintiffs themselves concede, "*Cloaninger*, *Gray-Hopkins*, *Pinion*, and *Adams*, were cases in which defendants' qualified immunity defense could have resulted in dismissal of plaintiffs' constitutional claims." (Opp'n at 8). In other words, they were exactly like this case: reversal by

4

the Fourth Circuit of this Court's qualified immunity decision would result in dismissal of Plaintiffs' constitutional claims. Plaintiffs' cursory treatment of appellate cases from other circuits (Opp'n at 7 n.2) fares no better.

Further, Plaintiffs' claim "that most federal courts to consider whether to stay proceedings such as this . . . have *refused* to grant the stay" (Opp'n at 8-9) does not withstand scrutiny. Most of the cases cited by Plaintiffs for that proposition do not even address whether to stay proceedings. *See Alice L. v. Dusek*, 492 F.3d 563 (5th Cir. 2007) (does not address whether to stay proceedings); *McLaurin v. Morton*, 48 F.3d 944 (6th Cir. 1995) (same); *Green v. Brantley*, 941 F.2d 1146 (11th Cir. 1991) (same); *Musso v. Hourigan*, 836 F.2d 736 (2d Cir. 1988) (same). *Lugo v. Alvarado* does not distinguish between the claim against the defendant in his official versus individual capacity; ultimately the Court decided no valid ground existed for permitting the appeal. 819 F.2d 5, 8 (1st Cir. 1987). And *R.F.J. v. Fla. Dep't of Children & Families* indicates no claim for equitable relief and also identifies other cases where a stay was granted. No. 3:15-cv-1184, 2017 U.S. Dist. LEXIS 222944, at *3 (M.D. Fla. Feb. 24, 2017).

Most importantly, Plaintiffs fail to identify a single other case that shares this case's most critical aspect—that the plaintiffs seek to certify a class, including one or more subclasses, and the overarching class must fail if the qualified immunity defense succeeds.

**B.      Plaintiffs' responses to strawman arguments assembled from misstatements of Defendants' positions do not justify denying a stay.**

Although the absence of relevant claims largely negates Plaintiffs' argument in opposition to a stay, two aspects of their argument merit a response. The first is Plaintiffs' creation of strawman contentions, built on misstatements of Defendants' positions, for the sole purpose of refuting them. These contentions do not demonstrate that Defendants misrepresent the applicable

law (as Plaintiffs assert in the first sentence of their Opposition), nor do they warrant consideration in addressing the merits of Defendants' motion.

Indicative of Plaintiffs' tactic is the contention they make immediately after asserting that Defendants misrepresent the applicable law: "Qualified immunity is not a challenge to this Court's jurisdiction." (Opp. at 1). Defendants agree and never have suggested otherwise. Instead, Defendants argued that qualified immunity is an immunity from suit and that the filing of their notice of appeal affected this Court's jurisdiction regarding those aspects of the case involved in the appeal. (Docket Item No. 106, Mem. at 2-3).

Additionally, Plaintiffs' claim that "[t]his Court's decision whether to grant a stay pending an interlocutory appeal is not 'automatic[],' as Defendants argue," (Opp. at 10), ignores an entire section of Defendants' memorandum arguing that this Court should employ its ***discretion*** to stay these proceedings. (Mem. at 5-7). Plaintiffs' contention does not refer to an argument made by Defendants; it refers to a contention created by Plaintiffs for refuting it.

Similarly, Plaintiffs claim that "Defendants argue that an interlocutory appeal of a qualified immunity ruling 'automatically stays' the district court proceedings . . . ." (Opp'n at 2). The argument from which Plaintiffs quote is a heading in bold typeface: "**Defendants' appeal of the denial of qualified immunity as to Plaintiffs' Due Process and Eight Amendment claims automatically stays further proceedings in this Court as to those claims.**" (Mem. at 2). Plaintiffs ignore the qualifier "***as to those claims***."

In support of that argument, Defendants did cite *Adams v. Naphcare, Inc.*, in which the court held that the defendant's motion to stay was moot because her interlocutory appeal on adverse immunity rulings automatically stayed the case in its entirety, including the state-law claims that were not implicated in the appeal. No. 2:16-cv-229, 2017 U.S. Dist. LEXIS 232690, at *4 (E.D. Va. May 5, 2017). But Defendants did not argue *Adams* was controlling. (Mem. at 5).

6

Plaintiffs' attempt to distinguish *Adams*—the plaintiff did not seek injunctive relief for her constitutional claims or oppose a stay as to those claims (Opp'n at 8)—misses the point and the facts. The plaintiff did assert state-law claims that would not be affected by a reversal of the immunity rulings and oppose the defendant's motion for a stay, and the court held that the interlocutory appeal on adverse immunity rulings automatically stayed the case in its entirety. 2017 U.S. Dist. LEXIS 232690 at *4.

Because Defendants never argued that Individual Defendants' appeal automatically stayed these proceedings in their entirety, Plaintiffs' suggestion that Defendants "[p]rivately . . . express[ed] less confidence in their position" is completely misleading. (Opp'n at 4 n. 1). The email sent by Defendants' counsel, attached to this filing as Exhibit 1 ("Defendants' Email"), was, and remains, consistent with Defendants' positions throughout this briefing. It also illustrates the second aspect of Plaintiffs' argument that merits a response.

**C.     Plaintiffs' misrepresentations regarding what has occurred in discovery do not justify denying a stay.**

The second aspect of Plaintiffs' opposition that merits a response is the disappointing pattern that they continue to exhibit: whenever the parties are before the Court on an issue, Plaintiffs attempt to interject assertions that Defendants have unilaterally imposed a "discovery embargo" in this case to distract from their failure to further discovery on their own. (Opp'n at 1). That characterization is not accurate or justified. The Federal Rules of Civil Procedure preclude any party from unilaterally refusing to participate in discovery, and provide mechanisms to enforce that prohibition. The Rules also contemplate proportional discovery with negotiation between parties—not one side acceding to all of the other's demands. Moreover, there is little evidence, other than Plaintiffs' breathless claims here, that they intend to move this case forward at the speed

they claim is necessary. Defendants' Email (Exhibit 1) and the (lack of) response to it provide just one example of the inconsistency between Plaintiffs' statements and actions.

As Defendants' Email notes, it responded to a voicemail from Plaintiffs' counsel requesting Defendants' positions as to certain discovery issues—a fact missing from Plaintiffs' recounting (Opp'n at 4, n.1). Defendants provided their positions and asked whether Plaintiffs disputed that discovery was stayed as to the § 1983 claims. Defendants also suggested multiple options, including expediting the briefing on Defendants' Motion to Stay to minimize the effect on Plaintiffs' Motion for Class Certification, jointly approaching the Court for an extension of that briefing, and continuing to triage certain discovery issues. And Defendants requested that Plaintiffs put forth a proposal on a sampling exercise that ***Plaintiffs had agreed to provide more than eight months before***. Defendants' counsel sent the email on the afternoon of Monday, June 28. (Defendants' Email, Exhibit 1).

Then Defendants waited. Defendants did not receive a response that week. Defendants did not receive a response before Plaintiffs filed their opposition on Tuesday, July 6. Rather, in their opposition, Plaintiffs charged Defendants' "dilatory tactics" will require this Court "to adjust the deadlines for class-certification briefing." (Opp'n at 1). But Plaintiffs failed to mention that Defendants offered to approach the Court jointly to request an extension if that was Plaintiffs' preference. (Defendants' Email).

Plaintiffs also omitted facts about their own laggardly track record on discovery:

- the voicemail to which Defendants' Email responded was the first contact by Plaintiffs to discuss discovery since before the June 15 Order ruling on Defendants' motion to dismiss;

- despite estimating the "need to take 90 – 100 depositions during . . . fact discovery [and] estimating they can complete the depositions in approximately six months by taking three to four depositions a week" (Exhibit 2, Joint Email to the Court dated June

8

       4, 2021), Plaintiffs have neither noticed nor requested availability for a single deposition;[1] and

- despite issuance of the June 15 Order four weeks ago, Plaintiffs have yet to serve a single interrogatory or request for admission.

These facts are inconsistent with Plaintiffs' portrayal of themselves as diligently pursuing discovery in this case and Defendants imposing a "discovery embargo."[2]

    Further, the record is devoid of evidence to support the depiction that Plaintiffs continue to paint of Defendants improperly delaying discovery. Tellingly, Plaintiffs have not filed a single motion to compel in the more than two years that this case has been pending. Issuance of the June 15 Order marked the start date for the 60-day deadline for Plaintiffs to file their Motion for Class Certification. Twenty-eight of those 60 days have passed; Plaintiffs have yet to serve a single interrogatory, request for admission, or notice of deposition. Inevitably, Plaintiffs will blame their delay on Defendants filing the Motion to Stay. But six days passed with no action by Plaintiffs before Defendants filed the motion. Only after Defendants filed the motion did Plaintiffs reach out to discuss discovery. Regardless, Plaintiffs take the position that no automatic stay exists as to any claims and "intend to proceed with discovery issues on all remaining claims." Exhibit 3. Plaintiffs' portrayal neither reflects the true discovery record nor justifies denying a stay in this case.

---

[1] The Court adopted Plaintiffs' proposal for a six-month non-expert fact discovery period. (Doc No. 103, Amended Scheduling Order). As of today, approximately 23 weeks remain in the fact discovery period, if this week is included. Plaintiffs would have to average about four depositions per week, including this week, to reach 90 depositions before the end of fact discovery. That calculation does not account for the depositions noticed by Defendants that also would need to occur.

[2] Defendants finally received a response to Defendants' Email just before midnight on Wednesday, July 7. (Exhibit 3).

## CONCLUSION

Defendants' position, as laid out in their opening brief, remains unchanged and unscathed by Plaintiffs' opposition. Individual Defendants' appeal of the Court's denial of their qualified immunity defense automatically stays the parts of the case involved in the appeal—but the circumstances of the case dictate that it should be stayed in its entirety. The Court should enter an order that the case is stayed pending disposition of Individual Defendants' appeal.

July 13, 2021

Respectfully submitted,

/s/ *Maya M. Eckstein*

Mark R. Herring
*Attorney General of Virginia*

Margaret Hoehl O'Shea (VSB #66611)
Assistant Attorney General,
Criminal Justice & Public Safety Division

OFFICE OF THE ATTORNEY GENERAL
202 North Ninth Street
Richmond, VA 23219
Ph: (804) 786-2206
Fax: (804) 786-4239
moshea@oag.state.va.us

Maya M. Eckstein (VSB #41413)
Trevor S. Cox (VSB #78396)
R. Dennis Fairbanks (VSB #90435)

HUNTON ANDREWS KURTH LLP
951 E. Byrd St.
Richmond, VA 23219
Ph: (804) 788-8200
Fax: (804) 788-8218
meckstein@HuntonAK.com
tcox@HuntonAK.com
dfairbanks@HuntonAK.com

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on the 13th day of July 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing to all CM/ECF participants.

By: /s/ *Maya M. Eckstein*
Maya M. Eckstein (VSB # 41413)
Hunton Andrews Kurth LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, Virginia 23219-4074
Telephone: (804) 788-8200
Facsimile: (804) 788-8218
meckstein@HuntonAK.com

*Counsel for Defendants*