## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
Big Stone Gap Division

|  |  |
|---|---|
| WILLIAM THORPE, *et al.*, | ) |
| | ) |
|     Plaintiffs, | ) |
| | ) |
| v. | )    Case No. 2:20-cv-00007-JPJ-PMS |
| | ) |
| VIRGINIA DEPARTMENT OF | ) |
| CORRECTIONS, *et al.*, | ) |
| | ) |
|     Defendants. | ) |

## ANSWER AND AFFIRMATIVE DEFENSES
## OF VIRGINIA DEPARTMENT OF CORRECTIONS

COMES NOW Defendant Virginia Department of Corrections (VDOC), through counsel, and answers the complaint as follows:

1.     VDOC admits that the named plaintiffs have been incarcerated within the Virginia Department of Corrections. VDOC denies that Plaintiffs have been "isolated in solitary confinement" and deny the remaining allegations of Paragraph 1 and demands strict proof thereof.

2.     VDOC denies the allegations of Paragraph 2 and demands strict proof thereof.

3.     VDOC denies the allegations of Paragraph 3 and demands strict proof thereof.

4.     VDOC denies the allegations of Paragraph 4 and demands strict proof thereof.

5.     VDOC denies the allegations of Paragraph 5 and demands strict proof thereof.

6.     VDOC denies the allegations of Paragraph 6 and demands strict proof thereof.

7.     VDOC admits that a group of VDOC officials was sued in 1981 by a class of prisoners housed at Mecklenberg Correctional Center. VDOC denies that VDOC, as an agency, was a party to

that litigation. The allegations of that lawsuit speak for themselves. VDOC denies the remaining allegations in Paragraph 7 and demands strict proof thereof.

8.     VDOC admits that it issued a report in 1984. The statements in the report speak for themselves. VDOC denies the remaining allegations of Paragraph 8 and demands strict proof thereof.

9.     VDOC admits that the defendants named in the *Brown v. Landon* case entered into a settlement agreement in that matter. VDOC denies that the 1983 settlement was reached "in the wake of" the 1984 report, which had not yet issued. VDOC denies the remaining allegations of Paragraph 9 and demands strict proof thereof.

10.     VDOC denies that the 1983 settlement agreement contains the referenced statement. VDOC admits that the referenced statement is contained in Paragraph 1 of a subsequent settlement agreement that was reached in 1985.

11.     VDOC admits that Paragraph 3 of the 1985 settlement agreement stated that the Special Management Unit had been abolished. Any remaining allegations in Paragraph 11 are denied, and VDOC demands strict proof thereof.

12.     VDOC admits that Mecklenburg Correctional Center contained general population units. VDOC denies the remaining allegations of Paragraph 12 and demands strict proof thereof.

13.     Because Mecklenburg Correctional Center was not demolished until 2013, VDOC denies the allegations of Paragraph 13.

14.     VDOC denies the allegations of Paragraph 14 and demands strict proof thereof.

15.     VDOC admits that it introduced the Step-Down Program with the intent to reduce the number of inmates being held in restrictive housing. VDOC denies the remaining allegations of Paragraph 15 and demands strict proof thereof

16.     VDOC denies the allegations of Paragraph 16 and demands strict proof thereof.

17.     VDOC denies the allegations of Paragraph 17 and demands strict proof thereof.

18.     VDOC denies the allegations of Paragraph 18 and demands strict proof thereof.

19.     The allegations of Paragraph 19 contain statements of intent that do not appear to require a response. To the extent those allegations require a response, VDOC denies the allegations of Paragraph 19 and demands strict proof thereof.

20.     The jurisdictional allegations in Paragraph 20 do not require a response. To the extent a response is required, VDOC admits that this Court possesses general subject matter jurisdiction over claims that arise under the Constitution or a federal statute, but denies that the Court possesses subject matter jurisdiction over any claim in which a defendant is entitled to assert sovereign or Eleventh Amendment immunity.

21.     VDOC denies that venue is proper in the Federal District Court for the Eastern District of Virginia, but admits that it is proper in the Federal District Court for the Western District of Virginia.

22.     VDOC admits that the named plaintiffs have been incarcerated at Red Onion State Prison (ROSP) and/or Wallens Ridge State Prison (WRSP). VDOC denies the remaining allegations of Paragraph 22 and demands strict proof thereof.

23.     VDOC admits that none of the plaintiffs is incarcerated under a sentence of death. VDOC denies the remaining allegations of Paragraph 23 and demands strict proof thereof.

24.     VDOC admits that William Thorpe became a state-responsible offender on August 11, 1980, but his current anticipated release date is June 21, 2049. VDOC admits that he previously was incarcerated at Mecklenburg Correctional Center, where he was involved in the 1984 hostage situation and stabbing. William Thorpe was most recently transferred to Red Onion State Prison

on January 23, 2019, and he was assigned to security level "S." However, on May 29, 2019, William Thorpe was transferred to the State of Texas, and he is presently incarcerated in that jurisdiction. At the time of his transfer, his assigned mental health code was MH-0. VDOC denies the remaining allegations of Paragraph 24 and demands strict proof thereof.

25.     VDOC admits that Frederick Hammer became a state-responsible offender on May 22, 2009, and that he has no anticipated release date because he is serving multiple life-without-parole sentences. VDOC admits that he was transferred to ROSP on February 22, 2012, and has been incarcerated at ROSP since that date. VDOC admits that Frederick Hammer was at one time assigned to security level 6 and housed in an Intensive Management Closed Phase 2 unit. However, he has completed the Step Down program, been assigned to security level 5, and now resides in the general population. His current assigned mental health code is MH-0. VDOC denies the remaining allegations of Paragraph 25 and demands strict proof thereof.

26.     VDOC admits that Dmitry Khavkin became a state-responsible offender on February 17, 2010, but his current anticipated release date is July 23, 2052. VDOC admits that Dmitry Khavkin was transferred to ROSP on December 20, 2013, and he has been incarcerated at ROSP from that date until his transfer to Sussex I State Prison in approximately November 2019 and WRSP in approximately January 2021. VDOC admits that Dmitry Khavkin was assigned to security level 5 and has been housed in a general population housing unit since approximately April 25, 2019. His current assigned mental health code is MH-0. VDOC denies the remaining allegations of Paragraph 26 and demands strict proof thereof.

27.     VDOC admits that Gerald McNabb became a state-responsible offender on May 16, 1979, and that he does not have an anticipated release date because he is serving a life sentence. VDOC admits that Gerald McNabb was transferred to ROSP on March 18, 2015, and that he was

incarcerated at ROSP since that date until his transfer to Sussex I State Prison in approximately April 2021 and Wyoming in approximately May 2021. VDOC admits that Gerald McNabb was assigned to the Step-Down Program on the Intensive Management pathway. He was reassigned to the Special Management pathway in approximately November 2019. At the time of his transfer to Wyoming, his privilege level was SM-1, and his assigned mental health code was MH-0. VDOC denies the remaining allegations of Paragraph 27 and demands strict proof thereof.

28.     VDOC admits that Gary Wall became a state-responsible offender on September 6, 1995, but his current anticipated release date is August 7, 2023. VDOC admits that Gary Wall was transferred to ROSP on November 20, 2015, and that he was incarcerated at ROSP since that date until his transfer to WRSP in approximately February 2021. VDOC admits that Gary Wall was at one time assigned to the IM pathway. Gary Wall is currently in general population at WRSP. His assigned mental health code is MH-2. VDOC denies the remaining allegations of Paragraph 28 and demands strict proof thereof.

29.     VDOC admits that Vernon Brooks became a state-responsible offender on April 22, 2004, but his current anticipated release date is November 26, 2035. VDOC admits that Vernon Brooks was transferred to ROSP on July 14, 2016, and that he has been incarcerated at ROSP since that date until his transfer to Sussex I State Prison in approximately August 2021. VDOC admits that Vernon Brooks was at one time assigned to the Step-Down Program at privilege level IM-2 and further states that he completed the Step-Down Program and is now in general population. His assigned mental health code is MH-0. VDOC denies the remaining allegations of Paragraph 29 and demands strict proof thereof.

30.     VDOC admits that Brian Cavitt became a state-responsible offender on November 7, 2016, and that he was transferred into Virginia custody from Massachusetts under the Interstate

Compact. VDOC admits that he was transferred to ROSP on November 7, 2016, and that he has been incarcerated at ROSP since that date. VDOC admits that Brian Cavitt was at one time assigned to security level 6, and housed in the IM Closed Pod at Phase 1, and further states that he completed the Step Down Program and is now in general population. His assigned mental health code is MH-0. VDOC denies the remaining allegations of Paragraph 30 and demands strict proof thereof.

31.     VDOC admits that Derek Cornelison became a state-responsible offender on January 31, 2007, and that his anticipated release date is December 26, 2045. VDOC admits that he was transferred to ROSP on June 7, 2016, and that he has been incarcerated at ROSP since that date until his transfer to Sussex II State Prison in approximately August 2021. VDOC admits that Derek Cornelison was at one time assigned to security level 6 and housed in the Step-Down Phase 1, and further states that he completed the Step Down program and is in general population. His current assigned mental health code is MH-0. VDOC denies the remaining allegations of Paragraph 31 and demands strict proof thereof.

32.     VDOC admits that Christopher Cottrell became a state-responsible offender on January 8, 2003, but was released from VDOC custody in July 2021. VDOC admits that he was transferred to ROSP on May 3, 2013, and was incarcerated at ROSP until approximately May 2021, when he was transferred to WRSP and placed in general population. VDOC admits that he was at one time assigned to the Step-Down Program at privilege level SM-1. His assigned mental health code was MH-0. VDOC denies the remaining allegations of Paragraph 32 and demands strict proof thereof.

33.     VDOC admits that Peter Mukuria became a state-responsible offender on June 4, 2007, but his current anticipated released date is November 8, 2049. VDOC admits that he was

transferred to ROSP on May 28, 2014, and that he has been incarcerated at ROSP since that date. VDOC admits that Peter Mukuria was at one time assigned to security level 6 and housed in the Step-Down Phase 1, and further states that he completed the Step-Down Program and is in general population. His current assigned mental health code is MH-2. VDOC denies the remaining allegations of Paragraph 33 and demands strict proof thereof.

34.     VDOC admits that Steven Riddick became a state-responsible offender on May 24, 2007, and that his anticipated release date is December 6, 2058. VDOC admits that he was transferred to ROSP on August 2, 2011, and that he has been incarcerated at ROSP since that date. VDOC admits that Steven Riddick is currently assigned to the Step-Down Program. His current assigned mental health code is MH-2. VDOC denies the remaining allegations of Paragraph 34 and demands strict proof thereof.

35.     VDOC admits that Kevin Snodgrass became a state-responsible offender on March 27, 2008, but his current anticipated released date is May 27, 2055. VDOC admits that he was transferred to ROSP on March 21, 2012, where he was housed until his transfer to WRSP on May 11, 2018. He now resides at Sussex II and is housed in the general population. His current assigned mental health code is MH-0. VDOC denies the remaining allegations of Paragraph 35 and demands strict proof thereof.

36.     VDOC denies the allegations of Paragraph 36 and demands strict proof thereof.

37.     VDOC admits that it is an executive-branch state agency that is responsible for operating and maintaining correctional facilities within Virginia, that VDOC officials enact operating procedures that apply to the administration of those facilities, and that VDOC headquarters are located in Richmond, Virginia. VDOC denies the remaining allegations of Paragraph 37 and demands strict proof thereof.

38.     VDOC admits that Harold Clarke is the Director of VDOC, that he is responsible for supervising VDOC and VDOC's correctional facilities, and that his place of business is located in Richmond, Virginia. VDOC denies the remaining allegations of Paragraph 38 and demands strict proof thereof.

39.     VDOC admits that Harold Clarke has knowledge of the Step-Down Program and was involved in formulating this policy. VDOC denies the remaining allegations of Paragraph 39 and demands strict proof thereof.

40.     VDOC admits the allegations of Paragraph 40, with the exception of the statement that Defendant Mathena "knows or has reason to know that the Step-Down Program permits long-term solitary confinement without a legitimate penological purpose, and knows or has reason to know that long-term solitary confinement causes severe mental and physical harms," which is expressly denied. Additionally, Defendant Mathena is VDOC Director of Security and Correctional Enforcement.

41.     VDOC admits the allegations of Paragraph 41, with the exception of the statement that Defendant Richeson "knows or has reason to know that the Step-Down Program permits long-term solitary confinement without a legitimate penological purpose, and knows or has reason to know that long-term solitary confinement causes severe mental and physical harms," which is expressly denied. Additionally, Defendant Richeson is VDOC Deputy Director of Programs Education and Re-Entry.

42.     VDOC admits the allegations of Paragraph 42, with the exception of the statement that Defendant Robinson "knows or has reason to know that the Step-Down Program permits long-term solitary confinement without a legitimate penological purpose, and knows or has reason to

know that long-term solitary confinement causes severe mental and physical harms," which is expressly denied.

43.   VDOC admits the allegations of Paragraph 43, with the exception of the statement that Defendant Ponton "has been involved in developing, reviewing, and approving updates to the Step-Down Program," and the statement that Defendant Ponton "knows or has reason to know that the Step-Down Program permits long-term solitary confinement without a legitimate penological purpose, and knows or has reason to know that long-term solitary confinement causes severe mental and physical harms," both of which are expressly denied. Additionally, VDOC admits that Defendant Ponton previously was the VDOC Regional Operations Chief for the Western Region, but now is the VDOC Regional Operations Chief for the Central Region.

44.   VDOC admits the allegations of Paragraph 44, with the exception of the statement that Defendant Elam "has been responsible for reviewing and approving updates to the Step-Down Program," and the statement that Defendant Elam "knows or has reason to know that the Step-Down Program permits long-term solitary confinement without a legitimate penological purpose, and knows or has reason to know that long-term solitary confinement causes severe mental and physical harms," both of which are expressly denied. Additionally, VDOC admits that Defendant Elam previously was the VDOC Regional Administrator for the Western Region, but now is the Regional Administrator for the Central Region.

45.   VDOC admits that Denise Malone is the Chief of Mental Health Services for VDOC, and that she is generally responsible for the mental health services provided in VDOC's correctional institutions. VDOC admits that Defendant Malone supervises those services, generally, but denies that she functions as the direct supervisor of the clinicians at the institutions. VDOC admits that Defendant Malone is responsible for reviewing grievance appeals regarding

the provision of mental health services at VDOC facilities and that her regular place of business is in Richmond, Virginia. VDOC denies the remaining allegations of Paragraph 45 and demands strict proof thereof.

46.     VDOC admits the allegations of Paragraph 46, with the exception of the statement that Defendant Herrick "knows or has reason to know that the Step-Down Program permits long-term solitary confinement without a legitimate penological purpose, and knows or has reason to know that long-term solitary confinement causes severe mental and physical harms," which is denied. To the extent Paragraph 46 implies that Defendant Herrick directly oversees or clinically supervises medical or mental health providers at VDOC facilities, that implication is also denied.

47.     VDOC admits the allegations of Paragraph 47, with the exception of the statement that Defendant Raiford "knows or has reason to know that the Step-Down Program permits long-term solitary confinement without a legitimate penological purpose, and knows or has reason to know that long-term solitary confinement causes severe mental and physical harms," which is expressly denied. Additionally, VDOC admits that Defendant Raiford previously was Statewide Restrictive Housing Coordinator, but now is the Superintendent at Caroline Correctional Unit #2.

48.     VDOC denies that Jeffrey Kiser "was involved in developing and updating the Step-Down Program," and that he "knows or has reason to know that the Step-Down Program permits long-term solitary confinement without a legitimate penological purpose, and knows or has reason to know that long-term solitary confinement causes severe mental and physical harms." To the extent that the allegations of Paragraph 48 imply that Defendant Kiser clinically supervises medical or mental health providers, that implication is also denied. VDOC admits the remaining allegations of Paragraph 48. Additionally, VDOC admits that Defendant Kiser was the Warden of Red Onion, but denies that he currently is the Warden of Red Onion.

49.     VDOC denies that Carl Manis "was involved in developing and updating the Step-Down Program," and that he "knows or has reason to know that the Step-Down Program permits long-term solitary confinement without a legitimate penological purpose, and knows or has reason to know that long-term solitary confinement causes severe mental and physical harms." To the extent that the allegations of Paragraph 49 imply that Defendant Manis clinically supervises medical or mental health providers, that implication is also denied. VDOC admits the remaining allegations of Paragraph 49. Additionally, VDOC admits that Defendant Manis previously was the Warden at Wallens Ridge, but currently is Regional Administrator for the Western Region Facilities.

50.     VDOC admits that Mecklenburg Correctional Center (MCC) opened in 1977, and that it was designed as a maximum security prison. VDOC denies the remaining allegations of Paragraph 50.

51.     VDOC admits that inmates housed in certain locations within MCC lived in single cells and had limited showers, out of cell recreation, and freedom of movement. VDOC denies the remaining allegations of Paragraph 51.

52.     To the extent that the statements in Paragraph 52 directly quote the cited sources, VDOC admits that the cited sources contain the referenced statements. VDOC denies the remaining allegations of Paragraph 52.

53.     VDOC denies the allegations of Paragraph 53 and demands strict proof thereof.

54.     To the extent that the statements in Paragraph 54 directly quote the cited sources, VDOC admits that the cited sources contain the referenced statements. VDOC denies the remaining allegations of Paragraph 54.

55.     VDOC admits that some inmates at MCC were housed in the Special Management Unit (SMU) or in the Phase Program. VDOC denies any remaining allegations of Paragraph 55.

56.     VDOC admits that disruptive inmates were assigned to the SMU. VDOC denies the remaining allegations of Paragraph 56.

57.     VDOC admits that some other inmates at MCC were housed in the Phase Program. VDOC denies the remaining allegations of Paragraph 57.

58.     VDOC admits that the goal of the Phase Program was to change prisoner behavior through a model based on positive reinforcement, that prisoners would earn privileged by demonstrating appropriate behaviors, and that the program sought to normalize interactions between prison staff and prisoners. VDOC lacks sufficient information to admit or deny whether independent psychologists were consulted while the Phase Program was being designed, and, therefore, that allegation is denied. The remaining allegations of Paragraph 58 are also denied.

59.     To the extent that the statements in Paragraph 59 directly quote the cited sources, VDOC admits that the cited sources contain the referenced statements. VDOC denies the remaining allegations of Paragraph 59.

60.     Admitted.

61.     Admitted.

62.     VDOC admits that the Phase Program imposed restrictions. Because the complaint does not specify what is meant by "considerable," the remaining allegations of Paragraph 62 are denied.

63.     VDOC admits that the Mecklenburg Study Committee made certain findings, and submits that the report from that committee speaks for itself. Any remaining allegations in Paragraph 63 are denied.

64.     VDOC lacks sufficient information to admit or deny whether all inmates, without exception, were required to spend a certain mandatory minimum period of time at specific phases of the Phase Program before being allowed to advance and, therefore, deny the allegations of Paragraph 64.

65.     Denied.

66.     Denied.

67.     To the extent that the statements in Paragraph 67 directly quote the cited sources, VDOC admits that the cited sources contain the referenced statements. VDOC denies the remaining allegations of Paragraph 67.

68.     To the extent that the statements in Paragraph 68 directly quote the cited sources, VDOC admits that the cited sources contain the referenced statements. VDOC denies the remaining allegations of Paragraph 68.

69.     Denied.

70.     To the extent that the statements in Paragraph 70 directly quote the cited sources, VDOC admits that the cited sources contain the referenced statements. VDOC denies the remaining allegations of Paragraph 70.

71.     To the extent that the statements in Paragraph 71 directly quote the cited sources, VDOC admits that the cited sources contain the referenced statements. VDOC denies the remaining allegations of Paragraph 71.

72.     VDOC admits that inmates at MCC filed a lawsuit against VDOC officials and that the lawsuit contains the referenced allegations. To the extent Paragraph 72 implies the truth of those allegations, that implication is denied.

73.     VDOC admits that inmates at MCC filed a lawsuit against VDOC officials and that the lawsuit contains the referenced allegations. To the extent Paragraph 73 implies the truth of those allegations, that implication is denied.

74.     VDOC admits that a settlement agreement was reached in the 1981 Mecklenburg litigation.  VDOC denies that the settlement agreement—which initially occurred in 1983—was reached "in the wake of" the 1984 report. Defendants submit that the terms of the settlement agreement speak for themselves. Any remaining allegations in Paragraph 74 are denied.

75.     VDOC denies the allegations of Paragraph 75 and demands strict proof thereof.

76.     VDOC denies the allegations of Paragraph 76 and demands strict proof thereof.

77.     VDOC admits that a settlement agreement was signed on April 5, 1985, and contemporaneously submitted to the District Court for the Eastern District of Virginia, on the same date, to be incorporated into a consent decree.

78.     Denied.

79.     To the extent that the statements in Paragraph 79 directly quote the cited sources, VDOC admits that the cited sources contain the referenced statements. VDOC denies any remaining allegations of Paragraph 79.

80.     To the extent that the statements in Paragraph 80 directly quote the cited sources, VDOC admits that the cited sources contain the referenced statements. VDOC denies any remaining allegations of Paragraph 80.

81.     To the extent that the statements in Paragraph 81 directly quote the cited sources, VDOC admits that the cited sources contain the referenced statements. VDOC denies the remaining allegations of Paragraph 81.

82.     Denied.

83.     VDOC denies the allegations of Paragraph 83 and demands strict proof thereof.

84.     VDOC denies the allegations of Paragraph 84 and demands strict proof thereof. Defendants note that the consent decrees were terminated in 1997, prior to the opening of ROSP and WRSP.

85.     VDOC admits that this Court vacated the consent decrees through final order issued on April 7, 1997. The remaining allegations of Paragraph 85 are denied.

86.     Denied.

87.     VDOC admits that WRSP and ROSP were opened in 1998 and 1999, and that ROSP was built on the site of an abandoned strip-mine. VDOC admits that Governor Gilmore made the referenced statements. Any remaining allegations in Paragraph 87 are denied.

88.     VDOC admits that ROSP and WRSP were built with approximately 1200 beds apiece. The remaining allegations of Paragraph 88 are denied.

89.     To the extent that the statements in Paragraph 89 directly quote the cited sources, VDOC admits that the cited sources contain the referenced statements. VDOC denies the remaining allegations of Paragraph 89.

90.     VDOC denies the allegations of Paragraph 90 and demands strict proof thereof.

91.     VDOC denies the allegations of Paragraph 91 and demands strict proof thereof.

92.     VDOC denies the allegations of Paragraph 92 and demands strict proof thereof.

93.     VDOC admits that inmates from other jurisdictions are housed at ROSP and WRSP. The remaining allegations of Paragraph 93 are denied.

94.     VDOC admits that the referenced court cases contain the quoted statement. Any remaining allegations in Paragraph 94 are denied.

95.     VDOC denies the allegations of Paragraph 95 and demands strict proof thereof.

96.     VDOC denies the allegations of Paragraph 96 and demands strict proof thereof.

97.     VDOC admits that the cells at ROSP and WRSP are solid but contain an inset-window, and that they have a built-in tray slot. VDOC admits that the cells contain a desk, a toilet, and a sink, but denies that these are the "only" contents of the cell (particularly considering that the cells contain a bed and various personal items, at the very least). VDOC admits that the cells contain exterior windows, but denies that the windows do not permit a view of the outside. Any remaining allegations of Paragraph 97 are denied.

98.     VDOC admits that inmates who are housed at security level "S" receive their meals in their cell and that inmates in the general population typically eat in a communal dining space. Any remaining allegations of Paragraph 98 are denied.

99.     VDOC denies the allegations of Paragraph 99 and demands strict proof thereof.

100.     VDOC denies the allegations of Paragraph 100 and demands strict proof thereof.

101.     VDOC denies the allegations of Paragraph 101 and demands strict proof thereof.

102.     VDOC admits that inmates at ROSP and WRSP communicate through the ventilation system. VDOC denies the remaining allegations of Paragraph 102 and demands strict proof thereof.

103.     VDOC admits that inmates housed at security level "S" interact with prison staff who are conducting rounds through the institution, and that these interactions include checks by qualified mental health professionals (QMHPs). VDOC denies the remaining allegations of Paragraph 103 and demands strict proof thereof.

104.     VDOC admits that, under VDOC policy, inmates who express suicidal ideations may be placed on certain precautions. VDOC denies the remaining allegations of Paragraph 104 and demands strict proof thereof.

105.    VDOC admits that inmates housed at security level "S" are permitted one hour of non-contact visitation per week and that this visitation occurs in a specific booth where the visitor and the inmate are separated by plexiglass. VDOC denies any remaining allegations of Paragraph 105.

106.    VDOC admits that there is an established schedule for legal visits at ROSP and WRSP. VDOC denies the remaining allegations of Paragraph 106 and demands strict proof thereof.

107.    VDOC denies the allegations of Paragraph 107 and demands strict proof thereof.

108.    VDOC admits that inmates who are housed at security level "S" typically undergo strip searches before they are brought out of their cells. VDOC denies any remaining allegations of Paragraph 108.

109.    Defendants note that the "Class Period" does not appear to be defined. VDOC denies the allegations of Paragraph 109 and demands strict proof thereof.

110.    VDOC admits that inmates housed at security level "S" are allowed outdoor recreation in enclosures and that they are restrained prior to being escorted to those enclosures. VDOC denies the remaining allegations of Paragraph 110 and demands strict proof thereof.

111.    VDOC denies the allegations of Paragraph 111 and demands strict proof thereof.

112.    VDOC denies the allegations of Paragraph 112 and demands strict proof thereof.

113.    VDOC admits that inmates in the general population typically have different recreation schedules and facilities. Any remaining allegations in Paragraph 113 are denied.

114.    VDOC denies the allegations of Paragraph 114 and demands strict proof thereof.

115.    VDOC admits that inmates in the general population are provided with access to certain work programs and activities. Any remaining allegations in Paragraph 115 are denied.

116.    VDOC denies the allegations of Paragraph 116 and demands strict proof thereof.

117.    VDOC denies the allegations of Paragraph 117 and demands strict proof thereof. Defendants note that VDOC is not responsible deciding whether to release inmates who are parole eligible; that discretion is statutorily-vested in the Virginia Parole Board.

118.    Because parole-eligible inmates in the general population are not treated any differently by VDOC than parole-eligible inmates housed at security level "S," VDOC denies the allegations of Paragraph 118.

119.    VDOC denies the allegations of Paragraph 119 and demands strict proof thereof.

120.    VDOC denies the allegations of Paragraph 120 and demands strict proof thereof.

121.    VDOC denies the allegations of Paragraph 121 and demands strict proof thereof.

122.    To the extent that the statements in Paragraph 122 directly quote the cited sources, VDOC admits that the cited sources contain the referenced statements. VDOC denies the remaining allegations of Paragraph 122.

123.    VDOC admits that DOJ initiated an investigation into ROSP and WRSP shortly after those facilities opened. VDOC denies the remaining allegations of Paragraph 123.

124.    Denied.

125.    VDOC admits that a Progressive Housing Phase Program was implemented at ROSP.  Any remaining allegations in Paragraph 125 are denied.

126.    VDOC denies the allegations of Paragraph 126 and demands strict proof thereof.

127.    VDOC admits that the named legislators visited ROSP in 2011, and that they made the referenced statements. VDOC denies the remaining allegations of Paragraph 127 and demands strict proof thereof.

128.    To the extent that the statements in Paragraph 128 directly quote the cited sources, VDOC admits that the cited sources contain the referenced statements. VDOC denies the remaining allegations of Paragraph 128.

129.    VDOC admits that DOJ appeared to consider whether to investigate conditions of confinement at ROSP.  Any remaining allegations in Paragraph 129 are denied.

130.    VDOC admits that VDOC enacted the Segregation Reduction Step-Down Program, but denies that it started in 2012. VDOC denies the remaining allegations in Paragraph 130.

131.    VDOC denies the allegations of Paragraph 131 and demands strict proof thereof.

132.    VDOC denies the allegations of Paragraph 132 and demands strict proof thereof.

133.    VDOC admits that the Step-Down Program is still being used at ROSP and WRSP. VDOC denies the remaining allegations of Paragraph 133 and demands strict proof thereof.

134.    VDOC denies that inmates at ROSP and WRSP are housed in "solitary confinement."  VDOC denies that a level "S" inmate can only return to the general population if he completes the Step-Down Program.  VDOC admits the remaining allegations of Paragraph 134.

135.    Admitted.

136.    VDOC denies that the DTT "routinely sits as a committee of one decision maker." The remaining allegations of Paragraph 136 are admitted.

137.    VDOC admits that inmates who are transferred to ROSP as security level "S" inmates should receive orientation on the Step-Down Program.  VDOC denies the remaining allegations of Paragraph 137 and demands strict proof thereof.

138.    VDOC admits that the depicted chart appears in VDOC's materials regarding the Step-Down Program.  To the extent that Paragraph 138 implies that it accurately captures all the

nuances of the Program, that implication is denied.  Any remaining implications in Paragraph 138 are also denied.

139.    VDOC denies the allegations of Paragraph 139 and demands strict proof thereof.

140.    VDOC admits that offenders assigned to security level "S" are considered for placement in the SM pathway if they meet the referenced criteria.

141.    VDOC admits that offenders assigned to security level "S" are considered for placement in the IM pathway if they meet the referenced criteria.

142.    VDOC admits that the DTT must exercise professional judgment when determining whether an inmate should be classified in the IM pathway, the SM pathway, or whether he should be switched to a different pathway.  VDOC denies the remaining allegations of Paragraph 142 and demands strict proof thereof.

143.    VDOC denies the allegations of Paragraph 143 and demands strict proof thereof.

144.    VDOC denies the allegations of Paragraph 144 and demands strict proof thereof.

145.    VDOC denies the allegations of Paragraph 145 and demands strict proof thereof.

146.    VDOC denies the allegations of Paragraph 146 and demands strict proof thereof.

147.    VDOC denies the allegations of Paragraph 147 and demands strict proof thereof.

148.    VDOC denies the allegations of Paragraph 148 and demands strict proof thereof.

149.    VDOC denies the allegations of Paragraph 149 and demands strict proof thereof.

150.    VDOC admits that the SIP is an option for inmates on the SM pathway.  However, because an IM inmate can be reclassified as an SM inmate, VDOC denies that this housing unit is not "available" to inmates who are on the IM pathway.   Any remaining allegations in Paragraph 150 are denied.

151.   VDOC denies that an inmate classified on the IM pathway cannot progress to the Step-Down Phases.  VDOC admits the remaining allegations of Paragraph 151.

152.   Admitted.

153.   VDOC denies the allegations of Paragraph 153 and demands strict proof thereof.

154.   VDOC denies the allegations of Paragraph 154 and demands strict proof thereof.

155.   VDOC denies the allegations of Paragraph 155 and demands strict proof thereof.

156.   VDOC admits that inmates participating in the Step-Down Program are provided with The Challenge Series and directed to remain infraction-free and otherwise exhibit appropriate behavior.  The remaining allegations of Paragraph 156 are denied.

157.   VDOC admits that inmates participating in the Step-Down Program are rated on a weekly basis.  The remaining allegations of Paragraph 157 are denied.

158.   VDOC admits that inmates are not provided with copies of their status rating charts, which are informal documents not subject to any document retention policies.  The remaining allegations of Paragraph 158 are denied.

159.   VDOC denies the allegations of Paragraph 159 and demands strict proof thereof.

160.   VDOC denies the allegations of Paragraph 160 and demands strict proof thereof.

161.   VDOC denies the allegations of Paragraph 161 and demands strict proof thereof.

162.   VDOC denies the allegations of Paragraph 162 and demands strict proof thereof.

163.   VDOC denies the allegations of Paragraph 163 and demands strict proof thereof.

164.   VDOC denies the allegations of Paragraph 164 and demands strict proof thereof.

165.   VDOC denies the allegations of Paragraph 165 and demands strict proof thereof.

166.   VDOC denies the allegations of Paragraph 166 and demands strict proof thereof.

167.   VDOC denies the allegations of Paragraph 167 and demands strict proof thereof.

168.   VDOC denies the allegations of Paragraph 168 and demands strict proof thereof.

169.   VDOC denies the allegations of Paragraph 169 and demands strict proof thereof.

170.   VDOC denies the allegations of Paragraph 170 and demands strict proof thereof.

171.   VDOC denies the allegations of Paragraph 171 and demands strict proof thereof.

172.   VDOC denies that Unit Managers neglect to document reasons for alterations to an inmate's pathway or internal status. VDOC denies that inmates are never advanced unless they have spent a minimum period of time at a given level.  VDOC admits the remaining allegations of Paragraph 172.

173.   VDOC admits that inmates typically are not provided with written results from their internal status reviews. The remaining allegations of Paragraph 173 are denied.

174.   VDOC admits that there is not an available appeal mechanism for internal status decisions.  The remaining allegations of Paragraph 174 are denied.

175.   VDOC admits that some 90-day ICA hearings are conducted at the door to an inmate's cell and that typically inmates are not allowed to present evidence or witnesses.  Any remaining allegations in Paragraph 175 are denied.

176.   VDOC admits that ICA hearings include a determination of whether the inmate is appropriately assigned to security level "S", security level "6," security level "5," and so on. VDOC admits that a formal hearing, requiring advance notice, is required when an inmate's security level is being considered for an increase to a higher security level.  A formal due process hearing is not necessarily held when an inmate is being considered for a reduction in security level. Any remaining allegations in Paragraph 176 are denied.

177.   VDOC denies the allegations of Paragraph 177 and demands strict proof thereof.

178.   VDOC denies the allegations of Paragraph 178 and demands strict proof thereof.

179.    VDOC denies the allegations of Paragraph 179 and demands strict proof thereof.

180.    VDOC denies the allegations of Paragraph 180 and demands strict proof thereof.

181.    VDOC denies the allegations of Paragraph 181 and demands strict proof thereof.

182.    VDOC admits that the ERT can reassign—and has reassigned—inmates from the IM to the SM pathway so that they can complete the transition into general population. Any remaining allegations in Paragraph 182 are denied.

183.    VDOC denies the allegations of Paragraph 183 and demands strict proof thereof.

184.    VDOC admits that the listed individuals are designated as members of the ERT. Any remaining allegations in Paragraph 184 are denied.

185.    VDOC denies the allegations of Paragraph 185 and demands strict proof thereof.

186.    VDOC denies the allegations of Paragraph 186 and demands strict proof thereof.

187.    Admitted.

188.    Admitted.

189.    VDOC denies the allegations of Paragraph 189 and demands strict proof thereof.

190.    Admitted.

191.    Admitted.

192.    To the extent that the statements in Paragraph 192 directly quote the cited sources, VDOC admits that the cited sources contain the referenced statements.   VDOC denies the remaining allegations of Paragraph 192.

193.    VDOC admits that that the COMPAS Risk Assessment is used by VDOC institutional personnel.  VDOC denies the remaining allegations of Paragraph 193.

194.    VDOC denies the allegations of Paragraph 194 and demands strict proof thereof.

195.    VDOC denies the allegations of Paragraph 195 and demands strict proof thereof.

196.     VDOC denies the allegations of Paragraph 196 and demands strict proof thereof.

197.     VDOC denies the allegations of Paragraph 197 and demands strict proof thereof.

198.     VDOC denies the allegations of Paragraph 198 and demands strict proof thereof.

199.     VDOC denies the allegations of Paragraph 199 and demands strict proof thereof.

200.     VDOC denies the allegations of Paragraph 200 and demands strict proof thereof.

201.     VDOC denies the allegations of Paragraph 201 and demands strict proof thereof.

202.     VDOC denies the allegations of Paragraph 202 and demands strict proof thereof.

203.     VDOC denies the allegations of Paragraph 203 and demands strict proof thereof.

204.     VDOC denies the allegations of Paragraph 204 and demands strict proof thereof.

205.     VDOC admits that each named plaintiff has been incarcerated at Red Onion State Prison.  The remaining allegations of Paragraph 205 are denied.

206.     VDOC denies the allegations of Paragraph 206 and demands strict proof thereof.

207.     The allegations of Paragraph 207 are legal assertions, to which no response is required.  To the extent a response is required, those allegations are denied.

208.     VDOC denies the allegations of Paragraph 208 and demands strict proof thereof.

209.     The allegations of Paragraph 209 state legal conclusions to which no response is required.  To the extent a response is required, those allegations are denied.

210.     The allegations of Paragraph 210 state legal conclusions to which no response is required.  To the extent a response is required, those allegations are denied.

211.     The allegations of Paragraph 211 state legal conclusions to which no response is required.  To the extent a response is required, those allegations are denied.

212.     VDOC denies the allegations of Paragraph 212 and demands strict proof thereof.

213.    The allegations of Paragraph 213 state legal conclusions to which no response is required.  To the extent a response is required, those allegations are denied.

214.    The allegations of Paragraph 214 state legal conclusions to which no response is required.  To the extent a response is required, those allegations are denied.

215.    VDOC denies the allegations of Paragraph 215 and demands strict proof thereof.

216.    The allegations of Paragraph 216 state legal conclusions to which no response is required.  To the extent a response is required, those allegations are denied.

217.    The allegations of Paragraph 217 state legal conclusions to which no response is required.  To the extent a response is required, those allegations are denied.

218.    The allegations of Paragraph 218 state legal conclusions to which no response is required.  To the extent a response is required, those allegations are denied.

219.    The allegations of Paragraph 219 state legal conclusions to which no response is required.  To the extent a response is required, those allegations are denied.

220.    VDOC denies the allegations of Paragraph 220 and demands strict proof thereof.

221.    The allegations of Paragraph 221 state legal conclusions to which no response is required.  To the extent a response is required, those allegations are denied.

222.    Defendants adopt and incorporate their responses to the preceding Paragraphs as if fully set forth herein.

223.    VDOC denies the allegations of Paragraph 223 and demands strict proof thereof.

224.    VDOC denies the allegations of Paragraph 224 and demands strict proof thereof.

225.    VDOC denies the allegations of Paragraph 225 and demands strict proof thereof.

226.    VDOC denies the allegations of Paragraph 226 and demands strict proof thereof.

227.    VDOC denies the allegations of Paragraph 227 and demands strict proof thereof.

228.    VDOC denies the allegations of Paragraph 228 and demands strict proof thereof.

229.    VDOC denies the allegations of Paragraph 229 and demands strict proof thereof.

230.    The allegations of Paragraph 230 state legal conclusions to which no response is required.  To the extent a response is required, those allegations are denied.

231.    VDOC adopts and incorporates its responses to the preceding Paragraphs as if fully set forth herein.

232.    The allegations of Paragraph 232 state legal conclusions to which no response is required.  To the extent a response is required, those allegations are denied.

233.    VDOC denies the allegations of Paragraph 233 and demands strict proof thereof.

234.    The allegations of Paragraph 234 state legal conclusions to which no response is required.  To the extent a response is required, those allegations are denied.

235.    The allegations of Paragraph 235 state legal conclusions to which no response is required.  To the extent a response is required, those allegations are denied.

236.    VDOC adopts and incorporates its responses to the preceding Paragraphs as if fully set forth herein.

237.    VDOC denies the allegations of Paragraph 237 and demands strict proof thereof.

238.    VDOC denies the allegations of Paragraph 238 and demands strict proof thereof.

239.    VDOC denies the allegations of Paragraph 239 and demands strict proof thereof.

240.    VDOC denies the allegations of Paragraph 240 and demands strict proof thereof.

241.    VDOC denies the allegations of Paragraph 241 and demands strict proof thereof.

242.    VDOC denies the allegations of Paragraph 242 and demands strict proof thereof.

243.    VDOC denies the allegations of Paragraph 243 and demands strict proof thereof.

244.    VDOC denies the allegations of Paragraph 244 and demands strict proof thereof.

245.    VDOC denies the allegations of Paragraph 245 and demands strict proof thereof.

246.    VDOC adopts and incorporates its responses to the preceding Paragraphs as if fully set forth herein.

247.    The allegations of Paragraph 247 state legal conclusions to which no response is required.  To the extent a response is required, those allegations are denied.

248.    VDOC denies the allegations of Paragraph 248 and demands strict proof thereof.

249.    VDOC denies the allegations of Paragraph 249 and demands strict proof thereof.

250.    VDOC adopts and incorporates its responses to the preceding Paragraphs as if fully set forth herein.

251.    VDOC denies the allegations of Paragraph 251 and demands strict proof thereof.

252.    VDOC admits that VDOC is a "public entity" within the meaning of the ADA.

253.    VDOC denies the allegations of Paragraph 253 and demands strict proof thereof.

254.    VDOC denies the allegations of Paragraph 254 and demands strict proof thereof.

255.    VDOC denies the allegations of Paragraph 255 and demands strict proof thereof.

256.    VDOC denies the allegations of Paragraph 256 and demands strict proof thereof.

257.    VDOC denies the allegations of Paragraph 257 and demands strict proof thereof.

258.    VDOC denies the allegations of Paragraph 258 and demands strict proof thereof.

259.    VDOC adopts and incorporates its responses to the preceding Paragraphs as if fully set forth herein.

260.    VDOC denies the allegations of Paragraph 260 and demands strict proof thereof.

261.    VDOC admits that VDOC receives federal funding, within the meaning of the Rehabilitation Act.

262.    VDOC denies the allegations of Paragraph 262 and demands strict proof thereof.

263.    VDOC denies the allegations of Paragraph 263 and demands strict proof thereof.

264.    VDOC denies the allegations of Paragraph 264 and demands strict proof thereof.

## **PRAYER FOR RELIEF**

In response to the Prayer for Relief, VDOC states as follows:

265.    VDOC denies that it "breached" the vacated settlement agreement or that Plaintiffs are entitled to the declaratory relief sought;

266.    VDOC denies that it has violated Plaintiffs' procedural due process rights or that Plaintiffs are entitled to the declaratory relief sought;

267.    VDOC denies that it has violated Plaintiffs' equal protection rights or that Plaintiffs are entitled to the declaratory relief sought;

268.    VDOC denies that it has violated Plaintiffs' Eighth Amendment rights or that Plaintiffs are entitled to the declaratory relief sought;

269.    VDOC denies that it has violated the ADA or the RA or that Plaintiffs are entitled to the declaratory relief sought;

270.    VDOC denies that the Plaintiffs are entitled to specific performance;

271.    VDOC denies that Plaintiffs are entitled to the equitable relief requested;

272.    VDOC denies that Plaintiffs are entitled to the injunctive relief sought;

273.    VDOC denies that appointment of a special master would be warranted;

274.    VDOC denies that Plaintiffs are entitled to compensatory damages;

275.    VDOC denies that Plaintiffs are entitled to nominal damages;

276.    VDOC denies that Plaintiffs are entitled to costs and fees;

277.    VDOC denies that Plaintiffs are entitled to any relief whatsoever.

## DEMAND FOR JURY TRIAL

VDOC demands a jury on all issues triable by a jury.

## AFFIRMATIVE DEFENSES

VDOC states the following affirmative defenses to the Complaint. VDOC will rely on any and all other properly available defenses to the Complaint which may arise from Plaintiffs' prosecution of this action and reserves its right to amend these defenses if at any time it should be so advised.

### FIRST DEFENSE

The Complaint fails to state a claim upon which relief can be granted.

### SECOND DEFENSE

VDOC denies that venue is proper in the Federal District Court for the Eastern District of Virginia.

### THIRD DEFENSE

VDOC denies that the claims in the Complaint are cognizable under the Eighth Amendment, Fourteenth Amendment, the Americans with Disabilities Act, the Rehabilitation Act, or any section or clause of the United States Constitution or any other federal law or regulation.

### FOURTH DEFENSE

VDOC denies that jurisdiction on the Complaint is conferred upon the Court by 42 U.S.C. § 1983, the previously cited amendments to the United States Constitution, or any other federal law or regulation.  Further, VDOC specifically denies that the Court has jurisdiction over any claim which might be construed to state a claim under state law.

## FIFTH DEFENSE

VDOC denies that Plaintiffs have suffered any injury or damage as a result of action or omission on the part of VDOC.

## SIXTH DEFENSE

VDOC alleges and avers that, to the extent that Plaintiffs have suffered any injuries or damages, such injuries or damages were caused by others not under the control of VDOC, and for whose conduct it is in no way responsible.

## SEVENTH DEFENSE

VDOC denies that Plaintiffs have suffered the injuries and damages alleged and calls for strict proof thereof.

## EIGHTH DEFENSE

VODC is entitled to Eleventh Amendment and sovereign immunity.

## NINTH DEFENSE

VDOC denies that it is indebted to or liable to Plaintiffs in any sum whatsoever.

## TENTH DEFENSE

Any claims against VDOC premised on respondeat superior must fail because that theory of liability is not available in an action under 42 U.S.C. § 1983.

## ELEVENTH DEFENSE

To the extent Plaintiffs have not exhausted their administrative remedies, this action is barred, in whole or in part, under 42 U.S.C. § 1997e(a).

TWELFTH DEFENSE

To the extent that Plaintiffs can make no showing of any physical injury accompanying or preceding any alleged emotional or mental injuries, their recovery of monetary damages for any emotional injuries is barred under 42 U.S.C. § 1997e(e).

THIRTEENTH DEFENSE

This matter is barred, in whole or in part, by the two-year personal injury statute of limitations borrowed from Virginia Code § 8.01-243(A), which applies to claims under 42 U.S.C. § 1983.

FOURTEENTH DEFENSE

This matter is barred, in whole or in part, by the one-year statute of limitations borrowed from Virginia Code § 51.5-46(B), which applies to Plaintiffs' claims under the Americans with Disabilities Act and the Rehabilitation Act.

FIFTEENTH DEFENSE

VDOC is immune from any request for punitive or compensatory damages.

SIXTEENTH DEFENSE

VDOC is immune from any request for retrospective injunctive or declaratory relief.

SEVENTEENTH DEFENSE

The Court's authority to award injunctive relief is constrained by the express terms of the Prison Litigation Reform Act ("PLRA"), 18 U.S.C. § 3626(a)(1)(A).

EIGHTEENTH DEFENSE

Plaintiffs' claims are barred, in whole or in part, under the doctrine of res judicata.

<u>NINETEENTH DEFENSE</u>

To the extent Plaintiffs seek to enforce a private settlement agreement in federal court, the action is precluded under 18 U.S.C. § 3636(c)(2)(B).

<u>TWENTIETH DEFENSE</u>

To the extent Plaintiffs seek to enforce the ADA implementing federal regulations, they lack standing to file suit.

<u>TWENTY-FIRST DEFENSE</u>

VDOC specifically denies that this action meets the numerosity, commonality, typicality, or adequacy requirements for certifying a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

<u>TWENTY-SECOND DEFENSE</u>

Plaintiffs' request for equitable relief is barred under the doctrine of laches.

<u>TWENTY-THIRD DEFENSE</u>

Plaintiffs' request for specific enforcement is barred under the reserved powers doctrine, the unmistakability doctrine, and/or the sovereign acts doctrine.

Respectfully submitted,

VIRGINIA DEPARTMENT OF CORRECTIONS

By: <u>/s/ *Maya M. Eckstein*</u>

Mark R. Herring
*Attorney General of Virginia*

Margaret Hoehl O'Shea (VSB #66611)
Assistant Attorney General,
Criminal Justice & Public Safety Division

OFFICE OF THE ATTORNEY GENERAL
202 North Ninth Street
Richmond, VA 23219
Ph: (804) 786-2206
Fax: (804) 786-4239
moshea@oag.state.va.us

Maya M. Eckstein (VSB #41413)
Trevor S. Cox (VSB #78396)
R. Dennis Fairbanks (VSB #90435)

HUNTON ANDREWS KURTH LLP
951 E. Byrd St.
Richmond, VA 23219
Ph: (804) 788-8200
Fax: (804) 788-8218
meckstein@HuntonAK.com
tcox@HuntonAK.com
dfairbanks@HuntonAK.com

*Counsel for Defendant Virginia Department
of Corrections*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 1st day of September 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing to all CM/ECF participants.

By:    */s/ Maya M. Eckstein*
Maya M. Eckstein (VSB # 41413)
Hunton Andrews Kurth LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, Virginia 23219-4074
Telephone: (804) 788-8200
Facsimile: (804) 788-8218
meckstein@HuntonAK.com

*Counsel for Defendant Virginia Department of Corrections*

122514.0000001 EMF_US 86299847v5