**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
BIG STONE GAP DIVISION**

WILLIAM THORPE, *et al.*,

               *Plaintiffs*,

       v.                            Civil Case No. 2:20-cv-00007-JPJ-PMS

VIRGINIA DEPARTMENT OF
CORRECTIONS, *et al.*,

               *Defendants*.

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO COMPEL
THE PRODUCTION OF DOCUMENTS AND ANSWERS TO INTERROGATORIES**

# <u>TABLE OF CONTENTS</u>

**Page**

INTRODUCTION ................................................................................................................ 2

BACKGROUND ................................................................................................................. 2

LEGAL STANDARD.......................................................................................................... 5

ARGUMENT ...................................................................................................................... 6

I.   DOCUMENTS AND INFORMATION PERTAINING TO MENTAL HEALTH
     DISABILITIES ARE RELEVANT AND DISCOVERABLE................................... 6

     A.   Defendants Cannot Re-Write the Scope of Plaintiffs' Claims......................... 6

     B.   Defendants Cannot Unilaterally Limit Discovery to Mental Health Disabilities
          Suffered by Class Representatives. ................................................................... 8

     C.   Defendants' Refusal To Provide Discovery On Certain Types Of Mental Health
          Disabilities Impedes Plaintiffs' Ability To Prosecute Their Case. ............... 10

II.  DOCUMENTS PERTAINING TO EMPLOYEE DISCIPLINE ARE RELEVANT TO
     SHOWING HOW THE STEP-DOWN PROGRAM OPERATES IN PRACTICE............. 11

CONCLUSION.................................................................................................................. 14

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### CASES

*Abreu v. New Jersey*,
  No. 14-716, 2015 WL 9480021 (D.N.J. Dec. 29, 2015)...........................................................12

*Deiter v. Microsoft Corp.*,
  436 F.3d 461 (4th Cir. 2006) ...................................................................................................9

*Eramo v. Rolling Stone LLC*,
  314 F.R.D. 205 (W.D. Va. 2016).........................................................................................5, 6

*Gibbs v. City of New York*,
  243 F.R.D. 96 (S.D.N.Y. 2007) ..............................................................................................12

*Goard v. Crown Auto, Inc.*,
  No. 6:15-cv-00035, 2017 WL 6381703
  (W.D. Va. Jan. 5, 2017) ...................................................................................................13, 14

*Gross v. Lunduski*,
  304 F.R.D. 136 (W.D.N.Y. 2014)............................................................................................12

*Kidwilder v. Progressive Paloverde Ins. Co.*,
  192 F.R.D. 193 (N.D.W.Va. 2000) ...........................................................................................6

*McGlothlin v. Connors*,
  142 F.R.D. 626 (W.D. Va. 1992) ..............................................................................................9

*McMillon v. Hawaii*,
  261 F.R.D. 536 (D. Haw. 2009)..............................................................................................10

*Minke v. Page Cty.*,
  No. 5:18-cv-00082, 2019 WL 2411450
  (W.D. Va. June 7, 2019) ..........................................................................................................12

*Russell v. Scott*,
  No. 5:20-CV-184, 2022 WL 3084339
  (D. Vt. Aug. 3, 2022) ...............................................................................................................12

*Scott v. Clarke*,
  No. 3:12-CV-00036, 2013 WL 6158458
  (W.D. Va. Nov. 25, 2013)...........................................................................................5, 11, 13

*Siquic v. Star Forestry, LLC*,
  No. 3:13CV00043, 2015 WL 5818263
  (W.D. Va. Oct. 5, 2015)..............................................................................................................9

*Walls v. City of New York*,
  502 F. Supp. 3d 686 (E.D.N.Y. 2020) ....................................................................................11

## STATUTES AND RULES

U.S. CONST. AMEND. XIII ................................................................................................13

U.S. CONST. AMEND. XIV ................................................................................................1

29 U.S.C. § 705 ................................................................................................ *passim*

42 U.S.C. § 12102 ............................................................................................ *passim*

Fed. R. Civ. P. 26(b)(1)................................................................................................5, 14

# INTRODUCTION

Plaintiffs seek an order directing Defendant the Virginia Department of Corrections ("VDOC") to produce two categories of discovery: (1) documents relating to putative class members' learning, intellectual, developmental or cognitive disabilities or impairments, and (2) documents relating to employee discipline at Red Onion State Prison ("ROSP") and Wallens Ridge State Prison ("WRSP").[1]

VDOC has refused to produce both categories of documents based on unfounded relevance objections. As to the first category, Defendants do not dispute that conditions such as post-traumatic stress disorder, depression, or anxiety disorders are mental health disabilities and properly subject to discovery. But VDOC nonetheless contends that other conditions, such as intellectual disability or learning impairments are not. This is plainly wrong. Counts VI and VII of the Complaint allege violations of the Americans with Disabilities Act ("ADA") and the Rehabilitation Act ("RA"), both of which define "disabilities" broadly to include all of these disabilities. Further, the Complaint includes numerous specific allegations that put at issue Defendants' failure to accommodate all kinds of mental health disabilities under these statutes, including learning, intellectual, developmental or cognitive disabilities or impairments. Discovery regarding such disabilities and Defendants' failure to accommodate them relates to Plaintiffs' claims and consequently is relevant.

Records of employee discipline likewise are relevant subjects of discovery. Here, Plaintiffs contend that VDOC's Step-Down Program on its face and in application violates the Fourteenth and Eighth Amendments, as well as the ADA and RA. Employee disciplinary records bear directly

---

[1] Plaintiffs bring this motion with still several months before the closure of document discovery. Am. Scheduling Order (ECF No. 189) (setting February 28, 2023 as close of fact discovery).

on the ways in which VDOC officials and staff have implemented the challenged Step-Down Program, how staff behavior is monitored, and how misconduct is addressed.

The parties have reached an impasse on these issues after substantial meet and confer efforts.  Plaintiffs respectfully request that the Court order VDOC to produce all documents and information that are responsive to Plaintiffs' discovery requests on these topics.

## BACKGROUND

**Defendants' blanket refusal to produce documents and information relating to specific types of mental health disabilities.**  Plaintiffs assert ADA and RA claims based on Defendants' failure to accommodate incarcerated persons in the Step-Down Program who suffer from mental health disabilities (as opposed to physical disabilities, such as blindness or deafness). As set forth below, the ADA and RA apply the same broad definitions of mental health disabilities.

The ADA defines disability as a "physical or _mental impairment_ that substantially limits one or more major life activities of [an] individual."  42 U.S.C. § 12102(1) (emphasis added). Critically, the ADA mandates that "the definition of disability . . . shall be construed in favor of broad coverage of individuals." _Id._ § 12102(4)(A).  Under the ADA, any mental impairment that substantially limits a major life activity, in the broadest sense of the term, constitutes a disability. _Id_. 12102(1) (defining disability).  The ADA provides that "major life activities" includes (but is not limited to) "learning, reading, concentrating, thinking, communicating" as well as "neurological" and "brain" functions.  _Id._  Thus, the ADA's definition of disability covers intellectual, developmental, learning, and cognitive disabilities and impairments, as well as additional categories of mental health disabilities (e.g., post-traumatic stress disorder, anxiety, and depression disorder).  The definition in the RA is identical.[2]  "Mental health disability," the term

---

[2] 29 U.S.C. § 705(9)(B) (RA follows ADA definition of disability).

used in the definitions for the Disabilities Classes, targets all categories of "mental impairments" under the ADA (and RA), including intellectual, developmental, learning, and cognitive disabilities and impairments.[3]

Several of VDOC's Operating Procedures likewise define disability to mean "[a] physical or mental impairment that substantially limits a major life activity," Ex. 1 (VDOC O.P. 720.2); *see also* Ex. 2 (VDOC O.P. 801.3) (explaining that [intellectual disability] (a "developmental disorder"), organic brain syndrome, emotional or mental illness, and specific learning disabilities are all "mental impairments" covered within the scope of the ADA).

Plaintiffs' claims and the Disabilities Classes encompass all types of qualifying mental health disabilities, including intellectual, developmental, learning, and cognitive disabilities and impairments, as well as additional categories of mental health disabilities. Plaintiffs accordingly served document requests and interrogatories on Defendants seeking several categories of information pertaining to Defendants' failure to accommodate members of the Disabilities Classes, including members with mental health disabilities. *See* Ex. 3, at 6-8 (Third Set of RFPs Nos. 3, 4, 10, 11, 12, 17, and 20); Ex. 4, at 6-7 (Interrog. Nos. 1, 2, 3, and 4). Plaintiffs' requests seek, among other things, documents regarding VDOC's assessments of prisoners with mental health disabilities (Third Set of RFPs No. 3 and Interrog. Nos. 1, 2, 3), accommodations of the Step-Down Program for identified mental health disabilities (Third Set of RFPs Nos. 4, 10, 11, 12 and

---

[3] The Disabilities Injunction Class is defined as: "All persons who are currently, or will in the future, be confined at Red Onion or Wallens Ridge at the 'Level S' or 'Level 6' security levels subject to any phase of the Step-Down Program and who suffer from mental health disabilities and are qualified as individuals with disabilities under either the ADA or the RA." The Disabilities Damages Class is defined as: "All persons who from August 1, 2012 to the present have been confined at Red Onion or Wallens Ridge at the 'Level S' or 'Level 6' security levels subject to any phase of the Step-Down Program and who suffer from mental health disabilities and are qualified as individuals with disabilities under either the ADA or the RA." Pls.' Am. Mot. For Class Certification (ECF No. 191-2).

Interrog. Nos. 2, 3, 4), and information concerning employee-training on making mental health disability determinations and accommodations (Third Set of RFPs Nos. 17, 20).

In response to each of these requests, Defendants have made the same blanket relevance objection: because Plaintiffs' proposed Disabilities Subclass uses the catch-all term "mental health disabilities," Defendants argue that cognitive, intellectual, developmental, and learning disabilities are outside the relevant scope of discovery.  *See* Ex. 5, at 6 (Defs.' Letter to Pls., dated May 6, 2022); Ex. 6, at 1 (Defs.' Letter to Pls., dated Sept. 2, 2022).  In other words, Defendants contend that "mental health disabilities" do not include learning, intellectual, developmental or cognitive disabilities or impairments, and that their definition of "disability"—rather than the definition supplied by the ADA and RA—controls the relevance inquiry.

During several meet and confers, counsel for Plaintiffs explained that Defendants' position is incompatible with (1) the broad definition of "disability" under the ADA (and RA), (2) the definitions contained in VDOC's own policies, *see* Ex. 2 (VDOC Operating Procedure 801.3), Ex. 1 (VDOC Operating Procedure 720.2), and (3) Plaintiffs' use of the terms "mental health disabilities," "learning disabilities or impairments" and "cognitive disabilities or impairments" in their Complaint.  *See*, *e.g*., Compl. ¶¶ 149, 162, 164; Ex. 7, at 1 (Pls.' Letter to Defs., dated Aug. 11, 2022);  Ex. 8, at 4-6 (Pls.' Letter to Defs., dated Apr. 15, 2022).  Plaintiffs' counsel also repeatedly voiced their concerns that VDOC was unilaterally (and unscientifically) deciding which of a prisoners' symptoms should be attributed to a "mental health disability," and which should be attributed to an "intellectual, cognitive, learning, or developmental" disability and thus blocked from discovery.  To date, VDOC has only searched for documents regarding what they call "mental health disabilities" and have refused to search for or produce documents (or information) regarding what they in their unilateral judgment deem to be "cognitive, intellectual, developmental, and

learning disabilities and impairments." Ex. 7, at 1 (Pls.' Letter to Defs., dated Aug. 11, 2022). Despite substantial meet and confer efforts, the parties are at an impasse. *Id.*

**Defendants' refusal to produce documents relating to employee discipline, promotion, and demotion**. Plaintiffs' Document Request No. 29 asks for "[a]ll Documents and Communications relating to employee discipline, employee promotion, and employee demotion at ROSP and WRSP." Ex. 9, at 12 (First Set of RFPs No. 29). Although Defendants' written objections raised several grounds for refusing to produce responsive documents, during the meet and confer process, VDOC has primarily rested its refusal to produce on a relevance objection, while also continuing to assert a boilerplate overbreadth objection. Ex. 7, at 2 (Pls.' Letter to Defs., dated Aug. 11, 2022); Ex. 6, at 2 (Defs.' Letter to Pls., dated Sept. 2, 2022). Through the course of the meet and confer process, Plaintiffs explained that "documents regarding employee discipline demonstrate how relevant policies are implemented, how the prison enforces violations of employee conduct, whether staff is appropriately trained, and how staff operates the Step-Down Program." Ex. 7, at 2 (Pls.' Letter to Defs., dated Aug. 11, 2022). VDOC continues to stand on their objections. Ex. 6, at 2 (Defs.' Letter to Pls., dated Sept. 2, 2022). The parties are at an impasse. Ex. 7, at 2 (Pls.' Letter to Defs., dated Aug. 11, 2022).

## LEGAL STANDARD

The Federal Rules of Civil Procedure dictate that discoverable information is "any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1); *see also Eramo v. Rolling Stone LLC*, 314 F.R.D. 205, 209 (W.D. Va. 2016) ("[T]he discovery rules are to be accorded broad and liberal construction."). Information is relevant if it "bears on, or . . . reasonably could lead to other matter[s] that could bear on, any issue that is or may be in the case." *Scott v. Clarke*, No. 3:12-CV-00036, 2013 WL 6158458, at *5 (W.D. Va. Nov. 25,

2013) (quoting *Kidwilder v. Progressive Paloverde Ins. Co.*, 192 F.R.D. 193, 199 (N.D.W. Va. 2000)).  Once a party seeking discovery makes a prima facie showing of discoverability, the burden of persuasion shifts to the resisting party to show lack of relevance.  *See Eramo*, 314 F.R.D. at 209.

### ARGUMENT

### I. Documents and Information Pertaining To Mental Health Disabilities Are Relevant and Discoverable.

The Disabilities Classes allege claims under the ADA and the RA on behalf of prisoners with mental health disabilities as defined by those statutes.  In other words, prisoners in the Step-Down Program who "suffer from mental health disabilities" and are "qualified as individuals with disabilities under either the ADA or the RA" are part of injunctive relief and damages classes asserting claims under both of those statutes.  Defendants should not be permitted to unilaterally narrow those claims through a discovery dodge by contending intellectual, developmental, learning, and cognitive disabilities and impairments—each of which is a mental health disability under the operative statutes—somehow are not relevant.

A.  Defendants Cannot Re-Write the Scope of Plaintiffs' Claims.

Plaintiffs' Complaint alleges ADA and RA claims focusing on Defendants' failure to accommodate incarcerated persons in the Step-Down Program who suffer from qualifying ADA or RA mental health disabilities.  The coverage for mental health disabilities in these statutes is broad and follows the parameters established by the ADA.  *See supra* at 2-3.  And VDOC, too, has embraced the ADA's broad construction of the term "disability" to include mental health disabilities that VDOC now argues are irrelevant.  Several of VDOC's operating procedures define disability as "[a] physical or mental impairment that substantially limits a major life activity," Ex.

6

1 (VDOC O.P. 720.2); *see also* Ex. 2 (VDOC O.P. 801.3).  For example, VDOC's operating procedure 801.3 explains that intellectual disability (a "developmental disorder"), organic brain syndrome, emotional or mental illness, and specific learning disabilities are all "mental impairments" covered within the scope of the ADA.  Ex. 2 (VDOC O.P. 801.3).[4]

If there were any lingering doubts about the scope of Plaintiffs' claims or class definition, they are answered by the Complaint, which asserts specific allegations about VDOC's failure to accommodate all types of mental health disabilities in the Step-Down Program.  Specifically, the Complaint alleges that the requirements of the Step-Down Program apply indiscriminately to prisoners with "learning disabilit[ies] . . . [and] cognitive disabilities," causing these prisoners disproportionate harm by rendering their progression out of Step-Down even more illusory than it is for their peers.  *See* Compl. ¶ 162.  And it expressly references the struggles that prisoners with cognitive, intellectual, developmental, and learning disabilities and impairments experience.  For instance, Plaintiffs' Complaint asserts that:

- "Prisoners who cannot complete the workbook series [of the Step-Down Program] because of educational background, **learning disability, cognitive disability, mental illness**, or language barrier are evaluated on the same criteria as prisoners without those disabilities or barriers,"  Compl. ¶ 162 (emphasis added); and

- "The disciplinary infraction category does not accommodate prisoners who cannot comply with institutional rules due to **an intellectual disability**. . . ." *Id.* ¶ 164 (emphasis added).

Plaintiffs' requests, *supra* at 3, go to the gravamen of the ADA and RA claims, which allege that Defendants fail to (1) provide prisoners with qualifying mental health disabilities alternative pathways out of the Step-Down Program, and (2) take into account Plaintiffs' mental health disabilities during housing assignments and reviews.  *See, e.g.*, Compl. ¶¶ 250-58.  Plaintiffs' discovery requests are tailored to the alleged claims and seek information that directly

---

[4] VDOC's Operating Procedures refer to intellectual disability by the outdated term "mental retardation."  We use the more modern construction here.

bears on the accommodations, housing assignments, and status reviews of putative class members

with all categories of mental health disabilities, including learning, intellectual, developmental or

cognitive disabilities or impairments, such as documents and information that pertain to:

- whether any Class Member suffers from a disability, *see* Ex. 3, at 6 (Third Set of RFPs No. 3); Ex. 4, at 6-7 (Interrog. Nos. 1-4);
- whether a prisoner brought complaints about their ability to progress out of the Step-Down Program due to their disabilities, *see* Ex. 3, at 6 (Third Set of RFPs No. 4); Ex. 4, at 6 (Interrog. No. 2);
- whether VDOC officials discussed changing policies and practices for those that were seriously mentally ill or disabled as referenced in VDOC Operating Procedures, *see* Ex. 3, at 7 (Third Set of RFPs No. 10);
- whether prisoners requested disability accommodations; whether prisoners received disability accommodations; whether VDOC employees are sufficiently trained to recognize signs and symptoms of mental illness and disabilities, *see* Ex. 3, at 7-8 (Third Set of RFPs Nos. 11-12, 17-18, 20); Ex. 4, at 6-7 (Interrog. Nos. 3-4); and
- whether VDOC employees are sufficiently trained to identify and provide accommodations for prisoners with disabilities. *See* Ex. 3 at 6-8 (Third Set of RFPs Nos. 3-4, 10-12, 17, 20); Ex. 4, at 6-7 (Interrog. Nos. 3-4).

Defendants' efforts to block discovery regarding learning, intellectual, developmental or

cognitive disabilities or impairments ignore the scope of Plaintiffs' Complaint and the definitions

supplied by the ADA and RA, as well as VDOC's own Operating Procedures. Those efforts should

be rejected.

B. <u>Defendants Cannot Unilaterally Limit Discovery to Mental Health Disabilities Suffered by Class Representatives.</u>

Defendants contend that discovery should be limited to the specific types of mental health

disabilities suffered by the four named representatives for the Disabilities Classes—Messrs. Wall,

Cavitt, Riddick, and Khavkin. Because they suffer from psychological and psychiatric

impairments, but not learning, intellectual, developmental or cognitive disabilities or impairments,

Defendants argue that Plaintiffs and the class are not entitled to discovery pertaining to those latter categories.  Ex. 6, at 1 (Defs.' Letter to Pls., dated Sept. 2, 2022).  This is plainly wrong.

To begin with, Defendants never made this argument in opposition to class certification, the appropriate place to raise the issue.  And with good reason.  In a class action, there is no requirement that the "plaintiff's claim and the claims of the class member[s] be perfectly identical or perfectly aligned."  *Deiter v. Microsoft Corp.*, 436 F.3d 461, 467 (4th Cir. 2006); *see also McGlothlin v. Connors*, 142 F.R.D. 626, 633 (W.D. Va. 1992) ("Although the variety of health care services provided, the degree of injury claimed, or the amount of damages suffered may vary among Plaintiffs, the court finds that the named Plaintiffs' legal claims arise from the same conduct and are typical of the entire class.").  This makes sense. The relevant question in a class action like this one is whether all members were subjected to the same policy or practice, not whether they all suffered from precisely the same mental impairment.  Pl.'s Am. Mem. of Law in Supp. of Am. Mot. for Class Certification at 28 (ECF No. 191-4).

Plaintiffs' Complaint attacks VDOC's systematic failure to accommodate prisoners with any type of mental health disabilities in the Step-Down Program by not accounting for the additional difficulties that such inmates face in completing the Step-Down Program.  The type of mental health disability does not affect the analysis: the claimed injury for all class members is the exposure to VDOC's policies and practices, which equally fail to accommodate all mental health disabilities.  Therefore, the fact that the representatives for the Disabilities Classes suffer from only a subset of mental health disabilities does not preclude them from representing the proposed classes and does not preclude inmates with other types of mental health disorders from those proposed classes.  *Siquic v. Star Forestry, LLC*, No. 3:13CV00043, 2015 WL 5818263, at *5 (W.D. Va. Oct. 5, 2015) ("[W]here the representative party's interest in prosecuting his own case

. . . simultaneously tends to advance the interests of the absent class members', the typicality standard is satisfied.") (cleaned up); *see also McMillon v. Hawaii*, 261 F.R.D. 536, 545 (D. Haw. 2009) ("An exact representation of every possible disability is not required . . . where the class definition is restricted to those who are not only disabled, but also discriminated against and/or denied access as a result of their disabilities.").

C. Defendants' Refusal To Provide Discovery On Certain Types Of Mental Health Disabilities Impedes Plaintiffs' Ability To Prosecute Their Case.

Defendants' refusal to provide any discovery on intellectual, developmental, learning, and cognitive disabilities and impairments also substantially impedes Plaintiffs' ability to take meaningful discovery on all types of mental health disabilities, including psychological and psychiatric disorders, which even Defendants agree are relevant.

Mental health disabilities are not as neatly cabined as Defendants imagine; rather, there is significant overlap between the various disabilities that make up that broad category. The scientific literature shows that that the symptoms of mental health disabilities Defendants seek to exclude from discovery (learning, intellectual, developmental or cognitive disabilities or impairments) overlap significantly with those that are concededly relevant.[5] This co-occurrence often leads to misdiagnosis.[6] Consequently, even under Defendants' unsupported, unscientific

---

[5] *See, e.g.*, Kerim M. Munir, *The co-occurrence of mental disorders in children and adolescents with intellectual disability/intellectual development disorder*, 29 Current Opinion in Psychiatry 95 (2016) (reviewing scientific literature indicating the high rates of co-occurrence of mental health issues in individuals with intellectual disabilities); Borderline Personality Disorder, Mayo Clinic, https://www.mayoclinic.org/diseases-conditions/borderline-personality-disorder/symptoms-causes/syc-20370237 (last visited Feb. 3, 2022) (stating that symptoms of borderline personality disorder, a mental health disability, can include reduced ability to regulate behavior and emotions, including issues of impulse control); Causes & Effects of Intellectual Disability, Detroit Behav. Inst., https://www.dbinstitute.com/disorders/intellectual-disability/causes-symptoms/ (last visited Feb. 3, 2022) (stating that symptoms of intellectual disability can include reduced ability to regulate behavior and emotions, including issues of impulse control).

[6] Diana Brazzell et al., From the Classroom to the Community: Exploring the Role of Education During Incarceration and Reentry, URB. INST. JUST. POL'Y CTR. (2009), 8-9 (stating that learning disabilities, emotional and behavioral disorders, and mental illness often go undiagnosed or misdiagnosed within the general public and correctional

distinction, obtaining information concerning a mental health disability Defendants (incorrectly) contend is not covered by the Complaint reasonably could lead to information concerning a mental health disability Defendants concede is part of the Complaint.  This makes discovery on all mental health disabilities relevant.  *Scott*, 2013 WL 6158458, at *4-5.

*  *  *

In sum, all mental health disabilities—including learning, intellectual, developmental or cognitive disabilities or impairments—directly bear on a prisoner's ability to progress through the Step-Down Program, fall within the scope of Plaintiffs' claims, and thus are relevant and within the scope of permissible discovery.

## II. Documents Pertaining to Employee Discipline Are Relevant to Showing How the Step-Down Program Operates in Practice.

Defendants have also refused on relevance grounds to provide any documents in response to Plaintiffs' Document Request No. 29, which asks for "[a]ll Documents and Communications relating to employee discipline" at ROSP and WRSP.[7]  Ex. 9, at 12 (First Set of RFPs No. 29). But Defendants' position is contrary to settled law: courts around the country routinely permit discovery of employee disciplinary records—including records concerning employees who are not named as parties in litigation—in similar circumstances.  *See, e.g.*, *Walls v. City of New York*, 502 F. Supp. 3d 686, 692-695 (E.D.N.Y. 2020) (granting motion to compel production of officers' un-redacted disciplinary records in an action against, *inter alia*, Defendant City of New York for

---

facilities, as evidenced by the lack of reliable data on the number and types of disabilities among inmates); Jarrett Barnhill & Donna McNelis, Overview of Intellectual/Developmental Disabilities, 10 CHILD & ADOLESCENT PSYCHIATRY: LIFE CYCLE & FAMILY 300 (2012), (discussing how the complex nature of intellectual/developmental disabilities and mental health disorders lead to misdiagnoses in clinical evaluations).

[7] This request also seeks records of "employee promotion, and employee demotion at ROSP and WRSP," but the parties' meet and confer discussions focused on employee disciplinary records, and Plaintiffs only pursue those documents in this Motion.

negligent hiring, retention, training and supervision); *Abreu v. New Jersey*, No. 14-716, 2015 WL 9480021, at *7 (D.N.J. Dec. 29, 2015) (granting motion to compel production of disciplinary records in an action against, *inter alia*, the New Jersey Department of Corrections because although "the court must weigh the right to relevant discovery against the privacy interest of non-parties," the disciplinary records at issue were "relevant to Plaintiff's allegations, that, for example, discipline was imposed in a discriminatory fashion").[8]

Here, Plaintiffs raise constitutional challenges to policies and practices in connection with the creation, implementation, and operation of VDOC's Step-Down Program.  Documents regarding employee discipline at ROSP and WRSP are likely to contain information regarding whether policies are correctly implemented, whether staff behavior is appropriately monitored, and how the prison disciplines employee misconduct—all of which are plainly relevant to Plaintiffs' claims.[9]  In particular, instances of employee discipline may shed light on the failures of the Step-Down Program.  For example, any of the following would support Plaintiffs argument that VDOC's policies and practices violate Plaintiffs' constitutional rights:

- repeated disciplinary reports for rule violations by the same employee but without demotion of that employee;
- repeated disciplinary reports for violations of the same rules by multiple employees but without corresponding training efforts;

---

[8] *See also more generally, e.g.*, *Russell v. Scott*, No. 5:20-CV-184, 2022 WL 3084339, at *8 (D. Vt. Aug. 3, 2022) ("It is well settled that the personnel files of defendant correctional officers may be the proper subject of discovery in civil rights cases against the officers, at least to the extent that those files contain complaints of misconduct and disciplinary records"); *Gross v. Lunduski*, 304 F.R.D. 136, 144–49 (W.D.N.Y. 2014) (collecting cases and noting that "[i]n civil rights actions, courts have permitted discovery of prior similar complaints or incidents regardless of the outcome of those complaints"); *Gibbs v. City of New York*, 243 F.R.D. 96, 96 (S.D.N.Y. 2007) ("Plaintiffs [in civil rights cases] are presumptively entitled to discovery of documents on prior complaints and police histories of individual defendants because it could yield relevant information.").

[9] Courts in this circuit have held that materials in non-party employee personnel files were discoverable.  *Minke v. Page Cty.*, No. 5:18-cv-00082, 2019 WL 2411450, at *3 (W.D. Va. June 7, 2019) (court granted discovery request for information from employee personnel files, but only that which was relevant to the claims at hand, not the entire personnel file) ("Material in personnel files may be discoverable if it is relevant to the claims and defenses in a case and the court balances the non-party employee's privacy interests with the requesting party's need for the material.") (citations omitted).

- a complete dearth of disciplinary reports;
- a lack of disciplinary reports corresponding to instances of prisoners being charged and those charges being overturned for lack of credibility; or
- a lack of disciplinary reports or investigations corresponding to severe prisoner injury.

Additionally, employee disciplinary records "reasonably could lead to other matter[s] that could bear on, [another] issue that is or may be in the case," *Scott*, 2013 WL 6158458, at *5, such as Plaintiffs' Eighth Amendment claims.   Plaintiffs have already produced the Class Representatives' grievances recorded against VDOC employees over the past several years. Plaintiffs need to be able to evaluate this data against other relevant VDOC records, including investigations into employee conduct and disciplinary reprimands, to help complete the picture of the pattern and practices of activity undertaken by VDOC.   Relatedly, disciplinary records more generally will be a vital tool for Plaintiffs to establish a list of deponents capable of speaking on certain issues, such as the adequacy of trainings, the frequency with which employees stray away from behaviors prescribed in VDOC's policies, and the severity of resulting reprimands.   Finally, but no less importantly, employee disciplinary records will be a crucial tool for Plaintiffs to elicit more accurate, pointed, and genuine testimony from VDOC employees during their depositions. In response, Defendants only claim that Plaintiffs' request for specific instances of employee discipline at ROSP and WRSP "is not relevant in any way that would further an understanding of how the Step-Down Program was implemented."   Ex. 6, at 2 (Defs.' Letter to Pls., dated Sept. 2, 2022).   This is facially insufficient.   *Goard v. Crown Auto, Inc*., No. 6:15-cv-00035, 2017 WL 6381703, at *2 (W.D. Va. Jan. 5, 2017).

Defendants also object to this request on the basis that it is overbroad, but they have never explained why despite an extensive meet and confer process.   "The party objecting to a discovery request bears the burden of proof to establish that the challenged production should not be

13

permitted." *Id.* "The objecting party must make a particularized showing of why the discovery should be denied, and conclusory or generalized statements do not meet the movant's burden." *Id.* Regardless, Defendants cannot show that Plaintiffs' request for employees' disciplinary records is overbroad because it is not. Even a narrowed version of Plaintiffs' request, seeking only employees' disciplinary records, was unacceptable to Defendants despite being highly relevant. *See supra*, at 5.

The discovery sought by First Set of RFPs Document Request No. 29 thus falls squarely within the scope of Rule 26(b)(1) relevance and should be produced.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant Plaintiffs' Motion and issue an order compelling VDOC to produce within 30 days of the issuance of the Court's order (1) all documents responsive to Third Set of RFPs Document Request Nos. 3, 4, 10, 11, 12, 17, and 20 relating to any mental health disability, including learning, intellectual, developmental or cognitive disabilities or impairments, (2) substantive responses to Interrogatories Nos. 1, 2, 3, and 4 relating to any mental health disability, including learning, intellectual, developmental or cognitive disabilities or impairments, and (3) documents responsive to First Set of RFPs Document Request 29 relating to employee discipline.

Dated: November 14, 2022                      Respectfully submitted,

                                              */s/ Tara Lee*
                                              Tara Lee (VSB No. 71594)
                                              **WHITE & CASE** LLP
                                              701 Thirteenth Street, N.W.
                                              Washington, DC 20005

(202) 626-3600
tara.lee@whitecase.com

Michael J. Gallagher (*pro hac*)
Michelle Letourneau-Belock
**WHITE & CASE**LLP
1221 Avenue of the Americas
New York, New York 10020
(212) 819-8200
mgallagher@whitecase.com
michelle.letourneaubelock@whitecase.com

Kathryn Ali
ALI & LOCKWOOD LLP
300 New Jersey Avenue NW, Suite 900
Washington, D.C. 20001
(202) 651-2475
katie.ali@alilockwood.com

Vishal Agraharkar (VSB No. 93265)
Eden Heilman (VSB No. 93554)
American Civil Liberties Union
Foundation of Virginia
701 E. Franklin St., Suite 1412
Richmond, Virginia 23219
(804) 644-8022
vagraharkar@acluva.org
eheilman@acluva.org

*Counsel for Class Plaintiffs*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on the 14th day of November, 2022, a copy of the foregoing document was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system.

*/s/ Tara Lee*

Tara Lee (VSB No. 71594)
**WHITE & CASE**LLP
701 Thirteenth Street, N.W.
Washington, DC 20005
(202) 626-3600
tara.lee@whitecase.com
