IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF VIRGINIA
Big Stone Gap Division

| | |
|---|---|
| WILLIAM THORPE, *et al.*,           ) <br>                                        ) <br>     Plaintiffs,                    ) <br>                                        ) <br> v.                                  ) <br>                                        ) <br> VIRGINIA DEPARTMENT OF     ) <br> CORRECTIONS, *et al.*,             ) <br>                                        ) <br>     Defendants.                 ) | Case No. 2:20-cv-00007-JPJ-PMS |

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL THE
PRODUCTION OF DCOUMENTS AND ANSWERS TO INTERROGATORIES**

      Plaintiffs seek to compel discovery that is overbroad and neither relevant to any parties' claims or defenses nor proportional to the needs of the case given the importance of the discovery in resolving the issues. Contrary to Plaintiff' assertions, their own Complaint belies their arguments that their claims reach inmates who do not have a mental health disability. As for their request for information from the personnel files of VDOC personnel employed at Red Onion State Prison or Wallens Ridge State Prison, Plaintiffs' pairing of pure speculation with inapposite case law does not justify compelling Defendants to produce "[a]ll Documents and Communications relating to employee discipline." This Court should deny Plaintiffs' Motion to Compel.

**FACTS**

      In their Complaint, Plaintiffs seek to bring claims on behalf of certain classes of inmates for alleged violations of the inmates' Constitutional rights and, for a subset of the inmates, alleged violations of the Americans with Disability Act ("ADA") and the Rehabilitation Act ("RA"). Specifically, Plaintiffs seek to bring the ADA and RA claims on behalf of inmates "who are, have been, or will be incarcerated in long-term solitary confinement at the 'Level S' or 'Level 6' [sic] subject to the Step-Down Program and who suffer from mental health disabilities and are qualified

as individuals with mental health disabilities under either the [ADA or RA]."[1] In response to an interrogatory served by Defendants directing Plaintiffs to "[d]efine and describe all putative classes and subclasses for which you intend to seek certification," each of Plaintiffs responded, in part, that he was bringing the action on behalf of inmates "who suffer from mental health disabilities and are qualified as individuals with mental health disabilities under either the [ADA or RA]."[2] In their Motion for Class Certification, which is currently pending before the Court, Plaintiffs decided to alter this formulation slightly to inmates "who suffer from mental health disabilities and are qualified as individuals with disabilities under either the ADA or the RA."[3] But at no point in this litigation have Plaintiffs attempted to define the inmates for whom they seek certification of a class under the ADA and RA other than as inmates who suffer from mental health disabilities.

None of the sources that Plaintiffs cite as the foundation of their arguments contain the phrase "mental health disability." As noted by Plaintiffs, "[t]he ADA defines disability as a 'physical or *mental impairment* ….' The definition in the RA is identical."[4] VDOC Operating Procedure 720.2 similarly defines disability as a "physical or mental impairment …."[5] VDOC Operating Procedure 801.3 also refers to "[m]ental impairment."

Despite defining the class of inmates that they seek to certify as inmates who suffer from "mental health disabilities," Plaintiffs consistently have sought discovery on a broader basis:

- RFP No. 3: All Documents reflecting whether or not any of the Class Members is disabled or suffers from a disability;

---

[1] Dkt. No. 1 at 82–83.
[2] *See, e.g.* Relevant portion of Class Plaintiff Thorpe's Answers and Objections to Defendants' First Set of Interrogatories, attached as Exhibit 1, at 21.
[3] Dkt. No. 212 at 3, fn. 3.
[4] *Id.* at 2 (Emphasis in original)
[5] Dkt. No. 212-1 at 3.

2

- RFP No. 4: All Documents relating to complaints, relating to (a) a prisoner's mental illness or health, cognitive problems, or intellectual or learning difficulties;

- RFP No. 10 : All Documents relating to consultations between facility unit heads and medical practitioners concerning changes for individuals in the Class Sample deemed by VDOC to be seriously mentally ill, intellectually disabled, or developmentally disabled;

- RFP No. 11: All Documents relating to requests for accommodation for a mental illness, intellectual disability, or cognitive disability;

- RFP No. 12: All Documents relating to individuals incarcerated at Red Onion or Wallens Ridge for whom disability accommodations have been provided, requested, or sought;

- RFP No. 17: All Documents relating to training on recognizing signs and symptoms of mental illness and intellectual disabilities;

- RFP No. 20: Copies of the orientation and training materials provided to new VDOC employees relating to the identification and assessment of, and provision of accommodations, for incarcerated people with disabilities;[6]

- Interrogatory No. 1. Identify every Class Member whom VDOC has ever determined to have a Disability based on a mental impairment;

- Interrogatory No. 3. Describe in detail all processes in place to identify and designate accordingly individuals in VDOC custody who have a Disability based on a mental impairment;

- Interrogatory No. 4. Identify any and all requests for accommodation to the Step-Down Program made by any Class Member, regardless of whether they were determined to have a Disability based on a mental impairment.[7]

Defendants objected to each of these discovery requests on multiple bases but agreed to produce documents for the RFPs subject to their objections and answered each of the interrogatories subject to their objections.

Defendants similarly objected on multiple bases to Plaintiffs' overbroad Request for Production No. 29 from their first set of requests for production: "All Documents and Communications relating to employee discipline, employee promotion, and employee demotion at ROSP and WRSP including, but not limited to, any disciplinary documentation in Personnel

---

[6] Dkt. No. 212-3.
[7] Dkt. No. 212-4.

3

Files …."[8] Plaintiffs broadly define "Personnel Files" as "all documents relating to the hiring, employment, discipline, compensation, credentials, criminal background, offer letters, promotion, demotion, and retention of VDOC, ROSP, or WRSP personnel, regardless of his/her direct employer."[9] In particular, as it applies to Plaintiffs' current Motion, Defendants objected that the request would require them "to manually search the personnel files of every individual who has ever been employed at ROSP or WRSP for disciplinary actions, regardless of whether those actions have any factual tie to this litigation."[10] As noted in Defendants' most recent communication on this request, Plaintiffs have not offered to narrow it in any way that would allow Defendants to respond to the request in a reasonable manner.[11]

Both ROSP and WRSP employ personnel who have no responsibility for implementation of the Step-Down Program. Both ROSP and WRSP have personnel who work in general population units. Both ROSP and WRSP have administrative and support staff that have no interaction with inmates in the Step-Down Program. Disciplinary actions related to these personnel, among others, if any such disciplinary actions exist, have no bearing on this case.

## ARGUMENT

**A.      Plaintiffs Are Not Entitled to Additional Discovery On Mental Health Disabilities.**

Defendants agree with Plaintiffs that "documents and information pertaining to mental health disabilities are relevant and discoverable."[12] Accordingly, Defendants have produced documents and answered interrogatories as those discovery requests apply to proposed class members with certain Mental Health Codes, i.e., the methodology that VDOC uses to track

---

[8] Dkt. No. 212-9 at 12.
[9] *Id.* at 4.
[10] Defendants' Objections to Plaintiffs' First Set of Requests for the Production of Documents, attached as Exhibit 2, at 15.
[11] Dkt. No. 212-6 at 1.
[12] Dkt. No. 212 at 6.

4

inmates' mental health. Thus, Defendants have not "unilaterally narrow[ed]" Plaintiffs' claims.[13] Rather, Plaintiffs are playing word games in an attempt to expand the class that they defined. Plaintiffs offer no support for the assertion that intellectual, developmental, learning, and cognitive disabilities and impairments are mental health disabilities under the operative statutes because none exists. The operative statutes do not define, or even contain, the phrase "mental health disability."

### 1. Plaintiffs seek certification of a class of inmates with mental health disabilities, not mental impairments that qualify as a disability under the ADA.

Plaintiffs' arguments regarding the definition of the term "disability" and what mental impairments constitute a disability under the statutes at issue has little to do with the parties' discovery dispute. The parties' discovery dispute regarding "mental health disabilities" does not, as Plaintiffs would have the Court believe, concern the definition of what constitutes a disability under the ADA, the RA, or VDOC's Operating Procedures. The parties' discovery dispute concerns the breadth of discovery to which Plaintiffs are entitled in light of the "Disabilities Classes" that they seek to certify. Plaintiffs, themselves, encapsulate this distinction in their Motion: "Plaintiffs accordingly served document requests and interrogatories on Defendants seeking several categories of information pertaining to Defendants' failure to accommodate members of the Disabilities Classes, including members with mental health disabilities."[14]

Defendants agree that the discovery requests served by Plaintiffs request information pertaining to accommodating inmates, "including [proposed class] members with mental health disabilities," because each of Plaintiffs' discovery requests have sought information for inmates beyond the classes that they seek to certify. But Plaintiffs' proposed "Disabilities Classes" do not

---

[13] *Id.*
[14] Dkt. No. 212 at 3.

"*includ[e]* members with mental health disabilities," they ***consist entirely*** of inmates with mental health disabilities as Plaintiffs have reiterated time and again in this litigation: inmates "who suffer from mental health disabilities and are qualified as individuals with disabilities under either the ADA or the RA." Defendants have responded to Plaintiffs' request on the basis of the classes that Plaintiffs seek to certify.

  2. **Plaintiffs' few fleeting references to learning, cognitive, and intellectual disabilities in their 98-page Complaint do not justify overbroad discovery.**

Plaintiffs reference each of learning, cognitive, and intellectual disability a single time in their 98-page Complaint, which contains 277 paragraphs and 119 footnotes; Plaintiffs do not reference developmental disability at all. The same Complaint contains 26 references to "mental health disability" or "mental health disabilities," most importantly in the definition of the "Disabilities Classes" that Plaintiffs seek to certify. In the same paragraph in which the Complaint makes its only mention of learning and cognitive disabilities, Plaintiffs also allege that some inmates cannot complete certain tasks because of educational background or language barriers. In the same paragraph in which the Complaint contains its only mention of intellectual disability, Plaintiffs allege that some inmates cannot comply with institutional rules because of language barriers. Plaintiffs' fleeting references to educational background and language barriers, which is referenced twice as often as the disabilities that Plaintiffs now seek to shoehorn into "mental health disabilities," neither makes them mental health disabilities nor justifies compelling VDOC to respond to discovery requests addressed to accommodations for educational background and language barriers. Plaintiffs' Complaint is filled with numerous unsupported allegations regarding Defendants; those allegations alone do not justify imposing on Defendants discovery that is not proportional to the needs of the case.

6

### 3. Defendants have not limited discovery to mental health disabilities suffered by proposed class representatives.

As Defendants' objections to Plaintiffs' discovery request make clear, Defendants have not limited discovery to those mental health disabilities with which the proposed class representatives allege that they have been diagnosed, e.g., Post-Traumatic Stress Disorder, major depressive disorder, etc.[15] Instead, Defendants have responded to Plaintiffs' discovery requests, subject to Defendants' other objections, as those requests apply to mental health conditions consistent with the manner that VDOC tracks such conditions. As explained to Plaintiffs in VDOC's answers to certain of Plaintiffs' interrogatories,

> VDOC … uses the Mental Health Classification Coding system criteria detailed in VDOC Operating Procedure 730.2, *Mental Health and Wellness Services: Screening, Assessment, and Classification*, to provide a standard approach through which the mental health status and service needs of individual inmates may be examined, including inmates who have special treatment needs. VDOC does not separately categorize an inmate as having a "mental health disability." Without asserting that all inmates with a Mental Health Code of 2S, 3, or 4 have a mental health condition that qualifies as a "disability" under the ADA or RA, VDOC notes that inmates with a Mental Health Code of 2S, 3, or 4 may have a mental health condition that substantially limits one or more of their major life activities.[16]

Accordingly, Defendants have responded to Plaintiffs' various discovery requests, subject to its objections, by providing information and production of documents for inmates with a Mental Health Code of 2S, 3, or 4.

Plaintiffs' mischaracterize Defendants' September 2, 2022 letter to Plaintiffs as an argument that Defendants should have made with respect to the issue of typicality in opposition to class certification. But Defendants' position goes to Plaintiffs' ***definition of the classes*** that it seeks to certify in this litigation. As noted in Defendants' letter, "Plaintiffs seek to certify certain

---

[15] Dkt. No 1 at ¶¶ 26, 28, 30, 34, 214.
[16] Relevant Portion of Virginia Department of Corrections' Objections and Answers to Plaintiffs' First Set of Interrogatories, attached as Exhibit 3 (identifying information for inmates, which does not have independent relevance here, has been redacted from this exhibit to protect their privacy).

classes in this litigation[, specifically] two classes for inmates with mental health disabilities."[17] And nothing associated with any of the proposed class representatives suggests that "mental health disabilities" encompasses cognitive, intellectual, developmental, or learning disabilities.

The only interesting thing about this discovery dispute with respect to the arguments on class certification are that Plaintiffs (1) sought certification of classes based on inmates with mental health disabilities and (2) waited until after argument on their Motion for Class Certification to move to compel this overbroad discovery. Defendants served their Objections and Responses to Plaintiffs' Third Set of Requests for Production in September 2021—more than one year ago. VDOC served its Objections and Answers to Plaintiffs' First Set of Interrogatories in October 2021—also more than one year ago. Defendants' position has not changed on this issue through multiple communications since then. Presumably, if this discovery were so important to Plaintiffs' case that the lack of it impedes their ability to prosecute that case, Plaintiffs would have sought the Court's assistance in obtaining it before they moved for class certification, especially where the analysis of Plaintiffs' own data expert shows that they cannot meet the numerosity requirement for their "Disabilities" classes.

Finally, Plaintiffs' citations to studies indicating that co-occurrence exists between intellectual disabilities and mental health disabilities does not establish that Plaintiffs should get discovery into disabilities that are not part of their claim. Defendants have provided the appropriate discovery into inmates with mental health disabilities consistent with the manner in which VDOC tracks the mental health of inmates. Plaintiffs are not entitled to additional discovery on these issues.

---

[17] Dkt. No. 212-6 at 1.

B.   **Plaintiffs Are Not Entitled to All Documents and Communications Relating to Employee Discipline at ROSP and WRSP.**

Contrary to Plaintiffs' assertions, courts do not routinely permit discovery of the personnel files of employees not named as defendants in a litigation. Rather, courts typically deny such discovery requests, even when, unlike here, the plaintiff limits them to specific individuals. For example, in *Cameron v. Menard*, the plaintiff moved to compel production of the personnel files of the defendant and 12 nonparty correctional officers who responded to an incident involving her.[18] Despite concluding that discovery should be broad, the court denied that portion of the motion, citing multiple instances where courts have limited or denied such requests.[19] Other courts, similarly, have denied motions to compel personnel or disciplinary files of nonparty correctional officers.[20] Indeed, courts exercise restraint even in permitting discovery of the personnel files of ***defendant*** correctional officers given the sensitivity of information contained in such files.[21]

The cases cited by Plaintiffs do not demonstrate otherwise. In *Walls v. City of New York*, the plaintiffs brought § 1983 claims against several New York City police officers for allegedly forcibly entering, occupying, and searching their home for approximately 16 hours, during which time the officers detained them, and supplemental causes of action under state law against the City of New York for negligent hiring, training, and supervision.[22] The plaintiffs sought, and the *Walls*

---

[18] No. 5:18-CV-204-GWC-KJD, 2021 WL 2805603, at *4 (D. Vt. July 6, 2021)
[19] *Id.* at *5–7.
[20] *See, e.g., Woodward v. Afify*, No. 14-CV-00856-RJA-MJR, 2017 WL 279555, at *4 (W.D.N.Y. Jan. 23, 2017) (denying motion to compel production of "discipline, suspensions, misconduct reports or criminal actions" of two nonparty corrections officers); *Osborn v. Bartos*, No. CV-08-2193-PHX-ROS, 2010 WL 3809847, at *16 (D. Ariz. Sept. 20, 2010) (ordering production of performance appraisals and disciplinary records of defendants only but declining to order production of requested nonparty records).
[21] *See, e.g., Moore v. Mann,* No. 3:13-CV-2771, 2021 WL 3929743, at *4 (M.D. Pa. Sept. 2, 2021) (ordering *in camera* review of specific documents, to the extent that they exist, in defendants' personnel files).
[22] 502 F. Supp. 3d 686, 689–90 (E.D.N.Y. 2020).

court compelled, production of unredacted copies of "misconduct summaries" for ***each of the defendant officers***.[23] The *Walls* court did not order the production of any materials from the personnel files of any employees not named in the litigation.

Similarly, in *Abreu v. State of New Jersey*, the plaintiff brought employment discrimination, hostile work environment, and retaliation claims against the State of New Jersey, the New Jersey Department of Corrections, and various individual defendants.[24] The plaintiff sought "personnel files, internal investigation files, disciplinary files, and performance evaluations ***as to the individual Defendants***" and a copy of the personnel file of one individual who received a promotion that the plaintiff alleged he was denied due to unlawful discrimination and retaliation.[25] To assert, as Plaintiffs do here, that these cases are examples of "courts around the country routinely permit[ting] discovery of employee disciplinary records—including records concerning employees who are not named as parties in litigation—in similar circumstances"[26] misrepresents both the holding of the cases and their similarity to the present dispute.

The cases cited in Plaintiffs' footnote in support of this assertion fare no better. As alluded to in Plaintiffs' parentheticals, both the *Russell v. Scott* and *Gross v. Lunduski* decisions addressed the plaintiff's motion to compel, among other things, information in the ***defendant's*** personnel file.[27] In *Russell*, the court, citing the need to balance the plaintiff's right to discover relevant evidence against the Vermont Department of Correction's legitimate concerns for institutional

---

[23] *Id.* at 690-91. A court in the same district subsequently declined to follow the *Walls* court in the breadth of discovery that it ordered, limiting discovery to only certain disciplinary summaries that were relevant to the claims against the defendants. *Saavedra v. City of New York*, No. 19 CIV. 7491 (JPC), 2021 WL 104057, at *2 (S.D.N.Y. Jan. 12, 2021).
[24] No. CV 14-716 (MAS)(DEA), 2015 WL 9480021, at *1 (D.N.J. Dec. 29, 2015).
[25] *Id.* at *3-4, *7.
[26] Dkt. No. 212 at 11-12.
[27] No. 5:20-CV-184-GWC-KJD, 2022 WL 3084339, at *7 (D. Vt. Aug. 3, 2022); 304 F.R.D. 136, 140 (W.D.N.Y. 2014)

10

security and the defendant's right to privacy, limited the ordered production to documents relating to allegations over a two-year period of behavior similar to that complained of by the plaintiff.[28] In *Gross*, the court conducted an *in camera* review of the file and ordered production of limited material that it deemed relevant.[29] Here, Defendants have produced to Plaintiffs the ***entire personnel files*** of Defendants. The cited cases provide no support for the notion that permitting discovery of personnel records is somehow "routine[]," especially for non-defendant employees, in courts around the country.

As noted in *Minke v. Page Cnty., Virginia*, courts in the Fourth Circuit limit discovery of personnel files because of important public policy concerns.[30] Although Plaintiffs quote the portion of *Minke*, requiring the court to balance the employee's privacy interest with the requesting party's need for the material,[31] Plaintiffs completely ignore this balancing requirement, which, given Plaintiffs' request must be applied to every employee who works, or has worked, at ROSP or WRSP. Instead, Plaintiffs focus their argument on what might, or might not, be in the personnel files.

Even those arguments fail to establish relevance for the broad production Plaintiffs move to compel. For example, repeated disciplinary reports for an administrative assistant for failing properly to record his time without a demotion, even if such reports existed, would not support "Plaintiffs' [sic] argument that VDOC's policies and practices violate Plaintiffs' constitutional rights."[32] Similarly, disciplinary reports by multiple employees for failing properly to record their time without demotion would not support Plaintiffs' arguments. Even disciplinary reports for more

---

[28] 2022 WL 3084339 at *9.
[29] 304 F.R.D at 140.
[30] No. 5:18-CV-00082, 2019 WL 2411450, at *3 (W.D. Va. June 7, 2019).
[31] Dkt. No. 212 at 12, fn. 9.
[32] *Id.* at 12.

serious actions that did not occur in the implementation of the Step-Down Program or in the units housing inmates in that Program, to the extent such reports exist, are not wholesale "plainly relevant to Plaintiffs' claims,"[33] as Plaintiffs would have this Court believe. Plaintiffs cannot establish the relevance of their requested fishing expedition merely by speculating that the personnel files might have something, or nothing, that they would like to see. Further, the argument that every employee's disciplinary record will be a "crucial tool for Plaintiffs to elicit more accurate, pointed, and genuine testimony from VDOC employees during their depositions"[34] is nothing less than a euphemism for Plaintiffs' repeated assertion that VDOC employees lie under oath. This presumption is unfounded and offensive.

> Finally, Defendants explained why the request is overbroad in their objection:
>
> The request, in essence, asks the Defendants to manually search the personnel files of every individual who has ever been employed at ROSP or WRSP for disciplinary actions, regardless of whether those actions have any factual tie to this litigation. Considering that the request also seeks "all documents and communications" regarding promotion or demotion, this request, in essence, would compel the production of the personnel file of every current and prior employee of ROSP and WRSP.[35]

Defendants have participated in the meet and confer process in good faith, offering to consider responding to the request if Plaintiffs tailor it to the circumstances or underlying facts of the litigation. Defendants have produced ample documentation, including, as noted by Plaintiffs, "grievances recorded against VDOC employees over the past several years,"[36] full institutional files for the Named Plaintiffs, full institutional files for some

---

[33] *Id.*
[34] *Id.* at 13. *See, also,* Dkt. No. 206, Plaintiffs' Reply Memorandum of Law in Support of Motion for Class Certification, at 7, fn. 3 (citing the Declaration of VDOC's Director of Security and Correctional Enforcement for VDOC for the proposition that "[m]any of Defendants' so-called 'facts' are self-serving and from unreliable sources.")
[35] Exhibit 2 at 15.
[36] *Id.*

12

members of the class sample, and partial institutional files for other members of the class sample. Plaintiffs have refused to tailor their request in an way that would take into consideration the privacy interests of VDOC's employees or the burden to Defendants of complying with Plaintiffs' request.

## CONCLUSION

The Court should deny Plaintiffs' Motion to Compel in its entirety.

November 29, 2022

Respectfully submitted,

/s/ *Maya M. Eckstein*

Jason S. Miyares
*Attorney General of Virginia*

Margaret Hoehl O'Shea (VSB #66611)
Assistant Attorney General,
Criminal Justice & Public Safety Division

OFFICE OF THE ATTORNEY GENERAL
202 North Ninth Street
Richmond, VA 23219
Ph: (804) 786-2206
Fax: (804) 786-4239
moshea@oag.state.va.us

Maya M. Eckstein (VSB #41413)
Thomas R. Waskom (VSB #68761)
Trevor S. Cox (VSB #78396)
R. Dennis Fairbanks (VSB #90435)

HUNTON ANDREWS KURTH LLP
951 E. Byrd St.
Richmond, VA 23219
Ph: (804) 788-8200
Fax: (804) 788-8218
meckstein@HuntonAK.com
twaskom@HuntonAK.com
tcox@HuntonAK.com
dfairbanks@HuntonAK.com

*Counsel for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 29th day of November 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing to all CM/ECF participants.

By: */s/ Maya M. Eckstein*
Maya M. Eckstein (VSB # 41413)
Hunton Andrews Kurth LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, Virginia 23219-4074
Telephone: (804) 788-8200
Facsimile: (804) 788-8218
meckstein@HuntonAK.com

*Counsel for Defendants*