# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# BIG STONE GAP DIVISION

| | |
|---|---|
| **WILLIAM THORPE, ET AL.,** ) | |
| ) | |
| Plaintiffs, ) | Case No. 2:20CV00007 |
| ) | |
| v. ) | **OPINION AND ORDER** |
| ) | |
| **VIRGINIA DEPARTMENT OF** ) | J~UDGE~ J~AMES~ P. J~ONES~ |
| **CORRECTIONS, ET AL.,** ) | |
| ) | |
| ) | |
| Defendants. ) | |

*Jared Frisch,* C~OVINGTON~ & B~URLING~ LLP, *Washington, DC, for Plaintiffs; Maya M. Eckstein,* H~UNTON~ A~NDREWS~ K~URTH~ LLP, *Richmond, Virginia, for Defendants.*

This action attacks the operation of long-term solitary confinement in Virginia prisons, including the so-called Step-Down Program, by which inmates may earn relief from such confinement. The plaintiffs contend that in such operation the defendants have violated the Constitution, the Americans with Disabilities Act of 1990 (ADA), and the Rehabilitation Act of 1973 (RA). The plaintiffs previously moved for class certifications, which the court granted. The plaintiffs then filed a proposed class action notice and a proposed process for such notice, as well as submitted proposed class representatives. Pls.' Statement, ECF No. 310. The defendants filed a response, objecting to the plaintiffs' proposals and raising issues

particular to the previously determined disabilities classes, which concern inmates with mental health issues.

The plaintiffs have also filed a Motion to Compel the Production of Medical Records, in which they seek certain documents from the defendant Virginia Department of Corrections (VDOC) so that class counsel can identify members of the previously certified disabilities classes.

Based on the submissions of the parties, I that find it is appropriate to amend the definitions of the disabilities classes. I also will grant in part the objections raised by the defendants and order that the plaintiffs file a new proposed notice as described herein. Furthermore, I will deny the plaintiff's Motion to Compel, ECF No. 353, except as it applies to VDOC records listing potential class members with Mental Health Classification Code MH-2S or higher.

I.

I previously detailed the plaintiffs' claims and the issues pertinent to class certification in an Opinion and Order. *Thorpe v. Va. Dep't of Corr.*, No. 2:20CV00007, 2023 WL 2908575 (W.D. Va. Apr. 12, 2023). As required by that Order, the plaintiffs submitted their proposed opt-out notice (Notice) and proposed process for distribution of the Notice and selected one proposed class representative for each of the certified classes. The Notice describes the lawsuit and the claims, defines the four classes, lists the proposed class representatives — Peter Mukuria for

the Constitutional Violation Damages Class and Gary Wall for the Disabilities Damages Class, identifies class counsel, provides that class members may enter an appearance through an attorney other than class counsel, indicates that persons who do not wish to be a member of either of the two damages classes may opt out, provides the manner for opting out, and states that class members will be bound by any judgment.

Additionally, the plaintiffs' statement filed with the Notice indicates that Mukuria will also serve as a class representative for the Constitutional Violation Injunction Class and Wall for the Disabilities Injunction Class.  The statement includes the following proposed plan for the distribution of the Notice:

- VDOC will distribute the Notice to class members in VDOC's custody and control.

- VDOC will provide to plaintiffs the last known addresses for class members who are no longer in VDOC custody and control, individuals for whom VDOC will identify, and the plaintiffs will mail the Notice to these class members.

- The plaintiffs will bear the costs of printing the Notice and of mailing the Notice to class members not in VDOC custody and control.

The statement also includes the following proposed schedule:

- Within 35 days from court approval of the Notice: VDOC to identify or confirm the class member currently in its custody and control and provide a list of class members not in VDOC's custody and control and the class members' last known addresses;

- Within 56 days from court approval of the Notice: Deadline for VDOC to distribute Notice and plaintiffs to mail notices; and

- Within 45 days from issuance of the Notice: Opt-out deadline.

Pls.' Statement, ECF No. 310.

The defendants challenge the plaintiffs' proposals for several reasons. First, they contend that Mukuria and Wall are neither typical nor adequate representatives of the constitutional violations and disabilities classes. Specifically, they assert that Mukuria is not a proper representative for the Constitutional Violation Injunction Class because he has completed the Step-Down Program and is currently housed in a Maryland prison. They also argue that because Mukuria completed the Step-Down Program in 2020, he cannot testify about the program after that date and therefore is not an adequate representative for either constitutional violation class. As for Wall, the defendants contend that Wall has never received a VDOC mental-health classification of MH-2S or higher and therefore he will have to prove that he has a disability under the ADA, which could put other class members' claims in jeopardy. The defendants then reassert the concerns they raised in their class certification briefing — that determining members of both disabilities classes will require an individual fact-intensive inquiry.

Second, the defendants argue that the Notice, which is directed at both damages classes, is deficient because it will not effectively inform recipients whether they are members of the Disabilities Damages Class. The defendants also contend

this "foreshadows another problem more fundamental" to both disabilities classes — that the defendants will have to review voluminous records to determine potential class members "after which the parties could litigate whether *each* potential class member (with a mental health code of less than MH-2S) has a covered disability." Defs.' Resp. 7, ECF No. 313.

Third, the defendants challenge the plaintiffs' proposed process. Specifically, the defendants assert that the proposed plan is inadequate in that it does not account for Virginia inmates housed outside the Commonwealth and that the plaintiffs' plan to use skip-tracing to locate former inmates whose last known address is stale is insufficient. They also note that the plaintiffs have failed to account for time in their proposed schedule for second mailings of Notices for those returned as undeliverable.

Finally, the defendants argue that the Notice is deficient because it lacks the question-and-answer format "generally used in class notices" and that it is not written in a way that is "readily comprehensible to potential class members." *Id.* at 8.

The plaintiffs have responded, asserting that the defendants, who did not appeal this court's class certification decision, are attempting to relitigate class certification, that the proposed class representatives are sufficient, that the Notice satisfies the requirements of Rule 23(c)(2)(B) of the Federal Rules of Civil

Procedure, that because all members of the disabilities classes will also be members of the constitutional violations classes, all potential members will be sufficiently informed, and that the proposed mechanics for the Notice and schedule are adequate. The issues are now ripe for determination.

## II.

### A.

I begin with the defendants' renewed concerns regarding the disabilities classes. After considering the parties' briefs, I agree with the defendants that the current definition of the Disabilities Damages Class, included in the Notice, will not allow the class members to make an informed decision about whether to opt-out of that class because recipients will be unable to determine whether they actually qualify for membership in that class. Class members will have to self-assess whether they have a qualified disability — one that substantially limits a major life activity — in determining whether they should opt out of that class. This will be a difficult task for most recipients.

Moreover, I agree with the defendants that this problem constitutes a more fundamental issue. It goes to the broader certification issue of whether class members are identifiable and ascertainable, a threshold requirement for class certification. *EQT Prod. Co. v. Adair*, 764 F.3d 347, 358 (4th Cir. 2014). "If class members are impossible to identify without extensive and individualized fact-

finding or mini-trials, then a class action is inappropriate." *Id.* (internal quotation marks, citations and alterations omitted). Upon further consideration and the parties' additional filings, I agree with the defendants that membership in the disabilities classes is not readily identifiable. Assessing whether each person who has been, is currently, or might be in the future subjected to the Step-Down Program has a mental disability as defined by the ADA or RA will require a fact-intensive assessment for each potential class member. It will require an inquiry into whether each potential class member has a mental disability and if, and the extent of which, any such mental disability substantially limits a major life activity, or if the person is perceived by others as having such impairment, or that person has a record of such an impairment. In other words, determining class membership for the disabilities classes in their current state is not administratively feasible based on some identifiable, objective criteria, nor can it necessarily be gleaned from a review of VDOC documents. The fact-finding it will require is too extensive.

Thus, I find that it would be appropriate to decertify the disabilities classes as currently defined, to amend their definitions, and to certify the amended disabilities class definitions. *In re Marriott Int'l, Inc.*, 341 F.R.D. 128, 146 (D. Md. 2022) ("The Court can limit or modify class definitions 'to provide the necessary precision' on the ascertainability requirement.") (internal quotation marks and citations omitted); *Hawkins v. Cohen*, 327 F.R.D. 64, 78 (E.D.N.C. 2018) (indicating that the

court may craft class definitions and modify the definitions as the litigation progresses). By narrowing the disabilities subclasses to include only those classified by the VDOC at the MH-2S "Substantial Impairment" code and higher, which, at a minimum, encompasses inmates with mental disorders that substantially interfere with the inmate's ability to meet the ordinary demands of living, class members will be ascertainable without a fact-intensive inquiry, and such narrowed criteria will allow class members to make an informed decision about whether they would like to opt out of that class because there will be an objective indicator for membership.[1]

Accordingly, the disabilities classes will be amended and certified as follows:

Disabilities Injunction Class: All persons who are currently, or will in the future, be confined at Red Onion or Wallens Ridge at the Level S or Level 6 security levels and subject to any phase of the Step-Down Program and who are or will in the future be classified at Mental Health Classification Code MH-2S or higher at the time of the Level S or Level 6 security level classification.

Disabilities Damages Class: All persons who at any time from August 1, 2012, to the present that have been confined at Red Onion or Wallens Ridge at the Level S or Level 6 security levels and subject to any phase of the Step-Down Program and who are or were at the time of their Level S or Level 6 security level classification also classified at Mental Health Classification Code MH-2S or higher.

---

[1] There may be inmates who do not fall within these narrower definitions who might otherwise be disabled under the ADA and RA. Narrowing the disabilities class definitions does not prevent any such person from filing suit individually under the ADA and RA.

B.

I turn next to the defendants' objections related to the proposed class representatives. The defendants argue that Peter Mukuria is not an appropriate representative of the constitutional violations classes and that Gary Wall is not an appropriate representative of the disabilities classes because neither are typical or adequate. The defendants highlight that Mukuria completed the Step-Down Program in 2020 and is currently housed at a facility in Maryland through the Interstate Compact. Furthermore, Wall never received a classification of MH-2S or higher.

I find that Mukuria is a satisfactory representative of the Constitutional Violation Damages Class. Mukuria's affidavit filed along with the class certification motion materials establishes that he was subjected to solitary confinement and the Step-Down Program for eight years. The fact that he completed the Step-Down Program and may not be able to testify about the program after 2020 is not a bar to him serving as class representative, as class representatives' claims and the claims of other class members need not "be perfectly identical or perfectly aligned." *Deiter v. Microsoft Corp.*, 436 F.3d 461, 467 (4th Cir. 2006). Moreover, the plaintiffs will not be limited to Mukuria's testimony when presenting evidence about the Step-Down Program, so the fact that he has no personal experience in the program after 2020 does not affect the adequacy of his representation.

However, I do agree with the defendants that Mukuria is not an appropriate representative for the Constitutional Violation Injunction Class. Generally, "[a] litigant must be a member of the class which he or she seeks to represent at the time the class action is certified by the district court." *Sosna v. Iowa*, 419 U.S. 393, 403 (1975). This pertains to the fundamental concept of mootness, but it also goes to the class action adequacy requirement. *Amchem Prods, Inc. v. Windsor*, 521 U.S. 591, 625 (1997). An exception exists in certain cases when controversies involving named representatives end before the court can rule on certification. *Sosna*, 419 U.S. at 402 n.11. For example, when the controversy is by nature so temporary that it is uncertain that any individual could have his claim determined before the court determines class certification, a litigant may proceed as representative even though he is no longer a member of the class. *Gerstein v. Pugh*, 420 U.S. 103, 110 n.11 (1975) (involving pre-trial detention).

Here, it is true that the Step-Down Program is temporary in nature. However, it is not so temporary that it is uncertain that any individual could have his claim determined before class certification, as is shown by the plaintiffs' own class certification filings. Specifically, another named plaintiff, Steven Riddick, indicated that he was at the time of filing class certification briefs and accompanying affidavits, housed in solitary confinement and unable to progress through the Step-Down Program. Pls.' Corrected Mem. Supp. Class Certification Ex. 25, Riddick

Aff., ECF No. 174-25.  Thus, the Step-Down Program is not so temporary that constitutional deprivations are "capable of repetition, yet evading review," *Gerstein*, 420 U.S. at 110 n.11 (quotation marks omitted), and I find that I must apply the general rule requiring representatives to be members of the class they purport to represent at the time of certification.

I recognize that the Constitutional Violation Injunction Class is defined in such a way that encompasses all individuals who will in the future be subject to the Step-Down Program, and that it is possible that Mukuria could be returned to Virginia, classified at Security Level S or Level 6, and then be subjected to the Step-Down Program again.  However, I find that the chances of Mukuria's return to the Step-Down Program, and therefore his future class membership, are too speculative. *Cf. United States v. Sanchez-Gomez*, 138 S. Ct. 1532, 1541 (2018) (discussing the rule that courts have refused to find the case-or-controversy requirement is satisfied by the possibility that the party will be prosecuted for violating the law).  "A named plaintiff in a class action must show that the threat of injury in a case such as this is real and immediate, not conjectural or hypothetical." *Sosna*, 419 U.S. at 402–03 (internal quotation marks and citations omitted).   Thus, Mukuria is not an appropriate class representative for the Constitutional Violation Injunction Class because he does not retain a personal stake in the outcome of the case as to the

Constitutional Violation Injunction Class beyond pure conjecture. He is not currently a member of the class which he seeks to represent.

Furthermore, in light of the amended class definitions discussed *supra*, I also find that Wall is an inappropriate class representative for both disabilities classes because he has not shown that he is or has been classified by the VDOC as MH-2S. Although Wall might have a qualifying disability under the ADA and RA, considering the amended definitions, he has not met the requirement that he be "part of the class and possess the same interest and suffer the same injury as the class members." *Deiter*, 436 F.3d at 466 (quoting *Gen Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 156 (1982)).

## C.

I turn now to the defendants' concerns about the Notice's content and the plaintiffs' proposed schedule and plan for distribution. The defendants assert that the Notice is deficient because it is not in a question-and-answer format and because it is not, as they claim, written in plain language. I disagree. I find that the notice complies with all the requirements set forth in Rule 23(c)(2)(B), is otherwise written in plain, easily understood language, and is in an appropriate format.

The defendants also argue that class counsel has failed to clearly delineate responsibility for providing notice to inmates housed outside Virginia through the Interstate Compact. In the plaintiffs' response brief, class counsel indicates that it

has informed the defendants that class counsel will mail the Notice to class members held in non-VDOC facilities if VDOC will inform class counsel who these class members are and at which facilities each of these inmates is being held.  Pls.' Resp. 11, ECF No. 316-1.  This proposal sufficiently addresses the defendants' concern regarding out-of-state VDOC inmates, and I will direct that the defendants provide to the plaintiffs the necessary information to identify and locate class members housed in out-of-state facilities through the Interstate Compact.

Finally, the defendants take issue with the plaintiffs' proposal to use skip-tracing for locating already-released inmates whose addresses on record with the VDOC are stale.  I agree with the plaintiffs that their proposed use of skip-tracing[2] to locate class members whose notices are returned without forwarding addresses is an adequate plan.  Furthermore, I find that under the circumstances of this case, where class counsel represents that only a few hundred notices will need to be delivered outside of VDOC facilities, no class notice administrator is necessary.[3]  However, I do agree with the defendants that the plaintiffs' proposed Notice

---

[2] Skip-tracing is where an agent attempts to locate persons using identifying information like social security numbers, and such methods have been approved as an adequate means for notice in other class action cases.  *Minter v. Wells Fargo Bank, N.A.*, 283 F.R.D. 268, 276 n.14 (D. Md. 2012).

[3] The plaintiffs state that "Defendants need only mail notice to a few hundred class members — a task they are more than capable of handling, and one that would be made overly complicated and expensive by retaining a class notice administrator."  Pls.' Resp. 11, ECF No. 316-1.  Based on plaintiffs' proposed plan, however, I assume they intended to state that *plaintiffs* will only need to mail the Notice to a few hundred class members.

schedule does not provide an adequate plan for any necessary skip-tracing and remailing of returned Notices. As such, I direct that the plaintiffs revise their proposed opt-out schedule to account for the potential of returned Notices and the remailing process.

### III.

For the reasons stated, it is hereby **ORDERED** as follows:

1. The disabilities classes are amended and recertified as follows:

   Disabilities Injunction Class: All persons who are currently, or will in the future, be confined at Red Onion or Wallens Ridge at the Level S or Level 6 security levels and subject to any phase of the Step-Down Program and who are or will in the future be classified at Mental Health Classification Code MH-2S or higher at the time of the Level S or Level 6 security level classification.

   Disabilities Damages Class: All persons who at any time from August 1, 2012, to the present that have been confined at Red Onion or Wallens Ridge at the Level S or Level 6 security levels and subject to any phase of the Step-Down Program and who are or were at the time of their Level S or Level 6 security level classification also classified at Mental Health Classification Code MH-2S or higher.

2. The Plaintiffs must revise and resubmit a proposed notice, proposed class representatives, and a proposed process for notice within 21 days of entry of this Opinion and Order, as described herein and summarized below to account for:

   (a) The new disabilities class definitions.

   (b) Plaintiffs' new proposed class representatives, for the reasons stated herein.

    (c) A plan to account for the time required to receive any returned notices, skip-tracing, and the remailing of any returned notices.

3. The Motion to Compel the Production of Medical Records, ECF No. 353, is DENIED, except as it pertains to documentation, not already produced, that identifies class members who at the time of their SL-S and SL-6 security classification had the mental health classification of MH-2S or higher.

4. In addition to providing to class counsel information on class members no longer in VDOC custody and control, VDOC is DIRECTED to provide class counsel with the names of class members who have been in the past in VDOC custody but who are now located in out-of-state facilities through the Interstate Compact and identify each out-of-state class member's facility.

        ENTER:  August 8, 2023

        /s/  JAMES P. JONES
        Senior United States District Judge