IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF VIRGINIA
Big Stone Gap Division

| | |
|---|---|
| WILLIAM THORPE, *et al.*, )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>VIRGINIA DEPARTMENT OF )<br>CORRECTIONS, *et al.*, )<br>)<br>Defendants. ) | Case No. 2:20-cv-00007-JPJ-PMS |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF
MOTION FOR PLAINTIFFS TO SUBMIT A TRIAL PLAN**

**I.   INTRODUCTION**

When faced with class actions that present broad and complex factual inquiries, courts often require plaintiffs to submit a trial plan describing the issues to be presented at trial and explaining how they are susceptible to class-wide proof. This class action presents just the type of questions necessitating a trial plan.

Plaintiffs purport to assert Constitutional claims on behalf of hundreds of inmates who have been assigned to participate in the Virginia Department of Corrections' ("VDOC") Step-Down Program over various periods of time since the program's inception in 2012. The policies, personnel, and conditions of confinement comprising the Step-Down Program have changed significantly over the past decade. Any assessment of Plaintiffs' asserted claims and Defendants' affirmative defenses to those claims are necessarily highly dependent upon when an inmate was assigned to the Step-Down Program, the length of time they spent in the program, and the phase of the program in which the inmate participated.

Summary judgment briefing highlighted the extent to which nearly every piece of evidence in this case is relevant to only a discrete period of time, rather than the entire history of the Step-

1

Down Program. With the trial in this action scheduled to begin in less than four months and Plaintiffs having given no indication how they intend to address these concerns, Defendants now respectfully request that the Court require Plaintiffs to submit a trial plan setting forth how they intend to try the alleged issues on a class-wide basis, address the need for individualized inquiries of proof, and further address concerns of manageability and preventing prejudice and confusion.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs filed this action in May 2019, claiming that VDOC's operation of the Step-Down Program violates the Constitution, the Americans with Disabilities ("ADA") and the Rehabilitation Act ("RA"). Specifically, Plaintiffs assert the following surviving claims:

> Count II: The defendants have violated inmates' liberty interest in avoiding long-term solitary confinement by using vague and subjective criteria and by failing to provide meaningful review in violation of the Fourteenth Amendment.
>
> Count V: The defendants have deliberately inflicted unnecessary and wanton pain on the inmates subjected to long-term solitary confinement in violation of the Eighth and Fourteenth Amendments.
>
> Counts VI and VII: The defendants have violated the ADA and the RA by holding inmates in solitary confinement who have mental disabilities without proper services, by selecting criteria that disproportionately prevents mentally ill inmates from progressing to the general population, and by failing to reasonably accommodate inmates with mental health disabilities.

ECF No. 001, Class Action Complaint, at ¶¶ 231-264; ECF No. 299, Opinion and Order at pg. 11.

Defendants consistently have maintained that these claims inherently require fact-specific, highly-individualized inquiries into the specific experiences and conditions of confinement of hundreds of inmates who were assigned to different levels of the Step-Down Program at different points in time for varying lengths of time. Defendants' position stems from the fact that the Step-Down Program is not, and never has been, a static system that results in the same experience for every inmate. The policies, procedures, and personnel that comprise the Step-Down Program have

evolved significantly since the program was first implemented. Over time, new review panels have been added, time out-of-cell has increased significantly, programming has expanded, and new privileges have been incorporated. In addition, the experiences of inmates in the Step-Down Program also change significantly as they advance through the program—an inmate in the Level 6 SIP/SAM Pod has substantially different conditions of confinement than an inmate assigned to IM-0. As such, the experiences of individual inmates cannot fairly be considered representative of other inmates who experienced different aspects of the program at different times.

Nevertheless, Plaintiffs claimed that there were multiple common issues that bound together both the constitutional and disability classes, such as "whether the Step-Down Program subjects individuals to indefinite solitary confinement;" "whether the program provides adequate review to protect participants' interest in avoiding long-term solitary confinement;" and "whether the Program provides individuals with mental disabilities the opportunity to progress through it." ECF No. 191-4, Pls. Am. Mem. Supp. at pgs. 30-31, 42; ECF 299, Opinion and Order pgs. 18-19. The Court agreed with the Plaintiffs that the constitutional and disability classes shared common questions of fact and law and, in April 2023, granted Plaintiffs' request for class certification, certifying four classes:

> Constitutional Violation Injunction Class: All persons who are currently, or will in the future, be confined at Red Onion or Wallens Ridge at the Level S or Level 6 security levels and subject to any phase of the Step-Down Program.
>
> Constitutional Violation Damages Class: All persons who at any time from August 1, 2012, to the present have been confined at Red Onion or Wallens Ridge at the Level S or Level 6 security levels and subject to any phase of the Step-Down Program.
>
> Disabilities Injunction Class: All persons who are currently, or will in the future, be confined at Red Onion or Wallens Ridge at the Level S or Level 6 security levels and subject to any phase of the Step-Down Program and who suffer from mental health disabilities and are qualified as individuals with disabilities under either the American with Disabilities Act or the Rehabilitation Act.

> Disabilities Damages Class: All persons who at any time from August 1, 2012, to the present that have been confined at Red Onion or Wallens Ridge at the Level S or Level 6 security levels and subject to any phase of the Step-Down Program and who suffer from mental health disabilities and are qualified as individuals with disabilities under either the American with Disabilities Act or the Rehabilitation Act.

ECF 299, Opinion and Order pgs. 41-42.

Following class certification, Plaintiffs filed a proposed class action notice and proposed process for notice. After Defendants objected to Plaintiffs' proposals and pointed out the issues in identifying members of the disability classes, the Court reconsidered its certification of the disability classes. In August 2023, the Court determined that membership in the disabilities classes was not readily identifiable and ascertainable and amended the classes to the following parameters:

> Disabilities Injunction Class: All persons who are currently, or will in the future, be confined at Red Onion or Wallens Ridge at the Level S or Level 6 security levels and subject to any phase of the Step-Down Program and who are or will in the future be classified at Mental Health Classification Code MH-2S or higher at the time of the Level S or Level 6 security level classification.

> Disabilities Damages Class: All persons who at any time from August 1, 2012, to the present that have been confined at Red Onion or Wallens Ridge at the Level S or Level 6 security levels and subject to any phase of the Step-Down Program and who are or were at the time of their Level S or Level 6 security level classification also classified at Mental Health Classification Code MH-2S or higher.

ECF No. 358, Opinion and Order at pg. 8.

At the same time, the Court found that Peter Mukuria was not a satisfactory representative of the constitutional violations injunctions class and that Gary Wall was not an appropriate representative of the disabilities classes because neither are typical or adequate. *Id.* at pgs. 9-12.

With Plaintiffs' motion for the Court to reconsider this ruling pending, the class definitions, and the identities of their representatives, remain in a significant state of flux.

### III. ARGUMENT

A trial plan "describes the issues likely to be presented at trial and tests whether they are susceptible of class-wide proof." Fed. R. Civ. P. 23, Advisory Committee Note (2003

4

amendments). Requiring a trial plan enables the Court to ensure that a trial involving aggregated claims is both manageable and fair. *See* MANUAL FOR COMPLEX LIT. § 22.756 (4th ed.) ("A trial plan for the proposed common issues class will help determine whether a trial will be manageable and meet all the Rule 23 certification standards."). Trial plans help the Court to determine "whether to try cases on a traditional case-by-case basis, on a test case basis, in a bifurcated or multifurcated organization of issues, in a consolidated or class format, or on some other basis." *Id.* at § 22.318.

It is well-settled that federal courts have the authority to require a party pursuing complicated class action claims to propose a trial plan. *See, e.g.* Fed. R. Civ. P. 23, Advisory Committee Note (2003 amendments) (noting that "an increasing number" of courts require a party requesting class certification to present a trial plan). Within the Fourth Circuit, multiple courts have recognized their authority to manage complex case proceedings through shaped trial plans. *See In re Panacryl Sutures Product Liability Cases*, 269 F.R.D. 586 (E.D.N.C. 2010) (rejecting plaintiffs' proposed trial plan for failing to create factual typicality or predominance); *Chisolm v. TranSouth Fin. Corp.*, 194 F.R.D. 538, 552-553, 588 (E.D. Va. 2000) (throwing out three trial plans proposed by the plaintiffs for failing to remedy Seventh Amendment concerns and ordering plaintiffs to submit a new plan within ten days); *Amorin v. Taishan Gypsum Co., Ltd*, No. 2:11CV377, 2019 WL 2172707, at *1 (E.D. Va. May 20, 2019) (outlining a path forward between two "vastly diverging" trial plans submitted by the parties).

Courts in other circuits have likewise recognized the advisability of, and encouraged district courts' use of, trial plans in complex litigation. *See In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 311-12 (3d Cir. 2008) ("a district court must formulate some prediction as to how specific issues will play out in order to determine whether common or individual issues

predominate in a given case") (quoting *In re New Motor Vehicles Can. Exp. Antitrust Litig.*, 522 F.3d 6, 20 (1st Cir. 2008)); *Wachtel v. Guardian Life Ins. Co of Am..*, 453 F.3d 179, 185-86 (3d Cir. 2006) (noting the desirability of trial plans (citing Fed. R. Civ. P. 23(c)(1)(A) advisory committee's note); *Espenscheid v. DirectSat USA, LLC*, 705 F.3d 770, 775 (7th Cir. 2013) (recognizing that district court's request for plaintiffs' lawyer to propose a "specific plan for litigating the case . . .was a reasonable request …given the difficulty of trying a class action"); *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1279 n.20 (11th Cir. 2009) ("[T]here is a direct correlation between the importance of a realistic, clear, detailed, and specific trial plan and the magnitude of the manageability problems a putative class action presents. We therefore recommend that district courts make it a usual practice to direct plaintiffs to present feasible trial plans, which should include proposed jury instructions, as early as practicable when seeking class certification."); see also *Robinson v. Texas Auto. Dealers Ass'n*, 387 F.3d 416, 425 (5th Cir. 2004) (district court must consider "how a trial on the alleged causes of action would be tried" when ruling on class certification).

In this case, Plaintiffs' classes purport to cover hundreds of inmates who were assigned to the Step-Down Program over a period of time spanning more than a decade.  This is precisely the type of context where "tests of class-wide proof" are needed, especially since, as the Court is no doubt well aware at this point, inmates' conditions of confinement evolve as they advance through the program and the policies and conditions that comprise the Step-Down Program have changed significantly over the course of the program's existence.  The experiences and alleged injuries of inmates who were assigned to the Step-Down Program are heavily dependent on when the inmate was assigned to the Step-Down Program, the length of time they spent within the program, and the phase of the program in which they participated.

For example, Plaintiffs claim that "[w]hether the Step-Down Program subjects individuals to indefinite solitary confinement," is a common question that can be tried on a class wide basis. *See* ECF No. 191-4, Pls.' Am. Mem. Supp. at 30. But the Court should ask Plaintiffs to explain, via a trial plan, how they intend to present evidence to prove a common answer to that purportedly common question. Derek Cornelison completed the Step-Down Program and was transferred to the general population in August 2019. *See* ECF No. 381, VDOC's Statement of Undisputed Material Facts ("VDOC SUMF") ¶ 104; ECF No. 174-21, Cornelison Affidavit in Support of Class Certification ¶ 23. During the time he participated in the program, inmates were afforded between twelve to eighteen hours out of their cells per week. But the month after he left the program, VDOC issued a policy change substantially increasing the out-of-cell time for inmates to a minimum of four hours per day, seven days a week, or 28 hours a week, effective January 6, 2020. *See* ECF 381, VDOC SUMF at ¶ 77. Inmates who were in the Step-Down Program after this date, therefore, have a substantially different experience when it comes to their conditions of confinement than Mr. Cornelison. *Id.* at ¶ 76.

Plaintiffs also claim that the conditions of confinement in the Step-Down Program pose common questions susceptible to common answers. *See* ECF No. 191-4, Pls.' Am. Mem. Supp. at 31 ("Whether the conditions of confinement in the Step-Down program impose an atypical and significant hardship in relation to the ordinary incidents of prison life."). Again, the Court should ask Plaintiffs to proffer a trial plan explaining the manner in which they propose to try that issue. After all, inmates' conditions of confinement are highly dependent on which phase of the Step-Down Program they were assigned. For example, inmates who reach the SM-2 privilege level in security level 6 have recreation in unrestrained small groups. *See Id.* at ¶ 64 (noting that Plaintiff Gary Wall testified that "when he reached SM-2, he had daily, unrestrained, "congregate"

7

recreation with other inmates in a recreation yard with a basketball court"). This is a significantly different condition of confinement than that of inmates who remain in security level S and do not have unrestrained movement outside of their cells.

As the above examples make clear, difficulties in comparing the experiences of different inmates across different periods of time are seen throughout all aspects of the Step-Down Program.[1] Plaintiffs have an obligation to explain to both Defendants and the Court how they propose to structure a trial to address the need for such individualized inquiries across the classes. *See MP Vista, Inc. v. Motiva Enters., LLC*, 286 F.R.D. 299, 312-13 (E.D. La. 2012) (rejecting Plaintiffs trial plans which adopted a "figure-it-out-as-we-go-along approach").

Moreover, Plaintiffs must also explain how they intend to try the constitutionality of defendants' conduct over the course of a decade which saw significant evolutions in the academic literature and legal standards. For example, as the Defendants noted in their Motion for Summary Judgment (ECF No. 381, pgs. 98-102), the baseline analysis for Eighth Amendment challenges to segregated confinement in the Fourth Circuit was significantly altered by the 2019 decision in *Porter v. Clarke*, 923 F.3d 348 (4th Cir. 2019), which held for the first time that solitary confinement can pose a serious risk of psychological and emotional harm to inmates under the objective prong of the "deliberate indifference" analysis. *Id.* at 357. The standard by which Defendants' conduct should be measured, and the strength of their qualified immunity defenses, therefore, cannot be the same for the periods of time before and after the *Porter* decision. Similar analyses of the "evolving standards of decency" since the creation of the Step-Down Program must

---

[1] While the disability classes remain in a state of flux, they likely raise equally difficult issues in demonstrating representative, class-wide proof.

be undertaken for the remainder of Plaintiffs' claims as well. Left unguided, this poses an immense challenge to the trier-of-fact.

Requiring Plaintiffs to submit a trial plan would allow the Court an opportunity to assess options for staging the trial in such a way to promote manageability and prevent prejudice and confusion as to which evidence relates to which inmate and during which time period. Finally, requiring Plaintiffs to formally submit a trial plan would properly keep the onus on Plaintiffs—rather than Defendants or the Court—to craft a workable framework for proceeding with this litigation. See *Stephens v. Nordstrom, Inc.,* No. CV 17-5872, 2018 WL 7143623, at *4 (C.D. Cal. Dec. 26, 2018) ("The Court also rejects counsel's kind offer to have the Court craft a trial plan of its own.").

## IV. CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court require the Plaintiffs to submit a trial plan.

December 27, 2023

Respectfully submitted,

**/s/ *Maya M. Eckstein***

Jason S. Miyares
*Attorney General of Virginia*

Margaret Hoehl O'Shea
(VSB #66611)
Assistant Attorney General,
Criminal Justice & Public
Safety Division

OFFICE OF THE
ATTORNEY GENERAL
202 North Ninth Street
Richmond, VA 23219
Ph: (804) 786-2206
Fax: (804) 786-4239
moshea@oag.state.va.us

Maya M. Eckstein (VSB #41413)
Thomas R. Waskom (VSB #68761)
Trevor S. Cox (VSB #78396)
R. Dennis Fairbanks (VSB #90435)

HUNTON ANDREWS KURTH LLP
951 E. Byrd St.
Richmond, VA 23219
Ph: (804) 788-8200
Fax: (804) 788-8218
meckstein@HuntonAK.com
twaskom@HuntonAK.com
tcox@HuntonAK.com
dfairbanks@HuntonAK.com

## CERTIFICATE OF SERVICE

I hereby certify that on December 27, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing to all CM/ECF participants.

By: */s/ Maya M. Eckstein*
Maya M. Eckstein (VSB # 41413)
Hunton Andrews Kurth LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, Virginia 23219-4074
Telephone: (804) 788-8200
Facsimile: (804) 788-8218
meckstein@HuntonAK.com

*Counsel for Defendants*