IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Big Stone Gap Division

- - - - - - - - - - - - - - - - - - -

WILLIAM THORPE, et al,

Plaintiffs,

v.

VIRGINIA DEPARTMENT OF CORRECTIONS, et al,

Defendants.

CIVIL ACTION NO. 2:20cv7

- - - - - - - - - - - - - - - - - - -

TRANSCRIPT OF PROCEEDINGS
**(STATUS CONFERENCE)**

Abingdon, Virginia

January 18, 2024

BEFORE: THE HONORABLE JAMES P. JONES
Senior United States District Judge

APPEARANCES:

COUNSEL FOR PLAINTIFFS:

Covington & Burling LLP
By: Mariana Jackson
Megan Crowley
850 Tenth Street NW
Washington, DC 20001

American Civil Liberties Union of Virginia Foundation
By: Vishal Mahendra Agraharkar
Geri Michelle Greenspan
701 E. Franklin St., Suite 1412
Richmond, VA 23219

Appearances Cont.

Ali & Lockwood LLP
By: Kathryn Marshall Ali
300 New Jersey Avenue NW, Suite 900
Washington, DC 20001

COUNSEL FOR DEFENDANTS:

Hunton Andrews Kurth LLP
By: Maya Miriam Eckstein
Robert Dennis Fairbanks
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, VA 23219

Office of the Attorney General of Virginia
By: Margaret Hoehl O'Shea
202 North Ninth Street
Richmond, VA 23219

(Proceedings commenced at 1:33 p.m.)

THE COURT: We're here this afternoon in case number 2:20cv7. I would like counsel who are going to participate to identify themselves for the record, first on behalf of the plaintiffs.

MS. JACKSON: Good afternoon, Your Honor. This is Marianna Jackson on behalf of the plaintiffs.

THE COURT: All right, Ms. Jackson. Thank you. Anyone else going to participate other than you, Ms. Jackson?

MS. JACKSON: I don't believe so.

THE COURT: All right. Good. So for the defendants?

MS. ECKSTEIN: Good afternoon, Your Honor. This is Maya Eckstein at Hunton, Andrews, Kurth. I'm joined by my colleague, Dennis Fairbanks, and by Margaret O'Shea from the Office of Attorney General. All of us may participate at some point.

THE COURT: I'm having a little problem understanding you, Ms. Eckstein. Perhaps you could see if you can arrange that a little better.

MS. ECKSTEIN: I'll try. Can you hear me now?

THE COURT: Yes. Maybe that's a little better.

MS. ECKSTEIN: Okay. Great. Maya Eckstein with Dennis Fairbanks from Hunton, Andrews, Kurth. We're joined by Margaret O'Shea from the Office of the Attorney General.

All three of us may participate at some point today.

THE COURT: And who is going to be speaking, do you anticipate, Ms. Eckstein?

MS. ECKSTEIN: I anticipate I will be. I may turn to Mr. Fairbanks or Ms. O'Shea, if needed.

THE COURT: All right. Thank you.

Well, this hearing was precipitated by the defendants' motion for an order requiring the plaintiffs to submit a so-called trial plan.

I'll be glad to hear from the defendants in regard to that. I've read the memorandum and the response that has been filed. Ms. Eckstein, do you want to proceed in that regard?

MS. ECKSTEIN: Sure, Judge Jones. I'll be brief about it. I think our position is fairly well set out in the briefing.

Our position is that the fact that you did grant class certification, which we, of course, understand, doesn't resolve the plaintiffs' need to prove their case on a class basis, to present classwide proof.

That's really the point of the trial plan. How are they going to do that when we have a program -- it's absolutely true that all of the inmates at issue went through the Step-Down Program. No dispute there. But that program evolved over time significantly and in significant ways that

changed the level of isolation for each of the inmates.

Some of the inmates who would be in this class could have been in it as early as 2012, 2013, 2014. Their experience will have been very different from the inmates who were in the class and experienced the Step-Down Program in 2019, '20, '21 to the present. That is a very different experience, not only in out-of-cell time, although that is a big piece of it, but also as to other privileges provided, restraints required, that type of thing.

So we don't understand -- we, the defendants, do not understand how the plaintiffs are going to present such evidence on a classwide basis, and that is the purpose of the trial plan, so that everybody can understand how that's going to be done and how the plaintiffs are going to meet their burden.

THE COURT: Well, I wonder if you could -- I must admit that while I've handled a number of class action proceedings or actions, I have not experienced a trial plan in the manner in which you propose. Can you give me a little better understanding of what you see in a trial plan?

Now, I understand your basic ascertain that conditions have varied over time, but aside from that, what would you see in a trial plan? I mean, obviously I don't ask you to write it for the plaintiffs, but can you give me a little better understanding of what you have in mind?

MS. ECKSTEIN: Yeah, I think in particular we need an understanding of how they're going to present the evidence for each permutation of the program. Do they intend to have just one person present all of that, or will it be multiple inmates who testify? What is the plan for that?

The other piece of it I think is damages. How are they going to present damages evidence given the different permutations of the plan over time? Frankly, we also don't know how they intend to present damages at all, any kind of compensatory damages evidence at all regarding time spent in the Step-Down Program. So we would expect to see something that drilled down a bit into those issues, those types of issues.

THE COURT: All right. So, Ms. Jackson, what is your response?

MS. JACKSON: Thank you, your Honor. The request for a trial plan, in general I think -- I will also try to keep this brief because I think our opposition responds to a number of these points already, but I just wanted to highlight a few.

First, nothing in defendants' motion or reply cites any legal requirement for this trial plan. It's well within the Court's discretion, but there is nothing that requires it in a case like this, and for good reason.

It's not practically necessary here. This is not a

complex case, and defendants have failed to point to any case like ours in which the Court has required a trial plan. Ours is a simple class action in which all of the class plaintiffs were in the same prison, in the same program, and with one defendant, one main defendant, and the individuals.

It's not required here, and it would not be useful, particularly in light of, as we have flagged in our other filings, in light of the fact that the parties have agreed to stipulate to a bench trial.

Trial plans are useful when we are working to be efficient and organize our evidence for a jury who has no experience with the facts, with the case. Here, as the parties have indicated, we are willing to stipulate to a bench trial, and Your Honor has experience with this case, with the facts, and the need to be efficient and organized for a fact-finding jury is just not here.

Your Honor, as you know, you can ask questions and clarify any issues during a bench trial in a way that wouldn't be --

THE COURT: If I could interrupt you. So what about the ascertain that over time the program has changed so that -- is there going to be a difficulty in that regard in pointing out what periods of time we're talking about, how it's changed, and things like that?

MS. JACKSON: The plaintiffs don't see any issue

presenting the evidence this way, and the defendants have already raised this in their opposition to our motion to certify the class.

The Court found in its opinion and order that different experiences over time in the Step-Down Program don't impede the generation of common evidence. The ascertain that all of the evidence would be specific to individuals is unfounded here, as the Court has already found.

THE COURT: So what you're saying is that your allegations or claims of statutory and constitutional violations will be something that is not necessary to pinpoint the time that they occurred? In other words, they're applicable to the entire class? Is that what you're saying?

MS. JACKSON: To the extent that any, you know, time specific evidence will need to come in, it certainly won't be something that will make the trial -- that will be difficult to present at the trial.

There is sufficient common evidence for the claims that this class has satisfied. We will have individuals testify to their individual experience, but nothing that requires plaintiffs to lay out their full trial plan ahead of trial in ways that defendants are seeking here.

THE COURT: So to the extent there is a plan, your

plan is to call a number of inmates together with the experts that have been designated, and these witnesses would piece together an understandable and cohesive view in support of your allegations; is that true?

MS. JACKSON: That's right. We have several inmates who have been in the program at different times, but the evidence as to the claims, as to the elements of each claim, is the same. The allegations are the same over time.

THE COURT: What about damages? That has been a matter that has bothered me some, I must admit. How are damages going to be handled in this trial?

I mean, at one time in the certification process it was asserted that damages would not be -- that damages would be calculated in some way that would depend on the length of time, sort of a grid purpose for determining, you know, I spent such and such a time at this level and so on, and that would be somehow calculated. I haven't heard any more about that, frankly. What is your plan in that regard?

MS. JACKSON: On specific calculations of the damages, especially now that we've stipulated to proceed with a bench trial, we could do posttrial briefing on calculations, if we reach that point.

THE COURT: Well, but you're not seeking damages based on individual claims but on a class basis that is easily determined, is that --

MS. JACKSON: Right. I apologize.

THE COURT: Go ahead.

MS. JACKSON: One example of how this might be calculated is on a per day basis where the calculation would be fairly simple per inmate based on how many days they were within in the program. That would not require specific testimony as to damages specifically. We would just have record evidence to use for a calculation.

THE COURT: But the amount, how does the Court determine that? I mean, even assuming that that would be an acceptable way to provide class damages, how would that -- how would the amount be determined? Just whatever I thought was appropriate or --

MS. JACKSON: We will have expert testimony on the amount of damages, so that will be testimony that comes in through the trial.

THE COURT: So have you disclosed that testimony to the defendants, that expert testimony?

MS. JACKSON: We have an expert testifying as to calculations, and that has been disclosed.

THE COURT: All right. As I understand, the parties have agreed to a bench trial. Is that accurate, Ms. Eckstein?

MS. ECKSTEIN: Yes, Judge Jones. If I may, can I have an opportunity to respond briefly?

THE COURT: I'm sorry?

MS. ECKSTEIN: Yes, we have agreed to a bench trial. I was asking if I may have an opportunity to reply briefly.

THE COURT: Yes, ma'am, absolutely. Go ahead.

MS. ECKSTEIN: Thank you. Just briefly. I think your discussion with Ms. Jackson really proves our point. The plaintiffs seem to be looking at the question of the constitutional violation here, or alleged constitutional violation, at a very, very high level, too simplistic approach to this. It actually suggests the need for the trial plan itself.

We do have a more than ten year period to look at with multiple changes to the program. Are they going to put on evidence just about the most recent version of the program and say that applies to everybody, or are they going to put evidence on about the earliest version of the program and say that applies to everybody? Neither I think would be appropriate for this class action, but it begs the question.

And the fact that we have agreed to a bench trial doesn't alleviate the need for the trial plan. Even a bench trial needs to be run efficiently and effectively for Your Honor.

With regard to damages, no expert has been disclosed to us who has made any calculation of damages whatsoever or who has suggested what the proper base rate under this, you

know, per diem theory should be. We've had zero disclosure about what the damages should be, either via an expert or discovery responses.

MS. JACKSON: May I respond, Your Honor?

THE COURT: Yes.

MS. JACKSON: First, I'd like to clarify on the damages. We have an expert that's calculated the number of days that each plaintiff has been in the program but not how much per day, which would be up to the discretion of Your Honor.

Second, I think it's important here that we acknowledge that defendants have failed to point to any other case in the Fourth Circuit or elsewhere in which a simple class action like this has required a filing like this.

The fact that plaintiffs will have the burden of proof is not sufficient to require us to layout our case before trial. Sufficiency of the evidence is an issue for every trial, and Your Honor, as the fact-finder and decider of the law, will have the opportunity to determine whether we've carried our burden at trial.

THE COURT: All right. Well, thank you.

Ms. Jackson, let me ask you a couple of other questions, if you could answer. I am still concerned about the damage aspect. I would like you to submit to me any authority that you can find that lays on the finder of fact

an opportunity to determine some sort of per diem payment for the type of injury, constitutional and statutory, which you're asserting here.

Now, I know in settled class actions there is always some, or many times there is some calculation to the class members based on something like that, some grid of time or, you know, number of purchases or something like that, but that's a settlement. We're not talking about settlement here; we're talking about the Court making a finding. So I would like you to do that. If you would make a note of that.

MS. JACKSON: I'll be happy to.

THE COURT: In arguments that the plaintiffs have made there are ascertains in the constitutional claims of both as-applied and facial claims.

Is there any ascertain in this case of facial violations of the Constitution, or is it all as-applied? Can you answer that for me? If not, if you want to think about that, I'll let you respond to me after we --

MS. JACKSON: I'm happy to respond, Your Honor. We are making both, both facial and as-applied claims here.

THE COURT: All right. Facial based on the regulations themselves, on the structure of the program; is that what you're saying?

MS. JACKSON: On the regulations as written.

THE COURT: All right. Let me see. Well, I'm going

to think about this a little bit, and -- oh, there is one other thing I think we need to talk about, and that's the possible continuance of the trial date.

Again, I have not entered orders in the pending motions, but I plan to do that quickly, or shortly after today. I can't promise you what exact day it will be, but I'm going to do that as soon as I can. You know, it is what it is. It's a complex case, and it's taken me a while to go through the materials and consider them.

But what is your position in regard to continuance, assuming that I let the case go to trial, as I've indicated, and because there has been no notice to the class? Are we going to complete all of that before the trial date?

MR. FAIRBANKS: Your Honor, this is Dennis Fairbanks for defendants. I understand you'd be asking defendants that question in light of your earlier email.

We agree with plaintiffs that there is not sufficient time, given the current trial date, to complete notice and the opt-out period for a trial that would start on March 18th. So we would certainly be willing to agree to a continuance to allow that process to go forward.

THE COURT: Well, thank you. I hadn't understood that the plaintiffs were exactly in the same position, so that's why I asked Ms. Jackson.

So you agree, Ms. Jackson?

MS. JACKSON: Yes, we do. The parties have been discussing what an appropriate schedule would be from our perspective, but we, of course, would be anxious for the Court to weigh in on your willingness to continue the trial to allow for this process.

THE COURT: Well, if the parties have discussed it, do you mean you've discussed when, what dates? Is that what you're saying?

MS. JACKSON: Certainly not which dates, Your Honor, as we would refer to your trial calendar, but rather what the timing for the process would look like in terms of following the order on the Motion for Reconsideration, time for plaintiffs to submit its proposed plan of notice, time for defendants to respond, and then time for plaintiffs to submit a new -- I'm sorry, for defendants to provide information, addresses and contact information for those within its custody and last known address information for those no longer within their custody, then for plaintiffs to mail the notices and a sufficient time in light of Your Honor's note in its August 8th order that 45 days would not be a sufficient opt-out period, allowing for at least a 60-day period or whatever the Court thinks is appropriate.

THE COURT: All right. Mr. Fairbanks, do you have any response that?

MR. FAIRBANKS: Yes, your Honor. Just to note that

once Your Honor makes the decision on the notice or the Motion for Reconsideration, there is going to have to be identification of the class representatives.

And if plaintiffs identify class representatives who are not named plaintiffs at this point, particularly for the disabilities class, there may need to be a period for discovery as to that class representative that needs to be added in there.

THE COURT: Right. So I guess what we're saying is I need to go ahead and enter orders and opinions in these matters and then determine the length of period before trial so that the notice matters can be taken care of, and the suggestion is that 60 days might be sufficient. So it's no use in determining a trial date right now until we get the starting date on that process.

One thing that I think was discussed in your briefing is whether three weeks would be sufficient under the circumstances of a bench trial. What are the parties's views on that? Ms. Jackson?

MS. JACKSON: Thank you, your Honor. The parties have discussed potential trial length. This was one of the other reasons that we were hoping to speak with the Court this afternoon.

The defendants have suggested a three week bench trial, which the plaintiffs would like to confirm a couple of

points. If this is going to be a bench trial, whether the Court would be able to devote full days to the three week period.

Second, you know, I think that plaintiffs would need confirmation that all of the witnesses within defendants's custody would be able to attend the trial in person if they so desired during that three week period, and that defendants would be able to transport them.

The parties have conferred on this, and we understand that there shouldn't be an issue, but before confirming that plaintiffs could agree to a three week period, we just wanted to ensure that the Court was aware of those as two important issues for the time period.

THE COURT: Well, how many individual inmates are we talking about?

MS. JACKSON: We think that we'll likely present testimony with no more than seven or eight individuals that are incarcerated.

THE COURT: Are you talking about their attendance at the time of their testimony, or are you talking about them being present at all times during the trial? I assume not, but I just wanted to confirm that.

MS. JACKSON: Present for their testimony. Thank you, your Honor.

THE COURT: Okay. Mr. Fairbanks, what's your view

of this?

MS. ECKSTEIN: I'll take this, Your Honor. We are amenable to a three week trial. Frankly, we think it could be done in even less time than that.

With respect to the inmates who would be testifying, one option also, as I understand you have done this before, is where they can testify via Zoom. That might make it easier to fit everything in within three weeks for one or more of the inmates.

THE COURT: Ms. Jackson, what's the plaintiff's view of Zoom appearance for some of the inmate witnesses?

MS. JACKSON: I think our preference would be, of course, to have as many of them as possible testify live. To the extent that there are some for whom there might be some hardship associated with testifying in person, be it because they're out of state or maybe health issues, we would like the opportunity to discuss that with them before confirming that they would not testify live.

THE COURT: All right. So our trial would be in Abingdon. Everybody understands that.

So any other questions or comments? Ms. Jackson, anything?

MS. JACKSON: The one other point that we raised in our motion for status conference was the sequencing of the Court's orders. Of course, we don't know when the Court will

issue its orders, and it is certainly up to you as to what order, but we did want to flag the one-way intervention rule.

If the Court were to decide or issue a favorable decision in the defendants's Motion for Summary Judgment prior to or at the same time it issued its decision in the Motion for Reconsideration, that favorable decision to defendants's Motion for Summary Judgment would not bind the full class. I won't speak for defendants's counsel here, but I would assume that they would prefer that a favorable decision binds the full class.

So to the extent that that is -- it is within the Court's discretion, of course, to issue its orders however it sees fit, but we did want to raise that as a possible issue for the parties if the Motion for Summary Judgment was decided that way prior to the class receiving its notice and ability to opt out.

THE COURT: Right. What you're saying is that if I granted the Motion for Reconsideration, then we would need to proceed with notices, an opt-out period, before I ruled on summary judgment motions in order to bind the class, right?

MS. JACKSON: Well, we need to proceed with a plan of notice and contacting all of our potential class members either way. So however the Motion for Reconsideration is decided, we would need the opportunity to notify class members prior to a possible favorable decision on

defendants's Motion for Summary Judgment. Of course, if defendants's motion is not decided favorably, then this issue is not a concern.

THE COURT: All right. Thank you. Anything further?

MS. JACKSON: Not from me.

THE COURT: Ms. Eckstein and Mr. Fairbanks, anything further?

MS. ECKSTEIN: Nothing here, Your Honor.

THE COURT: All right. Well, thank you, counsel. This has been helpful. We'll try to rule as expeditiously as possible. I appreciate the comments and advice here today. I'll make a ruling on the trial plan motion, obviously, too.

If there is nothing further then, we'll adjourn. Again, thank you, counsel.

(Proceedings concluded at 2:07 p.m.)

CERTIFICATION

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

/s/

Cynthia L. Bragg

February 10, 2024