IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA

| | | |
|---|---|---|
| WILLIAM THORPE, ET AL., | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 2:20CV00007 |
| | ) | |
| v. | ) | |
| | ) | |
| VIRGINIA DEPARTMENT OF CORRECTIONS, ET AL., | ) | JUDGE JAMES P. JONES |
| | ) | |
| Defendants. | ) | |

### OPINION AND ORDER DENYING MOTION TO RECONSIDER

*Argued: William O'Neil,* COVINGTON & BURLING LLP, *New York, N.Y., for Plaintiffs; Thomas R. Waskom,* HUNTON ANDREWS KURTH LLP, *Richmond, Virginia, for Defendants.*

In this class action lawsuit challenging long-term solitary confinement as practiced in Virginia prisons, the plaintiffs have filed a motion for reconsideration of the court's decision of August 8, 2023, in which the court revised the definition of membership in two of the classes and denied the appointment of a particular class representative for another of the classes.

The motion has been briefed and orally argued, and for the reasons set forth below, it will be denied.

DISABILITY CLASS DEFINITIONS.

The court has previously detailed the plaintiffs' claims and the facts alleged in their Complaint. *Thorpe v. Va. Dep't of Corr.*, No. 2:20CV00007, 2020 WL

10354128 (W.D. Va. Sept. 4, 2020), *R. & R. adopted in part, rejected in part*, 2021 WL 2435868 (W.D. Va. June 15, 2021) (denying motion to dismiss), *aff'd*, 37 F.4th 926 (4th Cir. 2022) (affirming denial of qualified immunity as to Eighth Amendment claim).  In summary, the plaintiffs claim that the conditions and lengths of solitary confinement for inmates in two of the state's high security prisons are unlawful and that the pathways for inmates to receive less severe confinement and eventually leave solitary confinement altogether — called the Step-Down Program — violated clearly established due process principles.  The Complaint, relying upon the Constitution, the Americans with Disabilities Act (ADA), and the Rehabilitation Act (RA), seeks both monetary damages and injunctive relief.

The court granted class certification, defining four separate classes. *Thorpe v. Va. Dep't of Corr.*, No. 2:20CV00007, 2023 WL 2908575 (W.D. Va. Apr. 12, 2023).  The ruling established both present- and forward-looking classes seeking injunctive relief and present- and backward-looking classes seeking damages, with separate sub-classes for inmates with serious mental health issues.  Thereafter, in the decision challenged in the plaintiffs' current motion, *Thorpe v. Va. Dep't of Corr.*, No. 2:20CV00007, 2023 WL 5038692 (W.D. Va. Aug. 8, 2023), the court amended the definitions of two of the classes related to mentally disabled inmates — the Disabilities Injunction Class and the Disabilities Damages Class.  Those definitions are now as follows:

> Disabilities Injunction Class: All persons who are currently, or will in the future, be confined at Red Onion or Wallens Ridge at the Level S or Level 6 security levels and subject to any phase of the Step-Down Program and who are or will in the future be classified at Mental Health Classification Code MH-2S or higher at the time of the Level S or Level 6 security level classification.

> Disabilities Damages Class: All persons who at any time from August 1, 2012, to the present that have been confined at Red Onion or Wallens Ridge at the Level S or Level 6 security levels and subject to any phase of the Step-Down Program and who are or were at the time of their Level S or Level 6 security level classification also classified at Mental Health Classification Code MH-2S or higher.

2023 WL 5038692, at *3–4.

The plaintiffs object and propose that the disabilities classes be defined as follows:

> Disabilities Injunction Class: All persons who are currently, or will in the future, be confined at Red Onion or Wallens Ridge at the Level S or Level 6 security levels and subject to any phase of the Step-Down Program, and who either: (1) have been classified as Mental Health Classification Code MH-2 while in Level S or Level 6 and subject to any phase of the Step-Down Program; or (2) have been classified as MH-2S or higher or admitted to Marion Correctional Treatment Center for treatment, at any point prior to classification at Level S or Level 6 or while subject to any phase of the Step-Down Program.

> Disabilities Damages Class: All persons who, at any time from August 1, 2012, to the present have been confined at Red Onion or Wallens Ridge at the Level S or Level 6 security levels and subject to any phase of the Step-Down Program and who: (1) have been classified as Mental Health Classification Code MH-2 while in Level S or Level 6 and subject to any phase of the Step-Down Program; or (2) have been classified as MH-2S or higher, or admitted to Marion Correctional Treatment Center for treatment, at any point prior to classification at Level S or Level 6 or while subject to any phase of the Step-Down Program.

Pls.' Mem. Supp. Mot. 7, ECF No. 359-1.

The plaintiffs agree that the changes requested seek to expand the membership in the disability classes. They do this by extending the relevant mental health disability to those inmates classified as code MH-2 or greater, rather than code MH-2S or greater, as is currently the case, and by extending membership to inmates who at any time in the past have been classified as MH-2S or who have been admitted to a special Virginia facility for inmates with mental health issues, called the Marion Correctional Treatment Center.

Inmates confined under the control of the Virginia Department of Corrections (VDOC) may be designated by a series of mental health (MH) codes, being MH-0, MH-1, MH-2, MH-2S, MH-3, MH-4, and MH-X. Defs.' Opp. to Mot. Ex. A, Malone Decl. 2, ECF No. 365-1. Code MH-2 means that the inmate has been diagnosed as having a "'significant DSM diagnosis' or diagnosis of a personality disorder" with symptoms that are usually "'mild to moderate but stable.'" *Id.* A "'significant DSM diagnosis'" describes any mental health diagnosis that may or may not have "an impact on functioning from time to time." *Id.* at n.1. Code MH-2S, on the other hand, "encompasses inmates with mental disorders that substantially interfere with the inmate's ability to meet the ordinary demands of living." 2023 WL 5038692, at *3.

The defendants oppose the Motion for Reconsideration, arguing that it is untimely and only repetitive of earlier arguments. In addition, they contend that to adopt the changes in definition would likely require individualized examination of possible members to evaluate their fitness for inclusion in the disability sub-classes, contrary to the requirements for a class action.

Under the ADA and RA, an individual is a person with a disability if he or she "(1) has a physical or mental impairment that substantially limits one or more of the individual's major life activities; (2) has a record of such an impairment; or (3) is regarded as having such an impairment." *Davis v. Univ. of N.C.*, 263 F.3d 95, 99 (4th Cir. 2001). This definition must be "construed broadly in favor of expansive coverage, to the maximum extent permitted by the terms of the ADA." 28 C.F.R. § 35.108(a)(2)(i). However, non-substantial or "minor" impairments do not constitute disabilities under the ADA. *Israelitt v. Enter. Servs. LLC*, 78 F.4th 647, 655 (4th Cir. 2023).

Because the MH-2 code indisputably includes impairments that may not qualify as disabilities under the ADA or RA, such a class expansion would not cohere with the plaintiffs' claims. While I share the concern about the under inclusivity of any class, an overinclusive solution would merely swing the pendulum in the opposite direction and pose greater concerns about the potential imposition of false liability. Indeed, the "'mere use' of a medicine . . . does not establish a per se

disability" even if all prisoners classified at MH 2 have a diagnosis of some kind. *Schluter v. Indus. Coils, Inc.*, 928 F. Supp. 1437, 1445 (W.D. Wis. 1996). The same overinclusive result may be true of persons admitted to the Marion Correctional Treatment Center for treatment because the plaintiffs have not provided evidence that all persons admitted to that facility suffer from a covered disability and verifying the nature of each person's potential disability in that category would embroil this court in the mini trials it must avoid.

The plaintiffs also contend that inmates who have once had a code of MH-2S but who have a lower mental health code together with the requisite security levels should be included. But again, this change would require the individualized determination that is impermissible.[1]

Accordingly, even were I not to find the requested amendments barred as untimely or repetitive, I would deny reconsideration.

## CLASS REPRESENTATIVE.

In my August 8, 2023, ruling, I granted the defendants' objection to the approval of Peter Mukuria as class representative of the Constitutional Injunction Class on the ground that he was no longer a member of that class. Generally, "[a]

---

[1] The defendants find the court's amended class definitions to be "somewhat ambiguous" to the extent that they are concerned that the definitions would require an inmate to have a MH-2S code or higher when he is initially classified as Level S or 6, rather than at any time when he is so classified. Pls.' Mem. Supp. Mot. Reconsid. 6 n.4, ECF No. 359-1. I confirm that the latter meaning is applicable.

litigant must be a member of the class which he or she seeks to represent at the time the class action is certified by the district court." *Sosna v. Iowa*, 419 U.S. 393, 403 (1975). This pertains to the fundamental concept of mootness, but it also goes to the class action adequacy requirement. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997).  Two exceptions to this are constitutional deprivations that are "'capable of repetition, yet evading review'" or deprivations that relate back to the filing of the claim if other class members "will continue to be subject to the challenged conduct and the claims raised are . . . inherently transitory." *Jonathan R. ex rel. Dixon v. Justice*, 41 F.4th 316, 325 (4th Cir. 2022) (citation omitted).

Although these exceptions might be otherwise persuasive in light of the further developments in the record, the defendants at oral argument raised the concern that if Mukuria is the class representative, the class's claims may be barred by res judicata.  Res judicata applies where three conditions are met: (1) there is a final prior judgment on the merits that was "rendered by a court of competent jurisdiction in accordance with the requirements of due process"; (2) the parties to the second matter are identical to, or in privity with, the parties in the first action; and (3) "the claims in the second matter are based upon the same cause of action involved in the earlier proceeding." *Covert v. LVNV Funding, LLC*, 779 F.3d 242, 246 (4th Cir. 2015) (internal quotation marks and citation omitted).  If each of these factors is satisfied, there is both issue and claim preclusion.

Mukuria has previously litigated at least one of the causes of action at issue in the current litigation against several of the same defendants. *Mukuria v. Clarke*, No. 7:15CV00172, 2016 WL 5396712, at *6 (W.D. Va. Sept. 27, 2016), *aff'd,* 706 F. App'x 139 (4th Cir. 2017) (unpublished). Thus, I find that that the risk of defensive issue and claim preclusion is possible and consequently a sufficient reason to bar Mukuria as class representative.

I will allow plaintiffs time to name a new class representative.

### Conclusion.

For the reasons as stated, it is **ORDERED** as follows:

1. Plaintiffs' Motion to Reconsider the Court's August 8, 2023 Order, ECF No. 359, is DENIED;

2. Plaintiffs are granted leave to propose a new Class Representative for the Constitutional Violation Injunctive Class, provided it is proposed within 21 days from this date; and

3. Plaintiffs are reminded of their obligations to submit proposed class notices and a class notice plan within 21 days hereafter. Order, ECF No. 364 (Aug. 25, 2023).

ENTER: March 29, 2024

/s/  James P. Jones
Senior United States District Judge