CLERKS OFFICE U.S. DIST. COURT
AT ABINGDON, VA
FILED

September 26, 2024

LAURA A. AUSTIN, CLERK
BY: s/ FELICIA CLARK
DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA

| | | |
|---|---|---|
| **WILLIAM THORPE, ET AL.,** | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 2:20CV00007 |
| | ) | |
| v. | ) | |
| | ) | |
| **VIRGINIA DEPARTMENT OF CORRECTIONS, ET AL.,** | ) | JUDGE JAMES P. JONES |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER AS TO PRETRIAL MOTIONS

*Argued:* William O'Neil, Eli Jacobs, Alyssa C. McGraw, Neal A. Hoopes, Megan A. Crowley, Ayana M. Lindsey, and Marianna F. Jackson, COVINGTON & BURLING LLP, New York and Washington, D.C., and Vishal Agraharkar and Geri M. Greenspan, ACLU OF VIRGINIA, Richmond, Virginia, for Plaintiffs; Margaret Hoehl O'Shea, Senior Assistant Attorney General, OFFICE OF THE ATTORNEY GENERAL OF VIRGINIA, Richmond, Virginia, and Maya M. Eckstein, Thomas R. Waskom, and R. Dennis Fairbanks, HUNTON ANDREWS KURTH LLP, Richmond, Virginia, for Defendants.

In this class action challenging solitary confinement as practiced in certain Virginia prisons, the parties have filed and argued certain pretrial motions, including (1) *Daubert* motions to exclude certain expert testimony, ECF Nos. 366, 368, 370, 372, 374, and 376; and (2) defendants' motion to require a plaintiffs' trial plan, ECF No. 442.[1]

---

[1] There are also pending cross motions for summary judgment, but it is useful to determine the *Daubert* motions first.

Relevant to the present motions, the parties have jointly withdrawn their requests for a jury trial and consented to a bench trial. They have also stipulated to the decertification of the Disabilities Injunction Class and the Disabilities Damages Class and further agreed that certain of the named plaintiffs will be allowed to pursue individual claims under the Americans with Disabilities Act (ADA) and the Rehabilitation Act (RA) following a final judgment in the present case. Order Approving Joint Stipulation, May 6, 2024, ECF No. 476.

## I. BACKGROUND.

The court has previously detailed the plaintiffs' claims and the facts alleged in their Complaint. *Thorpe v. Va. Dep't of Corr.*, No. 2:20CV00007, 2020 WL 10354128 (W.D. Va. Sept. 4, 2020), *R. & R. adopted in part, rejected in part*, 2021 WL 2435868 (W.D. Va. June 15, 2021) (denying motion to dismiss), *aff'd sub nom. Thorpe v. Clarke*, 37 F.4th 926 (4th Cir. 2022) (affirming denial of qualified immunity as to Eighth Amendment claim). In summary, the plaintiffs claim that the conditions and lengths of solitary confinement for inmates in two of the high security prisons operated by the Virginia Department of Corrections (VDOC) are unlawful under the Eighth Amendment and that the pathways for inmates to receive less severe confinement and eventually leave solitary confinement altogether — called the Step-Down Program — violate clearly established due process principles.

## II. MOTIONS TO EXCLUDE EXPERT TESTIMONY.

Under Federal Rule of Evidence 702, the court has broad discretion when deciding whether to admit evidence from expert witnesses. *Sardis v. Overhead Door Corp.*, 10 F.4th 268, 281 (4th Cir. 2021). That rule requires a court to find that an expert's opinion meets two preconditions for admission — relevancy and reliability. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993); *Sardis*, 10 F.4th at 283–84. A proponent must establish admissibility by a preponderance of the evidence. Fed. R. Evid. 702. The court may consider any useful factors bearing on validity, and those factors will depend upon the unique circumstances involved. *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 261 (4th Cir. 1999).

Federal Rule of Evidence 702 governs the admission of expert testimony. If a witness qualifies as an expert by knowledge, skill, experience, training, or education, then the witness may testify in opinion form. Fed. R. Evid. 702; *Sardi*s, 10 F.4th at 279. The testimony must (1) help the factfinder understand the evidence or determine a fact in issue, (2) rely on sufficient facts or data, (3) result from reliable principles and methods, and (4) be "the product of a reliable application of those principles and methods to the facts of the case." *Id.* at 281.[2]

---

[2]   I have omitted internal quotation marks, citations, and alterations here and throughout this Opinion and Order, unless otherwise noted.

Because the parties in this case have consented to a bench trial, rather than a jury, "the gatekeeping function of the court is relaxed . . . because the court is better equipped than a jury to weigh the probative value of expert evidence." *United States v. 100.01 Acres in Buchanan Cnty., Va.,* No. 1:00CV00185, 2002 WL 923925, at *2 (W.D. Va. May 7, 2002).   On the other hand, the fact that I determine that the expert opinions considered meet the minimum requirements for admissibility is not a determination that at trial I will find their testimony persuasive.

**Michael L. Hendricks, Ph.D.**

The plaintiffs retained Dr. Hendricks, a clinical and forensic psychologist, to determine the effects of prolonged isolated confinement on the plaintiffs' mental health.   He conducted interviews, reviewed numerous records, and consulted literature in the field.   He opined that prolonged isolation in VDOC's Step-Down Program caused the plaintiffs to suffer serious illnesses.   Dr. Hendricks concluded that these illnesses caused distress and impairments beyond any symptoms from preexisting conditions.   Some of the plaintiffs complained of physical ailments, such as hypertension, glaucoma, arrhythmia, and muscle atrophy.   He noted that some scientific literature linked physical ailments to solitary confinement.

Dr. Hendricks personally evaluated all plaintiffs except for McNabb and Thorpe, who had been transferred out of state.   Dr. Hendricks used two psychologists

to evaluate McNabb and Thorpe using his protocol.  Although Dr. Hendricks relied on their reports, his conclusions differed from his colleagues' conclusions.

The defendants have filed a motion to exclude (1) Dr. Hendricks' report and testimony regarding plaintiffs Thorpe and McNabb, (2) his causation opinions regarding all named plaintiffs' mental health, and (3) his opinions on physical medical conditions.  The defendants argue that Dr. Hendricks' opinion is unreliable because of flawed methodology.  Further, they insist that Dr. Hendricks impermissibly substituted his opinion for the psychologists assisting him with evaluations.  Finally, the defendants argue that Dr. Hendricks' report and anticipated testimony exceeds his expertise and speaks to the ultimate issue.

The plaintiffs oppose the motion, contending that Dr. Hendricks (1) properly relied on his colleagues' evaluations regarding plaintiffs Thorpe and McNabb, (2) reliably opined that solitary confinement caused or exacerbated their mental health issues, (3) used the plaintiffs' health records and evaluations to support his opinion, and (4) did not opine on medical issues.  The plaintiffs contend that the defendants' objections pertain to the weight, not admissibility, of the evidence.  They insist that cross-examination provides the proper means for addressing those issues.

To guide the court's reliability assessment, *Daubert* has provided four non-exhaustive factors: (1) whether the expert's theory or technique "can be and has been tested," (2) whether the theory or technique "has been subjected to peer review and

publication," (3) the known or potential rate of error inherent in the expert's theory or technique, and (4) whether the expert's methodology is generally accepted in his field of expertise. *Daubert*, 509 U.S. at 593–95.

Neither the American Psychological Association's (APA) guidelines, nor the Federal Rules of Evidence forbid an expert from relying on secondhand knowledge or observations. Fed. R. Evid. 702 and 703; APA, *Specialty Guidelines for Forensic Psychology*, Am. Psych. Guideline § 9.03 (2013), https://www.apa.org/pubs/journals/features/forensic-psychology.pdf. The APA guidelines do not require personal interviews as fundamental to a reliable psychological diagnosis. They require experts to explain, if not interviewing the person impacted, the reliability and validity of their opinions. Rules 702 and 703 permit experts to base opinions on inadmissible hearsay if experts in the field reasonably rely on the same. *Sardis*, 10 F.4th at 283; *United States v. Mann*, 712 F.2d 941, 942 (4th Cir. 1983). For instance, a physician may base his diagnosis on information from numerous sources, including patient statements, medical records, and reports and opinions from other doctors. *Westfield Ins. Co. v. Harris*, 134 F.3d 608, 612 (4th Cir. 1998); *Gopalratnam v. Hewlett-Packard Co.*, 877 F.3d 771, 789 (7th Cir. 2017) ("Of course, as a general matter, there is nothing objectionable about an expert relying upon the work of a colleague."). The expert must not merely regurgitate another expert's opinion. *In re Zetia (Ezetimibe) Antitrust Litig.*, No. 2:18-md-2836, 2022 WL 3337796, at *10

(E.D. Va. Aug. 3, 2022).  Dr. Hendricks' reliance on his colleagues' reports, even though he reached different conclusions, does not invalidate his opinion.

Regarding causation, the defendants argue that his opinion lacks a causal link and meaningful reference to differential diagnoses.  Experts must reliably opine that the defendants' actions caused plaintiffs' injuries.  *Sardis*, 10 F.4th at 298.  An expert may draw inferences based on facts, provided the expert used the scientific or other valid methods.  *Id.* at 281, 291, 298.  To form a legitimate inference, the proximate causation issue requires admissible record evidence.  *Id.* at 298.  Objective bases must show that the expert used reliable principles and methods to reach the conclusion.  *Id.* at 292.  Such methods include testing, supportive literature, peer review publications, or a basis to assess the level of reliability.  *Id.*

Dr. Hendricks' opinion provides a sufficient causal link between the defendants' actions and the plaintiffs' psychological injuries.  He gathered information from clinical interviews, affidavits, various psychological tests, mental health records, medical records, VDOC records, and professional literature.  Based on that information, Dr. Hendricks concluded that protracted isolation caused psychological and physical distress or impairment.  He determined that the isolation exacerbated any preexisting conditions.  Further, he opined that the mental health treatments provided inadequate monitoring or amelioration.

The Fourth Circuit has instructed that an expert is not required to rule out every possible cause. *Cooper v. Smith & Nephew, Inc.*, 259 F.3d 194, 202 (4th Cir. 2001).  The court is not required to find the evidence is irrefutable. *Westberry*, 178 F.3d at 261.  The APA guidelines require a forensic psychologist to consider other possible causes for an illness — the differential diagnosis method.  Dr. Hendricks' report shows, and the defendants acknowledge, that he considered the plaintiffs' personal and mental health histories before concluding his opinion.  Dr. Hendricks' methodology meets the reliability test for admitting his testimony.

Next, the defendants' argument that Dr. Hendricks' impermissibly opines on the ultimate issue fails.  Rule 704(a) specifically allows expert testimony that touches upon or embraces the ultimate issue in a case.  *United States v. Campbell*, 963 F.3d 309, 313 (4th Cir. 2020).

The defendants argue that Dr. Hendricks lacks qualifications as a medical expert and should not testify that isolation caused physical maladies.  *See Est. of Harvey ex rel. Dent v. Roanoke City Sheriff's Off.*, 585 F. Supp. 2d 844, 863 (W.D. Va. 2008) (finding psychologist unqualified to render proximate cause opinions on medical matters such as the cause of death).  Dr. Hendricks' report includes statements and suggestions that solitary confinement caused certain physical medical conditions.  Because he is not a medical doctor, he cannot testify about the proximate cause of physical medical conditions.

I will deny the defendants' request to exclude Dr. Henricks' opinions and testimony.  However, I will limit any causation opinion to psychological matters and preclude those that link confinement conditions to physical impairments.

**Dan Pacholke**.

The plaintiffs retained Dan Pacholke, an international prison consultant, to assess confinement conditions at the prisons involved in this case.  Mr. Pacholke evaluated whether the Step-Down Program complied with generally accepted practices and standards for management of inmates.

Mr. Pacholke opined that solitary confinement should end when someone no longer poses an imminent threat to others or to the institution.  He concluded that extended isolation prevented inmates from demonstrating good behavior as a means to earn release from segregation.  Further, he opined that isolation disorients inmates, making it hard for them to comply, and serves no legitimate penological purpose.  Mr. Pacholke submitted a written report that contains several opinions labeled A through K.

The defendants have filed a motion to exclude Mr. Pacholke's report and testimony, objecting to his qualifications, relevancy, and reliability.  Opinion A states that unnecessarily lengthy deprivation does not address direct threats to people or orderly operations of the prisons.  In Opinion B, Mr. Pacholke described the Step-Down Program's written materials for segregation as incomprehensible.  He found

that the program circumvents relevant standards (Opinion C), that VDOC staff fails to understand and employ evidence-based principles (Opinion D), and that VDOC does not adequately address mental health issues (Opinion F).  The defendants challenge Mr. Pacholke's qualifications to render Opinions B, D, and F, and whether the opinions are relevant.  Further, they argue that Opinions A and C are unreliable.

The defendants argue that Mr. Pacholke is not a reading comprehension expert.  They insist that he is unqualified to testify about solitary confinement's effect on mental health.  The plaintiffs respond that Mr. Pacholke did not offer a clinical opinion about mental health.  They contend that he explained how VDOC's policies and practices addressed inmates' mental health needs.

Mr. Pacholke's experience qualifies him to critique the clarity of the program's written materials and to question whether VDOC staff understood them. His 40 years of experience includes leadership roles and expertise in segregated or restrictive housing.  He has read, developed, and implemented correctional policies for prison management and training.  He has published an article on reforming segregated housing practices and other articles on improving conditions in prisons for workers and inmates.  He has supervised staff trainings on identifying decompensation and managing mental health issues.  Mr. Pacholke interviewed VDOC inmates about their understanding of the Step-Down program.  He read the transcripts from VDOC's staff depositions.  Based on his experience, Mr. Pacholke

can testify about the correctional policies and goals conveyed in the program's materials.   *United States v. Wilson*, 484 F.3d 267, 276 (4th Cir. 2007) (holding that law enforcement officers with extensive experience and specialized knowledge are qualified to give expert opinions on the meaning of drug traffickers' coded language without having formal training in linguistics, psychology, or sociology).

The defense argues that Mr. Pacholke's report is irrelevant.  They contend that his conclusions are based on irrelevant opinions, observations, and secondhand information that he summarizes without additional analysis.  The plaintiffs insist that Mr. Pacholke has provided his own opinions based on his experience and relevant literature.

An expert's opinion is relevant if the opinion assists the factfinder with understanding the facts in dispute.  *Sardis*, 10 F.4th at 281.  The opinion assists the factfinder when it relates to the issues and alleged injuries.  *Id.*  An expert is not required to know all the details of the issues raised to give an expert opinion.  *Thomas J. Kline, Inc. v. Lorillard, Inc.,* 878 F.2d 791, 799 (4th Cir. 1989).  They may rely on secondhand knowledge or observations to form their opinion.  *Sardis*, 10 F.4th at 283.   Mr. Pacholke's opinion addresses VDOC's policies and practices, the implementation of those policies, and best practices, which makes his testimony relevant.  I will deny the motion to exclude Opinions B, D, and F.

The defense challenges Opinions A and C, characterizing them as scientifically unsupported assumptions lacking reliable methodology that includes differential diagnosis. Mr. Pacholke concluded in Opinion A that lengthy isolation did not address direct threats to people or orderly operations. In Opinion C, he opined that the Step-Down Program circumvented relevant standards. The defense claims that Mr. Pacholke created a personal definition of solitary confinement that lacks support in leading correctional organizations or publications. They contend that his personal definition drives his opinion that inmates spent excessive periods in segregation. Additionally, Mr. Pacholke found VDOC's responsiveness to the inmates' needs failed to comport with the evidence-based principles model. The defense contends that his opinions are unreliable because they are erroneous and arbitrary. The plaintiffs assert that Mr. Pacholke relied on his experience, relevant literature, and the discovery materials to form his responsivity opinion. In his report, Mr. Pacholke explained why he reached his conclusions on responsivity.

Some experts rely on experience rather than the scientific method. They must describe their experience to demonstrate they possess a sufficient basis for an opinion. They must explain how their experience informed their conclusions, and how they reliably applied their experience to the facts. *Wilson*, 484 F.3d at 274. An expert need not rule out every possible alternative cause to satisfy the reliability prong. *Cooper*, 259 F.3d at 202. Alternative causes usually affect the weight, not

the admissibility, of the evidence.  *Id.*  The report addresses why Mr. Pacholke's experience provides a sufficient basis for his opinion.  He explains his experience in detail, how his opinions derive from that experience, and the materials from the case and industry literature that he reviewed in addition to interviews he conducted.  I will deny the defendants' request to exclude Opinions A and C.

**Robert Morgan, Ph.D.**

The defense intends to use Dr. Robert Morgan to rebut the plaintiffs' expert testimony.  Defense counsel hired Dr. Morgan — the Dean of the College of Health and Human Sciences at Southern Illinois University with a doctorate in counseling psychology — to assess the current state of scientific research on the effects of restrictive housing.  Dr. Morgan completed a pre-doctoral internship in correctional psychology, taught Abnormal and Forensic Psychology, and authored approximately 125 writings about effective treatment approaches for inmates.  For 25 years, he provided correctional and forensic services to criminal defendants and inmates, including inmates who had been segregated in restrictive housing for varying periods of time.  He prepared segregated inmates for return to the general population.  Also, he served as the Director of Forensic Services and Director of Postdoctoral Fellowship in Forensic Psychology at the Lubbock Regional Mental Health Retardation Center in Lubbock, Texas.  As Director, he developed a competency restoration program for criminal defendants adjudicated not competent

to stand trial.  He has provided expert testimony on the issue of competency in several state and federal courts.

Dr. Morgan contends that the plaintiffs' experts mischaracterized research about solitary confinement's effects on prisoners by overemphasizing those studies. Dr. Morgan opined that those inmates in restrictive housing and inmates incarcerated in the general population experience comparable mild to moderate physical and mental health effects.  The plaintiffs challenge Dr. Morgan's qualifications and whether his testimony is relevant and reliable.

I find that Dr. Morgan is qualified to testify.  A witness may qualify as an expert through knowledge, skill, experience, training, or education.  Fed. R. Evid. 702; *Sardi*s, 10 F.4th at 279.  The plaintiffs argue that Dr. Morgan is unqualified to testify because he did not interview the class members or tour Virginia prison facilities.  Those objections relate to methodology rather than qualifications.  Dr. Morgan's specialized knowledge and experience in psychology and correctional treatment plans qualify him to testify about the scientific research regarding the effects of segregated housing.

Dr. Morgan's opinion is relevant.  The plaintiffs have invoked the current state of scientific research regarding solitary confinement's effect on prisoners in pursuing their claims.  The plaintiffs intend to offer other expert opinion about the research.  Plaintiffs' expert, Dr. Hendricks, reviewed the relevant scientific literature

in his report.  He based his opinion, in part, on that literature.  Rebuttal testimony from the defense's expert is relevant provided that he does not venture beyond the scope of rebuttal.  *Boden v. United States*, No. 7:18CV00256, 2019 WL 6883813, at *5 (W.D. Va. Dec. 17, 2019); Fed. R. Civ. P. 26(a)(2)(D)(ii).  When deposed, Dr. Morgan testified that he limited his opinion's scope to the scientific research addressing solitary confinement's effects.  His opinion will assist the court in understanding that research.  *Sardis*, 10 F.4th at 281.

Dr. Morgan's opinion is sufficiently reliable.  An expert's methodology may include relying on relevant literature from the field and on secondhand knowledge or observations.  *Sardis*, 10 F.4th at 283, 290.  The plaintiffs contend that Dr. Morgan's opinion is not reliable because his process did not include interviewing class members, touring the prisons, or reviewing the Step-Down Program materials.  An expert is not required to know all the details of the issues raised to give an expert opinion.  *Thomas J. Kline, Inc.,* 878 F.2d at 799.  Dr. Morgan reviewed the Plaintiffs' Complaint, and the reports from two of the plaintiffs' experts.  He considered his own experience and expertise in correctional mental health.  He reviewed psychological, psychiatric, and general mental health scientific journals in addition to legal journals addressing incarceration, restrictive housing, and the effects on inmate health functioning.  Therefore, I find that his opinion is sufficiently reliable.

**Richard Wells and Lenard Vare.**

Richard Wells and Lenard Vare have been designated as expert witnesses and both are the subject of motions to exclude. Both would testify as experts concerning compliance with the ADA and RA. Because those issues are now moot based on the parties' stipulation, the motions to exclude are similarly moot.

**Tama S. Celi, Ph.D.**

Dr. Celi is employed as the Research Director, Policy and Planning at VDOC. She leads the Statistical Analysis and Forecast, Program Fidelity and Quality Assurance, and Special Projects and Evaluation units. She has extensive experience in the field of statistics and routinely works with the data at issue in her disclosed expert summary. Dr. Celi is expected to testify as to the meaning and interpretation of the data with which she works.

The plaintiffs have filed a Motion to Strike Dr. Celi's disclosure and supplemental disclosure of expert testimony for failure to file an expert report. Alternatively, the plaintiffs request that Dr. Celi provide, at minimum, the source code that she used for her output files.

The defendants oppose the motion, contending that Dr. Celi was not required to serve an expert report as a hybrid witness under Rule 26(a)(2)(C), that if she had been required to serve a report, the error was harmless, and that in any event, she

should not be required to turn over her source code because it merely attempted to recreate the analysis used by the plaintiffs' expert witness.

The dispute regarding Dr. Celi's testimony differs from the other experts. It is not concerned with the relevance or reliability of Dr. Celi's testimony, but rather with her failure to file an expert report and disclose the source code that she used in forming her opinion.

Witnesses "retained or specially employed to provide expert testimony in the case" or who "regularly" give expert testimony must file a written report unless otherwise stipulated or ordered by the court. Fed. R. Civ. P. 26(a)(2)(B). However, some witnesses are hybrid witnesses because they may speak to matters as both an expert and as a ground-level witness. *Morris v. Bland*, 666 Fed. App'x 233, at *239 (4th Cir. 2016) (unpublished). Hybrid witnesses must have some personal involvement in the underlying facts to give rise to the litigation. *Timpson ex rel. Timpson v. Anderson Cnty. Disabilities & Special Needs Bd.*, 31 F.4th 238, 247 (4th Cir. 2022). Expert reports are not required for testimony regarding basic facts with which the hybrid witness was involved, but they are required where the witness is testifying in their capacity as an expert. For example, treating physicians, the paradigmatic case of a hybrid witness, are not required to serve reports when testifying about treatment that they gave to a person, but they are required to serve an expert report when their opinions are "not formed during the course of treatment."

- 17 -

*Morris*, 666 F. App'x at 239.  However, if a party has not properly disclosed expert testimony under Rule 26(a), the court may exclude the testimony, but should not if the non-disclosure was substantially justified or harmless. Federal Rule of Civil Procedure 37(c)(1); *S. States Rack & Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 595–96 (4th Cir. 2003).

The plaintiffs contend that Dr. Celi was retained or specially employed to provide expert testimony in this matter, meaning that an expert report is required for her testimony.  The plaintiffs further argue that the substance of her testimony is expert in nature, as it relates to (1) the use of measures of central tendency in statistics, (2) whether the measure of central tendency included in Molter's (one of the plaintiffs' witnesses) reports was appropriate, (3) whether the exhibits provided by Molter have a data-analysis-associated reason, and (4) apparent inconsistencies between the steps that Molter asserts in his reports and his data results. The defendants contend that, contrary to what the plaintiffs have claimed, Dr. Celi routinely works with this data and thus has ground-level involvement in the events giving rise to the litigation.  I find that Dr. Celi qualifies as a hybrid witness because she is an expert in this matter, and she also routinely works with the data at issue.

This case presents a closer issue than the cited example of treating physicians. The physician cases are distinguishable, in part, because physicians are asked to testify about more tangible matters, such as the scope of treatment and diagnoses.  It

is clearer in the context of medicine when the specific transforms into the general, and when with that transformation the duties that attend expert testimony come into play.  Statistics are more challenging because, unlike in medicine, the meaning and interpretation of statistics are frequently less accessible to the lay observer.  For example, wounds may frequently be obvious, but disparate impacts may not be.  Although this issue is close, I find that Dr. Celi's facts are sufficiently analogous to those of a treating physician in *Morris* because those who properly interpret statistical results, like interpreting medical results, use their expertise as their lens.  Dr. Celi has generalized experience with statistics as an expert, but she had already applied those skills to the statistics at issue in this case for years prior to this litigation.  Accordingly, the proper measures of central tendency and data analysis of statistics in this action may be informed by both direct experience and background knowledge.  Consequently, Dr. Celi is a hybrid witness.

Whether Dr. Celi should have provided a report is an easier question.  The treating physician example is again instructive.  Despite the fact that physicians draw on generalized knowledge of best practices when treating injuries, physicians may not testify as to general medical matters simply because they are relevant to the underlying injury.  Such a rule would effectively allow parties to smuggle expert testimony into court under the guise of factual testimony.  Accordingly, I hold that Dr. Celi should have provided an expert report, as the matters in her disclosures

- 19 -

speak not about the nature of the data that she routinely reviewed, but rather the proper method of analyzing the data.

However, I must still determine whether this failure to provide an expert report is harmless in light of the factors set forth in *Southern States Rack & Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 595–96 (4th Cir. 2003). These factors are: (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence.

Dr. Celi's testimony will not be a surprise to the plaintiffs — the plaintiffs understand that Dr. Celi's testimony is limited to statistical best practices as they relate to VDOC's data about incarcerated persons at Red Onion and Wallens Ridge. Such evidence would not disrupt the trial, despite its importance. And finally, as to the nondisclosing party's explanation for its failure to disclose the evidence, the defendants have provided a good-faith basis for serving an expert disclosure rather than a report. Additionally, the close nature of the legal question comports with that basis. Thus, I find that the defendants' failure to serve an expert report was harmless. However, to mitigate any risk of surprise, I will order Dr. Celi to produce her source code.

III.  MOTION TO REQUIRE TRIAL PLAN.

The defendants seek an order to requiring the plaintiffs to submit a plan prior to trial "describing the issues be presented at trial and explaining how they are susceptible to class-wide proof."  Br. Supp. 1, ECF No. 443.  At the present time, I do not find such a requirement appropriate, although I reserve the option of requiring pretrial briefs that would assist the court at a bench trial, including proposed findings of fact and law.

IV. CONCLUSION.

For the reasons stated, it is hereby **ORDERED** as follows:

1. Plaintiffs' Daubert Motion to Exclude the Opinions of Dr. Robert Morgan, ECF No. 366, is DENIED;

2. Defendants' Motion to Exclude the Report and Testimony of Plaintiffs' Proposed Expert Michael L. Hendricks, ECF No. 368, is DENIED in part and GRANTED in part.  It is denied to the extent it seeks to preclude Dr. Hendricks' testimony and opinion.  It is granted to the extent that the plaintiffs must not seek to introduce medical expert testimony from Dr. Hendricks' regarding physical harms resulting from solitary or restrictive housing;

3. Defendants' Motion to Exclude the Report and Testimony of Plaintiffs' Proposed Expert Dan Pacholke, ECF No. 370, is DENIED;

4. Defendants' Motion to Exclude the Report and Testimony of Plaintiffs' Proposed Expert Richard Wells, ECF No. 372, is DENIED as moot;

5. Plaintiffs' Motion to Exclude the Report and Testimony of Defendants' Proposed Expert Tama S. Celi, ECF No. 374, is DENIED in part and GRANTED in part. It is denied to the extent it seeks to preclude Dr. Celi's testimony. It is granted to the extent that defendants must produce Dr. Celi's source code;

6. Plaintiffs' Motion to Exclude the Testimony of Lenard Vare, ECF No. 376, is DENIED as moot; and

7. Defendants' Motion for Plaintiffs to Submit a Trial Plan, ECF No. 442, is DENIED.

ENTER:  September 26, 2024

/s/  JAMES P. JONES
Senior United States District Judge