CLERKS OFFICE U.S. DIST. COURT
AT ABINGDON, VA
FILED

January 20, 2026

LAURA A. AUSTIN, CLERK
BY: s/ FELICIA CLARK
     DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| **WILLIAM THORPE, et al.,** | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | )   Case No. 2:20CV00007 |
| | ) |
| **VIRGINIA DEPARTMENT OF CORRECTIONS, et al.,** | )   J udge J ames P. J ones |
| | ) |
| Defendants. | ) |

## OPINION AND ORDER AS TO CROSS MOTIONS
## FOR SUMMARY JUDGMENT

*Argued: William O'Neil, Eli Jacobs, Alyssa C. McGraw, Neal Hoopes, Megan A. Crowley, and Ayana M. Lindsey,* Covington & Burling LLP, *New York and Washington, D.C., and Vishal Agraharkar and Geri Greenspan,* ACLU of Virginia, *Richmond, Virginia, for Plaintiffs; Margaret Hoehl O'Shea, Senior Assistant Attorney General,* Office of the Attorney General of Virginia, *Richmond, Virginia, and Maya M. Eckstein, Thomas R. Waskom, and R. Dennis Fairbanks,* Hunton Andrews Kurth LLP, *Richmond, Virginia, for Defendants.*

In this class action challenging solitary confinement as practiced in a Virginia high security prison, the parties have briefed and argued cross motions for summary judgment. For the reasons set forth, the defendants' Motion for Summary Judgment will be granted in part and denied in part, and the plaintiffs' Motion for Partial Summary Judgment will be denied.

## I. BACKGROUND.

In earlier opinions, I detailed the plaintiffs' claims and the facts alleged in their Complaint.[1] In summary, the plaintiffs claim that the conditions and length of solitary confinement as enforced by the Virginia Department of Corrections (VDOC) in its Red Onion State Prison are unlawful under the Eighth Amendment, and that the pathways for prisoners to eventually leave solitary confinement — known as the Step-Down Program — violate the Due Process Clause of the Fourteenth Amendment.[2]

Previously in this case two separate classes have been certified pursuant to Rules 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure, as follows:

> Constitutional Violation Injunction Class: All persons who are currently, or will in the future, be confined at Red Onion . . . at the Level S or Level 6 security levels and subject to any phase of the Step-Down Program.

---

[1] See *Thorpe v. Va. Dep't of Corr.*, No. 2:20CV00007, 2020 WL 10354128 (W.D. Va. Sept. 4, 2020), *R. & R. adopted in part, rejected in part*, 2021 WL 2435868 (W.D. Va. June 15, 2021) (denying motion to dismiss), *aff'd sub nom. Thorpe v. Clarke*, 37 F.4th 926 (4th Cir. 2022) (affirming denial of qualified immunity defense to Eighth Amendment claim); *Thorpe v. Va. Dep't of Corr.*, No. 2:20CV00007, 2023 WL 2908575 (W.D. Va. Apr. 12, 2023) (granting motion for class certification).

[2] As I have previously noted, more recently the prison housing known as "solitary confinement" or "segregation" has been officially described as "restrictive housing" or "restorative housing." 2019 Va. Acts chs. 453, 516 (codified as Va. Code. Ann. § 53.1-39.1(A)) (defining restrictive housing); Va. Dep't of Corr., *Restorative Housing in the Virginia Department of Corrections* (2024), https://rga.lis.virginia.gov/Published/2024/RD579/pdf.

> Constitutional Violation Damages Class: All persons who at any time from August 1, 2012, to the present have been confined at Red Onion . . . at the Level S or Level 6 security levels and subject to any phase of the Step-Down Program.[3]

*Thorpe,* 2023 WL 2908575 at *15.

The parties have withdrawn their requests for a jury trial. They have also stipulated to the decertification of the Disabilities Injunction Class and the Disabilities Damages Class and further agreed that certain named plaintiffs will be allowed to pursue individual claims under the Americans with Disabilities Act and the Rehabilitation Act following adjudication of the class claims.

Before the court are the parties' cross motions for summary judgment. The plaintiffs seek partial summary judgment on the grounds that the conditions of the Step-Down Program violate the Eighth Amendment, and that the program's conditions and review processes violate the Due Process Clause of the Fourteenth Amendment. Conversely, the defendants have moved for summary judgment on each of the plaintiffs' claims. They also assert that they are entitled to qualified immunity on the plaintiffs' constitutional claims, and that the statute of limitations precludes the claims of certain class members. Lastly, the defendants contend that

---

[3] Because the parties agree that the Step-Down Program presently only operate at Red Onion State Prison, I have omitted Wallens Ridge State Prison from the class descriptions.

- 3 -

injunctive relief, as well as emotional and compensatory damages, should be denied, even if the plaintiffs' claims are not barred entirely.

## II. SUMMARY JUDGMENT STANDARD.

Federal Rule of Civil Procedure 56(a) requires the court grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In so ruling, the court must view all facts in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. at 248. "The court cannot weigh the evidence or make credibility determinations. That function is reserved for a jury . . . ." *Ray v. Roane*, 93 F.4th 651, 655 (4th Cir.) (internal quotation marks and citations omitted), *cert. denied,* 145 S. Ct. 164 (2024).

## III. ANALYSIS.

Although the parties agree that certain conditions and privileges of the Step-Down Program differ from those imposed on prisoners in the general population, they disagree as to the specifics and severity of these differences. Aside from the substantive elements of the program, VDOC policy requires prisoners in the Step-Down Program to undergo three levels of review to determine whether they are fit to return to the general population. This process includes monthly reviews

conducted by the Building Management Committee (BMC) that consider whether the prisoner has satisfied the Step-Down Program's requirements, including serving the minimum period of time at each privilege level; completing required programming; displaying responsible behavior; and adhering to disciplinary charge limits. The Institutional Classification Authority (ICA) conducts hearings every 90 days, the External Review Team conducts biannual reviews, and the Dual Treatment Team conducts ad hoc reviews. The parties disagree as to whether these reviews adequately assess the ongoing risk prisoners in the Step-Down Program pose, and whether the reviews provide prisoners with adequate procedural protections.[4]

## A. Due Process.

The Due Process Clause of the Fourteenth Amendment prohibits states from "depriv[ing] any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "To state a procedural due process violation, a plaintiff must (1) identify a protected liberty or property interest and (2) demonstrate deprivation of that interest without due process of law." *Prieto v. Clarke*, 780 F.3d 245, 248 (4th Cir. 2015). "A liberty interest may arise from the Constitution itself, by reason of guarantees implicit in the word 'liberty,' or it may arise from an expectation or interest created by state laws or policies." *Wilkinson v. Austin*, 545

---

[4] The defendants have categorized the plaintiffs' claims into facial and as-applied relief. As discussed in a prior opinion in this case, this distinction need not be made until the remedies stage of litigation. *Thorpe v. Clarke*, 37 F.4th at 947.

U.S. 209, 221 (2005) (citation omitted).  Plaintiffs may demonstrate a state-created liberty interest if they show "a basis for an interest or expectation in state regulations" in avoiding the conditions of their solitary confinement, *Prieto*, 780 F.3d at 250,  and that those conditions "impose[ ] atypical and  significant hardship . . . in relation to the ordinary incidents of prison life."  *Sandin v. Connor*, 515 U.S. 472, 484 (1995).   The baseline for determining whether the conditions of confinement impose an atypical and significant hardship is the general prison population.  *Incumaa v. Stirling*, 791 F.3d 517, 529 (4th Cir. 2015).  Whether the conditions of confinement impose such a hardship is a question of law.  *Beverati v. Smith*, 120 F.3d 500, 503 (4th Cir. 1997).  Relevant factors for such a determination include (1) the magnitude of confinement restrictions; (2) whether the confinement is for an indefinite period; and (3) whether the confinement had any collateral consequences on the prisoner's sentence.  *Incumaa*, 791 F.3d at 530.

If an atypical and significant hardship exists, the court must then consider "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and [ ] the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."  *Wilkinson*, 545 U.S. at 224–25 (quoting *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)).

The parties disagree as to whether the conditions of the Step-Down Program impose an atypical and significant hardship on its participants compared to that of the general prison population.[5]  With respect to the magnitude of confinement restrictions, the parties disagree as to whether prisoners in the Step-Down Program receive a minimum of four hours of out-of-cell activity in practice; can meaningfully interact with fellow prisoners during in-cell and out-of-cell time; and can partake in productive activities.  The plaintiffs also assert that prisoners in the Step-Down Program must undergo intrusive cavity searches upon leaving their cells, are confined to cages during recreation time, and are categorically banned from having contact visitations, all of which differ drastically from the conditions imposed upon the general population.

Regarding the period of confinement, the plaintiffs assert that incarceration in the Step-Down Program is indefinite in duration as there is no limit on the maximum amount of time a prisoner is required to remain in the program.  And the length of time prisoners are required to remain in the Step-Down Program, the plaintiffs contend, is not always related to safety concerns or the initial justification for placing the prisoner in solitary confinement.  With respect to collateral consequences, the plaintiffs point to the Step-Down Program's negative impact on the ability to earn

---

[5] The defendants assume, without conceding, that the plaintiffs have sufficiently traced their liberty interest to state regulations.

good-time credit by prisoners with the highest security designations. The defendants deny that confinement is indefinite, arguing that the length of confinement is based on defined review processes and prisoners' own compliance with program requirements. The plaintiffs are correct that solitary confinement is "indefinite" if it is not limited to a specific amount of time. *Wilkinson*, 545 U.S. at 214–15. The plaintiffs are also correct that a protected liberty interest may be found even absent a finding of collateral consequences. *Incumaa*, 791 F.3d at 532. However, I find that a material dispute remains as to the magnitude of the Step-Down Program conditions, and thus whether the conditions of the program pose an atypical and significant hardship on its participants. The parties also disagree as to whether the procedural safeguards of the Step-Down Program adequately protect prisoners from an erroneous deprivation of their liberty interest. According to the defendants, the plaintiffs have necessarily been afforded adequate process given that all the named plaintiffs still in VDOC custody have transitioned out of the Step-Down Program and back to the general population. But as the plaintiffs correctly note, that prisoners have progressed out of the Step-Down Program is a separate inquiry from whether those prisoners were afforded meaningful review during their time in the program. *Toevs v. Reid*, 685 F.3d 903, 916 (10th Cir. 2012). The plaintiffs also contend that the process for assessing whether prisoners in the Step-Down Program pose an ongoing risk of harm relies upon requirements that are vague or irrelevant to whether

continued segregation is penologically necessary. For instance, BMC review criteria include whether a prisoner has spent a pre-determined number of months at each privilege level; completed the Challenge Series workbooks, although completion does not account for learning or language barriers, and officers are not provided with grading criteria; displayed responsible behaviors, such as maintaining personal hygiene; and received disciplinary charges, regardless of their relation to continued risk. The plaintiffs argue that these reviews fail to provide necessary procedural protections, such as notice of status reviews and decisions, access to the factual findings underlying such decisions, and an opportunity to challenge continued confinement. Moreover, the plaintiffs assert that the other administrative review bodies merely rubber stamp BMC's initial decisions.

I find that material disputes exist as to the specific conditions of confinement and adequacy of the accompanying review processes of the Step-Down Program. Thus, the cross-motions for summary judgment as to the due process claim are denied.

### B. Eighth Amendment.

The Eighth Amendment prohibits the infliction of cruel and unusual punishments. U.S. Const. amend. VIII. To demonstrate that the defendants' conduct constitutes cruel and unusual punishment, the plaintiffs must satisfy both an objective and subjective test. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To

satisfy the objective prong, the defendants' conduct must pose "a serious or significant physical or emotional injury resulting from the challenged conditions, or a substantial risk of such serious harm." *Campbell v. Florian*, 972 F.3d 385, 393 (4th Cir. 2020) (internal quotation marks and citations omitted). To satisfy the subjective prong, the plaintiffs must show that the defendants "possessed a sufficiently culpable state of mind" in the form of deliberate indifference, a higher standard than mere negligence. *Id*. at 394 (internal quotation marks and citation omitted). Deliberate indifference may be shown through "direct evidence of a prison official's actual knowledge or circumstantial evidence tending to establish such knowledge, including evidence 'that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Scinto v. Stansberry*, 841 F.3d 219, 226 (4th Cir. 2016) (citations omitted). A defendant who is found to have acted reasonably will not be held liable under the Cruel and Unusual Punishments Clause. *Farmer*, 511 U.S. at 845.

The parties disagree as to whether the Step-Down Program objectively poses a significant risk of serious harm, and whether the defendants were aware of, but deliberately indifferent to, the risks. With respect to the objective prong, the parties primarily focus on the conditions of out-of-cell recreation time, and whether these conditions are materially indistinguishable from those that scientific literature has deemed to cause a serious risk of harm. While VDOC policy changes and Virginia

law now mandate a daily minimum of four hours of out-of-cell time, the plaintiffs contend that this time is not consistently provided. And even when out-of-cell time is provided, the plaintiffs assert that the recreation cages lack basic equipment and facilities, such as toilets, and that prisoners are required to undergo invasive cavity searches to engage in activities such as recreation, showers, and programming.

The plaintiffs further claim that the extended period for which prisoners are subjected to these conditions — some pathways taking a minimum of nine or eighteen months to complete — has resulted in some plaintiffs spending over ten years in solitary housing. In turn, the prisoners have suffered from mental issues such as depression, anxiety, paranoia, hallucinations, suicidal ideation, PTSD, cardiac issues, and migraines. Expert Rep. of Michael Hendricks Ex. 89; Expert Rep. of Craig Haney Ex. 66. The defendants reject the argument that the conditions of the Step-Down Program pose an objective risk of serious harm, claiming that no legislation categorically prohibits solitary confinement. Red Onion State Prison is accredited by the American Correctional Association, and its program has been recognized nationwide as a positive restrictive housing model, and prior litigation challenging the Step-Down Program has been rejected.

Regarding the subjective prong, the plaintiffs argue that the risk of harm was obvious given "near-universal scientific consensus" about the harms of confinement conditions akin to those of the Step-Down Program. Am. Mem. Supp. Am. Mot.

Partial Summ. J. 4, Dkt. No. 383.  The plaintiffs also assert that, according to the defendants' own testimony, the defendants were aware of the negative impact solitary confinement has on prisoners with mental health issues, as well as specific harms prisoners in the Step-Down Program have faced.  *Id.* at Ex. 14, Clarke Dep. 265:13–266:1, Dkt. No. 383-14 ("And in our estimation, individuals with mental health diagnoses are individuals who, when placed in [restrictive housing] conditions . . . may respond in a manner that is not appropriate. It . . . may be injurious to them, ultimately.").  On the contrary, the defendants assert that most named plaintiffs maintained a mental health classification code of MH-0, indicating that they did not need mental health treatment, and arguing that legitimate penological interests served as the basis for each named plaintiffs' confinement.

Resolving these disputes will require credibility determinations of the parties' experts and scientific studies and must be presented at trial.  The parties further disagree as to the correct mental health diagnoses of certain plaintiffs and the reasonableness of solitary confinement in light of various plaintiffs' conduct, also requiring credibility determinations that I am precluded from making at this stage.  Accordingly, the cross-motions for summary judgment on the Eighth Amendment claim are denied.

## C. Qualified Immunity.

Government officials are shielded from liability "so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (internal quotation marks and citations omitted). Courts look to the law that existed at the time of the officials' challenged actions to determine whether a reasonable person would have known their conduct violated a clearly established right. *Walker v. Prince George's Cnty.*, 575 F.3d 426, 429 (4th Cir. 2009). "That right must not be defined 'at a high level of generality' but with precision." *Mays ex rel. Estate of Mays v. Sprinkle*, 992 F.3d 295, 301 (4th Cir. 2021) (citation omitted). Determining whether qualified immunity bars liability requires factual allegations be viewed in the light most favorable to the plaintiff. *Smith v. Ray*, 781 F.3d 95, 98 (4th Cir. 2015).

Notwithstanding, "in some cases, like *Thorpe*, the court need not separately determine whether the constitutional right was clearly established if there remains a genuine issue of material fact as to an official's deliberate indifference, because that potential deliberate indifference would, if established, necessarily include an awareness of the illegality of the defendant's actions." *Pfaller ex rel. Estate of Pfaller v. Amonette*, 55 F.4th 436, 448 (4th Cir. 2022); *cf. Porter v. Clarke*, 923 F.3d 348, 361–62 (4th Cir. 2019) (explaining that the "extensive scholarly literature

- 13 -

describing and quantifying the adverse mental health effects of prolonged solitary confinement" rendered the harm "so obvious that it had to have been known" and "established [the defendants'] deliberate indifference," but noting that the district court erred by not considering the state's alleged penological justifications, which can support prolonged detention) (internal quotation marks and citations omitted). Whether the evidence cited by the plaintiffs renders the Step-Down Program obviously harmful and demonstrates indifference presents a question of credibility, as does the legitimacy of the defendants' alleged penological goals. Viewing the facts in the light most favorable to the plaintiffs, the defendants' Eighth Amendment qualified immunity defense is denied.

With respect to the due process claim, as both parties note, neither the Supreme Court nor the Fourth Circuit have outlined the exact process prisoners must receive while housed in long-term solitary confinement. Nonetheless, "officials can still be on notice that their conduct violates established law even in novel factual circumstances." *Hope v. Pelzer*, 536 U.S. 730, 741 (2002); *see also Ashcroft v. al–Kidd*, 563 U.S. 731, 741 (2011) (explaining that qualified immunity "do[es] not require a case directly on point" for a law to be clearly established). Thus, the question is whether the law gave the defendants a fair warning that their conduct was unconstitutional. *Id.* Viewing the facts in the light most favorable to the plaintiffs, the Step-Down Program has subjected prisoners to extremely limited

communication and interaction with fellow inmates, indefinite confinement, and limited or abolished their ability to earn good-time credits. *See Wilkinson*, 545 U.S. at 214 (finding that prisoners had a protected liberty interest where they were "deprived of almost any environmental or sensory stimuli and of almost all human contact," confined to a supermax facility for an indefinite period, and ineligible for parole consideration). Due process also requires that prisoners be afforded a meaningful opportunity to understand and contest the reasons for being held in solitary confinement. *Incumaa*, 791 F.3d at 532. Viewed in the light most favorable to the nonmoving party, the plaintiffs are not given notice of BMC reviews, are not permitted to attend the hearings, and are not provided with the evidence BMC or any subsequent reviewing entity considered in rendering their decision. I find that the defendants are not entitled to qualified immunity as to the plaintiffs' due process claim.

### D.  Statute of Limitations.

State law governs the proper statute of limitations for personal injury actions brought pursuant to § 1983. *Wallace v. Kato*, 549 U.S. 384, 387 (2007). Under Virginia law, personal injury actions must be brought within two years from when the cause of action accrued. Va. Code Ann. § 8.01-243(A). And when an action accrues is a question of federal law. *Cox v. Stanton*, 529 F.2d 47, 50 (4th Cir. 1975)

("Federal law holds that the time of accrual is when [the] plaintiff knows or has reason to know of the injury which is the basis of the action.").

The plaintiffs do not contest that the statute of limitations has barred the Eighth Amendment claims for damages for class members who left the Step-Down Program on or prior to May 5, 2017, and who have not since re-entered the program. However, they maintain that the due process claim is not barred because a genuine dispute exists as to whether class members could have reasonably known about their injury prior to May 5, 2017.  Prior to May 2017, the plaintiffs assert, only ICA reviews would occur in the presence of the prisoner, and neither VDOC operating procedure nor the substance of the ICA reviews would have put class members on notice that the reviews were merely rubber stamping BMC reviews.  Moreover, the plaintiffs contend that the constitutional claims of the named plaintiffs and class members who remained in the Step-Down Program after May 5, 2017, are not time barred pursuant to the continuing violations doctrine. Under the continuing violations doctrine, "when a harm has occurred more than once in a continuing series of acts or omissions, a plaintiff under certain circumstances may allege a 'continuing violation' for which the statute of limitations runs anew with each violation." *DePaola v. Clarke*, 884 F.3d 481, 486 (4th Cir. 2018) (citation omitted).  However, "continual unlawful acts are distinguishable from the continuing ill effects of an original violation because the latter do not constitute a continuing violation."  *A*

*Soc'y Without a Name v. Virginia*, 655 F.3d 342, 348 (4th Cir. 2011). The plaintiffs allege that, because their Eighth Amendment claims are partly based on the length of their solitary confinement, such claims necessarily accrued only after they had been held in confinement for a prolonged period.

I find that there is a genuine dispute as to whether the plaintiffs' claims are time barred and will deny the cross motions for summary judgment as to the statute of limitations claim.

### E.  Injunctive Relief.

The Prison Litigation Reform Act (PLRA) requires that "[p]rospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs."  18 U.S.C. § 3626(a)(1)(A).  In considering whether prospective relief is warranted, courts "shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the relief."  *Id*.

The defendants contend that the plaintiffs have requested "extreme" relief by asking the court to abolish the Step-Down Program and long-term solitary confinement altogether.  Reply Br. Supp. 67, Dkt. No. 417.  They maintain that the new VDOC policy and Virginia state law — both of which require that prisoners be afforded four hours of out-of-cell time daily — grant the plaintiffs the relief they seek.  However, the plaintiffs assert that the defendants fail to adhere to the policy

change, and that any out-of-cell time prisoners are afforded constitutes "solitary hours" given the deprivation of social and environmental stimulation. Pls.' Mem. Opp'n 74, Dkt. No. 400. The plaintiffs further assert that any changes the defendants have implemented to the Step-Down Program constitute voluntary cessation.

I do not believe that alterations to the Step-Down Program would, in all cases, be extreme. However, a blanket request to abolish solitary confinement cannot be deemed the least intrusive method of protecting the prisoners' constitutional and statutory rights, especially where such confinement may be necessary for legitimate penological or safety purposes. Thus, before injunctive relief can be granted for any claim, the plaintiffs are expected to provide a narrower description as to the specific injunctive relief they are seeking. *Parsons v. Ryan*, 754 F.3d 657, 689 n.35 (9th Cir. 2014). Accordingly, the defendants' Motion for Summary Judgment as to the scope of injunctive relief is granted in part, only to the extent that the court will not issue a blanket injunction against solitary confinement in all circumstances.

### F. Compensatory Damages.

The plaintiffs seek damages for contractual, constitutional, and statutory violations, including damages for emotional pain and suffering. Pursuant to the PLRA, "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual

act." 42 U.S.C. § 1997e(e). While the Fourth Circuit has not directly addressed the issue, other courts have recognized that compensatory damages may be awarded to prisoners absent a physical injury. *Aref v. Lynch*, 833 F.3d 242, 265 (D.C. Cir. 2016) (finding that "there exists a universe of injuries that are neither mental nor emotional and for which plaintiffs can recover compensatory damages under the PLRA," and that "it [is] hard to believe that Congress intended to afford virtual immunity to prison officials even when they commit blatant constitutional violations, as long as no physical blow is dealt."). Post-PLRA courts have also recognized loss of liberty as a cognizable injury, distinguishable from a mental or emotional injury. *Id.* at 264; *Kerman v. City of New York*, 374 F.3d 93, 128 (2d Cir. 2004).

Moreover, and as the plaintiffs assert, post-PLRA courts have awarded prisoners compensatory damages on a per diem basis. *See, e.g.*, *Almighty Supreme Born Allah v. Milling*, 2016 WL 1311997, at *15 (D. Conn. Apr. 4, 2016) (awarding a prisoner compensatory damages on a per diem bases for due process violations while recognizing that a rate can still be fair and reasonable even if it cannot be calculated with scientific precision), *rev'd on other grounds*, *Almighty Supreme Born Allah v. Milling*, 876 F.3d 48 (2d Cir. 2017). Whether the plaintiffs have adequately presented that they are entitled to these damages and the nature of such damages, are matters for trial. Thus, the defendants' Motion for Summary Judgment regarding compensatory damages will be denied.

## IV. CONCLUSION.

For the reasons stated above, it is hereby **ORDERED** that the defendants' Motion for Summary Judgment, Dkt. No. 379, is GRANTED in part and DENIED in part, and the plaintiffs' Amended Motion for Partial Summary Judgment, Dkt. No. 380, is DENIED.

ENTER: January 20, 2026

/s/  JAMES P. JONES
Senior United States District Judge